MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

ANDREW J. ENTWISTLE (*Pro Hac Vice*)
aentwistle@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
401 Congress Avenue, Suite 1170
Austin, TX  78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7272

VINCENT R. CAPPUCCI (*Pro Hac Vice*)
vcappucci@entwistle-law.com
BRENDAN J. BRODEUR (*Pro Hac Vice*)
bbrodeur@entwistle-law.com
ANDREW M. SHER (*Pro Hac Vice*)
asher@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY  10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

*Attorneys for Plaintiffs The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP and AltShares Merger Arbitrage ETF*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, AND CHRISTOPHER HARMS, <br><br> Defendants. | Case No.  3:20-cv-00076-SI <br><br> **THE ARBITRAGE FUND PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO CONSOLIDATE A RELATED ACTION AND VACATE NOTICE AND LEAD PLAINTIFF DEADLINE** <br><br> DATE: July 24, 2020 <br> TIME:  10:00 am <br> Courtroom 1, 17th Flr., Judge Susan Illston <br><br> Related Case No.: 3:20-cv-03819 |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................................... 4

III.    LEGAL STANDARD ............................................................................................... 6

        A.      Consolidation .............................................................................................. 6

        B.      PSLRA Notice ............................................................................................ 6

IV.     MEITAV TACHLIT'S AMENDED AND SUPPLEMENTAL COMPLAINT IS
        IMPROPER AND SHOULD BE STRICKEN ........................................................ 7

V.      CONSOLIDATION IS NOT APPROPRIATE ...................................................... 11

VI.     IN THE ALTERNATIVE, IF THE ACTIONS ARE CONSOLIDATED A NEW
        LEAD PLAINTIFF SELECTION PROCESS IS REQUIRED. ........................... 14

VII.    CONCLUSION ....................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chun v. Fluor Corp.*,
Case No. 3:18-cv-01338-X, 2020 WL 2745527 (N.D. Tex. May 26, 2020) ............................16

*In re Cloudera, Inc. Sec. Litig.*,
No. 19-CV-03221-LHK, 2020 WL 1288362 (N.D. Cal. Mar. 18, 2020) ............................7, 15

*In re Facebook, Inc., IPO Securities and Derivative Litig.*,
No. 12-cv-4081, 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013)................................................10

*Habitat Educ. Ctr., Inc. v. Kimbell*,
250 F.R.D. 397 (E.D. Wis. 2008) .............................................................................................8

*Hachem v. General Electric Inc.*,
Case No. 17-cv-8457, 2018 WL 1779345 (S.D.N.Y. April 11, 2018) ......................................7

*Hemenway v. Bartolleta*,
Case No. 8:11-cv-597-T-30AEP, 2012 WL 4772768 (M.D. Fla. Oct. 5, 2012).....................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
947 F. Supp. 2d 366 (S.D.N.Y. 2013)....................................................................................15

*Kipling v. Flex Ltd.*,
No. 18-CV-02706-LHK, 2019 WL 1472358 (N.D. Cal. Apr. 3, 2019)...............................9, 10

*In re Leapfrog Enters., Inc. Sec. Litig.*,
No. C03 05421 RMW, 2005 WL 5327775 at *3 (N.D. Cal. July 5, 2005) .............................15

*In re Netflix, Inc. Sec. Litig.*
No. 12-0225 SC, 2012 WL 1496171 (N.D. Cal. April 27, 2012)........................................6, 11

*Ontario Teachers' Pension Plan Board v. Teva Pharm. Indus., Ltd.*,
No. 3:17-cv-558 (SRU), 2020 WL 1181366 (D. Conn. Mar. 10, 2020).................................16

*Sgarlata v. Paypal Holdings, Inc.*,
No. 3:17-CV-06956, Doc. No. 31 (N.D. Cal. Mar. 16, 2018) ................................................15

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
No. 05 Civ. 1898 (SAS), 2005 WL 1322721 (S.D.N.Y. Jun. 1, 2005)....................................15

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
No. CV 11-9495 PSG (JCG), 2013 U.S. Dist. LEXIS 72683 (C.D. Cal. May 9,
2013) .......................................................................................................................................15

*Waldman v. Wachovia Corp.*,
  No. 08 Civ. 2913(SAS), 2009 WL 2950362 (S.D.N.Y. 2009) ..........................................14, 15

*Whelan v. Miles Indus.*,
  No. C-11-02146 EDL, 2013 WL 12174135 (N.D. Cal. Jan. 3, 2013) .......................................6

**Statutes**

15 U.S.C. § 77z-1(a)(2)(iv) ....................................................................................................9

15 U.S.C. § 77z-1(a)(3) ...........................................................................................................7

15 U.S.C. § 77z-1(a)(3)(B)(i) ..................................................................................................7

15 U.S.C. § 78u-4 ............................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 15 ...................................................................................................................8

Fed. R. Civ. P. 42(a) ................................................................................................................6

**Other Authorities**

H.R. CONF. REP. NO. 104-369, at 32 (1995) ...........................................................................7

## I.     **INTRODUCTION**

The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund LP, and Altshares Merger Arbitrage ETC (together, "The Arbitrage Fund Plaintiffs") respectfully request that the Court deny Meitav Tachlit Mutual Funds, Ltd.'s ("Meitav Tachlit") motion to consolidate and vacate The Arbitrage Fund Plaintiffs' PSLRA notice and lead plaintiff deadline and issue an order striking Meitav Tachlit's amended complaint.  In the alternative, if the Court grants Meitav Tachlit's motion to consolidate, the Court should order publication of a new PSLRA notice and order a new lead plaintiff selection process.

