MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

ANDREW J. ENTWISTLE (*Pro Hac Vice*)
aentwistle@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
401 Congress Avenue, Suite 1170
Austin, TX  78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7272

VINCENT R. CAPPUCCI (*Pro Hac Vice*)
vcappucci@entwistle-law.com
BRENDAN J. BRODEUR (*Pro Hac Vice*)
bbrodeur@entwistle-law.com
ANDREW M. SHER (*Pro Hac Vice*)
asher@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY  10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

*Attorneys for Plaintiffs The Arbitrage Fund,
Water Island LevArb Fund, LP, Water Island
Diversified Event-Driven Fund, Water Island
Merger Arbitrage Institutional Comingled
Master Fund, LP and AltShares Merger
Arbitrage ETF*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE ARBITRAGE FUND, WATER ISLAND LEVARB FUND, LP, WATER ISLAND DIVERSIFIED EVENT-DRIVEN FUND, WATER ISLAND MERGER ARBITRAGE INSTITUTIONAL COMINGLED MASTER FUND LP, AND ALTSHARES MERGER ARBITRAGE ETF on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, AND CHRISTOPHER HARMS,<br><br>Defendants. | Case No.  3:20-cv-00076 SI<br><br>**DECLARATION OF MARC M. SELTZER IN SUPPORT OF THE ARBITRAGE FUND PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO CONSOLIDATE A RELATED ACTION AND VACATE NOTICE AND LEAD PLAINTIFF DEADLINE**<br><br>DATE: July 24, 2020<br>TIME:  10:00 am<br>Courtroom 1, 17th Flr., Judge Susan Illston<br> Related Case No.: 3:20-cv-03819 |

I, Marc M. Seltzer, declare as follows:

1.    I am an active member of the State Bar of California and a member of the bar of this Court.  I am a partner of the law firm Susman Godfrey L.L.P., counsel to The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP and AltShares Merger Arbitrage ETF in this action.  I have personal knowledge of the matters stated herein and if called as a witness could and would competently testify thereto.

2.    I make this declaration in support of The Arbitrage Funds Plaintiffs Memorandum In Opposition To Motion To Consolidate A Related Action and Vacate Notice and Lead Plaintiff Deadline.

3.    Attached hereto as "Exhibit A" is a true and correct copy of the January 2, 2020 PSLRA Notice.

4.    Attached hereto as "Exhibit B" is a true and correct copy of the Arbitrage Fund Plaintiffs' complaint, filed in *The Arbitrage Fund, et al. v. Forescout Technologies, Inc., et al.*, 3:20-cv-03819-SI (N.D. Cal.), Doc. No. 1.

5.    Attached hereto as "Exhibit C" is a true and correct copy of the PSLRA notice dated June 11, 2020.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 29th day of June, 2020, at Los Angeles, California.

/s/ Marc M. Seltzer
Marc M. Seltzer

1    Case No. 3:20-cv-03819
DECL. OF M. SELTZER ISO ARBITRAGE FUND PLAINTIFFS' OPP. TO MOT. TO CONSOL.

# Exhibit A

Case 3:20-cv-00076-SI   Document 42   Filed 06/29/20   Page 4 of 48

# Pomerantz Law Firm Announces the Filing of a Class Action against Forescout Technologies, Inc. and Certain Officers – FSCT



f  🐦  in  G+  📌  |  @ Email  |  🖨 Print Friendly  |  ⌗ Share

January 02, 2020 18:25 ET | **Source:** Pomerantz LLP

NEW YORK, Jan. 02, 2020 (GLOBE NEWSWIRE) -- Pomerantz LLP announce that a class action lawsuit has been filed against Forescout Technologies, Inc. ("Forescout" or the "Company") (NASDAQ: FSCT) and certain of its officers.   The class action, filed in United States District Court, for the Northern District of California, and docketed under 20-cv-00076, is on behalf of a class consisting of investors who purchased or otherwise acquired Forescout securities between February 7, 2019, and October 9, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

If you are a shareholder who purchased Forescout securities during the class period, you have until March 2, 2020 to ask the Court to appoint you as Lead Plaintiff for the class.  A copy of the Complaint can be obtained at **www.pomerantzlaw.com**.   To discuss this action, contact Robert S. Willoughby at **rswilloughby@pomlaw.com** or 888.476.6529 (or 888.4-POMLAW), toll-free, Ext. 9980. Those who inquire by e-mail are encouraged to include their mailing address, telephone number, and number of shares purchased.

**[Click here for information about joining the class action]**

Forescout was founded in 2000 and is headquartered in San Jose, California.  The Company provides network security products in the Americas, Europe, the Middle East, Africa, the Asia Pacific, and Japan, selling its products and services through distributors and resellers.

The Complaint alleges that throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Forescout was experiencing significant volatility with respect to large deals and issues related to the timing and execution of

Case 3:20-cv-00076-SI Document 42 Filed 06/29/20 Page 5 of 48

deals in the Company's pipeline, especially in Europe, the Middle East, and Africa ("EMEA"); (ii) the foregoing was reasonably likely to have a material negative impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

On October 10, 2019, during pre-market hours, Forescout issued a press release announcing preliminary third quarter 2019 ("3Q19") financial results. That press release lowered 3Q19 revenue guidance to $90.6 million to $91.6 million, compared to prior revenue guidance of $98.8 million to $101.8 million, and market consensus of $100.52 million. In explaining these results, Defendants cited "extended approval cycles which pushed several deals out of the third quarter," which "was most pronounced in EMEA."

On this news, Forescout's stock price fell $14.63 per share, or 37.32%, to close at $24.57 per share on October 10, 2019.

The Pomerantz Firm, with offices in New York, Chicago, Los Angeles, and Paris is acknowledged as one of the premier firms in the areas of corporate, securities, and antitrust class litigation. Founded by the late Abraham L. Pomerantz, known as the dean of the class action bar, the Pomerantz Firm pioneered the field of securities class actions. Today, more than 80 years later, the Pomerantz Firm continues in the tradition he established, fighting for the rights of the victims of securities fraud, breaches of fiduciary duty, and corporate misconduct. The Firm has recovered numerous multimillion-dollar damages awards on behalf of class members. See **www.pomerantzlaw.com**.

CONTACT:
Robert S. Willoughby
Pomerantz LLP
**rswilloughby@pomlaw.com**

---

Newswire Distribution Network & Management

- Home
- Newsroom
- RSS Feeds
- Legal

About Us

**GlobeNewswire** is one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases financial disclosures and multimedia content to the media, investment community, individual investors and the general public.

© 2020 GlobeNewswire, Inc. All Rights Reserved.

# Exhibit B

MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

ANDREW J. ENTWISTLE (*Pro Hac Vice to be submitted*)
aentwistle@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
401 Congress Avenue, Suite 1170
Austin, TX  78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7272

VINCENT R. CAPPUCCI (*Pro Hac Vice to be submitted*)
vcappucci@entwistle-law.com
BRENDAN J. BRODEUR (*Pro Hac Vice to be submitted*)
bbrodeur@entwistle-law.com
ANDREW M. SHER (*Pro Hac Vice to be submitted*)
asher@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY  10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ARBITRAGE FUND, WATER ISLAND LEVARB FUND, LP, WATER ISLAND DIVERSIFIED EVENT-DRIVEN FUND, WATER ISLAND MERGER ARBITRAGE INSTITUTIONAL COMINGLED MASTER FUND LP, AND ALTSHARES MERGER ARBITRAGE ETF on behalf of themselves and all others similarly situated, | Case No.  3:20-cv-03819 |
| | CLASS ACTION COMPLAINT |
| Plaintiffs, | |
| vs. | DEMAND FOR JURY TRIAL |
| FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, AND CHRISTOPHER HARMS, | |
| Defendants. | |

Case No.  3:20-cv-03819

CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 2

JURISDICTION AND VENUE ........................................................................................... 5

PARTIES .............................................................................................................................. 5

    A.    Plaintiffs ................................................................................................... 5

    B.    Defendants ................................................................................................ 6

FACTUAL BACKGROUND ............................................................................................... 6

    A.    Forescout Knows The Transaction Is At Risk But Fails To Disclose This Risk to Investors .................................................................................. 10

    B.    Forescout Continues to Mislead Investors After Advent States It Is Considering Not Closing ........................................................................ 14

    C.    Advent Withdraws From The Deal and Details Forescout's Dramatic Financial Decline ..................................................................................... 16

DEFENDANTS' MATERIALLY FALSE STATEMENTS AND OMMISSIONS OF MATERIAL FACT ............................................................................................................. 19

ADDITIONAL ALLEGATIONS OF DEFENDANTS' SCIENTER ................................. 23

LOSS CAUSATION ............................................................................................................ 24

PRESUMPTION OF RELIANCE ....................................................................................... 24

INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ....................................................................................................... 25

CLASS ACTION ALLEGATIONS ..................................................................................... 26

FIRST CAUSE OF ACTION  FOR VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 AGAINST DEFENDANTS FORESCOUT, DECESARE AND FARMS ................................................................................................... 27

SECOND CAUSE OF ACTION FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST DEFENDANTS DECESARE AND HARMS .................... 29

PRAYER FOR RELIEF ....................................................................................................... 29

JURY DEMAND .................................................................................................................. 30

CLASS ACTION COMPLAINT

Plaintiffs The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP and AltShares Merger Arbitrage ETF (collectively, "Plaintiffs") bring this action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of themselves and all other persons or entities who purchased or otherwise acquired the common stock of defendant Forescout Technologies, Inc. ("Forescout" or the "Company") during the period from February 6, 2020 through May 15, 2020, inclusive (the "Class Period") and were damaged thereby (the "Class").

Plaintiffs allege the following based upon personal knowledge as to Plaintiffs' own acts, and information and belief as to all other matters. Plaintiffs' information and belief is based upon an ongoing independent investigation by Plaintiffs' undersigned counsel, which includes, among other things, review and analyses of: (i) Forescout's public documents, conference calls and other public statements; (ii) the Company's filings with the United States Securities and Exchange Commission ("SEC"); (iii) wire and press releases published by and regarding the Company; (iv) analyst reports and other market information about the Company; and (v) the verified pleadings and other documents publicly filed in *Forescout Technologies, Inc. v. Ferrari Group Holdings, L.P. and Ferrari Merger Sub, Inc.*, Case No. 2020-0285-VSG (Del. Ch.) (the "Delaware Litigation").

Counsel's investigation into the factual allegations continues, and many of the relevant facts are known only by defendants or are exclusively within defendants' custody or control.

Plaintiffs believe that substantial additional evidence supporting the allegations set forth herein will be uncovered during discovery.

