**ABRAHAM, FRUCHTER
    & TWERSKY, LLP**
IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
TAKEO A. KELLAR (SBN 234470)
TKellar@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

*Counsel for Movant the Glazer Funds
and Proposed Lead Counsel for the Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, on behalf of themselves and all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE and CHRISTOPHER HARMS, <br><br> Defendants. | Case No. 3:20-cv-00076-SI <br><br> **NOTICE OF MOTION AND MOTION OF THE GLAZER FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: October 30, 2020 <br> Time: 10:00 a.m. <br> Judge: Hon. Susan Illston <br> Courtroom: 1, 17th Floor |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

NOTICE OF MOTION.............................................................................................................1

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     STATEMENT OF RELEVANT FACTS ........................................................................2

III.    ARGUMENT..................................................................................................................5

        A.    The Glazer Funds Should Be Appointed Lead Plaintiff ......................................5

              1.    The Glazer Funds Have Timely Filed Their Motion
                    And Are Willing To Serve As Lead Plaintiff..............................................6

              2.    The Glazer Funds Have The "Largest Financial
                    Interest" In The Relief Sought.....................................................................6

              3.    The Glazer Funds Otherwise Satisfy
                    The Requirements Of Federal Rule 23.........................................................7

                    a.    The Glazer Funds' Claims Are Typical Of The Claims
                          Of The Class .....................................................................................8

                    b.    The Glazer Funds Will Fairly And Adequately Represent The
                          Interests Of The Class And Are Not Subject To Unique Defenses ....9

        B.    The Court Should Approve The Glazer Funds'
              Selection Of Abraham, Fruchter & Twersky, LLP As Lead Counsel ...............10

IV.     CONCLUSION..............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Herrera v. LCS Fin. Servs. Corp.*,
    274 F.R.D. 666 (N.D. Cal. 2011).......................................................................................8

*Hessefort v. Super Micro Computer, Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ..........................................................................8

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) .................................................................................2, 6, 7, 8

*In re Heritage Bond Litig.*,
    No. CV 01-5752 DT, 2004 WL 1638201 (C.D. Cal. July 12, 2004)...............................8

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) ..............................7

*Miller v. Ventro Corp.*,
    No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ..................................9

*Shreves v. Xunlei Ltd.*,
    No. CV-15-04288-MWF (ASx), 2015 WL 5446935 (C.D. Cal. Sept. 15, 2015).............7

**Statutes and Rules**

15 U.S.C. § 78u-4(a)(1) ..........................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B) .....................................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...........................................................................................6, 9

**Other Authority**

H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. (1995), reprinted in 1995.......................10

**NOTICE OF MOTION**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on Friday, October 30, 2020, at 10:00 a.m., before the Honorable Susan Illston, at the San Francisco Federal District Courthouse 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Glazer Capital Management, L.P., Glazer Enhanced Fund L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd. and Highmark Multi-Strategy 2 (hereinafter collectively referred to as the "Glazer Funds") will and hereby do move this Court pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (i) appointing the Glazer Funds as Lead Plaintiff of the above-captioned consolidated securities class action; (ii) approving the Glazer Funds' selection of the law firm of Abraham, Fruchter & Twersky, LLP ("Abraham, Fruchter & Twersky") as Lead Counsel; and (iii) granting such other and further relief as the Court may deem just and proper.

**I.    PRELIMINARY STATEMENT**

Currently pending in this District is the above-captioned consolidated securities class action (the "Action"), brought on behalf of all persons who purchased or otherwise acquired the common stock of Forescout Technologies, Inc. ("Forescout" or the "Company") between February 7, 2019 and May 15, 2020, inclusive (the "Class Period").[1] The Action alleges violations of Section 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), against Forescout, and certain of its executive officers and directors (collectively, the "Defendants").