Christopher Sayce filed this action on January 2, 2020, on behalf of persons and entities who purchased Forescout Technologies, Inc. ("Forescout") common stock during the period from February 7, 2019 through October 9, 2019.  Doc. No. 1.  The *Sayce* complaint alleged that Forescout issued statements based upon improper revenue recognition, primarily involving Forescout's sales in Europe, the Middle East and Africa.  Doc. No. 1 at ¶ 4.  All of Forescout's alleged misconduct took place during the period from February 7, 2019 to October 9, 2019.  *Id*. at ¶ 1.  That same day, Pomerantz LLP, counsel for Sayce, published a PSLRA notice advising investors that they had filed this case "on behalf of a class consisting of investors who purchased or otherwise acquired Forescout securities between February 7, 2019 and October 9, 2019, both dates inclusive . . ." Seltzer Decl., Ex. A.[1]  In that PSLRA notice, investors were advised:  "If you are a shareholder who purchased Forescout securities during the class period, you have until March 2, 2020 to ask the Court to appoint you as Lead Plaintiff for the class."  *Id.*  On March 2, 2020, Meitav Tachlit filed an unopposed motion for appointment of lead plaintiff and lead counsel.  Doc. No. 17.  On March 23, 2020, the Court issued an order appointing Meitav Tachlit as Lead Plaintiff and appointing Pomerantz LLP as lead counsel.  Doc. No. 27.

On February 6, 2020, months after the class period described in Sayce's complaint and the PSLRA notice, Forescout announced that it had entered into a merger agreement with Advent

---

[1] All exhibits are attached to the Declaration of Marc M. Seltzer, filed concurrently herewith.

International Corporation ("Advent") pursuant to which Forescout stockholders would receive $33 per share for their stock. On the day this announcement was made, the market price of Forescout common stock jumped from $27.98 per share to close at $33.28 per share on very heavy trading volume. Thereafter, Forescout issued statements to the effect that the merger was on track to close on May 18, 2020. However, on May 18, 2020, the market was shocked by the disclosure that Advent was backing out of the merger. As a result of the disclosure made shortly prior to the opening of trading on May 18, 2020, Forescout's stock plummeted 23.5% from $29.52 per share at the close of trading on May 15, 2020 to $22.57 per share at the close of trading on May 18, 2020, wiping out approximately $300 million in market capitalization.

It turns out that Forescout knew all along that the prospect of consummating the merger transaction was especially risky because its financial condition was worsening far more than its peers due to the economic downturn caused by the COVID-19 pandemic, it had refused to turn over information requested by Advent regarding its deteriorating financial condition, and it was failing to comply with its obligations under the merger agreement to continue to operate its business in the ordinary course. Forescout knew that the likelihood of completing the merger was becoming more risky by the day, yet Forescout issued false and misleading statements assuring investors that the merger was on track.

Upon learning the truth, The Arbitrage Fund Plaintiffs filed a class action in this Court on behalf of investors who purchased Forescout common stock during the period from February 6, 2020, the day the merger agreement was announced, and May 15, 2020, the last trading day before it was publicly disclosed that the merger had collapsed. The Arbitrage Fund Plaintiffs published their PSLRA notice on June 11, 2020, advising investors who purchased shares of Forescout stock during the period from February 6, 2020 to and including May 15, 2020, that the deadline for seeking appointment as Lead Plaintiff would expire on August 10, 2020.

On April 2, 2020, more than a month before the merger agreement cratered, this Court approved a stipulation between Meitav Tachlit and defendants to permit Meitav Tachlit to file an amended complaint. Doc. No. 29, 30. At the time, neither Meitav Tachlit nor any other investors knew that Forescout had failed to disclose that the merger transaction was at high risk of failure.

Less than one week after the disclosure of the failed merger, in a transparent effort to evade the lead plaintiff selection process, Meitav Tachlit filed a pleading dubbed an amended complaint, but which was, in fact, an amended and supplemental complaint, extending the class period alleged in the *Sayce* action to encompass the new class alleged in The Arbitrage Fund Plaintiffs' case and adding relatively cursory allegations pertaining to conduct that took place months after the date the *Sayce* complaint was filed, including allegations regarding defendants' non-disclosures relating to the failed merger.  Meitav Tachlit never sought leave of court to expand the class period or supplement its complaint.  In fact, the merger did not collapse until after the Court granted the joint stipulation permitting Meitav Tachlit to file an amended complaint.