**INTRODUCTION**

1. On Monday, May 18, 2020, Forescout Technologies, Inc. ("Forescout"), announced that on Friday May 15, 2020, it received notice from its acquisition partner, Advent International Corporation ("Advent"), that Advent "would not be proceeding to consummate the acquisition of Forescout" pursuant to the parties February 6, 2020 merger agreement ("Merger Agreement"). As a result of the disclosure, Forescout's stock price plummeted 23.5% from $29.52 per share at close on May 15, 2020 to $22.57 per share at close on May 18, 2020, wiping out approximately $300 million in market capitalization.

2. While investors were entirely surprised by the announcement, Forescout and its senior executives had known for months that: (i) its business was experiencing a significant decline, (ii) Advent was concerned about Forescout's recent financial performance, (iii) Forescout was not meeting its obligations under the Merger Agreement, and, as a result of these factors, (iv) there was a significant risk Forescout's planned transaction (the "Transaction") with Advent would not close.

3. Specifically, by the start of the Class Period on February 6, 2020 – when Forescout announced the Merger Agreement with Advent and positive fourth quarter 2019 earnings— Forescout knew that its business had begun to suffer a dramatic and undisclosed downturn, including it its fast-growing Asia Pacific and Japan ("APJ") region that was impacted by COVID-19 starting in January. In addition, Forescout was aware that its fourth quarter 2019 revenues were inflated through an abnormal transaction with one of its largest resale customers, Merlin International Inc. ("Merlin"), which a whistleblower has alleged to Advent was the result of a "channel stuffing scheme" in the fourth quarter of 2019. Because of these factors, Forescout knew that the consummation of the Transaction was exceptionally risky at the time it announced the Merger Agreement.

4. Forescout neither disclosed these facts to investors nor Advent at the time it signed the Merger Agreement. Nor did Forescout disclose that its financial collapse would preclude the availability of the debt financing needed to close the transaction. In fact, while Forescout provided certain revised projections during the sales process to bidders, it did not disclose the true known

2                                                          Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

extent of its financial downturn, including the early impacts of COVID-19 on the APJ region, nor the abnormal transaction with Merlin.

5.     While Forescout was experiencing — but not disclosing — a dramatic downturn in first quarter revenues, the other companies in its peer group were reporting significant growth. For example, of Forescout's twelve peer companies that have reported first quarter 2020 results to date, six (Rapid7, Inc., Tenable Holdings, Inc., SailPoint Technologies Holdings, Inc., Workiva Inc., Fortinet, Inc. and Palo Alto Networks, Inc.) had year-over-year revenue growth of over 20%, four (Talend S.A., Qualys, CyberArk Software Ltd. and FireEye) had year-over-year revenue growth between 5% and 20%, and two (Splunk Inc. and Varonis Systems, Inc.) had relatively flat revenue. Forescout investors had every reason to expect comparable performance based on the combination of the Company's reported fourth quarter growth, positive ongoing performance statements and peer group performance. Unfortunately, Forescout knew but failed to advise investors that its positive statements were no longer true and its first quarter revenue declined year-over-year by 24%.

6.     Forescout's own Delaware complaint seeking specific performance from Advent reveals that Forescout was told by Advent as early as March 2020 it had concerns regarding the Company's troubling financial performance, and that throughout April 2020 Advent repeatedly requested updated financial information and projections from Forescout. Knowing that the financial information would be troubling to Advent, Forescout refused to provide much of the requested data. Notably, Forescout's most senior executives, Defendants DeCesare and Harms, were highly motivated to mislead investors and Advent in order to push through the closing of the Transaction, as the two executives stood to receive over $42 million from the Transaction.

7.     Most significantly, on May 8, 2020, during a phone call between Forescout's Chief Executive Officer and President, Michael DeCesare, and Advent's head of technology investment Bryan Taylor, *Mr. Taylor told DeCesare that Advent was considering not closing the transaction.* Mr. Taylor stated that Advent could not "make the numbers work."

8.     In addition to its financial collapse, following the signing of the Merger Agreement Forescout failed to meet its obligations under the "ordinary course" provisions of the Merger

CLASS ACTION COMPLAINT

Agreement. For instance, Forescout refused to update its financial forecasts, decreased its sales operations, provided customers with non-standard discounts and payment terms, and took actions to undermine employee retention.

9. None of these issues were disclosed to investors. Indeed, on February 6, 2020 – the same day the Transaction was announced – Forescout released positive fourth quarter 2020 financial results, stating it had seen "strong demand" and that it "expanded our market footprint with the addition of 160 new logos and 3.2 million new devices under management." Forescout's future SEC filings during the Class Period continued to mislead investors by failing to update significantly out-of-date and inflated projections, as well as by failing to warn investors that Advent had concerns regarding the Company's recent financial performance.

10. Remarkably, on May 11, 2020 – *i.e.* three days *after* Advent informed DeCesare it was considering not closing the Transaction – Forescout issued a press release announcing its first quarter financial results and quoting DeCesare as stating "we look forward to completing our pending transaction with Advent." Forescout's Form 10-Q filed with the SEC on the same day also misled investors by failing to disclose the known risk that Advent was considering not closing the Transaction.

11. At no time during the Class Period did Forescout reveal to investors that: (i) its fourth quarter 2019 revenues were inflated by the abnormal transaction with Merlin; (ii) its financial performance was experiencing a significant and disproportionate decline starting early in the first quarter of 2020, (iii) Advent repeatedly expressed concerns regarding Forescout's recent financial performance; (iv) Forescout was not meeting its obligations under the Merger Agreement; (v) there was a material risk the Transaction would not close or (vi) that Advent had informed Forescout it was considering terminating the Merger Agreement.

12. Plaintiffs bring this class action on behalf of themselves and other purchasers of Forescout common stock (NASDAQ: FCST) from February 6, 2020 to May 15, 2020, inclusive, to recover damages from Defendants' wrongdoing.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  In addition, because this is a civil action arising under the laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Defendant Forescout conducts business and is headquartered in this District and many of the acts and transactions that constitute violations of law complained of herein, including the dissemination to the public of untrue statements of material facts and statements that omitted material facts necessary to make the statements not misleading.

15.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

**A.     Plaintiffs**

16.     Plaintiff The Arbitrage Fund is a mutual fund formed in 2000 and organized under Delaware law.  As set forth in the attached certification, The Arbitrage Fund purchased Forescout common stock during the Class Period and was damaged thereby.

17.     Plaintiff Water Island LevArb Fund, LP is a hedge fund formed in 2017 and organized under Delaware Law.  As set forth in the attached certification, Water Island LevArb Fund, LP purchased Forescout common stock during the Class Period and was damaged thereby.

18.     Plaintiff Water Island Diversified Event-Driven Fund is a mutual fund formed in 2010 and organized under Delaware law.  As set forth in the attached certification, Plaintiff Water Island Diversified Event-Driven Fund purchased shares of Forescout common stock and suffered damages as a result of the violations of the federal securities laws alleged herein.

19.     Plaintiff Water Island Merger Arbitrage Institutional Comingled Master Fund, LP is a hedge fund formed in 2018 and organized under Delaware law.  As set forth in the attached certification, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP purchased

shares of Forescout common stock and suffered damages as a result of the violations of the federal securities laws alleged herein.

20.     Plaintiff AltShares Merger Arbitrage ETF is an exchange-traded fund founded in 2020 and organized under Delaware law.  As set forth in the attached certification, Plaintiff AltShares Merger Arbitrage ETF purchased shares of Forescout common stock and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B.     Defendants

21.     Defendant Forescout Technologies, Inc. is a Delaware corporation headquartered in San Jose, California.  Forescout provides "security at first sight" by delivering software that enables device visibility and control that enables enterprises and government agencies to gain improved situational awareness of their environment (devices on their networks) and orchestrate actions to reduce cyber and operational risk.  Forescout's common stock is listed on NASDAQ under the symbol "FSCT."

22.     Defendant Michael DeCesare is Forescout's President and Chief Executive Officer.  Mr. DeCesare is also a member of Forescout's Board of Directors.

23.     Defendant Christopher Harms has been Forescout's Chief Financial Officer since 2013.

### FACTUAL BACKGROUND

24.     Forescout is a San Jose-based computer and network security company founded in 2000.  The Company's security software allows network administrators to monitor all devices connected to the network to reduce cyber and operational risks.  Forescout became a public company in October 2017.  According to Forescout's filings, as of December 31, 2019, more than 3,700 customers in over 90 countries rely on the Company's software.

25.     In recent years Forescout has been focused on expanding its business internationally, especially in the Asia Pacific and Japan ("APJ") region.  For example, during Forescout's second quarter 2019 earnings call on August 7, 2019, CEO DeCesare noted they the Company hired additional sales representatives in APJ, a region DeCesare stated "did very well

this quarter for us." The next month, Forescout appointed Wahab Yusoff to the role of regional vice president for Asia Pacific and Japan. In the September 30, 2019 press release announcing Mr. Yusoff's appointment, Forescout described its business in the Southeast Asian region as "fast-growing" and stated that its "device visibility and control platform has been rapidly adopted throughout APJ."

26. On October 21, 2019, activist investor Corvex Management LP, along with Jericho Capital Asset Management L.P., publicly disclosed that they had formed a "group" to work together to engage with Forescout regarding Forescout's business and prospects. Corvex and Jericho together beneficially owned approximately 14.5% of Forescout's common stock.

27. The disclosure of the Jericho/Corvex activist group becoming involved in Forescout caused the price of Forescout's common shares to jump over 12% from $25.45 per share at close on Friday, October 18, 2019 to $28.70 per share at close on Monday, October 21, 2019.

28. Following the Corvex/Jericho disclosure and subsequent conversations between Forescout and those investors, Forescout began exploring strategic and financial alternatives. On October 28, 2019, Forescout retained Morgan Stanley and established a Strategic Committee to oversee a review of strategic alternatives. In November 2019, Morgan Stanley began contacting potential acquirors, including Advent.

29. On December 18, 2019, Forescout received written non-binding indications of interest from four different potential acquirors. Advent was one of the four potential acquirors and proposed an acquisition price of $38.00 to $41.00 in cash per share of Forescout common stock.

30. On January 27, 2020, based on recent financial results, a shift in sales (from shorter license periods towards term-based licenses), and recent sales weaknesses, using a "bottoms up" method Company management and Morgan Stanley created, and the Strategic Committee approved, an "Alternate Plan" for Forescout's projected financial performance. This Alternate Plan was provided to potential acquirors, including Advent.

31. After continuing negotiations, on February 5, 2020, Forescout accepted Advent's acquisition proposal at a price of $33.00 per share in cash. On February 6, 2020, Forescout filed a Form 8-K announcing that it entered into an Agreement and Plan of Merger (the "Merger

7

Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

Agreement") with Ferrari Group Holdings, L.P., a Delaware limited partnership ("Parent"), and Ferrari Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of Parent ("Merger Sub"). Both Parent and Merger Sub are affiliated with funds managed and/or advised by Advent (Parent, Merger Sub and Advent are referred to collectively herein as "Advent"). The Merger Agreement provides that, subject to the terms and conditions set forth in the Merger Agreement, Merger Sub will merge with and into the Company (previously defined as the "Transaction"), with the Company surviving the Transaction and becoming a wholly owned subsidiary of Parent.