The PSLRA directs this Court to appoint the "most adequate plaintiff" as Lead Plaintiff. The "most adequate plaintiff" is statutorily defined as the movant having the "largest financial

---

[1] On July 22, 2020, this Court consolidated *Sayce et al. v. Forescout Technologies,* No. 3:20-cv-00076-SI (N.D. Cal.) (the "*Sayce* Action") with *The Arbitrage Fund v. Forescout Techs., Inc.*, No. 3:20-cv-03819-SI (N.D. Cal.) (the "*Arbitrage Fund* Action"). *See Sayce*, Dkt. No. 55.

interest in the relief sought by the class" who also makes a *prima facie* showing of being a typical and adequate class representative. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (granting a petition for a writ of mandamus and ordering a district court to vacate orders appointing a lead plaintiff and appoint a lead plaintiff based upon the "simple three-step process" of the PSLRA). Here, the Glazer Funds believe that they are the most adequate plaintiff by virtue of having suffered losses of $5,273,199 from purchasing Forescout common stock during the Class Period. In addition, the Glazer Funds satisfy the typicality and adequacy requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as explained below.

The Glazer Funds have selected and retained Abraham, Fruchter & Twersky, a law firm which has substantial experience in prosecuting securities class actions, to serve as Lead Counsel for the Class. Therefore, as discussed in greater detail below, the Glazer Funds respectfully request that this Court approve their motion for appointment as Lead Plaintiff and their selection of Abraham, Fruchter & Twersky as Lead Counsel.

## II.    STATEMENT OF RELEVANT FACTS

Forescout is a cybersecurity company, based in San Jose, California, that assists businesses and government agencies in monitoring devices that seek to connect to their networks. The monitoring services are designed to prevent a cyber-attack, limit access and control to the networks or otherwise mitigate the risks of a security breach. *Sayce* ¶ 2.[2] At the times relevant to this action, Defendant Michael DeCesare ("DeCesare") was the Company's Chief Executive Officer, and Defendant Christopher Harms ("Harms" and with DeCesare collectively referred to herein as the "Individual Defendants") was the Chief Financial Officer of the Company. *Sayce* ¶¶ 2, 35, 36.

The Class Period begins on February 7, 2019, with Defendants issuing bullish annual guidance. *Sayce* ¶ 3. Defendants largely based their guidance, and made other statements during the Class Period, about the Company's results of operations and future prospects

---

[2] All references to "*Sayce* ¶ _" are to the Amended Complaint filed in *Sayce* Action at Dkt. No. 31. All references to "*Arbitrage Fund* ¶ _" to the Complaint filed in the *Arbitrage Fund* Action at Dkt. No. 1.

attributed to its sales force having matured with 50% of the Company's sales representatives having been with the Company more than two years causing increased productivity and "visibility" into the sales pipeline that "drove momentum in [Forescout's] business." *Sayce* ¶ 4.

These statements were materially false or misleading because, in truth and in fact, Forescout had dramatically cut the number of its employees in the beginning of 2019, particularly within the sales department, and a significant number of sales representatives also left the Company on their own initiative, directly due to declining sales attributed to intense competition and the lack of customer interest in Forescout's products. *Sayce* ¶ 5. On May 9, 2019, Forescout announced that revenues for the second quarter of 2019 had fallen below expectations due to "slipped deals." Defendants falsely claimed that those sales would be completed in the second half of 2019 due to the purported size and strength of Forescout's sales pipeline and the productivity of the Company's sales force. *Sayce* ¶¶ 8, 11, 14. These false assurances continued in a conference call and other statements made to investors in August 2019. *Sayce* ¶¶ 12, 14.

On October 10, 2019, Forescout announced that total revenue for the third quarter was expected to be within the range of $90.6 million to $91.6 million, compared to prior guidance of $98.8 million to $101.8 million. *Sayce* ¶ 17. Defendant DeCesare blamed the disappointing results on "extended approval cycles which pushed several deals out of the third quarter" due to deteriorating macroeconomic conditions in Europe, the Middle East and Africa ("EMEA"), even though the relative size of Forescout's business in the EMEA region did not support the shortfall and was not the true reason for the shortfall. *Sayce* ¶ 17. On this partial disclosure, the price of Forescout's common stock fell by over 37% from its closing price of $39.20 on the previous day, to close at $24.565 per share on October 10, 2019. *Sayce* ¶ 18.