Because lead plaintiff selection had been completed for a putative class of persons who purchased Forescout stock during the period that ended on October 9, 2019, long before the  merger agreement was even made and announced to the public, no one who purchased or acquired Forescout stock during the period from February 6, 2020 to May 15, 2020 could possibly have been put on notice of the *Sayce* action or the fact that qualified investors could move to be appointed lead plaintiff for this subsequent class period.  Yet, despite this obvious fact, Meitav Tachlit seeks to use its amended complaint to aggrandize its position and claim that its lead plaintiff appointment encompasses this later class period, depriving any other investors who bought their shares months later from seeking to lead a class asserting claims about Forescout's statements about the merger agreement.  Meitav Tachlit also seeks an order from this Court to vacate The Arbitrage Fund Plaintiffs' PSLRA notice and the deadline set by that notice for lead plaintiff applications.

Meitav Tachlit's claim that it should be permitted to serve as lead plaintiff for a significantly expanded class encompassing the class sought to be represented by The Arbitrage Fund Plaintiffs is squarely and completely at odds with the PSLRA.  Being appointed lead plaintiff is not a lifetime appointment giving the lead plaintiff the authority to bring all manner of claims against the same defendants on behalf of subsequent stock purchasers suing for new and different acts of wrongdoing and thereby depriving subsequent purchasers of the right to apply to be a lead plaintiff.  Those purchasers could not have applied to be a lead plaintiff because they were not part of the class and their claims did not even exist when the application deadline expired.  Nor did or could the PSLRA

notice advise them that they would lose the right to apply if they did not do so by the deadline set in that notice. Meitav Tachlit's argument is contrary to the text and purpose of the PSLRA lead plaintiff selection process, as well as fundamental principles of due process and fairness.

Accordingly, The Arbitrage Fund Plaintiffs respectfully request that the Court deny Meitav Tachlit's motion and issue an order striking Meitav Tachlit's improper amended complaint. Alternatively, if the Court does consolidate the actions, The Arbitrage Fund Plaintiffs reserve all rights. Due to the significantly expanded class period, the Court should order publication of a new PSLRA notice and a new lead plaintiff selection process for the entire class period alleged in Meitav Tachlit's amended complaint.

## II.    STATEMENT OF FACTS

On January 2, 2020, Christopher Sayce initiated this action by filing a complaint alleging that Defendants "made materially false and misleading statements regarding the Company's business, operational and compliance policies." Doc. No. 1 at ¶ 4. Specifically, the complaint alleged that: (i) Forescout was "experiencing significant volatility with respect to large deals and issues related to the timing and execution of deals in the Company's pipeline," primarily in Europe, the Middle East, and Africa; (ii) the volatility was "reasonably likely to have a material negative impact on the Company's financial results"; and (iii) Forescout's "public statements were materially false and misleading at all relevant times." *Id.* The class period in the original, 22-page complaint was February 7, 2019 to October 9, 2019. Meitav Tachlit, who is represented by the same counsel as Mr. Sayce, filed an uncontested motion for appointment of lead plaintiff on March 2, 2020. Doc. No. 17, 23. Meitav Tachlit suffered losses of approximately $102,000 during the original class period. Doc. No. 18-1. The Court issued an order on March 23, 2020 appointing Meitav Tachlit as lead plaintiff and appointing Pomerantz LLP as lead counsel. Doc. No. 27.

On February 6, 2020, Forescout announced its anticipated merger with Advent. This announcement led to a significant change in the composition of Forescout's shareholders, as over 21 million shares changed hands on the date of the announcement (of Forescout's 41 million shares public float) and more than 9 million shares were traded over the subsequent three trading days. Although Forescout knew there were significant risks that the merger would not close, it suppressed

this information from investors. Ex. B at ¶ 3. On May 15, 2020, Ferrari Group, through Advent, sent Forescout a letter stating that it would "not be proceeding to consummate the transaction on May 18, 2020 as scheduled." Ex. B ¶ 60. On May 18, 2020, Forescout revealed to investors that it had received notice from Advent that Advent "would not be proceeding to consummate the acquisition of Forescout." Ex. B ¶ 1. Advent has refused to close the transaction, and litigation concerning the merger agreement is pending in the Delaware Court of Chancery. *Id.* ¶ 1. While investors were shocked by the announcement, Forescout and its senior executives knew that Forescout had experienced a significant, disproportionate financial decline; that Advent was concerned about Forescout's recent financial performance; that Forescout was not meeting its obligations under the merger agreement (i.e., its ordinary course obligations); and that there was a significant risk that the transaction with Advent would not close. *Id.* ¶ 4.

The original complaint in the *Sayce* action could not and did not mention any of these facts. It did not mention the merger agreement, nor could it, as the merger agreement was not announced until more than a month later. On April 2, 2020, prior to the announcement that the merger had collapsed, Meitav Tachlit entered into a joint stipulation with defendants permitting Meitav Tachlit to file an amended complaint by May 22, 2020, and setting a briefing schedule for Defendants' motion to dismiss. The Court entered an order approving the joint stipulation on April 2, 2020. Doc. No. 30. On May 22, 2020, Meitav Tachlit filed an amended complaint that expanded the class period from eight months (ending on October 9, 2019) to fifteen months (ending on May 15, 2020) and supplementing the factual allegations to encompass the announcement and subsequent collapse of the merger. Because the original PSLRA notice notified potential lead plaintiff applicants that the class period in the original complaint was February 7, 2019 to October 9, 2019, investors who purchased stock after October 10, 2019 did not have any notice or an opportunity to participate in the lead plaintiff process.