32. The Merger Agreement further provided for a "go-shop" period during which Forescout could consider alternative acquisition proposals. The go-shop period expired on March 8, 2020.

33. The Merger Agreement also contains certain termination rights for Forescout and Advent. Upon valid termination of the Merger Agreement under specified circumstances, Forescout will be required to pay Advent (or its designee) a termination fee of $55,832,270.

34. In addition, the Merger Agreement contained various provisions regarding the operations of Forescout's business between the signing of the agreement and the closing of the Transaction (the "Ordinary Course Requirements"). Specifically, Section 5.1 of the Merger Agreement states:

> Except (a) as expressly contemplated by this Agreement; (b) as set forth in Section 5.1 or Section 5.2 of the Company Disclosure Letter [delivered by Forescout to Ferrari on the date of signing of the Agreement]; (c) as contemplated by Section 5.2; or (d) as approved by [Ferrari Group] (which approval will not be unreasonably withheld, conditioned or delayed), during the Pre-Closing Period, the Company will . . . (i) use its respective reasonable best efforts to maintain its existence in good standing pursuant to applicable Law; (ii) subject to the restrictions and exceptions set forth in Section 5.2 or elsewhere in this Agreement, **conduct its business and operations in the ordinary course of business; and (iii) use its respective reasonable best efforts to (a) preserve intact its material assets, properties, Contracts and business organizations; (b) keep available the services of its current officers and key employees; and (c) preserve the current relationships with material customers**, suppliers, distributors, [etc.], in each case solely to the extent that (A) the Company has not, as of the date of this Agreement, already notified such third Person of its intent to terminate those relations

and (B) provided notice thereof to Parent prior to the date of this Agreement. (emphasis added)

35. Forescout also filed a press release on February 6, 2020 regarding the Merger Agreement. In the press release, Defendant DeCesare is quoted, stating:

> This transaction represents an exciting new phase in the evolution of Forescout. We are excited to be partnering with Advent International and Crosspoint Capital, premier firms with security DNA and track records of success in strengthening companies and supporting them through transitionary times. We look forward to working with Advent and Crosspoint Capital to advance our strategic objectives and want to thank our employees for their continued hard work and commitment to Forescout.

36. Also in the February 6th press release, Theresia Gouw, Chair of the Forescout Board of Directors, is quoted:

> We are pleased to have reached this agreement with Advent, which delivers significant immediate value to shareholders, and positions Forescout to continue meeting and exceeding the expectations of our customers. . . . This transaction, which is the result of a robust process conducted by the Board of Directors with the assistance of independent legal and financial advisors, is a testament to the value Forescout has created and the reputation our team has built. In making its determination, the Board of Directors considered the likely volatility associated with the business model transition to ratable revenue recognition, changes to our go-to-market initiatives, particularly in EMEA, and timing of significant eight-figure deals, while managing to quarterly street estimates as a publicly traded company. We are confident that this transaction is the best path forward for Forescout and our stakeholders.

37. Thousands of investors, including Plaintiffs, purchased shares following the announcement of the Transaction. Indeed, over 21 million shares of Forescout common stock changed hands on February 6, 2020 – over half of the public float (approximately 41 million shares) and approximately seven times the average trading volume.

38. During the sales process, the COVID-19 virus emerged and began affecting businesses worldwide. By January 21, 2020, significant portions of China were "shut down" and Japan, South Korea, Thailand and the United States all had reported cases of COVID-19. On January 30, 2020, the World Health Organization declared COVID-19 a global public health emergency. While COVID-19 had an overall positive impact on the cyber security industry, prior

to the signing of the Merger Agreement Forescout began to suffer significant financial impacts from the virus. Indeed, in its Verified Complaint filed in the Delaware Litigation, Forescout stated: "The Merger Agreement only permits Defendants to claim a Company Material Adverse Effect if it occurs *after* the date of signing of the Merger Agreement, but COVID-19 clearly existed prior to signing."

### A. Forescout Knows The Transaction Is At Risk But Fails To Disclose This Risk to Investors

39. Beginning by at least the February 6th announcement of the Merger Agreement, Forescout was aware of the significant and disproportionate impact COVID-19 was having on its business but failed to disclose it to investors.

40. For example, on the same day as the announcement of the Merger Agreement Forescout disclosed positive fourth quarter 2019 financial results, including $91.3 million in fourth quarter revenue compared to $84.7 million of revenue in the fourth quarter of 2018 (an 8% YoY increase). In connection with the earnings announcement, CEO DeCesare was quoted stating "Our results for the fourth quarter reflect strength across many parts of the business as we continue to see strong demand for device control and visibility across all segments of the market." Forescout's earnings announcement did not mention COVID-19 nor that the Company was on pace for a substantial decline in first quarter revenue. Forescout chose not to issue first quarter guidance in light of the pending Transaction.

41. On February 28, 2020, Forescout filed with the SEC its annual report on Form 10-K for the period ended December 31, 2019 (the "2019 Form 10-K"). Forescout warned vaguely in the 2019 Form 10-K that its "international operations expose us to a variety of risks" including "natural disasters, restrictions on travel or health risks that may adversely affect our ability to sell our products and services or support our operations or may result in disruption to our supply chain."

42. The 2019 Form 10-K, Forescout also detailed extensive "Risks Relating to the Merger." These risks were:

> (i) The announcement and pendency of our agreement to be acquired by Advent could adversely affect our business;

10

Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

(ii) The failure to complete the Merger could adversely affect our business;

(iii) While the Merger is pending, we are subject to business uncertainties and contractual restrictions that could harm our operations and the future of our business or result in a loss of employees;

(iv) The Merger Agreement limits our ability to pursue alternatives to the Merger, and

(v) Litigation may arise in connection with the Merger, which could be costly, prevent consummation of the Merger, divert management's attention and otherwise materially harm our business.

43. Despite these lengthy risk factors regarding the Transaction, Forescout failed to disclose the truth – that the Company was experiencing a significant financial collapse, especially in the APJ region, and, as a result, Forescout knew there was a heightened material risk the Advent Transaction would not close.

44. Notably, the Transaction-related risk factors discussed above including the following language regarding the Ordinary Course Requirements, stating, in part:

> Pursuant to the terms of the Merger Agreement with Advent, we are subject to certain restrictions on the conduct of our business. ***These restrictions generally require us to conduct our businesses in the ordinary course, consistent with past practice, and subject us to a variety of specified limitations***, including the ability in certain cases to enter into material contracts, acquire or dispose of assets, incur indebtedness or incur capital expenditures, until the proposed Merger becomes effective or the Merger Agreement terminates. These restrictions, which are standard for a transaction of this type, may inhibit our ability to take actions outside of the ordinary course of our business that are inconsistent with our past practice but which we may consider advantageous and limit our ability to respond to future business opportunities and industry developments that may arise during such period. (emphasis added)

45. Forescout chose to warn investors about the Ordinary Course Requirements but failed to disclose that it was failing to meet certain of those obligation. As revealed in the Delaware Litigation, Forescout failed to meet its Ordinary Course Requirements in the following ways:

> i. The Company has abdicated its ordinary course business planning, budgeting, and financial forecasting responsibilities, has refused to produce updated financial forecasts for 2020 or beyond, and has otherwise failed to manage its business in the ordinary course since signing the Merger Agreement; indeed, despite repeated requests by Parent, the Company has declined to update its business plan or forecasts since January of 2020.

11

Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

ii. The Company's sales function has dramatically decreased meaningful interactions with customers. As just one example, the number of hardware and virtual software proof-of-value assessments performed by sales representatives has plummeted. This has resulted in substantial deterioration of the Company's customer pipeline. Unlike its competitors, the Company has not demonstrated an ability to effectively sell its product remotely or by any other means.

iii. The Company has provided and is continuing to provide non-standard discounts and payment terms on its products to a significant number of customers. These non-standard discount and payment terms are material and substantially adversely affect the near- and long-term business prospects of the Company.

iv. The Company's management has erroneously told certain employees that they will likely be terminated post-Closing and the Company has made adverse compensation decisions with certain employees, outside of the ordinary course and to the detriment of employee morale and retention.

Each of these are examples of violations the Ordinary Course Requirements in the Merger Agreement.

46. On March 3, 2020, Forescout filed with the SEC its Preliminary Proxy Statement relating to the Transaction (the "Preliminary Proxy"). In addition to incorporating by reference the 2019 Form 10-K, the Preliminary Proxy detailed that the Forescout Board unanimously: "(1) determined that the merger agreement, the merger and the other transactions contemplated by the merger agreement are fair to, advisable and in the best interests of Forescout and its stockholders; and (2) adopted and approved the merger agreement, the merger and the other transactions contemplated by the merger agreement." The Preliminary Proxy included the Alternate Plan projections prepared by Forescout's management in January 2020. These projections were not updated to take into account Forescout's ongoing disastrous first quarter. Indeed, the Preliminary Proxy did not discuss Forescout's financial decline, Forescout's failure to comply with the Ordinary Course Requirements, that Advent had raised concerns with Forescout regarding its recent financial performance, or that there was a material risk that Advent would withdraw from the Merger Agreement.

12                                                   Case No. 3:20-cv-03819

47.     On March 9, 2020, Forescout issued a press release announcing the expiration of the 30-day "go-shop" period pursuant to the terms of the Merger Agreement. Forescout did not receive any alternative acquisition proposals.

48.     Forescout filed its Definitive Proxy Statement ("Proxy") on March 24, 2020. The Proxy noticed a special shareholder meeting for April 23, 2020 for shareholders to vote on the Merger Agreement (the "Special Meeting"). Like the Preliminary Proxy, the Proxy incorporated by reference the 2019 Form 10-K and emphasized the Board's support for the Merger. The Proxy heavily relied upon the Alternate Plan projections developed in January but continued to omit the ongoing disastrous quarter and the risks COVID-19 posed to Forescout's business and the pending Transaction. Indeed, the 123-page Proxy's only mention of COVID-19 was several sentences stating "We elected to use a virtual meeting given the current public health implications of COVID-19 (novel coronavirus) and our desire to promote the health and welfare of our stockholders."

49.     By the time of the Proxy, Forescout and its senior officers knew that COVID-19 was severely and disproportionately impacting Forescout's business, that Forescout was not complying with the Ordinary Course Requirements, that Advent had expressed concerns about the Company's financial performance and that there was a significant risk the Transaction would not close. Indeed, in filings in the Delaware Litigation, Forescout has conceded COVID-19 began to impact its business prior to the execution of the Merger Agreement and that Advent expressed concerns regarding Forescout's financial performance at least since March 2020.