On February 6, 2020, Forescout disclosed total revenue for the fourth quarter of 2019 was $91.3 million, missing analyst estimates and its earlier guidance. *Sayce* ¶ 101. Defendants blunted the impact of the bad news by disclosing that the Company had entered into a definitive merger agreement (the "Merger Agreement") to be acquired by the affiliates of Advent

International ("Advent") for $33.00 per share in an all cash transaction valued at approximately $1.9 billion. *Arbitrage Fund* ¶ 3; *Sayce* ¶ 20.

However, at that very time, Defendants knew that Forescout's business had begun to suffer a dramatic and undisclosed downturn, including in its fast-growing Asia Pacific and Japan region. *Arbitrage Fund* ¶ 3. In addition, Forescout was aware that its fourth quarter 2019 revenues were inflated through an abnormal transaction with one of its largest resale customers, Merlin International Inc. ("Merlin"), which a whistleblower alleged was the result of a "channel stuffing scheme" in the fourth quarter of 2019. *Id*. Because of these factors, Forescout knew that the consummation of the Transaction was exceptionally risky at the time it announced the Merger Agreement as well as at the time the Company filed its preliminary proxy statement with the SEC on March 3, 2020, and the final Proxy on March 24, 2020. *Arbitrage Fund* ¶¶ 3, 80-84.

Forescout was experiencing — but not disclosing — a dramatic downturn in first quarter revenues while the other companies in its peer group were reporting significant growth. *Arbitrage Fund* ¶ 5. For example, six of Forescout's peer companies (Rapid7, Inc., Tenable Holdings, Inc., SailPoint Technologies Holdings, Inc., Workiva Inc., Fortinet, Inc. and Palo Alto Networks, Inc.) reported first quarter 2020 results with year-over-year revenue growth of over 20%, four (Talend S.A., Qualys, CyberArk Software Ltd. and FireEye) had year-over-year revenue growth between 5% and 20%, and two (Splunk Inc. and Varonis Systems, Inc.) had relatively flat revenue. *Id*. Forescout investors had every reason to expect comparable performance based on the combination of the Company's reported fourth quarter growth, positive ongoing performance statements and peer group performance. Forescout knew but failed to advise investors that its positive statements were no longer true, and its first quarter revenue declined year-over-year by 24%. *Id*.

On May 11, 2020, Defendants disclosed the Company's revenues for the first quarter of 2020 were $57 million, which was $5 million, or almost 10%, less than the "Illustrative Guidance" disclosed in the Preliminary Proxy of March 23, 2020 (one week before the end of

that quarter). *Sayce* ¶ 23.  As a result of this partial disclosure, the price of Forescout's common stock fell by nearly 5% from its closing price of $32.09 on the previous day, to close at $30.50 per share on May 12, 2020. *Sayce* ¶ 24.

On Monday, May 18, 2020, Forescout announced that that it had been informed on May 15, 2020, that Advent "would not be proceeding to consummate the acquisition of Forescout" pursuant to the terms of the Merger Agreement, with Advent asserting Forescout failed to satisfy a closing condition to the transaction because a "material adverse effect" had occurred at Forescout. *Arbitrage Fund* ¶ 1; *Sayce* ¶¶ 25, 26.  As a result of the disclosure, Forescout's stock price plummeted 23.5% from $29.52 per share at close on May 15, 2020 to $22.57 per share at close on May 18, 2020, wiping out approximately $300 million in market capitalization. *Id.*

On July 15, 2020, Forescout and Advent entered into an Amended and Restated Agreement and Plan of Merger, pursuant to which Advent commenced a tender offer to purchase each issued and outstanding share of common stock of Forescout at an offer price of $29.00 per share.  That tender offer was consummated and Forescout is now a wholly owned subsidiary of Advent. *See* Exhibit ("Exh.") A to the Declaration of Ian D. Berg in Support of the Motion of the Glazer Funds for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Berg Declaration" or "Berg Decl."), filed herewith.

## III.    ARGUMENT

### A.    The Glazer Funds Should Be Appointed Lead Plaintiff

The PSLRA requires that the Court appoint a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See also In re Cavanaugh*, 306 F.3d at 729-30.