The Arbitrage Fund Plaintiffs filed their complaint on June 10, 2020 (Ex. B), and suffered more than $600,000 in losses based on The Arbitrage Fund Plaintiffs' purchases made during the period from February 6, 2020 through May 15, 2020, the class period in The Arbitrage Fund Plaintiffs' complaint. The gravamen of The Arbitrage Fund Plaintiffs' complaint is that Forescout

made misstatements and omissions about the prospects of completing the now failed merger. The Arbitrage Fund Plaintiffs' Complaint contains detailed allegations relating to the failed merger, including allegations of Forescout's significant and disproportionate financial decline in the Asia Pacific and Japan region due to the impact of COVID-19; Forescout's failure to meet its going concern obligations under the merger agreement; Forescout's failure to provide Advent with requested materials relating to its deteriorating financial condition; and Forescout's ability to finance the transaction with Advent. Ex. B at ¶¶ 3-4. The Arbitrage Fund Plaintiffs also alleged a "channel stuffing" scheme disclosed to Advent by a whistleblower, which took place in the fourth quarter of 2019, after the end of the class period in the *Sayce* action. *Id.* ¶ 3.

On June 11, 2020, The Arbitrage Fund Plaintiffs published a PSLRA notice alerting purchasers of Forescout common stock from February 6, 2020 through May 15, 2020, inclusive, of the *Arbitrage* Action and setting an August 10, 2020 lead plaintiff deadline. Ex. C.

## III.   LEGAL STANDARD

### A.   Consolidation

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Whelan v. Miles Indus.*, No. C-11-02146 EDL, 2013 WL 12174135, at *2 (N.D. Cal. Jan. 3, 2013) (citations omitted). In the securities class action context, consolidation is appropriate "where the complaints are based on the same 'public statements and reports.'" *In re Netflix, Inc. Sec. Litig.* No. 12-0225 SC, 2012 WL 1496171 at *3 (N.D. Cal. April 27, 2012) (citing *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 583 (N.D. Cal. 1999).

### B.   PSLRA Notice

The PSLRA mandates that within 20 days after the date a securities class action complaint is filed, "the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purposed plaintiff

class – (i) of the pendency of the action, the claims asserted therein, and the purposed class period . . . ". 15 U.S.C. § 77z-1(a)(3).   The notice must also inform members of the proposed class that they "may move the court to serve as lead plaintiff" within sixty days after publication of the notice.  *Id.*  The purpose of these requirements is to "encourage the most capable representatives of the plaintiff class to participate in the class action litigation[,] parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders." H.R. CONF. REP. NO. 104-369, at 32 (1995).

Not later than 90 days after the date on which a notice is published, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . ." 15 U.S.C. § 77z-1(a)(3)(B)(i).

"Where changes to a securities class action complaint 'make it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice,' courts in this district and elsewhere have ordered lead plaintiffs to republish notice under the PSLRA. *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2020 WL 1288362, at *2 (N.D. Cal. Mar. 18, 2020) (citing *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013)).   "Such an approach accords with the PSLRA's purpose of ensuring that absent class members and potential lead plaintiffs are aware of their rights."  *Id.* (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898 (SAS), 2005 WL 1322721, at *2–3 (S.D.N.Y. Jun. 1, 2005)).  "Similarly, this Court has reopened the lead plaintiff process where an amended complaint so significantly expanded the class that the Court could not assure itself that the initial publication was adequate." *Id.* (citing *Kipling v. Flex Ltd.*, No. 18-CV-02706-LHK, 2019 WL 1472358, at *2 (N.D. Cal. Apr. 3, 2019)).  "The inquiry into whether republication is warranted is qualitative, turning on a comparison of the two complaints and an assessment of whether, in light of the amendments, 'entire classes of potential lead plaintiffs [were] left out of the notice procedure." *Hachem v. General Electric Inc.*, Case No. 17-cv-8457, 2018 WL 1779345 (S.D.N.Y. April 11, 2018).

IV.    **MEITAV TACHLIT'S AMENDED AND SUPPLEMENTAL COMPLAINT IS IMPROPER AND SHOULD BE STRICKEN**

First, Meitav Tachlit's amended complaint is procedurally improper because it is actually a supplemental complaint that was not authorized by the Court or the Federal Rules of Civil Procedure. *See* F.R.C.P. 15; *Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 397, 401 (E.D. Wis. 2008) ("While an amended pleading relates to matters that occurred prior to the filing of the original pleading and entirely replaces such pleading, a supplemental pleading addresses events occurring subsequent to the initial pleading and adds to such pleading."). The difference between an amended and supplemental complaint is all the more significant in the PSLRA context, which requires notice to be given to potential class members of their right to apply to be lead plaintiff. Indeed, Meitav Tachlit's amended complaint focuses on completely new and different events that took place after the filing of the *Sayce* action. The gravamen of Meitav Tachlit's original complaint is false financial reporting based on improper revenue recognition, all of which took place before October 19, 2019. The original complaint did not even mention Advent – nor could it – as the merger had not even been announced at the time Sayce filed his complaint.