50.     During April 2020, Advent repeatedly requested updated financial information from Forescout and revised projections in light of COVID-19. For example, on April 14, 2020, Advent delivered to Forescout a "revised base case" analysis for fiscal year 2020 and 2021, which presented a more conservative outlook in light of the impacts of the virus. The next week, on April 19, 2020, Forescout received a request from Ferrari Group/Advent for sales information specific to Q1 2020. On April 20, 2020, Ferrari delivered a revised financial forecast to Forescout expressing concern about the impact of COVID-19 on the Company and requesting a variety of additional financial information. Forescout provided responses to those requests on April 23, 2020.

51. Overall, Forescout's financial performance suffered a dramatic decline during the first quarter of 2020, including its year-over-year first quarter earnings falling by 76% and year-over-year first quarter revenue falling by 24%. This decline is expected to continue over the second and third quarters of 2020. Notably, COVID-19 and related business factors have disproportionately impacted Forescout, as the financial performance of the Company's peers has actually improved in this economic environment, while Forescout' s financial performance as dramatically declined.

52. At no time did Forescout amend its Proxy to disclose to investors Advent's rapidly increasing concerns regarding the impact of COVID-19 or the known risk the Transaction was in jeopardy. The Transaction was approved by shareholder vote at the Special Meeting on April 23, 2020. Shareholders were deprived of a full and fair opportunity to vote but did so without the truth regarding Advent's concerns relating to COVID-19 and intent to not proceed with the Transaction.

53. On April 30, 2020, Spruce Point Capital Management ("Spruce Point") issued a public letter to the management Advent recommending that Advent "critically reexamine its agreement to purchase Forescout Technologies, Inc." Spruce Point attached a report to the letter supporting its view that the deal price could be revised lower by up to 35%-50%, if not called off entirely. Neither Forescout nor Advent publicly responded to the Spruce Point letter.

### B. Forescout Continues to Mislead Investors After Advent States It Is Considering Not Closing

54. On a May 8, 2020 phone call between Defendant DeCesare and Advent's Bryan Taylor, Mr. Taylor told DeCesare that Advent "was considering not closing the Merger," a position that he said was "100% COVID related."

55. Despite this knowledge, just three days later on May 11, 2020, Forescout issued a press release announcing its first quarter 2020 financial results. The press release quoted DeCesare stating "we look forward to completing our pending transaction with Advent." The press release gave reasonable investors the impression that DeCesare and Forescout were not aware of any heightened risk that the merger would not be consummated and was inconsistent with the present condition that Advent had stated that it was considering terminating the merger agreement.

56.     Forescout also filed its first quarter 2020 Form 10-Q on May 11, 2020.  The Form 10-Q contained an extensive discussion of risk factors relating to COVID-19:

> ***The recent global COVID-19 outbreak has adversely affected, and could continue to adversely affect, our business and results of operations. We are unable to predict the extent to which the pandemic and related impacts will continue to adversely affect our business operations, financial performance, results of operations, and financial position.***
>
> In March 2020 the World Health Organization declared COVID-19 to be a global pandemic.  This outbreak has continued to spread across the globe and is impacting worldwide economic activity and financial markets. As a result of COVID-19, we are experiencing negative impacts on our sales and marketing efforts, along with delays to, and lengthening of, our sales cycles. Any of these could harm our business and results of operations. In addition, COVID-19 may disrupt the operations of our customers and partners for an indefinite period of time, including as a result of travel restrictions and/or business shutdowns, all of which could negatively impact our business and results of operations.
>
> More generally, the outbreak of COVID-19 has adversely affected economies and financial markets globally, potentially leading to an economic downturn, which could decrease technology spending and adversely affect demand for our offerings and harm our business and results of operations. We expect that until the pandemic subsides, we will face longer sales cycles and challenges attracting new customers and closing sales. Further, if we need to raise capital, we may not be able to do so on terms that are favorable for us or our stockholders, or at all. It is not possible at this time to estimate the impact that COVID-19 could have on our business, as the impact will depend on future developments, which are highly uncertain and cannot be predicted.

57.     This risk factor failed to warn investors that COVID-19 was having a disproportionate impact on Forescout and that Advent was considering not closing the merger. Instead, the Form 10-Q merely stated, "The Merger is expected to close in the second fiscal quarter of 2020."

58.     Further corroborating their intent to renege on the deal, on May 13, 2020, Advent cancelled a previously-scheduled planning meeting of the Forescout and Advent communications teams to coordinate the public announcements of the closing of the Merger.

59.     On May 14, 2020, Mr. Taylor sent Forescout's CEO a presentation called "Project Ferrari Financial Analysis." The presentation contained a "revised base case" and a new "downside case" that Advent had prepared for Forescout. Advent explained that the scenarios had been created because the Company had declined to create new projections.

**C.      Advent Withdraws From The Deal and Details Forescout's Dramatic Financial Decline**

60.     On May 15, 2020, Ferrari Group, through Advent, sent a letter to Forescout stating that Defendants would "not be proceeding to consummate the transaction on May 18, 2020 as scheduled."

61.     Following the disclosure, Forescout's stock price plummeted 23.5% from $29.52 per share at close on May 15, 2020 to $22.57 per share at close on May 18, 2020. Forescout's stock price further fell to $20.93 per share at close on May 19, 2020 and $19.85 per share at on May 20, 2020 as the market continued to digest the news.

62.     Advent's letter to Forescout terminating the Transaction was later revealed as an exhibit to a motion in the Delaware Litigation. In the letter, Advent stated it "determined that (1) the Company is in material breach of various covenants set forth in the Merger Agreement; (2) a Company Material Adverse Effect has occurred and is continuing; and (3) the Company will be insolvent at the time of Closing after giving effect to the proposed transaction." According to Advent, "For these reasons, the proposed transaction cannot close and accordingly, we will not be proceeding to consummate the transaction on May 18, 2020 as scheduled."

63.     Advent's letter also revealed the extent of Forescout's undisclosed significant and disproportionate financial decline. In particular, Advent wrote that:

> Specifically, ***the Company has already suffered a dramatic decline in earnings potential and financial performance year-over-year from Q1 2019 to Q1 2020 and is on pace to suffer a dramatic decline in earnings potential and financial performance year-over-year from Q2 2019 to Q2 2020, and from Q3 2019 to Q3 2020***. In addition, based on the Company's actual recent financial performance, information received from the Company regarding the Company's expected future financial performance (including sales and customer pipeline data), and Parent's projections of future financial performance for the fiscal year 2020 and beyond, it is clear

16                                                          Case No. 3:20-cv-03819

that *the Company's decline in earnings potential and financial performance will last for a durationally significant period of time*. To the extent that the Company has attributed its downturn in financial prospects to the COVID-19 outbreak or any other general economic condition, there has been a materially disproportionate effect on the Company's business relative to other companies of similar size operating in the industries in which the Company and its subsidiaries conduct business. *See* Merger Agreement, Section 1.1(t)(i), (vi). In fact, the financial performance and earnings of the Company's peers have actually improved in this economic environment, while the Company's financial performance and earnings have dramatically declined. (emphasis added).

64.     According to the answer and verified counterclaim in the Delaware litigation, the transaction involved $400 million in term loan financing and a $40 million revolver commitment. The term loan financing and $40 million revolver commitment were subject to the terms of a debt commitment letter.  Based on Advent's consideration and evaluation of Forescout's business and financial circumstances, it concluded that the assumption of the $400 million in new debt, which was a key aspect of the merger financing, would leave Forescout unable to meet its operational costs and unable to satisfy its growing liabilities.

65.     The Merger Agreement specified that "In no event will [Forescout] be entitled to enforce or seek to enforce specifically Parent's obligation to cause the Equity Financing to be funded or to complete the Merger if the Debt Financing has not been funded in full (or is not reasonable expected to be funded in full at the Closing)."

66.     In its May 15 letter, Advent also referenced its conclusion that because of Forescout's financial condition, certain conditions to the debt commitment letter, which governed the availability of debt financing at the time of closing, could not be satisfied.

67.     Other filings in the Delaware Litigation indicate Forescout's Q1 2020 earnings were down 76% compared to Q1 2019 and its revenue was down 24% compared to Q1 2019.  During the same period, most of Forescout's peers experienced revenue growth in excess of 20%.  The defendants in the Delaware litigation included the following chart in their Verified Counterclaim to demonstrate this:



68.     On May 19, 2020, Forescout sued Advent in the Delaware Court of Chancery to enforce the Merger Agreement, seeking an order of specific performance requiring Advent to comply with the obligation to close.  Forescout alleges that it has not suffered a Material Adverse Event under the terms of the Merger Agreement because "the Merger Agreement expressly excludes any effects on the Company resulting from 'epidemics' and 'pandemics,' barring a materially disproportionate impact on the Company, and—even then—only to the extent the Company experiences an incremental disproportionate impact."  Significantly, Forescout argues in its Verified Complaint that "The Merger Agreement only permits Defendants to claim a Company Material Adverse Effect if it occurs *after* the date of signing of the Merger Agreement, but COVID-19 clearly existed prior to signing."  A July 2020 trial is currently scheduled in the Delaware Litigation.

69.     A subpoena served on Merlin International Inc. in the Delaware Litigation indicates that on May 5, 2020, Advent received a whistleblower letter alleging Forescout engaged in an

18                              Case No. 3:20-cv-03819
CLASS ACTION COMPLAINT

undisclosed channel stuffing scheme in the fourth quarter of 2019. Merlin is one of Forescout's "Gold Resellers" (Forescout sells its software "predominantly through a network of value added resellers and systems integrators that provide a broad reach into various segments of the market across geographies") and offers its customers a "portfolio" of compatible security technologies, including Forescout's software. In August 2018, Merlin licensed Forescout's software to the U.S. Social Security Administration for a twelve-month base period with up to five one-year extensions. The total value of the contract is up to approximately $8.1 million dollars.

70. Following the public issuance of the subpoena, Forescout issued a statement denying the allegations, stating "that allegations made against the company were related to an ordinary course transaction with one of the company's largest customers and the company has been paid in full, as confirmed by the company's auditor."

71. However, whether Forescout has been paid in full is not indicative of whether the Company engaged in wrongdoing with respect to the large transaction. Forescout's customers typically buy a software subscription, and Forescout's SEC filings explain "While we typically bill for term contracts upfront, we recognize revenue from term contracts ratably over the contractual service period, which is typically either one or three years, but can be up to five years." Accordingly, even if Forescout has in fact been paid in full in connection with the suspect large transaction, Forescout may have improperly recognized the revenue from the sale in order to inflate its financials during the merger sales process.

## DEFENDANTS' MATERIALLY FALSE STATEMENTS

## AND OMMISSIONS OF MATERIAL FACT

72. During the Class Period, Defendants made a host of materially false and misleading statements and omissions of material facts.