### 1. The Glazer Funds Have Timely Filed Their Motion And Are Willing To Serve As Lead Plaintiff

On July 22, 2020, this Court issued an order consolidating the *Sayce* Action and the *Arbitrage Fund* Action and vacating its order appointing Meitav Tachlit as lead plaintiff and appointing lead counsel. *Sayce*, Dkt. No. 55. The Court further ordered Meitav Tachlit to republish notice of the consolidated class action no later than July 31, 2020. *Id.* On July 29, 2020, pursuant to the Court's July 22, 2020 order, a notice was published pursuant to the PSLRA advising Forescout investors of the 60-day deadline to move the Court to be appointed as Lead Plaintiff by no later than September 28, 2020. *See* Berg Decl., Exh. B.

The Glazer Funds, which are all managed by the same investment manager, timely filed the instant motion pursuant to the notice and have attached a certification attesting to their willingness to serve as representative for the Class and provide testimony at deposition and trial, if necessary. *See* Berg Decl., Exh. C. Accordingly, the Glazer Funds satisfy the first requirement to serve as Lead Plaintiff for the Class.

### 2. The Glazer Funds Have The "Largest Financial Interest" In The Relief Sought

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Although the PSLRA does not identify a standard for determining which movant maintains the largest financial interest in the relief sought by the class, courts in this Circuit have often looked to four factors in making that inquiry: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period (*i.e.*, shares purchased during and retained at the end of the class period), (3) the total net funds expended during the class period, and (4) the approximate

loss suffered during the class period. *See Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *3 (N.D. Cal. May 10, 2016). Of these four factors, courts emphasize estimated losses suffered during the class period. *See id.*

The Glazer Funds should be appointed Lead Plaintiff because they believe they have the largest financial interest of any movant in the relief sought. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d at 730. Specifically, the Glazer Funds: (1) purchased 643,697 total shares during the Class Period; (2) had net purchases of 548,700 shares during the Class Period; (3) expended total net funds of approximately $17,530,760 during the Class Period, and (4) incurred a loss of approximately $5,273,199 during the Class Period. *See* Berg Decl., Exh. D. The Glazer Funds believe that these amounts represent the largest financial interest among those seeking appointment and that the Glazer Funds are therefore presumed to be the most adequate movant. *See* 15 U.S.C. § 78u-4(a)(3)(B).

### 3. The Glazer Funds Otherwise Satisfy The Requirements Of Federal Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Glazer Funds also satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). However, on a motion to serve as Lead Plaintiff, the movant must only make a preliminary showing that it satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *See Robb*, 2016 WL 2654351, at *2 ("the court focuses on [the plaintiff with the largest financial interest in the relief sought by the class] to ensure that the proposed lead plaintiff 'satisfies the requirements of Rule 23(a), in particular those of typicality and adequacy.' A plaintiff who satisfies the first two steps becomes the 'presumptively most

adequate plaintiff.'" (internal citations and quotation marks omitted); *see also Shreves v. Xunlei Ltd.*, No. CV-15-04288-MWF (ASx), 2015 WL 5446935, at *3 (C.D. Cal. Sept. 15, 2015) (noting that "[t]he movant with the largest financial interest only needs to make a *prima facie* showing that it satisfies Rule 23 to be the presumptive lead plaintiff" (citing *In re Cavanaugh*, 306 F.3d at 732)).

### a.   The Glazer Funds' Claims Are Typical Of The Claims Of The Class

When assessing a movant's typicality, courts in this Circuit consider whether the other class members "have the same or similar injury, whether the action is based on conduct which is not unique to the [movant], and whether other class members have been injured by the same course of conduct." *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1061 (N.D. Cal. 2018). However, a movant's "claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 678 (N.D. Cal. 2011); *In re Heritage Bond Litig.*, No. CV 01-5752 DT, 2004 WL 1638201, at *7 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

The Glazer Funds' claims are typical of those of the Class, which claims all allege that Defendants violated the Exchange Act by issuing the false and misleading disclosures in connection with the Company's misstatements about its guidance and sales pipeline. The Glazer Funds, like all members of the Class, purchased Forescout common stock at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosures of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

### b. The Glazer Funds Will Fairly And Adequately Represent The Interests Of The Class And Are Not Subject To Unique Defenses

The presumption in favor of appointing the Glazer Funds as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

Adequate representation will be found if able and experienced counsel represent the movant, the movant has no fundamental conflicts of interest with the class as a whole, and the action is not likely collusive. *See Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *12 (N.D. Cal. Nov. 28, 2001) ("The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.").