Meitav Tachlit's amended and supplemental complaint is a transparent effort to evade the lead plaintiff selection process. Meitav Tachlit never sought leave of court to file a supplemental complaint. Far from merely extending the class period to incorporate related subsequent developments, the amended complaint includes allegations regarding the failure of a proposed merger transaction that had not even been announced at the time Sayce filed the original complaint. The failure of the merger had also not been announced at the time the Court granted the parties' joint stipulation for Meitav Tachlit to file an amended complaint. Because Meitav Tachlit's amended complaint is an unauthorized supplemental complaint and is a transparent effort to make an end run around the lead plaintiff selection process, excluding qualified investors who could not possibly have been on notice of their right to seek appointment as lead plaintiff, the amended and supplemental complaint should be stricken. This is why expanding the class without such a notice to these brand-new class members is improper and why the amended complaint should be stricken as unauthorized.

Second, Meitav Tachlit's amended complaint is deficient because it fails to include a signed certification as required by the PSLRA. While Meitav Tachlit filed a certification in connection

with its lead plaintiff motion, that certification only included transactions from February 12, 2019 through October 7, 2019 (those during the original *Sayce* class period).  Doc. No. 18-3.  Meitav Tachlit's amended and supplemental complaint was not updated to include transactions from October 8, 2019 through May 2019, the expanded class period in the amended complaint, in violation of by 15 U.S.C. § 77z-1(a)(2)(iv)'s requirement for the certification to include "*all* of the transactions of the plaintiff in the security that is the subject to the complaint *during the class period specified in the complaint*" (emphasis added).

Third, Meitav Tachlit is using the amended complaint as the sole predicate for the argument that its lead plaintiff appointment extends its authority to lead the enlarged class.  This is especially problematic because the *Arbitrage* Action involves very different subsequent acts of wrongdoing that were never asserted in the case originally pleaded and never described in the PSLRA notice issued in that case.  Meitav Tachlit acknowledges, as it must, that its amended complaint incorporates "facts that came to light after the initial complaint was filed," but attempts to characterize these facts as a "clear continuation of the conduct" alleged in the initial complaint. Mot. at 2.  Not so.   The gravamen of the original *Sayce* complaint was Forescout's false financial reporting based upon improper revenue recognition, primarily in Europe, the Middle East, and Africa.  The Arbitrage Fund Plaintiffs' complaint alleges new and different wrongs, namely, false statements and omissions about the Advent merger transaction.  The failure to disclose the risk the transaction would not close is based on Forescout's significant and disproportionate financial decline in the Asia Pacific and Japan region due to the impact of COVID-19; Forescout's failure to meet its going concern obligations; and Forescout's failure to provide Advent with requested materials relating to its financial condition; all of which relate to Forescout's ability to finance the transaction with Advent.  Ex. B at ¶¶ 3-4.

This Court has previously held similar amendments by lead plaintiffs to be inconsistent with the PSLRA.  For example, in *Kipling*, the original complaint focused on defendant's disclosure that the company "was investigating allegations by an employee that the Company improperly accounted for obligations in a customer contract and certain related reserves." *Kipling v. Flex Ltd.*, No. 18-CV-02706-LHK, 2019 WL 1472358, at *1 (N.D. Cal. Apr. 3, 2019).   The amended

complaint focused on defendant's misrepresentations about the strength of its partnership with key customer Nike, which had not been disclosed until after the original complaint and PSLRA notice. *Id.* at *2. In its order, the court noted that the original complaint never even mentioned Nike. *Id.* The court noted that "many of the facts about the Nike partnership were not disclosed and the alleged misrepresentations were not made until after Kipling's May 8, 2018 original complaint and PSLRA notice" and held that "the fact that new facts and alleged misrepresentations relating to Flex's Nike partnership arose in the months after Kipling's original complaint and PSLRA notice and before Bristol's amended complaint only reinforces the degree to which Bristol's amended complaint 'dramatically alters' the instant lawsuit to account for those new factual allegations." *Id.* at *2 (citing *In re Leapfrog Enters., Inc. Sec. Litig.*, No. C03 05421 RMW, 2005 WL 5327775 at *3 (N.D. Cal. July 5, 2005)).  The *Sayce* Action's original complaint focuses on Forescout's failure to disclose issues relating to the timing and execution of deals in Forescout's pipeline.  As in *Kipling*, the complaint makes no mention of Advent, or of Forescout's misrepresentations regarding its potential merger, nor could it have.