73. First, on February 6, 2020, Forescout announced that it had entered into the Merger Agreement. The announcement stated that "The transaction is expected to close in the second calendar quarter of 2020, subject to customary closing conditions, including approval by Forescout shareholders and receipt of regulatory approvals."

19

Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

74. Forescout's February 6, 2020 statement was false and misleading when made. Indeed, Forescout's financial performance had started to significantly and disproportionately decline in the first quarter of 2020, putting the Transaction as significant risk. In addition, COVID-19 started to have a significant impact on Forescout prior to the execution of the Merger Agreement.

75. On February 6, 2020, Forescout also announced its fourth quarter 2019 financial results. Forescout disclosed results, including $91.3 million in fourth quarter revenue compared to $84.7 million of revenue in the fourth quarter of 2018 (an 8% YoY increase). In connection with the earnings announcement, CEO DeCesare was quoted stating "Our results for the fourth quarter reflect strength across many parts of the business as we continue to see strong demand for device control and visibility across all segments of the market."

76. Forescout's February 6th earnings announcement was materially false and misleading when made. Forescout appears to have recognized revenue early in the fourth quarter 2019 to inflate its earnings during the sales process and as a result the earnings it disclosed were false and misleading. Forescout's February 6th announcement also failed to disclose that its first quarter 2020 was off to a disastrous start and rapidly declining sales.

77. Second, on February 28, 2020, Forescout filed its 2019 Form 10-K. The 2019 Form 10-K contained the following Risk Factors regarding the Transaction:

> (i) The announcement and pendency of our agreement to be acquired by Advent could adversely affect our business;
> (ii) The failure to complete the Merger could adversely affect our business;
> (iii) While the Merger is pending, we are subject to business uncertainties and contractual restrictions that could harm our operations and the future of our business or result in a loss of employees;
> (iv) The Merger Agreement limits our ability to pursue alternatives to the Merger, and
> (v) Litigation may arise in connection with the Merger, which could be costly, prevent consummation of the Merger, divert management's attention and otherwise materially harm our business.

78. The risk factors included the following language regarding the Ordinary Course Requirements: "we are subject to certain restrictions on the conduct of our business. These

20                                          Case No. 3:20-cv-03819
CLASS ACTION COMPLAINT

restrictions generally require us to conduct our businesses in the ordinary course, consistent with past practice, and subject us to a variety of specified limitations."

79. The above statements in Forescout's 2019 Form 10-K were materially false and misleading when made. Indeed, at the time of the filing the Form 10-K, Forescout knew that its business was significantly and disproportionately declining, it was failing to comply with the Ordinary Course Requirements, Advent expressed concerns about Forescout's financial performance and, as a result, there was a material risk that the Transaction would not close.

80. Third, Forescout filed the Preliminary Proxy with the SEC on March 3, 2020. The Preliminary Proxy incorporated by reference Forescout's 2019 Form 10-K. The Preliminary Proxy also detailed that the Forescout Board unanimously:

> "(1) determined that the merger agreement, the merger and the other transactions contemplated by the merger agreement are fair to, advisable and in the best interests of Forescout and its stockholders; and (2) adopted and approved the merger agreement, the merger and the other transactions contemplated by the merger agreement."

81. The Preliminary Proxy was materially false and misleading when issued. Nowhere did the Preliminary Proxy discuss that serious risks have developed which put the closing of the Transaction in serious jeopardy, including Forescout's significant and disproportionate financial decline, its failure to comply with the Ordinary Course Requirements, and that Advent had expressed concerns about its financial performance.

82. Fourth, Forescout filed its Proxy on March 24, 2020. The Proxy noticed a special virtual shareholder meeting for April 23, 2020 for shareholders to vote on the Merger Agreement. The Proxy stated, "We elected to use a virtual meeting given the current public health implications of COVID-19 (novel coronavirus) and our desire to promote the health and welfare of our stockholders."

83. The Proxy was materially false and misleading when issued. Like the Preliminary Proxy, the Proxy incorporated by reference the 2019 Form 10-K and emphasized the Board's support for the Merger, but continued to omit that Forescout's business was significantly and

disproportionately impacted, Advent expressed concerns with the Company's financial performance and, as a result, there was a material risk the Transaction would not close.

84. Fifth, on May 11, 2020, Forescout filed with the SEC its first quarter 2020 Form 10-Q, which generally disclosed risks relating to COVID-19 and the impact on Forescout's business:

> ***The recent global COVID-19 outbreak has adversely affected, and could continue to adversely affect, our business and results of operations. We are unable to predict the extent to which the pandemic and related impacts will continue to adversely affect our business operations, financial performance, results of operations, and financial position.***
>
> In March 2020 the World Health Organization declared COVID-19 to be a pandemic. This outbreak has continued to spread across the globe and is impacting worldwide economic activity and financial markets. As a result of COVID-19, we are experiencing negative impacts on our sales and marketing efforts, along with delays to, and lengthening of, our sales cycles. Any of these could harm our business and results of operations. In addition, COVID-19 may disrupt the operations of our customers and partners for an indefinite period of time, including as a result of travel restrictions and/or business shutdowns, all of which could negatively impact our business and results of operations.
>
> More generally, the outbreak of COVID-19 has adversely affected economies and financial markets globally, potentially leading to an economic downturn, which could decrease technology spending and adversely affect demand for our offerings and harm our business and results of operations. We expect that until the pandemic subsides, we will face longer sales cycles and challenges attracting new customers and closing sales. Further, if we need to raise capital, we may not be able to do so on terms that are favorable for us or our stockholders, or at all. It is not possible at this time to estimate the impact that COVID-19 could have on our business, as the impact will depend on future developments, which are highly uncertain and cannot be predicted.

The Form 10-Q further stated: "The Merger is expected to close in the second fiscal quarter of 2020." The Form 10-Q omitted that Advent was considering withdrawing from the merger agreement.

85. The statements in Forescout's May 11, 2020 Form 10-Q were materially false and misleading when made. Indeed, at the time of filing the Form 10-Q, Advent had already informed Forescout that it was considering withdrawing from the Merger Agreement because of COVID-19.

86.     Finally, also on May 11, 2020, Forescout issued a press release announcing its first quarter financial results which stated that "we look forward to completing our pending transaction with Advent."

87.     The statement in Forescout's May 11, 2020 press release was materially false and misleading when made.  Indeed, at the time, Advent had informed Forescout that it was considering withdrawing from the Merger Agreement because of COVID-19.

**ADDITIONAL ALLEGATIONS OF DEFENDANTS' SCIENTER**

88.     All Defendants acted with scienter in that they knew, or recklessly disregarded, that their statements were false and misleading when made.  While the facts set forth above sufficiently demonstrate these Defendants' scienter, additional facts further demonstrating Defendants' scienter are set forth below.

89.     Defendants DeCesare and Harms were incentivized to hide from Advent negative facts, including Forescout's rapidly detreating financial performance, as the two executives stood to receive over $42 million from the Transaction.

90.     Moreover, as demonstrated herein and as stated by Forescout itself in its Verified Complaint, "From signing until Advent said they were unwilling to close, Advent International personnel were in multiple meetings with Forescout to discuss Forescout's business and guidance." Accordingly, Forescout's senior executives were well aware of Advent's concerns regarding COVID-19's significant and disproportionate impact on Forescout and the related risk the Transaction would not close.

91.     Other filings in the Delaware Litigation reveal that since March Advent expressed concerns regarding Forescout's financial performance.  In April 2020, Advent repeatedly requested from Forescout updated information regarding the Company's financial condition.  Forescout and its executives – knowing that its business was in significant decline and that the transaction may be in jeopardy – refused to provide satisfactory responses, and Advent chose to perform its own analysis.

92.     Forescout's failure to abide by the Ordinary Course Requirements also demonstrates scienter.   Many of Forescout's noncompliant acts – such as producing financial forecasts,

overseeing its sales representatives, providing customer discounts and retaining employees – are at the core of Forescout's operations and would be supervised by the Company's most senior executives.

93. Significantly, on May 8, 2020, Advent explicitly told Defendant DeCesare that Advent was considering not closing the Transaction. As a result, DeCesare was unquestionably aware of truth when he misled investors through Forescout's press release issued on May 11, 2020.

## LOSS CAUSATION

94. Defendants' misrepresentations and omissions of material fact alleged above artificially inflated the price of Forescout securities during the Class Period.

95. The artificial inflation created by Defendants' alleged misrepresentations and omissions was removed from the prices of Forescout common stock in direct response to information revealed in the disclosures alleged in this Section, through which facts that partially corrected Defendants' prior misrepresentations and omissions of material fact were revealed and/or the risks concealed by such misrepresented and omitted material facts partially materialized.

96. Specifically, on Monday, May 18, 2020, when Forescout announced that it received notice on Friday May 15, 2020 that Advent "would not be proceeding to consummate the acquisition of Forescout on May 18, 2020, as schedule," Forescout's stock price plummeted 23.5% from $29.52 per share at close on May 15, 2020 to $22.57 per share at close on May 18, 2020. Forescout's stock price further fell to $20.93 per share at close on May 19, 2020 and at $19.85 per share at on May 20, 2020 as the market digested the news.

## PRESUMPTION OF RELIANCE

97. At all relevant times, the market for Forescout's common stock was efficient for the following reasons, among others:

(a) Forescout's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Forescout filed periodic reports with the SEC and the NASDAQ;

(c)     Forescout regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Forescout was followed by numerous securities analysts employed by major brokerage firms who wrote reports which were distributed to those brokerage firms' sales force and certain customers.  Each of these reports was publicly available and entered the public marketplace.

98.     As a result of the foregoing, the market for Forescout's common stock reasonably promptly digested current information regarding Forescout from all publicly available sources and reflected such information in the price of Forescout's common stock.  All purchasers of Forescout common stock during the Class Period suffered similar injury through their purchase of Forescout common stock at artificially inflated prices, and a presumption of reliance applies.

99.     A Class-wide presumption of reliance is also appropriate in this action under the United States Supreme Court holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact for which there is a duty to disclose.

## INAPPLICABILITY OF THE STATUTORY SAFE HARBOR
## AND BESPEAKS CAUTION DOCTRINE

100.     The statutory safe harbor or bespeaks caution doctrine applicable to forward-looking statements under certain circumstances does not apply to any of the false and misleading statements pleaded in this Complaint.  None of the statements complained of herein was a forward-looking statement.  Rather, they were historical statements or statements of purportedly current facts and conditions at the time the statements were made.

101.     To the extent that any of the false and misleading statements alleged herein can be construed as forward-looking, those statements were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those

25                                    Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

in the statements. As set forth above in detail, then-existing facts contradicted Defendants' statements regarding Forescout's business and the risks relating to the Advent Transaction. Given the then-existing facts contradicting Defendants' statements, any generalized risk disclosures made by Forescout were not sufficient to insulate Defendants from liability for their materially false and misleading statements.