The presumption that the Glazer Funds are the most adequate Lead Plaintiff is not, therefore, subject to rebuttal. The Glazer Funds have suffered substantial financial losses and have the largest financial interest in this case of any timely lead plaintiff. The ability of the Glazer Funds to represent the Class fairly and adequately is demonstrated above. The Glazer Funds are not aware of any unique defenses Defendants could raise against them that could render the Glazer Funds inadequate to represent the Class. Accordingly, the Glazer Funds are presumptively the most adequate plaintiff and should be appointed as Lead Plaintiff for the Class.

Further, the Glazer Funds have demonstrated their adequacy through their selection of Abraham, Fruchter & Twersky as Lead Counsel. As detailed below, Abraham, Fruchter & Twersky is highly qualified and experienced in the area of securities class action litigation and

has demonstrated an ability to prosecute complex securities class action litigation effectively.

Finally, the Glazer Funds are paradigmatic examples of Lead Plaintiffs as envisioned by Congress in its enactment of the PSLRA – sophisticated institutional investors with a real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions").

**B.      The Court Should Approve The Glazer Funds'
         <u>Selection Of Abraham, Fruchter & Twersky, LLP As Lead Counsel</u>**

The Court should approve the Glazer Funds' choice of the law firm of Abraham, Fruchter & Twersky to serve as Lead Counsel. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel for the class they seek to represent. Abraham, Fruchter & Twersky is highly skilled and knowledgeable in litigating securities fraud class actions which will enable it to prosecute this action effectively and expeditiously. Abraham, Fruchter & Twersky has successfully prosecuted numerous securities fraud class actions, both in this Circuit and nationwide. Most recently, in *Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*, No. 16-cv-07981-PKC (S.D.N.Y.), Abraham, Fruchter & Twersky was appointed sole lead counsel for the class and secured a $48.75 million settlement representing more than 50% of likely recoverable damages based upon rulings in a related multi-district litigation. This is one of many successful recoveries achieved by Abraham, Fruchter & Twersky as a lead counsel in securities fraud class actions. *See, e.g., In re Peregrine Systems, Inc. Securities Litigation,* No. 02-CV-0870-BEN (RBB) (S.D. Cal.) (Abraham, Fruchter & Twersky, as co-lead counsel, obtained a settlement of approximately $117.5 million); *Godinez v. Alere Inc.*, et al., No. 1:16-cv-10766 (PBS), ECF No. 152 (D. Mass. Dec. 22, 2017) (Abraham, Fruchter & Twersky, as co-lead counsel, achieved a $20 million settlement); *Citiline Holdings, Inc. v. iStar Financial, Inc.*, No. 08-cv-3612-RWS (S.D.N.Y) (Abraham, Fruchter & Twersky as co-lead counsel obtained a $29 million settlement). *See*

Berg Decl., Exh. E (Abraham, Fruchter & Twersky Firm Resume).

## IV.    CONCLUSION

For the foregoing reasons, the Glazer Funds respectfully request that the Court: (1) appoint the Glazer Funds as Lead Plaintiff; (2) approve the Glazer Funds' selection of Abraham, Fruchter & Twersky as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: September 28, 2020                       Respectfully Submitted,

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**

/s/          *Ian D. Berg*
IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
TAKEO A. KELLAR (SBN 234470)
TKellar@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

- And -

JEFFREY S. ABRAHAM
(*Pro Hac Vice* Forthcoming)
JAbraham@aftlaw.com
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

*Counsel for Movant the Glazer Funds
and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 28, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/      *Ian D. Berg*
IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582