Meitav Tachlit also attempts to dismiss the *Arbitrage* action as a "tag-along," calling The Arbitrage Fund Plaintiffs "late-to-the-show."  But The Arbitrage Fund Plaintiffs, as a result of Meitav Tachlit's circumvention of the PSLRA, had no opportunity to move for appointment of lead plaintiff.[2]  The merger had not even been announced at the time Sayce filed the original complaint and the PSLRA notice only put investors on notice of the class period from February 7, 2019 through October 9, 2019.  The Arbitrage Fund Plaintiffs did not have any purchases of Forescout stock during the period February 7, 2019 through October 9, 2019, and its claims did not exist at the time the lead plaintiff deadline expired.  The May 18, 2020 disclosure to investors that the merger was not going to close happened after the lead plaintiff deadline in the *Sayce* action, after Meitav Tachlit moved to be appointed lead plaintiff, after Meitav Tachlit was ultimately appointed

---

[2] This case is distinguishable from *In re Facebook, Inc., IPO Securities and Derivative Litigation*, No. 12-cv-4081, 2013 WL 4399215, (S.D.N.Y. Aug. 13, 2013).  In that case, the group of plaintiffs had the opportunity to participate in the lead selection process and the court was acknowledging that the appointed lead plaintiff had the authority to determine what claims to pursue on behalf of the class. *Id.* *3.  The logic does not apply here, where The Arbitrage Fund Plaintiffs and all other subsequent purchasers were completely excluded from the lead plaintiff selection process.

lead plaintiff, and after the Court granted the parties' joint stipulation to permit Meitav Tachlit to file an amended complaint. Meitav Tachlit's suggestion that Arbitrage Plaintiffs are "latecomers" is obviously incorrect, and contrary to the PSLRA as well as the fundamental principles of due process and fairness.

## V.    CONSOLIDATION IS NOT APPROPRIATE

Because Meitav Tachlit's amended complaint is impermissible, in considering consolidation the Court should compare the original *Sayce* complaint with The Arbitrage Fund Plaintiffs' complaint. The original *Sayce* complaint is a completely different action than what is alleged in The Arbitrage Fund Plaintiffs' complaint. Because none of the conduct described in The Arbitrage Fund Plaintiffs' complaint had even occurred at the time the original *Sayce* complaint was filed, there is no question that the two cases are not based on the same "public statements and reports." *Netflix,* 2012 WL 1496171 at *3. *See also Hemenway v. Bartolleta*, Case No. 8:11-cv-597-T-30AEP, 2012 WL 4772768, at *1, n.1 (M.D. Fla. Oct. 5, 2012) (denying motion to consolidate where complaints were not based on the same "public statements and reports"). None of the public statements and reports giving rise to The Arbitrage Fund Plaintiffs' claims had even occurred at the time Sayce filed his complaint.

Ignoring that its amended complaint dramatically changed the scope of the lawsuit, Meitav Tachlit makes the conclusory statement that the cases have "overlapping factual questions, overlapping Defendants, an overlapping class period, and [assert] identical legal claims" and argues the gravamen of both complaints is "fundamentally indistinguishable." Mot. at 4-5, 8. But the gravamen of Arbitrage Plaintiffs' complaint is whether Forescout failed to disclose the material risk that the merger would not close. This is a fundamentally different question than whether Forescout failed to disclose improper revenue recognition practices. Forescout's failure to disclose the material risk that the merger would not close is based on Forescout's significant and disproportionate financial decline in the Asia Pacific and Japan region due to the impact of COVID-19; Forescout's failure to meet its going concern obligations; and Forescout's failure to provide Advent with requested materials relating to its financial condition; all of which relate to Forescout's ability to finance the transaction with Advent. Ex. B at ¶¶ 3-4. The Arbitrage Fund Plaintiffs'

complaint also discussed a whistleblower's allegations of a "channel stuffing" scheme in the fourth quarter of 2019 in their complaint. *Id.* ¶ 3. This, too, occurred after Sayce filed his original complaint, and after the class period alleged in that complaint ended.

Because the cases describe completely different conduct, the original *Sayce* complaint has no commonality with the public statements and reports upon which The Arbitrage Fund Plaintiffs base their complaint. All of the public statements and reports that give rise to the claims alleged in The Arbitrage Fund Plaintiffs' complaint post-date January 2, 2020, the date the *Sayce* Action complaint was filed:

- The February 6, 2020 announcement of the proposed merger between Forescout and Advent; Ex. B ¶ 1;

- Forescout's February 28, 2020 Form 10-K for the period ending December 31, 2019, which did not contain sufficient disclosures of the risks relating to merger, Ex. B ¶¶ 41-44;

- Forescout's March 3, 2020 Preliminary Proxy Statement filed with the SEC, which did not discuss any of Forescout's financial decline, Forescout's failure to comply with ordinary course requirements, the concerns Advent had raised with Forescout regarding its recent financial performance, or that there was a material risk that Advent would withdraw from the merger agreement, Ex. B ¶ 46;

- Forescout's March 24, 2020 Definitive Proxy Statement, which failed to disclose Forescout's financial decline in the first quarter of 2020 and the risks COVID-19 posed to Forescout's business and the pending transaction, Ex. B ¶ 48;