102. To the extent that any of the misstatements pleaded herein might be considered forward-looking statements within the meaning of the PSLRA or the bespeaks caution doctrine, Defendants are liable for those false forward-looking statements because at the time each of those statements was made, the particular speaker knew that the particular forward-looking statement was false, and the false forward-looking statement was authorized and approved by an executive officer of Forescout who knew that the statement was false when made, and the statements were not accompanied by meaningful cautionary language.

103. Additionally, the claims asserted herein are predicated in part on Defendants' failure to disclose information for which there was a duty to disclose, which are not protected by the statutory safe harbor.

## CLASS ACTION ALLEGATIONS

104. This securities class action is brought on behalf of persons and entities that purchased Forescout common stock between February 6, 2020 and May 15, 2020, inclusive and were damaged thereby. Excluded from the Class are Defendants and other directors and officers of Forescout, their families and affiliates, and any investment funds, companies or trusts controlled by or benefitting these individuals.

105. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Forescout has more than 41 million shares of common stock outstanding, owned by hundreds or thousands of investors.

106. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a) Whether Defendants violated the Exchange Act;

b) Whether Defendants misrepresented material facts;

c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d) Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

e) Whether the prices of Forescout's securities were artificially inflated;

f) Whether Defendants' conduct caused the members of the Class to sustain damages;

g) The extent of damage sustained by Class members and the appropriate measure of damages.

107. Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

108. Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation. Plaintiffs have no interests which conflict with those of the Class.

109. A class action is superior to other available methods for the fair and efficient adjudication of this controversy

**FIRST CAUSE OF ACTION**

**FOR VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND**

**RULE 10B-5 AGAINST DEFENDANTS FORESCOUT, DECESARE AND FARMS**

110. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

111. During the Class Period, Defendants Forescout, DeCesare and Harms carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein;

Case 3:20-cv-03819-SI Document 42 Filed 06/09/20 Page 36 of 48

and (ii) cause Plaintiffs and other members of the Class to purchase Forescout securities at artificially inflated prices.

112. Defendants Forescout, DeCesare and Harms: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Forescout's securities in violation of Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

113. Defendants Forescout, DeCesare and Harms, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operation and prospects.

114. During the Class Period, Defendants Forescout, DeCesare and Harms made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

115. Defendants Forescout, DeCesare and Harms had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants Forescout, DeCesare and Harms engaged in this misconduct to conceal Forescout's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

116. Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Forescout's securities. Plaintiffs and the other members of the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices for Forescout's securities had been artificially inflated by the fraudulent course of conduct by Defendants Forescout, DeCesare and Harms.

28
Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

117. As a direct and proximate result of wrongful conduct by Defendants Forescout, DeCesare and Harms, Plaintiffs and the other members of the Class suffered economic loss and damages in connection with their respective purchases of the Company's securities during the Class Period as the prior artificial inflation in the price of Forescout's securities was removed over time.

118. By virtue of the foregoing, Defendants Forescout, DeCesare and Harms violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

### SECOND CAUSE OF ACTION

### FOR VIOLATIONS OF SECTION 20(A) OF THE

### EXCHANGE ACT AGAINST DEFENDANTS DECESARE AND HARMS

119. Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

120. As alleged above, Forescout and Defendants DeCesare and Harms each violated Section 10(b) and Rule 10b-5 thereunder by their acts and omissions as alleged in this Complaint.

121. Defendants DeCesare and Harms acted as controlling persons of Forescout within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control the materially false and misleading public statements about Forescout during the Class Period, the Defendants DeCesare and Harms had the power and ability to control the actions of Forescout and its employees. By reason of such conduct, the Defendants DeCesare and Harms are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiffs and other Class members against all Defendants, jointly and severally, for all damages sustained as a result

29                                                           Case No. 3:20-cv-03819

CLASS ACTION COMPLAINT

of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief (including, but not limited to, rescission) as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Dated: June 10, 2020       Respectfully submitted,

MARC M. SELTZER
KRYSTA KAUBLE PACHMAN
SUSMAN GODFREY L.L.P.

ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
BRENDAN J. BRODEUR
ANDREW M. SHER
ENTWISTLE & CAPPUCCI LLP

By: */s/ Marc M. Seltzer*
    Marc M. Seltzer
*Attorneys for Plaintiffs The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP and AltShares Merger Arbitrage ETF*

## CERTIFICATION

I, Jonathon Hickey, on behalf of The Arbitrage Fund ("ARB" in Schedule A), Water Island LevArb Fund, LP ("LEV" in Schedule A), Water Island Diversified Event-Driven Fund ("AED" in Schedule A), Water Island Merger Arbitrage Institutional Comingled Master Fund, LP ("MACO" in Schedule A) and AltShares Merger Arbitrage ETF ("ARBETF" in Schedule A) (collectively, the "Water Island Funds"), hereby certify, as to the claims asserted under the federal securities laws in the Class Action Complaint (the "Complaint"), that:

1.      I am the Chief Operating Officer of Water Island Capital, LLC, the investment manager for each of the Water Island Funds, and have authority to execute this certification on behalf of the Water Island Funds.  I have reviewed the Complaint to be filed in this action and have authorized its filing by counsel.

2.      The Water Island Funds did not acquire any of the securities that are the subject of this action at the direction of their counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      The Water Island Funds are willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      The Water Island Funds have made no transactions during the class period in the debt or equity securities that are the subject of the action except those set forth in Schedule A.

5.      The Water Island Funds have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except:  (i) *In re Pattern Energy Group Inc. Securities Litigation*, No. 20-cv-275-MN (D. Del) (The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger and Arbitrage Institutional Comingled Master Fund, LP); (ii) *The Arbitrage Event-Driven Fund, et al., v. Tribune Media Company, et al.*, No. 18-cv-06175 (CPK) (N.D. Ill.) (The Arbitrage Fund and Water Island Merger Arbitrage Institutional Commingled Fund, LP); (iii) *In re Columbia Pipeline Group, Inc. Securities Litigation*, No 18-cv-03670-GBD (S.D.N.Y) (The Arbitrage Fund); and (iv) *San Antonio Fire and Pension Fund et al. v. Dole Food Company, Inc.*, No. 1:15-cv-01140 (D. Del.) (The Arbitrage Fund).

6.      The Water Island Funds will not accept any payment for serving as a representative party on behalf of the class beyond their *pro rata* share of any recovery, except reasonable costs and expenses directly related to the class representation, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of June 2020

By:  Jonathon Hickey
Chief Operating Officer, Water Island
Capital, LLC, investment manager to the
Water Island Funds

**Schedule A to Certification**

**Water Island Funds**
**Relevant Period: February 6, 2020 - May 15, 2020**
**ForeScout Technologies Inc. Common Stock (CUSIP: 34553D101)**

| Fund | Transaction | Date | Price | Shares | Total |
|------|-------------|------|-------|--------|-------|
| AED | Purchase | 2/6/2020 | $ 33.39 | 19,596 | $ 654,318.28 |
| AED | Purchase | 2/6/2020 | $ 33.44 | 19,597 | $ 655,313.88 |
| AED | Purchase | 2/7/2020 | $ 33.23 | 14,437 | $ 479,735.73 |
| AED | Purchase | 2/10/2020 | $ 33.13 | 4,673 | $ 154,825.83 |
| AED | Purchase | 2/11/2020 | $ 33.07 | 7,007 | $ 231,731.30 |
| AED | Purchase | 2/18/2020 | $ 32.97 | 1,084 | $ 35,742.19 |
| AED | Purchase | 2/24/2020 | $ 32.92 | 3,916 | $ 128,924.51 |
| AED | Purchase | 2/25/2020 | $ 32.88 | 3,327 | $ 109,406.07 |
| AED | Purchase | 3/5/2020 | $ 32.57 | 10,625 | $ 346,010.56 |
| AED | Purchase | 3/6/2020 | $ 32.11 | 7,780 | $ 249,813.47 |
| AED | Sale | 3/6/2020 | $ 32.00 | 84,262 | $ 2,696,384.00 |
| AED | Purchase | 3/12/2020 | $ 30.05 | 2,727 | $ 81,933.80 |
| AED | Purchase | 3/13/2020 | $ 30.53 | 268 | $ 8,181.69 |
| AED | Purchase | 3/17/2020 | $ 24.50 | 2,170 | $ 53,160.88 |
| AED | Purchase | 3/23/2020 | $ 28.55 | 3,764 | $ 107,472.74 |
| AED | Purchase | 3/24/2020 | $ 29.91 | 4,376 | $ 130,902.79 |
| AED | Purchase | 3/25/2020 | $ 30.64 | 32,397 | $ 992,708.87 |
| AED | Purchase | 3/26/2020 | $ 31.02 | 1,200 | $ 37,227.00 |
| AED | Purchase | 3/30/2020 | $ 31.15 | 5,350 | $ 166,677.12 |
| AED | Purchase | 3/31/2020 | $ 31.15 | 108 | $ 3,364.63 |
| AED | Purchase | 4/1/2020 | $ 30.45 | 1,231 | $ 37,484.31 |
| AED | Purchase | 4/9/2020 | $ 32.02 | 84,262 | $ 2,698,170.36 |
| AED | Purchase | 4/23/2020 | $ 32.54 | 90 | $ 2,928.29 |
| AED | Purchase | 4/23/2020 | $ 32.11 | 12,583 | $ 404,051.46 |
| AED | Sale | 4/23/2020 | $ 32.25 | 28,887 | $ 931,657.37 |
| AED | Purchase | 4/24/2020 | $ 31.83 | 1,042 | $ 33,166.55 |
| AED | Sale | 4/28/2020 | $ 32.01 | 13,383 | $ 428,425.86 |
| AED | Purchase | 4/30/2020 | $ 31.52 | 521 | $ 16,420.51 |
| AED | Sale | 5/6/2020 | $ 32.15 | 14,638 | $ 470,582.28 |
| AED | Sale | 5/7/2020 | $ 32.20 | 3,625 | $ 116,731.11 |
| AED | Sale | 5/8/2020 | $ 32.19 | 6,116 | $ 196,900.27 |
| AED | Sale | 5/8/2020 | $ 32.18 | 3,058 | $ 98,407.93 |
| AED | Sale | 5/8/2020 | $ 32.20 | 9,183 | $ 295,708.09 |
| AED | Sale | 5/8/2020 | $ 32.20 | 14,176 | $ 456,440.09 |
| AED | Sale | 5/8/2020 | $ 32.19 | 1,835 | $ 59,067.34 |
| AED | Sale | 5/11/2020 | $ 32.19 | 3,160 | $ 101,714.04 |
| AED | Sale | 5/11/2020 | $ 32.17 | 5,838 | $ 187,783.89 |
| AED | Sale | 5/11/2020 | $ 32.12 | 8,719 | $ 280,066.40 |
| AED | Sale | 5/11/2020 | $ 32.13 | 3,115 | $ 100,082.74 |
| AED | Sale | 5/11/2020 | $ 31.44 | 3,200 | $ 100,608.02 |
| AED | Sale | 5/12/2020 | $ 30.65 | 29,416 | $ 901,709.89 |
| AED | Sale | 5/13/2020 | $ 30.61 | 11,520 | $ 352,618.25 |
| ARB | Purchase | 2/6/2020 | $ 33.39 | 121,709 | $ 4,063,912.19 |
| ARB | Purchase | 2/6/2020 | $ 33.44 | 121,709 | $ 4,069,888.11 |
| ARB | Purchase | 2/7/2020 | $ 33.23 | 89,759 | $ 2,982,655.67 |