- Advent's March 2020 communications to Forescout that it had concerns regarding the Company's troubling performance; Ex. B ¶ 6;

- Advent's repeated requests throughout April 2020 for requested updated financial information and projections from Forescout, Ex. B ¶ 6;

- The April 14, 2020 "revised base case" that Advent delivered to Forescout, which presented a more conservative outlook in light of the impacts of the virus, Ex. B at ¶ 50;

- The April 19, 2020 request from Ferrari Group/Advent for sales information specific to the first quarter of 2020, Ex. B ¶ 50;

12                                Case No. 3:20-cv-00076-SI

THE ARBITRAGE FUND PLAINTIFFS' OPP. TO MOT. TO CONSOL. AND VACATE LEAD PLAINTIFF DEADLINE

- Ferrari Group's April 20, 2020 revised financial forecast that it delivered to Forescout expressing concern about the impact of COVID-19 on Forescout and requesting a variety of information, Ex. B ¶ 50;

- Forescout's April 23, 2020 response to Ferrari Group's April 20, 2020 request, Ex. B ¶ 50;

- The May 8, 2020 phone call between Forescout CEO and President, Michael DeCesare, and Advent's head of technology investment, Bryan Taylor, during which Mr. Taylor stated that Advent could not "make the numbers work" and was considering not closing the transaction, Ex. B ¶ 7;

- Spruce Point Capital Management's April 30, 2020 public letter to the management of Advent recommending that Advent "critically reexamine its agreement to purchase Forescout Technologies, Inc.," Ex. B ¶ 53;

- The May 5, 2020 subpoena served on one of Forescout's resellers in litigation between Advent/Ferrari Group and Forescout that references a whistleblower letter alleging Forescout engaged in an undisclosed channel stuffing scheme in the fourth quarter of 2019, Ex. B ¶ 69;

- The May 8, 2020 phone call between Mr. DeCesare and Mr. Taylor where Mr. Taylor said that Advent "was considering not closing the Merger," a position that he said was "100% COVID related," Ex. B ¶ 54;

- Forescout's May 11, 2020 press release announcing its first quarter financial results and quoting Mr. DeCesare as stating "we look forward to completing our pending transaction with Advent," Ex. B ¶ 10;

- Forescout's first quarter 2020 Form 10-Q on May 11, 2020, which failed to warn investors that COVID-19 was having a disproportionate impact on Forescout and that Advent was considering not closing the merger, Ex. B ¶¶ 56-57;

- Advent's cancellation of a previously-scheduled planning meeting of the Forescout and Advent communication teams to coordinate public announcements of the closing of the merger on May 13, 2020, Ex. B ¶ 58;

- The May 14, 2020 presentation sent by Mr. Taylor to Forescout's CEO titled "Project

THE ARBITRAGE FUND PLAINTIFFS' OPP. TO MOT. TO CONSOL. AND VACATE LEAD PLAINTIFF DEADLINE

Ferrari Financial Analysis" that contained a "revised base case" and a new "Downside case" that Advent had prepared for Forescout, Ex. B ¶ 59;

- The May 15, 2020 letter that Ferrari Group, through Advent, sent to Forescout stating that Defendants would "not be proceeding to consummate the transaction on May 18, 2020 as scheduled," Ex. B ¶ 60;

- Forescout's May 18, 2020 announcement that it received notice from Advent that Advent "would not be proceeding to consummate the acquisition of Forescout." Ex. B ¶ 1;

All of these disclosures post-date the filing of the original complaint, and address a course of conduct that is fundamentally distinct from Forescout's failure to disclose improper revenue recognition practices. Doc. No. 1 ¶ 4.

Meitav Tachlit's suggestion that this Court's order appointing it as the lead plaintiff requires the consolidation of related actions is wrong. To the contrary, that order plainly contemplates that a related action need not necessarily be consolidated, stating "Counsel in any related action *that is* consolidated with this Action shall be bound by the organization of plaintiff's counsel set forth herein." *Id.* at ¶ 5.

## VI. IN THE ALTERNATIVE, IF THE ACTIONS ARE CONSOLIDATED A NEW LEAD PLAINTIFF SELECTION PROCESS IS REQUIRED.

If the Court grants Meitav Tachlit's motion, The Arbitrage Fund Plaintiffs submit that a new lead plaintiff selection process is required in light of the significantly expanded claims and class period. As demonstrated above, many qualified lead plaintiffs – included The Arbitrage Fund Plaintiffs – could not have applied to be lead plaintiff because they were not members of the class and their claims did not exist when the deadline to apply to be lead plaintiff expired.