**Schedule A to Certification**

**Water Island Funds**
**Relevant Period: February 6, 2020 - May 15, 2020**
**ForeScout Technologies Inc. Common Stock (CUSIP: 34553D101)**

| Fund | Transaction | Date | Price | Shares | Total |
|------|------------|------|-------|--------|-------|
| ARB | Purchase | 2/10/2020 | $ 33.13 | 28,855 | $ 956,023.86 |
| ARB | Purchase | 2/11/2020 | $ 33.07 | 43,059 | $ 1,424,021.42 |
| ARB | Purchase | 2/18/2020 | $ 32.97 | 4,515 | $ 148,870.84 |
| ARB | Purchase | 2/24/2020 | $ 32.92 | 26,091 | $ 858,980.94 |
| ARB | Purchase | 2/25/2020 | $ 32.88 | 21,589 | $ 709,939.16 |
| ARB | Purchase | 2/27/2020 | $ 32.68 | 319,228 | $ 10,432,817.96 |
| ARB | Purchase | 2/28/2020 | $ 32.38 | 71,943 | $ 2,329,564.70 |
| ARB | Purchase | 2/28/2020 | $ 32.17 | 2,584 | $ 83,135.29 |
| ARB | Purchase | 2/28/2020 | $ 32.31 | 444 | $ 14,344.75 |
| ARB | Purchase | 3/4/2020 | $ 32.61 | 61,977 | $ 2,020,871.64 |
| ARB | Purchase | 3/5/2020 | $ 32.57 | 135,136 | $ 4,400,798.44 |
| ARB | Purchase | 3/6/2020 | $ 32.11 | 101,805 | $ 3,268,928.01 |
| ARB | Purchase | 3/12/2020 | $ 30.05 | 12,998 | $ 390,530.11 |
| ARB | Purchase | 3/13/2020 | $ 30.53 | 1,963 | $ 59,927.84 |
| ARB | Purchase | 3/16/2020 | $ 27.25 | 30,635 | $ 834,681.20 |
| ARB | Purchase | 3/17/2020 | $ 24.50 | 9,655 | $ 236,529.16 |
| ARB | Purchase | 3/18/2020 | $ 23.11 | 47,656 | $ 1,101,387.35 |
| ARB | Purchase | 3/19/2020 | $ 22.71 | 10,431 | $ 236,854.63 |
| ARB | Purchase | 3/20/2020 | $ 27.26 | 19,305 | $ 526,184.80 |
| ARB | Purchase | 3/24/2020 | $ 29.91 | 15,753 | $ 471,232.09 |
| ARB | Purchase | 3/25/2020 | $ 29.96 | 14,456 | $ 433,036.71 |
| ARB | Purchase | 3/30/2020 | $ 31.15 | 11,652 | $ 363,013.40 |
| ARB | Purchase | 3/31/2020 | $ 31.15 | 9,917 | $ 308,954.22 |
| ARB | Purchase | 4/1/2020 | $ 30.45 | 10,373 | $ 315,860.96 |
| ARB | Purchase | 4/2/2020 | $ 30.86 | 10,255 | $ 316,419.05 |
| ARB | Purchase | 4/3/2020 | $ 31.31 | 15,162 | $ 474,646.41 |
| ARB | Purchase | 4/6/2020 | $ 31.91 | 10,404 | $ 331,980.20 |
| ARB | Purchase | 4/7/2020 | $ 32.01 | 9,602 | $ 307,365.79 |
| ARB | Purchase | 4/8/2020 | $ 32.03 | 9,588 | $ 307,056.66 |
| ARB | Purchase | 4/9/2020 | $ 31.98 | 10,455 | $ 334,369.72 |
| ARB | Purchase | 4/13/2020 | $ 31.93 | 10,474 | $ 334,393.98 |
| ARB | Purchase | 4/14/2020 | $ 31.96 | 10,508 | $ 335,887.17 |
| ARB | Purchase | 4/15/2020 | $ 32.06 | 9,687 | $ 310,584.60 |
| ARB | Purchase | 4/16/2020 | $ 32.22 | 9,665 | $ 311,366.68 |
| ARB | Purchase | 4/17/2020 | $ 32.41 | 10,607 | $ 343,797.27 |
| ARB | Purchase | 4/20/2020 | $ 32.53 | 9,702 | $ 315,591.51 |
| ARB | Purchase | 4/21/2020 | $ 32.38 | 9,813 | $ 317,791.06 |
| ARB | Purchase | 4/22/2020 | $ 32.55 | 10,756 | $ 350,121.78 |
| ARB | Purchase | 4/23/2020 | $ 32.54 | 2,019 | $ 65,691.19 |
| ARB | Purchase | 4/23/2020 | $ 32.11 | 159,612 | $ 5,125,284.98 |
| ARB | Sale | 4/23/2020 | $ 32.25 | 301,550 | $ 9,725,526.30 |
| ARB | Purchase | 4/24/2020 | $ 31.83 | 13,218 | $ 420,724.98 |
| ARB | Sale | 4/28/2020 | $ 32.01 | 150,562 | $ 4,819,894.96 |
| ARB | Purchase | 4/30/2020 | $ 31.52 | 6,609 | $ 208,297.83 |
| ARB | Sale | 5/6/2020 | $ 32.15 | 149,787 | $ 4,815,350.86 |
| ARB | Sale | 5/7/2020 | $ 32.20 | 38,323 | $ 1,234,065.29 |
| ARB | Sale | 5/8/2020 | $ 32.19 | 63,072 | $ 2,030,558.14 |
| ARB | Sale | 5/8/2020 | $ 32.18 | 31,536 | $ 1,014,843.88 |

**Schedule A to Certification**

**Water Island Funds**
**Relevant Period: February 6, 2020 - May 15, 2020**
**ForeScout Technologies Inc. Common Stock (CUSIP: 34553D101)**

| Fund | Transaction | Date | Price | Shares | Total |
|------|-------------|------|-------|--------|-------|
| ARB | Sale | 5/8/2020 | $ 32.20 | 94,692 | $ 3,049,242.25 |
| ARB | Sale | 5/8/2020 | $ 32.20 | 144,421 | $ 4,650,080.10 |
| ARB | Sale | 5/8/2020 | $ 32.19 | 20,686 | $ 665,867.61 |
| ARB | Sale | 5/11/2020 | $ 32.19 | 32,353 | $ 1,041,377.99 |
| ARB | Sale | 5/11/2020 | $ 32.17 | 59,763 | $ 1,922,324.04 |
| ARB | Sale | 5/11/2020 | $ 32.12 | 89,253 | $ 2,866,930.41 |
| ARB | Sale | 5/11/2020 | $ 32.13 | 35,396 | $ 1,137,248.33 |
| ARB | Sale | 5/11/2020 | $ 31.44 | 33,489 | $ 1,052,894.32 |
| ARB | Sale | 5/12/2020 | $ 30.65 | 307,792 | $ 9,434,970.50 |
| ARB | Sale | 5/13/2020 | $ 30.61 | 120,658 | $ 3,693,247.66 |
| ARBETF | Purchase | 5/6/2020 | $ 32.10 | 4,082 | $ 131,032.20 |
| ARBETF | Purchase | 5/11/2020 | $ 32.10 | 624 | $ 20,031.02 |
| ARBETF | Purchase | 5/14/2020 | $ 29.89 | 2,355 | $ 70,390.95 |
| LEV | Purchase | 3/4/2020 | $ 32.56 | 2,885 | $ 93,922.04 |
| LEV | Purchase | 3/5/2020 | $ 32.51 | 7,220 | $ 234,747.47 |
| LEV | Purchase | 3/26/2020 | $ 31.50 | 2,000 | $ 63,009.00 |
| LEV | Purchase | 3/27/2020 | $ 31.13 | 1,000 | $ 31,128.00 |
| LEV | Purchase | 4/23/2020 | $ 32.18 | 2,000 | $ 64,350.00 |
| LEV | Purchase | 4/24/2020 | $ 31.97 | 1,000 | $ 31,968.00 |
| LEV | Purchase | 4/27/2020 | $ 31.98 | 1,000 | $ 31,981.00 |
| LEV | Purchase | 4/28/2020 | $ 32.06 | 1,000 | $ 32,060.00 |
| LEV | Purchase | 4/29/2020 | $ 32.08 | 1,000 | $ 32,076.00 |
| LEV | Sale | 5/6/2020 | $ 32.10 | 3,105 | $ 99,663.64 |
| LEV | Sale | 5/13/2020 | $ 30.90 | 2,100 | $ 64,893.40 |
| LEV | Sale | 5/14/2020 | $ 30.84 | 100 | $ 3,083.83 |
| MACO | Purchase | 2/6/2020 | $ 33.39 | 9,002 | $ 300,580.38 |
| MACO | Purchase | 2/6/2020 | $ 33.44 | 9,001 | $ 300,988.94 |
| MACO | Purchase | 2/7/2020 | $ 33.23 | 6,815 | $ 226,459.73 |
| MACO | Purchase | 2/10/2020 | $ 33.13 | 2,161 | $ 71,598.25 |
| MACO | Purchase | 2/11/2020 | $ 33.07 | 3,210 | $ 106,159.20 |
| MACO | Purchase | 2/18/2020 | $ 32.97 | 432 | $ 14,244.12 |
| MACO | Purchase | 2/24/2020 | $ 32.92 | 1,906 | $ 62,750.28 |
| MACO | Purchase | 2/25/2020 | $ 32.88 | 1,618 | $ 53,206.79 |
| MACO | Purchase | 2/27/2020 | $ 32.68 | 23,900 | $ 781,085.46 |
| MACO | Purchase | 2/28/2020 | $ 32.38 | 5,385 | $ 174,370.07 |
| MACO | Purchase | 2/28/2020 | $ 32.17 | 193 | $ 6,209.41 |
| MACO | Purchase | 2/28/2020 | $ 32.31 | 38 | $ 1,227.70 |
| MACO | Purchase | 3/4/2020 | $ 32.61 | 4,872 | $ 158,860.33 |
| MACO | Purchase | 3/5/2020 | $ 32.57 | 10,168 | $ 331,128.04 |