Were Meitav Tachlit allowed to serve as lead plaintiff for the expanded class period, this would undermine the PSLRA's goal of providing potential lead plaintiffs with "a reasonable opportunity to identify themselves and present themselves for the Court's consideration." *Waldman v. Wachovia Corp.,* No. 08 Civ. 2913(SAS), 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009) (requiring a new publication of notice when the amended pleading brought claims on behalf of a new class and the claims extended "far beyond the class and claims proposed in the

THE ARBITRAGE FUND PLAINTIFFS' OPP. TO MOT. TO CONSOL. AND VACATE LEAD PLAINTIFF DEADLINE

original Complaint"). Courts frequently require a new PSLRA notice and reconsider the lead plaintiff appointment under these circumstances. *See In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2020 WL 1288362, at *2 (N.D. Cal. Mar. 18, 2020) (requiring a new PSLRA notice where changes to a securities class action complaint "make it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495 PSG (JCGx), 2013 WL 2247394, at *15-16 (C.D. Cal. May 9, 2013) (requiring republication where the amended pleading added allegations based on "an entirely different factual scenario . . . "); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* No. 05 Civ. 1898(SAS), 2005 WL 1322721, at *2–3 (S.D.N.Y. 2005) ("[R]epublication is generally appropriate where an amended complaint asserts new theories or legal claims."); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d at 367-68 (S.D.N.Y. 2013) (republication is warranted in light of changes to the class period and nature of claims asserted); *Waldman v. Wachovia Corp.*, No. 08-CV-2913 (SAS), 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009) ("Although courts typically disfavor republication when a complaint is amended, courts have required new notice where the amended complaint substantially alters the claims or class members.").[3]

For example, in *Leapfrog,* the original pleading focused on how defendants made overly positive statements about the defendant's financial outlook for a class period of six months. The amended pleading, covering a period of fifteen months, contained new allegations about the defendant's supply chain. *Leapfrog,* 2005 WL 5327775, at *3. The court concluded that the significant changes in the complaint required new notice and lead plaintiff selection. *Id.* Here, too, the failed merger and corresponding non-disclosures undoubtedly change the scope of the litigation.

This case is distinguishable from *Fluor*, where the court did not require republication notice. In *Fluor*, the court found that the conduct described in the amended consolidated complaint

---

[3] In at least one other case in this District, Pomerantz LLP has been ordered to republish notice because an expanded class definition rendered the prior notice inadequate. *See Sgarlata v. Paypal Holdings, Inc.*, No. 3:17-CV-06956, Doc. No. 31 at *1 (N.D. Cal. Mar. 16, 2018) ("The Court neglected to mention on the record that notice of the litigation with a broader class definition must be re-published in light of the inadequacy of the initial notice to potential class members.").

constituted a "clear continuation of the conduct" alleged in the initial consolidated complaint because the course of conduct, which was initially thought to apply to four projects, actually applied to more projects throughout Flour's business. *Chun v. Fluor Corp.*, Civil Action No. 3:18-cv-01338-X, 2020 WL 2745527, *5 (N.D. Tex. May 26, 2020). Here, by contrast, the amendments relate to whether Forescout disclosed to investors the material risk that the merger would not close, which is not a "clear continuation" of failure to disclose improper revenue recognition practices. The case is also different from *Teva*, where the court found the second amended complaint was not a "substantially altered" version of the first amended because the factual underpinnings of both complaints were substantially the same. *Ontario Teachers' Pension Plan Board v. Teva Pharm. Indus., Ltd.*, No. 3:17-cv-558 (SRU), 2020 WL 1181366, *12 (D. Conn. Mar. 10, 2020).

Because the merger agreement had not even been announced at the time the PSLRA notice was issued, and the failed merger was not disclosed to investors until after the Court appointed Meitav Tachlit lead plaintiff, it would be fundamentally unfair and a denial of due process to deny qualified investors the opportunity to move to be appointed lead plaintiff.

## VII. CONCLUSION

For the foregoing reasons, the Court should deny Meitav Tachlit's motion to consolidate and should issue an order striking Meitav Tachlit's amended complaint. Alternatively, if the Court determines to consolidate the cases, The Arbitrage Fund Plaintiffs reserve all rights, and the Court should require publication of a new PSLRA notice and a new lead plaintiff selection process for the entire class period alleged in Meitav Tachlit's amended complaint.

Dated: June 29, 2020

Respectfully submitted,

MARC M. SELTZER
KRYSTA KAUBLE PACHMAN
SUSMAN GODFREY L.L.P.


By:    */s/ Marc M. Seltzer*
         Marc M. Seltzer
ANDREW J. ENTWISTLE (*Pro Hac Vice*)
aentwistle@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
401 Congress Avenue, Suite 1170

THE ARBITRAGE FUND PLAINTIFFS' OPP. TO MOT. TO CONSOL. AND VACATE LEAD PLAINTIFF DEADLINE

Austin, TX  78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7272

VINCENT R. CAPPUCCI (*Pro Hac Vice*)
vcappucci@entwistle-law.com
BRENDAN J. BRODEUR (*Pro Hac Vice*)
bbrodeur@entwistle-law.com
ANDREW M. SHER (*Pro Hac Vice*)
asher@entwistle-law.com
299 Park Avenue, 20th Floor
New York, NY  10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

*Attorneys for Plaintiffs The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP and AltShares Merger Arbitrage ETF*

THE ARBITRAGE FUND PLAINTIFFS' OPP. TO MOT. TO CONSOL. AND VACATE LEAD PLAINTIFF DEADLINE