**Schedule A to Certification**

**Water Island Funds**
**Relevant Period: February 6, 2020 - May 15, 2020**
**ForeScout Technologies Inc. Common Stock (CUSIP: 34553D101)**

| Fund | Transaction | Date | Price | Shares | Total |
|------|-------------|------|-------|--------|-------|
| MACO | Purchase | 3/6/2020 | $ 32.11 | 7,546 | $ 242,299.79 |
| MACO | Purchase | 3/12/2020 | $ 30.05 | 2,917 | $ 87,642.42 |
| MACO | Purchase | 3/13/2020 | $ 30.53 | 359 | $ 10,959.79 |
| MACO | Purchase | 3/16/2020 | $ 27.25 | 2,520 | $ 68,659.92 |
| MACO | Purchase | 3/17/2020 | $ 24.50 | 1,526 | $ 37,384.10 |
| MACO | Purchase | 3/18/2020 | $ 23.11 | 4,276 | $ 98,823.49 |
| MACO | Purchase | 3/19/2020 | $ 22.71 | 1,441 | $ 32,720.51 |
| MACO | Purchase | 3/20/2020 | $ 27.26 | 1,869 | $ 50,942.22 |
| MACO | Purchase | 3/24/2020 | $ 29.91 | 1,426 | $ 42,657.07 |
| MACO | Purchase | 3/25/2020 | $ 29.96 | 1,695 | $ 50,774.57 |
| MACO | Purchase | 3/30/2020 | $ 31.15 | 729 | $ 22,711.71 |
| MACO | Purchase | 3/31/2020 | $ 31.15 | 514 | $ 16,013.16 |
| MACO | Purchase | 4/2/2020 | $ 30.86 | 850 | $ 26,226.84 |
| MACO | Purchase | 4/3/2020 | $ 31.31 | 1,365 | $ 42,731.33 |
| MACO | Purchase | 4/6/2020 | $ 31.91 | 1,050 | $ 33,504.35 |
| MACO | Purchase | 4/7/2020 | $ 32.01 | 908 | $ 29,065.62 |
| MACO | Purchase | 4/8/2020 | $ 32.03 | 942 | $ 30,167.64 |
| MACO | Purchase | 4/9/2020 | $ 31.98 | 1,662 | $ 53,153.76 |
| MACO | Purchase | 4/13/2020 | $ 31.93 | 1,011 | $ 32,277.28 |
| MACO | Purchase | 4/14/2020 | $ 31.96 | 972 | $ 31,069.88 |
| MACO | Purchase | 4/15/2020 | $ 32.06 | 857 | $ 27,477.14 |
| MACO | Purchase | 4/16/2020 | $ 32.22 | 876 | $ 28,221.13 |
| MACO | Purchase | 4/17/2020 | $ 32.41 | 1,237 | $ 40,094.02 |
| MACO | Purchase | 4/20/2020 | $ 32.53 | 4,045 | $ 131,577.78 |
| MACO | Purchase | 4/21/2020 | $ 32.38 | 5,242 | $ 169,760.60 |
| MACO | Purchase | 4/22/2020 | $ 32.55 | 787 | $ 25,617.88 |
| MACO | Purchase | 4/23/2020 | $ 32.54 | 434 | $ 14,120.84 |
| MACO | Purchase | 4/23/2020 | $ 32.11 | 13,655 | $ 438,474.34 |
| MACO | Sale | 4/23/2020 | $ 32.25 | 25,747 | $ 830,386.76 |
| MACO | Purchase | 4/24/2020 | $ 31.83 | 1,131 | $ 35,999.39 |
| MACO | Sale | 4/28/2020 | $ 32.01 | 12,719 | $ 407,169.43 |
| MACO | Purchase | 4/30/2020 | $ 31.52 | 565 | $ 17,807.28 |
| MACO | Sale | 5/6/2020 | $ 32.15 | 12,831 | $ 412,490.85 |
| MACO | Sale | 5/7/2020 | $ 32.20 | 3,234 | $ 104,140.27 |
| MACO | Sale | 5/8/2020 | $ 32.19 | 5,417 | $ 174,396.46 |
| MACO | Sale | 5/8/2020 | $ 32.18 | 2,708 | $ 87,144.76 |
| MACO | Sale | 5/8/2020 | $ 32.20 | 8,132 | $ 261,864.13 |
| MACO | Sale | 5/8/2020 | $ 32.20 | 12,554 | $ 404,214.79 |
| MACO | Sale | 5/8/2020 | $ 32.19 | 1,625 | $ 52,307.59 |
| MACO | Sale | 5/11/2020 | $ 32.19 | 2,808 | $ 90,383.87 |
| MACO | Sale | 5/11/2020 | $ 32.17 | 5,187 | $ 166,843.94 |
| MACO | Sale | 5/11/2020 | $ 32.12 | 7,746 | $ 248,812.29 |
| MACO | Sale | 5/11/2020 | $ 32.13 | 2,765 | $ 88,837.49 |
| MACO | Sale | 5/11/2020 | $ 31.44 | 2,874 | $ 90,358.58 |
| MACO | Sale | 5/12/2020 | $ 30.65 | 26,394 | $ 809,074.34 |
| MACO | Sale | 5/13/2020 | $ 30.61 | 10,367 | $ 317,325.82 |

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
THE ARBITRAGE FUND, see attached

**(b)** County of Residence of First Listed Plaintiff    New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Marc M. Seltzer, Susman Godfrey L.L.P., 1900 Ave of the Stars, Ste. 1400, Los Angeles, CA 90067

## DEFENDANTS
FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, AND CHRISTOPHER HARMS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment Of Veteran's Benefits
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

### REAL PROPERTY
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury -Medical Malpractice

**PERSONAL INJURY**
- 365 Personal Injury – Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

### CIVIL RIGHTS
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities– Employment
- 446 Amer. w/Disabilities–Other
- 448 Education

### PRISONER PETITIONS
**HABEAS CORPUS**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

**OTHER**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee– Conditions of Confinement

### FORFEITURE/PENALTY
- 625 Drug Related Seizure of Property 21 USC § 881
- 690 Other

### LABOR
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

### IMMIGRATION
- 462 Naturalization Application
- 465 Other Immigration Actions

### BANKRUPTCY
- 422 Appeal 28 USC § 158
- 423 Withdrawal 28 USC § 157

### PROPERTY RIGHTS
- 820 Copyrights
- 830 Patent
- 835 Patent—Abbreviated New Drug Application
- 840 Trademark

### SOCIAL SECURITY
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

### FEDERAL TAX SUITS
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS–Third Party 26 USC § 7609

### OTHER STATUTES
- 375 False Claims Act
- 376 Qui Tam (31 USC § 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- [X] 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation–Transfer
- [ ] 8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Securities Exchange Act of 1934, 15 U.S.C. § 78 - Private Securities Litigation Reform Act.
Brief description of cause:
Complaint for Violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

## VII. REQUESTED IN COMPLAINT:
[✓] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [X] Yes   [ ] No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE   Hon. Susan Illston
DOCKET NUMBER   3:20-cv-00076

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
**(Place an "X" in One Box Only)**
- [ ] **SAN FRANCISCO/OAKLAND**
- [ ] **SAN JOSE**
- [ ] **EUREKA-MCKINLEYVILLE**

**DATE**   06/10/2020
**SIGNATURE OF ATTORNEY OF RECORD**   /s/ Marc M. Seltzer

Attachment to Civil Cover Sheet

Additional Plaintiffs:

WATER ISLAND LEVARB FUND, LP
WATER ISLAND DIVERSIFIED EVENT-DRIVEN FUND
WATER ISLAND MERGER ARBITRAGE INSTITUTIONAL COMINGLED MASTER
FUND LP
ALTSHARES MERGER ARBITRAGE ETF

on behalf of themselves and all others similarly situated,

# Exhibit C



# Entwistle & Cappucci LLP Announces Securities Class Action Filed on Behalf of Persons or Entities That Traded Common Stock of Forescout Technologies, Inc. During the Period February 6, 2020 Through May 15, 2020, Inclusive

June 11, 2020 10:37 AM Eastern Daylight Time

NEW YORK--(BUSINESS WIRE)--**Entwistle & Cappucci** LLP ("Entwistle & Cappucci") and Susman Godfrey L.L.P. ("Susman Godfrey") today announced that they have filed a securities class action lawsuit on behalf of persons or entities that purchased or otherwise acquired common stock of Forescout Technologies, Inc. (NYSE: FSCT) ("Forescout" or the "Company") during the period February 6, 2020 through May 15, 2020, inclusive (the "Class Period"), and who thereby sustained damages (the "Class"). The case was filed in the United States District Court for the Northern District of California, Case No. 3:20-cv-03819 against Forescout and related defendants (collectively, "Defendants").

The class action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The complaint alleges that Defendants made materially false and misleading statements and omissions of material facts regarding the significant and disproportionate decline in Forescout's financial performance and the related risk Forescout's planned acquisition by Advent International Corp. would not close. As a result, Class members that purchased Forescout common stock during the Class Period did so at artificially inflated prices. In this action, Plaintiffs seek, among other things, an award of damages and prejudgment interest, to Plaintiffs and other Class members.

If you wish to serve as a lead plaintiff in this matter, you must file a motion with the Court no later than 60 days from today, or by Monday, August 10, 2020. Any member of the proposed Class may move the Court to serve as a lead plaintiff in this matter through counsel of their choice, or they may choose to do nothing and remain a member of the Class.

If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact: Andrew J. Entwistle, Esq. of Entwistle & Cappucci at (212) 894-7200 or via e-mail at aentwistle@entwistle-law.com; or Robert N. **Cappucci**, Esq. of **Entwistle & Cappucci at (212) 894-7200 or via e-mail at** rcappucci@entwistle-law.com.

**About Entwistle & Cappucci**

Entwistle & Cappucci is a national law firm providing exceptional legal representation to clients globally in the most complex and challenging legal matters. Our practice encompasses all areas of litigation, including securities, antitrust, corporate transactions, general corporate and commercial, creditor's rights and bankruptcy, corporate governance and fiduciary duty, government affairs, insurance, investigations and white collar defense. Our clients include public and private corporations, major hedge funds, public pension funds, governmental entities, leading institutional investors, domestic and foreign financial services companies, emerging business enterprises and individual entrepreneurs.

**About Susman Godfrey**

For more than 30 years, Susman Godfrey has focused its nationally recognized practice on just one thing: high-stakes commercial litigation. It is one of the nation's leading law firms, with offices in Houston, Seattle, Los Angeles and New York. For more information, visit www.susmangodfrey.com.

**Contacts**

Entwistle & Cappucci LLP

Robert N. Cappucci, Esq. (rcappucci@entwistle-law.com)

299 Park Avenue, 20th Floor

New York, New York 10171

Telephone: (212) 894-7200

Facsimile: (212) 894-7272

www.entwistle-law.com