POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, *et al.*,<br><br>                              Plaintiffs,<br><br>             v.<br><br>FORESCOUT TECHNOLOGIES, INC., *et al.*,<br><br>                              Defendants. | Case No.: 3:20-cv-00076-SI<br><br>MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br><u>CLASS ACTION</u><br><br>Date:  November 6, 2020<br>Time:  10:00 a.m.<br>Judge:  Hon. Susan Illston<br>Courtroom:  1 – 17th Floor |

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     ARGUMENT..............................................................................................................6

        A.      The Court Should Appoint Meitav as Lead Plaintiff.................................6

                1.      Meitav has the Largest Financial Interest of any Eligible Movant in the Relief Sought by the Class....................................................7

                2.      Meitav Satisfies the Requirements of Rule 23..............................7

        B.      The Competing Motions Should be Denied..............................................11

                1.      The Timing of the Arbitrage Funds' and the Glazer Funds' Purchases of Forescout Securities and the Funds' Trading Strategies Render Them Inadequate, Atypical and Subject to Unique Defenses .........................................................................11

                2.      The Prior Conduct of the Arbitrage Funds' Member Muoio & Co. Disqualifies the Arbitrage Funds from Serving as Lead Plaintiff 17

        C.      In the Alternative, the Court Should Appoint Meitav as a Co-Lead Plaintiff ...............................................................................................19

III.    CONCLUSION...........................................................................................................21

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-cv-00076-SI

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple v. LJ Intl. Inc.*, CV076076GAFJWJX,
2008 WL 11343371 (C.D. Cal. Feb. 8, 2008)...........................................................................8

*Bang v. Acura Pharm., Inc.*, No. 10 C 5757,
2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) .........................................................13

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)...............................................................................................4, 13, 16, 17

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)......................................................13

*Erickson v. Snap, Inc.*, 2:17-cv-03679-SVW-AGR,
2017 U.S. Dist. LEXIS 221050 (C.D. Cal. Sep. 18, 2017).....................................................13

*Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP,
2012 U.S. Dist. LEXIS 28040 (C.D. Cal. Mar. 2, 2012) ..........................................................9

*Howard v. Liquidity Servs.*,
322 F.R.D. 103 (D.D.C. 2017)................................................................................................17

*In re AudioEye, Inc.*, CV-15-163-TUC-DCB,
2015 U.S. Dist. LEXIS 193348 (D. Ariz. Aug. 3, 2015)..........................................................9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...................................................................................................1

*In re Critical Path*,
156 F. Supp. 2d 1102 ..............................................................................................................15

*In re Emerging Communs., Inc. S'holders Litig.*, No. 16415,
2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004) ......................................................5, 18, 19

*In re Lucent Techs., Inc. Sec. Litig.*,
221 F. Supp. 2d 472 (D.N.J. 2001) .........................................................................................20

*In re MicroStrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) .....................................................................................13

*In re Oxford Health Plans, Inc. Sec. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ............................................................................................20

*In re Regions Morgan Keegan*,
    U.S. Dist. LEXIS 132902 ..................................................................................................... 9

*In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH,
    2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ...................................................... 13

*In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR),
    2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003) ..................................................... 18

*In re Versata, Inc.*, No. C 01-1439 SI,
    2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 20, 2001) ................................................. 1, 5

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) .......................................................................................... 17

*Isaacs v. Musk*, No. 18-cv-04865-EMC,
    2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018) ................................................. 17

*Kanefsky v. Honeywell Int'l, Inc.*, 18-cv-15536,
    2020 U.S. Dist. Lexis 87108 (D.N.J. May 18, 2020) ........................................................... 12

*Kelley v. Rambus, Inc.*, No. C 07-1238 JF(HRL),
    2008 U.S. Dist. LEXIS 100319 (N.D. Cal. Dec. 9, 2008),
    *aff'd*, 384 F. App'x 570 (9th Cir. 2010) ............................................................................... 15

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................................. 7

*Lechner v. InfuSystem Holdings, Inc*., 2:16-cv-02895-ODW (AGRx),
    2017 U.S. Dist. LEXIS 220297 (C.D. Cal. Feb. 17, 2017) .................................................. 11

*McCracken v. Edwards Lifesciences Corp*., 8:13-CV-1463-JLS (RNBx) *et al.*,
    2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan. 8, 2014) ........................................................ 11

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
    2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ....................................................... 7

*Romero v. Growlife, Inc.*, 2:14-CV-03015-CAS,
    2014 WL 3734543 (C.D. Cal. July 23, 2014) ........................................................................ 8

*Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST,
    2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 22, 2016) .................................................... 8

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) ........................................................................................ 6, 8

*Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM,
    2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4, 2008) ...................................................... 13

*Xianglin Shi v. SINA Corp.*,
    2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) ........................................................ 18

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(i) ................................................................................................. 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) .............................................................................................. 7

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ........................................................................................ 1, 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) .............................................................................. 1, 7, 11, 13

PSLRA .............................................................................................................................*passim*

**Rules**

Federal Rules of Civil Procedure Rule 23 ..............................................................................*passim*

Lead Plaintiff Movant Meitav[1] respectfully submits this memorandum of points and authorities in further support of its motion for appointment as Lead Plaintiff and approval of Lead Counsel in this Action (Dkt. No. 81); and in opposition to the competing motions of: (i) Glazer Capital Management, L.P., Glazer Enhanced Fund L.P., Glazer Enhanced Offshore Fund, Ltd., and Highmark Multi-Strategy 2 (collectively, the "Glazer Funds") (Dkt. No. 63); and (ii) Altshares Merger Arbitrage ETF, The Arbitrage Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund LP, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, S. Muoio & Co. LLC ("Muoio & Co."), and Amethyst Arbitrage International Master Fund (collectively, the "Arbitrage Funds") (Dkt. No. 80).[2]

## I.   PRELIMINARY STATEMENT

As multiple motions for appointment of Lead Plaintiff have been filed, "the district court must determine who among the movants for lead plaintiff status is the 'most adequate plaintiff.'" *In re Versata, Inc.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *9 (N.D. Cal. Aug. 20, 2001) (citing 15 U.S.C. §78u-4(a)(3)(B)(i)).  Pursuant to the PSLRA, a movant is entitled to a rebuttable presumption that it is the "most adequate plaintiff" if the movant both: (i) has the greatest financial interest in the outcome of the litigation among the eligible movants seeking appointment; ***and*** (ii) satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See In re Cavanaugh,* 306 F.3d 726, 730 (9th Cir. 2002) (*citing* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)).   The "most adequate plaintiff" presumption may be rebutted "upon proof . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *Id.* (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in Meitav's moving brief.  *See* Dkt. No. 81.

[2] Initially another competing movant, Donald R. Levin ("Levin"), filed a similar motion.  Dkt. No. 76.  On October 13, 2020, Levin filed a notice of non-opposition indicating that having reviewed the competing motions, Levin did not appear to meet the PSLRA's criteria for appointment as Lead Plaintiff.  Dkt. No. 93.

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-cv-00076-SI

Of the three competing movants before the Court, only Meitav meets all of the requisite statutory criteria for appointment as Lead Plaintiff. *First*, Meitav's significant loss of $196,787, incurred as a result of the fraud alleged in this Action, is by default the largest financial interest possessed by any eligible movant, because neither of the other two movants is eligible for appointment (as discussed below). *Second*, in addition to its significant financial interest, Meitav also satisfies the adequacy and typicality requirements of Rule 23. It is a sophisticated institutional investor with significant assets under management, and, moreover, has already demonstrated its adequacy by vigorously prosecuting securities fraud claims on behalf of Forescout investors in the first-filed of the actions against Forescout that were subsequently consolidated herein.

Possessing, by default, the largest financial interest of any eligible movant and having established its adequacy and typicality within the meaning of Rule 23, Meitav is entitled to the statutory presumption that it is the "most adequate plaintiff" of the Class within the meaning of the PSLRA. Because Meitav is neither subject to unique defenses nor otherwise unable to fairly and adequately protect the interest of other Class members, there is nothing to rebut the presumption in favor of its appointment as Lead Plaintiff.

By contrast, irrespective of their financial interests in this litigation, none of the three competing movants is eligible for appointment as Lead Plaintiff because each is inadequate and/or atypical within the meaning of Rule 23, and/or subject to disqualifying unique defenses.

The two competing movants—the Arbitrage Funds and the Glazer Funds—only purchased Forescout securities during the final three-and-a-half months of the 15-month Class Period—*i.e.*, after the February 6, 2020 announcement of the acquisition of Forescout by Advent International ("Advent") for $33 per share (the "Advent Acquisition" or "Acquisition"). These limited purchases do not align these movants with the majority of investors that purchased during the Class Period whom they seek to represent. As such, these movants lack the same incentives as the majority of investors who purchased during the entire Class Period to vigorously litigate fraud claims arising from misstatements outside of the relative short sub-period. Indeed, their

limited purchases mean that if the alleged misstatements that occurred during the short sub-period are not found to be actionable, then the Class will find itself represented by a Lead Plaintiff without standing to pursue claims in the broader Class Period, which needlessly risks the viability of this entire Action.  In contrast, Meitav is the only movant that purchased Forescout shares ***both before and after*** the announcement of the Advent Acquisition, rendering it the only movant that is capable of adequately representing shareholders for both of these critical time periods.

The unique timing of these Movants' transactions is not mere happenstance.  The Glazer and Arbitrage Funds employ unorthodox trading strategies, the consequence of which is that the core theory of their fraud case against the Defendants will necessarily focus on different events and conduct than the majority of Class members—*e.g.*, what they describe as market inefficiencies, rather than the material misstatements and omissions alleged in the Amended complaint that the majority of Class members allege artificially inflated and/or maintained the price of Forescout common stock.  This renders them atypical of the Class they seek to represent, and subject to unique defenses.  Whereas other Class members purchased Forescout securities in reliance upon the Defendants' false and/or misleading statements regarding the Company's business and operations, even a cursory review of the Glazer and Arbitrage Funds' respective websites and marketing materials indicates that these funds engage in unconventional trading strategies designed to profit based on the risk of whether an announced merger will actually be consummated.  Water Island Capital, LLC ("Water Island"), the investment manager of several of the Arbitrage Funds, touts on its website the fact that it "does ***not*** invest based on market fundamentals." *See* https://waterislandcapital.com/strategies (emphasis added).  It describes itself as "[f]ocusing on events rather than markets" by employing "a highly specialized strategy designed to profit from the behavior of equity and debt instruments trading within the timelines of specific corporate events, such as mergers [and] acquisitions[.]" *Id.*  Likewise, Glazer Capital, LLC ("Glazer Capital"), the investment manager of the Glazer Funds, engages in a "risk arbitrage" strategy that "aims to take advantage of market miscalculations just before or after a merger or acquisition."  *See* https://finance.yahoo.com/news/paul-glazer-glazer-capital-return-

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-cv-00076-SI

191719626.html.  These funds are clearly ***not*** similarly situated with respect to the Forescout investors they seek to represent, because these investment decisions necessarily implicate different conduct by the Defendants than the investment decisions of most other Class members. Indeed, if the Court were to appoint either of the fund groups as Lead Plaintiff, the Defendants will undoubtedly attempt to defeat class certification by establishing that the funds did ***not*** make their investment decisions in reliance upon the Defendants' Class Period statements, but rather as part of a strategy for betting whether or not the Advent Acquisition would be consummated.  This threatens to undercut the presumption of reliance established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.  Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247.  In the best-case scenario, the funds would have to devote considerable time and energy to litigating this issue, at the expense of prosecuting the Class's fraud claims against the Defendants.  In the worst-case scenario, this Class would risk not being certified because Defendants establish that the Arbitrage Funds did not satisfy the typicality or adequacy prongs of Rule 23, to the detriment of all Class members.

Moreover, the fact that Arbitrage Fund members The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP and AltShares Merger Arbitrage ETF initially brought suit only on behalf of purchasers of Forescout common stock from February 6, 2020 through May 15, 2020 demonstrates that the Arbitrage Funds had very little interest in litigating this case on behalf of the overwhelming majority of Class members, even though Meitav's  Amended Complaint had already been filed with allegations grounded upon the same common scheme to defraud commencing on February 7, 2019.

The Water Island and Amethyst Arbitrage Funds also have aligned with a hedge fund led by Salvatore Muoio, Chief Executive Officer of Muoio & Co., whom the Delaware Chancery

Court found to have breached his duty of loyalty and good faith to investors for his own personal gain:

> The credible evidence persuades the Court that Muoio's conduct is explainable in terms of only one of two possible mindsets. The first is that Muoio made a deliberate judgment that to further his personal business interests, it was of paramount importance for him to exhibit his primary loyalty to Prosser. The second was that Muoio, for whatever reason, "consciously and intentionally disregarded" his responsibility to safeguard the minority stockholders from the risk, of which he had unique knowledge, that the transaction was unfair. If motivated by either of those mindsets, Muoio's conduct would have amounted to a violation of his duty of loyalty and/or good faith. Because Muoio has not established to the satisfaction of the Court, after careful scrutiny of the record, that his motivation was of a benign character, he is not exculpated from liability to Greenlight and the shareholder class.

*In re Emerging Communs., Inc. S'holders Litig*., No. 16415, 2004 Del. Ch. LEXIS 70, *146-*47 (Del. Ch. May 3, 2004).

Indeed, Salvatore Muoio has been found to have violated the very fiduciary obligations required of a lead plaintiff under the PSLRA and the adequacy requirements of Rule 23.  Muoio & Co. clearly fails the adequacy requirement, but by aligning themselves with Muoio, both the Water Island and Amethsyt Arbitrage Funds demonstrate that they have interests antagonistic to the Class.  They are either intentionally or recklessly risking the interests of absent class members by supporting a Lead Plaintiff movant that has been adjudicated as having violated its fiduciary obligations to fellow investors.  At a minimum, the Water Island and Amethyst Arbitrage Funds have failed to properly vet Salvatore Muoio.  If the Water Island and Amethsyt Arbitrage Funds claim that they were unaware of Muoio's past, such a claim is evidence that they have conceded too much authority to counsel in cobbling together their group.  Accordingly, the Arbitrage Fund group fails the "case-by-case approach governed by the rule of reason" that courts use to "guard against improper plaintiffs." *Versata*, 2001 U.S. Dist. LEXIS 24270, at *21.  By including Muoio in their group, the Arbitrage Fund plaintiffs have failed to satisfy "the singular focus . . . whether the asserted group has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel." *Id.*

In the alternative, if the Court is inclined to appoint a movant other than Meitav as Lead Plaintiff, then Meitav respectfully requests that the Court appoint Meitav as a Co-Lead Plaintiff and its chosen counsel, Pomerantz, as Co-Lead Counsel. First, Meitav is the only movant that has purchased Forescout securities both in the pre-Acquisition and post-Acquisition periods, providing the putative class with the broadest possible representation. Moreover, Meitav's counsel, Pomerantz, filed the first action alleging securities fraud against Forescout. As Lead Plaintiff in the first-filed, subsequently consolidated action on behalf of Forescout investors, Meitav has already supervised the filing of an Amended Complaint, an undertaking that involved, *inter alia*, locating and interviewing numerous confidential witnesses, as well as extensive factual and legal research in support of the Class's claims. Indeed, it was only after Meitav filed its Amended Complaint on May 22, 2020, with its detailed allegations based on interviews with more than a dozen confidential witnesses, that the Arbitrage Funds showed an interest in this matter and filed their own complaint. Accordingly, both Meitav and its chosen counsel, Pomerantz, possess a familiarity with this litigation that make them unique among the competing movants and counsel, and the Class would clearly benefit were Meitav and Pomerantz to remain in leadership roles in this action.

Accordingly, for the reasons set forth herein, Meitav respectfully submits that its motion should be granted in its entirety, and that the competing motions of the Glazer and Arbitrage Funds should be denied.

## II.    ARGUMENT

### A.    The Court Should Appoint Meitav as Lead Plaintiff

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead

Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is Meitav.

### 1.    Meitav has the Largest Financial Interest of any Eligible Movant in the Relief Sought by the Class

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  For the purposes of PSLRA lead plaintiff appointment, courts in this Judicial District and the Ninth Circuit generally equate financial interest with monetary loss.  *See*, *e.g.*, *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015).

The chart below sets forth the respective financial interests of the Lead Plaintiff movants in this Action:

| Movant | Loss |
|---|---|
| Meitav | $196,787 |
| ~~Glazer Funds~~ | ~~$5,273,188~~ |
| ~~Arbitrage Funds~~ | ~~$3,370,882~~ |

Meitav incurred a significant loss of nearly $197,000 in connection with the fraud alleged in the Action.  While the other competing movants have alleged larger losses than Meitav, as discussed below, each of these movants fails to satisfy the adequacy and/or typicality requirements of Rule 23, and/or is subject to disqualifying unique defenses within the meaning of 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Accordingly, Meitav, as the only movant eligible to serve as Lead Plaintiff, and the only movant to purchase both prior to and during the Acquisition period, possesses by default the largest financial interest, thereby satisfying the first of the PSLRA's "most adequate plaintiff" criteria.

### 2.    Meitav Satisfies the Requirements of Rule 23

Meitav also readily satisfies the typicality and adequacy requirements of Rule 23.  In appointing a lead plaintiff, the Court must determine whether the movant has made a *prima facie*

showing of typicality and adequacy. *Tanne*, 226 F.R.D. at 666; *Romero v. Growlife, Inc.*, 2:14-CV-03015-CAS, 2014 WL 3734543, at *3 (C.D. Cal. July 23, 2014).

Meitav easily satisfies the typicality requirement of Rule 23. Meitav's claims are typical of those of other Class members because, like other Class members, Meitav purchased Forescout securities during the Class Period and was harmed by the misrepresentations and/or omissions that form the basis of the fraud alleged in the Action. Meitav's claims are based on the same legal theory and arise from the same events and course of conduct as the Class' claims. *See*, *e.g.*, *Apple v. LJ Intl. Inc.*, CV076076GAFJWJX, 2008 WL 11343371, at *5 (C.D. Cal. Feb. 8, 2008).

Meitav has also demonstrated its adequacy to serve as Lead Plaintiff in these Actions. First, as set forth *supra*, Meitav's significant financial interest in this Action will ensure its vigorous and adequate prosecution of the Class's claims. *Tanne,* 226 F.R.D. at 666 (investors with a significant financial interest "will, more often than not, satisfy the typicality and adequacy requirements"). Second, Meitav has no conflicts with other Class members. To the contrary, Meitav's interests are perfectly aligned with the Class' interests of maximizing a recovery for the Class due to the alleged fraud in this Action. Indeed, Meitav is the only movant to have purchased Forescout common stock during both the pre-Acquisition and post-Acquisition periods.

Third, Meitav is a sophisticated institutional investor with significant assets under management and as such is a paradigmatic Lead Plaintiff as envisioned by Congress when it enacted the PSLRA. As such, Meitav's service as Lead Plaintiff would be consistent with the PSLRA's preference for appointment of institutional investors as class representatives in securities class actions. See H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Indeed, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions such as this one. *See*, *e.g.*, *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at *7 (N.D. Cal. Dec. 22, 2016) ("as an institutional investor, [movant] is likely to be an

effective lead plaintiff"); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *8 (C.D. Cal. Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms.'") (quoting *In re Regions Morgan Keegan,* U.S. Dist. LEXIS 132902, at *8); *In re AudioEye, Inc.*, CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. Aug. 3, 2015) (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

Fourth, Meitav has already demonstrated its adequacy by serving as Lead Plaintiff in the first-filed of the since-consolidated actions on behalf of Forescout shareholders. Meitav and its counsel investigated Forescout's business and operations, including but not limited to, the high turnover in the Company's actual sales force, the rapidly declining productivity of its salesforce, and the sharply deteriorating amount of committed deals in the sales pipeline since the beginning of 2019, which were all hidden from investors.

To make these determinations, Meitav and its counsel located and interviewed over a dozen confidential witnesses ("CW"), who corroborated the specific and particularized allegations in the Amended Complaint regarding the declining productivity of Forescout's sales force and the illusory nature of so-called "committed" deals in the Company's sales pipeline quarter after quarter in 2019. These CWs provided direct evidence of Defendants' scienter, including sales reports and the noncommittal or failed status of specific deals known to Defendants before the false and misleading statements were made and the misleading quarterly guidance were issued.

Meitav and its counsel further reviewed the Company's public statements, wire and press releases, United States Securities and Exchange Commission filings and analyst reports regarding the Company's business and financial condition. Meitav and its counsel did not merely pluck

statements made in connection with the Advent Acquisition in 2020 or copy allegations that Advent levelled against Forescout in the Delaware Chancery Court as the plaintiffs in the Arbitrage Funds' action did, but investigated and corroborated the falsity of Defendants misstatements made during the entire Class Period alleged in this consolidated Action.  Indeed, Defendants made the decision to sell the Company no later than October 2019—five months before the official announcement of the expected sale to Advent—and the motive to commit fraud thus emerged months before most of the remaining plaintiffs purchased any Forescout stock or sought to be appointed as lead plaintiff in this Action.

Meitav and its counsel further analyzed the Individual Defendants' insider sales during the Class Period, and found that Defendants' DeCesare and Harms took advantage of the Company's artificially-inflated stock price to reap nearly $12 million in stock sales, which are dramatically out of line with their prior trading history or over four and a half times the dollar amount that Defendant DeCesare reaped from open market sales before the Class Period, and nearly two and a half times the dollar amount that Defendant Harms reaped from open market sales before the Class Period.

Based on the results of the investigation and Meitav's counsel's efforts, Meitav drafted and filed a comprehensive 38-page Amended Complaint on behalf of all persons or entities who purchased or otherwise acquired the common stock of Forescout between February 7, 2019 and May 15, 2020.  Indeed, Meitav and its counsel have already added significant value to all investors who purchased Forescout stock between February 7, 2019 and May 15, 2020, and Meitav and its counsel will continue to adequately represent the interests of all investors during the Class Period. Obviously none of the competing movants can say the same.  Indeed, it was only after Meitav filed its detailed Amended Complaint on May 22, 2020, expanding the Class Period to end on May 15, 2020, that the Arbitrage Funds showed any interest in this litigation and filed their own complaint alleging only a sub-period of the Class Period in the Amended Complaint.

Fifth, Meitav has further demonstrated its adequacy by selecting qualified counsel, Pomerantz, with substantial experience litigating securities class actions. *See* Dkt. No. 18-4; *Lechner v. InfuSystem Holdings, Inc*., 2:16-cv-02895-ODW (AGRx), 2017 U.S. Dist. LEXIS 220297, at *11 (C.D. Cal. Feb. 17, 2017). Like Meitav, Pomerantz by now has the benefit of extensive institutional knowledge of this litigation, and thus a degree of familiarity with the case that no other firm can match.

For all of the foregoing reasons, Meitav strongly satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's "strong presumption" of being the Lead Plaintiff. *McCracken v. Edwards Lifesciences Corp*., 8:13-CV-1463-JLS (RNBx) *et al.*, 2014 U.S. Dist. LEXIS 2147, at *13-*14 (C.D. Cal. Jan. 8, 2014).

To overcome the strong presumption entitling Meitav to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is subject to unique defenses or otherwise inadequate to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists with respect to Meitav and any suggestions to the contrary should be rejected as mere speculation.

**B.** **The Competing Motions Should be Denied**

**1.** **The Timing of the Arbitrage Funds' and the Glazer Funds' Purchases of Forescout Securities and the Funds' Trading Strategies Render Them Inadequate, Atypical and Subject to Unique Defenses**

Both the timing and exotic strategies involved in the purchases of Forescout securities by the competing movants make them inadequate and atypical within the meaning of Rule 23, and also subject to disqualifying unique defenses within the meaning of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Specifically, all of the purchases by the Arbitrage Funds and the Glazer Funds occurred between February 6, 2020 and May 15, 2020—that is, during the final three-and-a-half months of a 15-month Class Period after the announcement of the Advent Acquisition. *See* Dkt. No. 65-2.

11

The timing of the competing movants' purchases mandates denial of their motions for several reasons. First, with purchases limited to a period of time comprising less than 4 months of the total Class Period, the Glazer and Arbitrage Funds are clearly not typical of investors that purchased for the entire 12 month sub-period of February 2019 to February 2020, as their claims in this Action will necessarily focus on different events and conduct by the Defendants. Second, as the Arbitrage Funds have shown by alleging the sub-period in its complaint filed after Meitav had already expanded the Class Period to include the full 15 months, and as Glazer has shown by citing the Arbitrage Complaint in filing its motion, these two groups, whose only purchases occurred during the limited three-and-a-half month post-Acquisition period, have made it clear they only have strong incentives to prosecute fraud claims in connection with the limited sub-period of time, and conversely do not have an incentive to vigorously litigate fraud claims arising from the rest of the Class Period. Indeed, the Arbitrage Complaint evidences that the Arbitrage Funds were only interested in pursuing claims in the sub-period. Notably, the alleged false and misleading statements alleged by the Arbitrage Funds in their complaint were only related to the Advent Acquisition. Third, the timing of their purchases subjects the competing movants to non-speculative unique defenses. As this Action proceeds, if the alleged false and misleading statements occurring during the sub-period are not determined to provide a basis for fraud claims against the Defendants, then the Class Period will effectively be truncated, with the result that Arbitrage Funds will not have purchased any Forescout securities within the new Class Period. This will subject them to the unique defense that they lack standing to pursue fraud claims in the Action, which will consume a significant amount of the litigation to address an issue unique to them, at the expense of the Class-wide claims. In stark contrast, Meitav has made purchases throughout the Class Period, particularly both before and during the Acquisition periods, rendering it most capable of serving the interests of the entire Class.

Under similar circumstances, courts throughout the federal bar have raised concerns about the adequacy or typicality of a plaintiff to lead a securities class action. *See Kanefsky v. Honeywell Int'l, Inc.*, 18-cv-15536, 2020 U.S. Dist. Lexis 87108, at \*7 n.4 (D.N.J. May 18, 2020) (noting

that plaintiff's purchase of shares after the first corrective disclosure raised concerns about typicality and adequacy, and directing the parties to resolve foreseeable class representation issues to avoid additional delay); *Erickson v. Snap, Inc.*, 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050, *8-9 (C.D. Cal. Sep. 18, 2017) (ruling that a large purchase of shares after corrective disclosures could render a plaintiff atypical, and refusing to appoint plaintiff as lead who purchased 60% of his stock following partial disclosures even though the plaintiff nominally had the largest loss).

The fact that both the Glazer and Arbitrage Funds made all of their transactions after the announcement of the Advent Acquisition is hardly a coincidence. Both movants funds engage in unorthodox, self-proclaimed trading strategies related to betting on whether an announced merger will be consummated. As such, their trading strategy renders them atypical of the Class within the meaning of Rule 23 and subjects them to unique defenses within the meaning of 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Their strategy is not grounded upon the fraud-on-the-market doctrine or presumption of reliance articulated in *Basic* that is at the heart of the consolidated complaint in this Action. Courts decline to appoint as lead plaintiffs movants who employ unusual trading strategies that are not typical of average investors. *See*, *e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *36 (N.D. Cal. Aug. 22, 2008) (finding movant atypical because of day-trading investment strategy, "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility. Specifically, it may be subject to a unique defense regarding its reliance upon publicly available information."); *In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *26 (N.D. Cal. May 3, 2005) (in-and-out traders found to be atypical of class); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *18 (D. Ariz. Apr. 4, 2008) (denying motion by investor who employed a "unique trading pattern").[3]

---

[3] *See also In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000) (denying lead plaintiff motion by hedge fund because it "was an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates"); *Bang v. Acura*

The websites and promotional materials published by the Glazer and Arbitrage Funds demonstrate that these funds utilize, as a matter of course, complex and unorthodox trading strategies focused on merger arbitrage, which essentially places bets as to whether or not an announced merger will be consummated. Specifically, "[a] merger arbitrageur will review the probability of a merger not closing on time or at all and will then purchase the stock before the acquisition, expecting to make a profit when the merger or acquisition completes." *See* Investopedia, "Merger Arbitrage" (https://www.investopedia.com/terms/m/mergerarbitrage.asp#:~:text=Merger%20arbitrage%20is%20an%20investment,inefficiencies%20surrounding%20mergers%20and%20acquisitions). For example, the investment manager of certain of the Arbitrage Funds, Water Island, touts on its website the fact that it "does ***not*** invest based on market fundamentals." *See* https://waterislandcapital.com/strategies (accessed on October 10, 2020) (emphasis added). Rather, Water Island describes itself as utilizing "event-driven investment strategies" (https://waterislandcapital.com/firm), "look[ing] for securities that we believe are significantly mispriced" (https://waterislandcapital.com/strategies), and touts its use of "short selling and the purchasing and selling of options, among other hedging strategies (https://arbitragefunds.s3.amazonaws.com/filings/Prospectus.pdf). It describes itself as "[f]ocusing on events rather than markets" by employing "a highly specialized strategy designed to profit from the behavior of equity and debt instruments trading within the timelines of specific corporate events, such as mergers [and] acquisitions[.]" *See* https://waterislandcapital.com/strategies. The Glazer Funds' investment manager describes similar strategies: "event-driven investing (or trading) that aims to take advantage of market miscalculations" (https://finance.yahoo.com/news/paul-glazer-glazer-capital-return-191719626.html). Indeed, there exists a significant likelihood that both of these funds did not only buy common stock as part of their exotic merger arbitrage strategies, but engaged in options

*Pharm., Inc.*, No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550, at \*16 (N.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high-frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions.").

and short-selling as well as part of their touted "hedging strategies". While Meitav's Certification lists *all* of its transactions in Forescout securities, the Glazer Funds are far more circumspect, only revealing their transactions in Forescout "common stock". The possibility that the Glazer Funds either sold Forescout securities short or made option transactions betting ***against*** the share price would clearly render them incapable of serving as Lead Plaintiff. *See*, *e.g.*, *In re Critical Path*, 156 F. Supp. 2d 1102, 1109-10 (denying lead plaintiff motion by short seller, finding it "a poor choice to appoint a class representative who engaged in a trading practice premised on the belief that the stock would fall" because "short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."); *Kelley v. Rambus, Inc.*, No. C 07-1238 JF(HRL), 2008 U.S. Dist. LEXIS 100319, at *51 (N.D. Cal. Dec. 9, 2008), *aff'd*, 384 F. App'x 570 (9th Cir. 2010) ("Plaintiffs appear to have held short positions on Rambus stock . . . casting serious doubt on their purported reliance on the market price of that stock or the company's financial or proxy statements"). At the very least, the Glazer Funds should be required to list on the record ***all*** of their transactions in Forescout securities, not only those in Forescout "common stock".

These trading strategies are triply disqualifying. First, they illustrate the atypicality of the fund movants with respect to the Class that they seek to represent. This Class consists of persons and entities who, in good faith, took Forescout at its word when the Company made positive statements about its operations and prospects. A typical class member did not, for example, seek to identify market inefficiencies or place exotic bets as to short-term movements in Forescout's stock price based on the likelihood and timing of the Advent Acquisition. Rather, the Class members purchased Forescout securities for the most fundamental of reasons: They believed Forescout's positive statements and purchased Forescout securities at prices that appeared to accurately reflect the value of investing in the Company. To appoint as the Class representative one or more funds who boast of eschewing such "market fundamentals" and identifying market inefficiencies is wholly counterintuitive and at odds with Rule 23's requirements, because those

investors will necessarily have fraud claims that implicate different events and conduct than the fraud claims of other Class members.

Second, the nature of the funds' trading strategies also makes then inadequate Class representatives because it essentially guarantees that the funds will myopically focus ***primarily*** on fraud claims arising from alleged misrepresentations and/or omissions with respect to the Acquisition, if appointed as Lead Plaintiff, to the detriment of the claims of other class members— the ***majority*** of class members—who purchased Forescout securities during the initial 12 months of the Class Period.  This concern is not merely speculative.  As discussed above, the Arbitrage Funds members' complaint filed on June 10, 2020 (after Meitav filed its Amended Complaint) only alleged false statements during the Acquisition period and primarily focused on false and misleading statements relating to the Advent Acquisition.  *See generally The Arbitrage Fund et al. v. Forescout Technologies, Inc. et al.*, 3:20-cv-03819 (N.D. Cal.), Dkt. No. 1.  As such, having already demonstrated a complete lack of interest in pursuing the pre-Acquisition claims, one could hardly expect vigorous advocacy on behalf of the purchasers during the period of February 7, 2019 through February 5, 2020 just because this Court consolidated these two cases.

Third, not only would appointing either of the fund movants as Lead Plaintiff be at odds with the typicality and adequacy requirements of Rule 23, it would also entrust Class leadership to a representative subject to crippling unique defenses.  Considering the funds' public statements on their respective websites and marketing materials regarding their trading strategies, Defendants will clearly have ample ammunition with which to challenge the Class representative at the class certification stage of this Action.  First and foremost, Defendants will seek, likely with success, to rebut the *Basic* presumption of reliance that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.  Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action."  *Basic*, 485 U.S. at 247.

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that '[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

*Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017) (citations omitted). The *Basic* presumption is rebuttable if a defendant "can make 'any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at fair market price[.]'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 292 (S.D.N.Y. 2003) (quoting *Basic*, 485 U.S. at 248).

At the class certification stage of this Action, after having the benefit of discovery into the Lead Plaintiff's investment decisions, Defendants will clearly have a field day with the fact that these funds seek to identify market *inefficiencies*, rather than trading on the premise of market efficiency and relying on the integrity of market prices, as well as their use of hedging strategies such as short-selling and options transactions. In the most favorable scenario for the Class, the Lead Plaintiff would be forced to devote ample time and resources to litigating this issue, which will necessarily hinder its capacity to vigorously pursue the Class's fraud claims. More likely—and unfortunately for the Class—Defendants would succeed in severing the *Basic* presumption, thereby defeating class certification and needlessly dooming the claims of the Class. Meitav respectfully submits that the Class should not be burdened with a representative subject to such debilitating issues.

### 2. The Prior Conduct of the Arbitrage Funds' Member Muoio & Co. Disqualifies the Arbitrage Funds from Serving as Lead Plaintiff

The Court should not appoint the Arbitrage Funds as Lead Plaintiff because the prior conduct of the CEO of one of their members, Muoio & Co., raises legitimate questions as to their fitness to serve as fiduciaries. Courts decline to appoint as fiduciaries movants whose backgrounds raise questions as to their capacity to ethically fulfill the duties of a fiduciary. *Isaacs*

17

*v. Musk*, No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *12, *15 (N.D. Cal. Nov. 27, 2018) (denying motion, finding that movant "will likely be subject to unique defenses" due to prior misconduct "that may well become the focus of the litigation to the detriment of the class"); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *21–25 (S.D. Cal. Dec. 31, 2003) (finding lead plaintiff movant inadequate because he was subject to "complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments" and "had his National Association of Securities Dealers ('NASD') membership terminated"); *Xianglin Shi v. SINA Corp.*, 2005 U.S. Dist. LEXIS 13176, at *14-*15 (S.D.N.Y. July 1, 2005) (denying motion by movant with criminal background because "[h]onesty and trustworthiness are . . . relevant factors in determining and [*sic*] individual's ability to serve as a class representative").

The Arbitrage Funds are plainly ineligible to serve as Lead Plaintiff because one of their members, Muoio & Co., is under the control of an individual who was previously found to have violated his fiduciary duty of loyalty and/or good faith to the investors of a company of which he was a director. In 2004, Muoio & Co.'s CEO, Salvatore Muoio, was a director of the company ECM. *See Emerging Communs.*, No. 16415, 2004 Del. Ch. LEXIS 70, at *5. In that capacity, Muoio voted in favor of a privatization proposal that included approval of a tender offer providing $10.25 per share to ECM shareholder. *Id.* at *34. ECM shareholders filed a class action alleging breach of fiduciary duty by Muoio and other directors of ECM, alleging that the $10.25 per share merger consideration was an unfair price and the product of unfair dealing. *Id.* at *36. Following a trial on the merits, the court ruled in favor of the plaintiffs, specifically finding, *inter alia*, that Muoio had violated his fiduciary "duty of loyalty and/or good faith." *Id.* at *142.

> Informed by his specialized expertise and knowledge, Muoio conceded that the $10.25 price was "at the low end of any kind of fair value you would put[.]" . . . In these circumstances, it was incumbent upon Muoio, as a fiduciary, to advocate that the board reject the $10.25 price that the Special Committee was recommending. As a fiduciary knowledgeable of ECM's intrinsic value, Muoio should also have gone on record as voting against the proposed transaction at the $10.25 per share merger price. Muoio did neither. Instead he joined the other directors in voting, without objection, to approve the transaction.

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-cv-00076-SI

* * *

> The credible evidence persuades the Court that Muoio's conduct is explainable in terms of only one of two possible mindsets. The first is that Muoio made a deliberate judgment that to further his personal business interests, it was of paramount importance for him to exhibit his primary loyalty to Prosser [Chairman and CEO of ECM]. The second was that Muoio, for whatever reason, "consciously and intentionally disregarded" his responsibility to safeguard the minority stockholders from the risk, of which he had unique knowledge, that the transaction was unfair. If motivated by either of those mindsets, Muoio's conduct would have amounted to a violation of his duty of loyalty and/or good faith. Because Muoio has not established to the satisfaction of the Court, after careful scrutiny of the record, that his motivation was of a benign character, he is not exculpated from liability to . . . the shareholder class.

*Id.* at *144-*147.

If the Arbitrage Funds were to be appointed as Lead Plaintiff, then their litigation decisions on behalf of the Forescout shareholder Class will be informed by the input of Muoio, an individual who has already on at least one occasion violated his fiduciary duties to the shareholders of another company. The most significant litigation decision that the Lead Plaintiff will make in this Action is whether to approve a settlement with the Defendants. The fact that one of the Arbitrage Funds' decisionmakers has already demonstrated a readiness to violate his fiduciary duties by placing his own interests ahead of the best interests of shareholders in a highly analogous context plainly disqualifies the Arbitrage Funds from appointment as fiduciaries.

Meitav respectfully submits that the Court should be wary of entrusting the leadership of this Class to a movant whose prior conduct calls into question his readiness to abide by the law and to place the welfare of others above his own.

## C.    In the Alternative, the Court Should Appoint Meitav as a Co-Lead Plaintiff

In the alternative, should the Court decide to appoint a movant other than Meitav as Lead Plaintiff in this Action, then Meitav respectfully requests that the Court appoint Meitav as a Co-Lead Plaintiff, and its counsel, Pomerantz, as Co-Lead Counsel with respect to the claims arising in connection with false and/or misleading statements alleged to have occurred during the original class period (*i.e.*, between February 7, 2019 and October 9, 2019). As discussed above, none of

19

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-cv-00076-SI

the other movants purchased Forescout common stock during both the pre-Acquisition and post-Acquisition periods.  As such, only Meitav has an interest in prosecuting claims related to *all* of the misstatements alleged in this Action.  Meitav's continued service in a leadership role would also ensure a degree of continuity, which would benefit the Class by avoiding the disruption inherent in substituting a new Lead Plaintiff at this stage of the litigation.  *See*, *e.g.*, *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 381 (S.D.N.Y. 2000) (acknowledging that "substitution of a new Lead Plaintiff . . . is likely to cause dislocation and delay"); *In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 488 (D.N.J. 2001) (pairing the existing lead plaintiff with a new movant asserting the largest financial interest when subsequently-filed securities class actions were consolidated with the existing class action).  Here, as the Court-appointed Lead Plaintiff in the first-filed antecedent action against Forescout, Meitav and its counsel, Pomerantz, by now have extensive institutional familiarity with the relevant facts, law and procedural posture of this litigation—a familiarity that no other movant can claim.  Moreover, it was only after Meitav filed its Amended Complaint demonstrating the compelling claims against Defendants that *any* other class member expressed an interest in this case.  Plaintiff Christopher L. Sayce, with his counsel, Pomerantz, filed the first action against Defendants, and Meitav was the only movant that sought to be Lead Plaintiff on the March 2, 2020 deadline.  *See* Dkt. No. 17.  It was only *after* Meitav and its counsel conducted a thorough investigation culminating in the Amended Complaint filed on May 22, 2020 that any other investor (with their counsel) demonstrated an interest in this lawsuit.  Indeed, the Arbitrage Funds did not file an action until June 10, 2020, and then only for the sub-period of February 6, 2020 to May 15, 2020 out of the full Class Period of February 7, 2019 to May 15, 2020.   Meitav is the only plaintiff that has fully developed claims against Forescout for the entire period of February 7, 2019 to May 15, 2020.  Meitav has already conducted an investigation that, among other things, uncovered CWs and utilized consulting expertise to draft an Amended Complaint.  Meitav respectfully submits that the Class would significantly benefit if Meitav and its counsel were to retain at the very least a co-leadership role alongside another movant in this Action.

## III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in its motion brief (Dkt. No. 81), Meitav respectfully requests that the Court grants its motion in all respects and deny the competing motions.

Dated:  October 13, 2020                    Respectfully submitted,


                                            **POMERANTZ LLP**

                                            */s/ Jennifer Pafiti*
                                            Jennifer Pafiti (SBN 282790)
                                            1100 Glendon Avenue, 15th Floor
                                            Los Angeles, California 90024
                                            Telephone: (310) 405-7190
                                            jpafiti@pomlaw.com

                                            **POMERANTZ LLP**
                                            Patrick V. Dahlstrom
                                            (admitted *pro hac vice*)
                                            Omar Jafri
                                            (admitted *pro hac vice*)
                                            Ten South LaSalle Street, Suite 3505
                                            Chicago, Illinois 60603
                                            Telephone: (312) 377-1181
                                            Facsimile: (312) 377-1184
                                            pdahlstrom@pomlaw.com
                                            ojafri@pomlaw.com

                                            **POMERANTZ LLP**
                                            Jeremy A. Lieberman
                                            (admitted *pro hac vice*)
                                            J. Alexander Hood II
                                            (admitted *pro hac vice*)
                                            600 Third Avenue, 20th Floor
                                            New York, NY 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
                                            jalieberman@pomlaw.com
                                            ahood@pomlaw.com

                                            *Counsel for Lead Plaintiff Movant*
                                            *and Proposed Lead Counsel for the Class*

## PROOF OF SERVICE

I hereby certify that on October 13, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

> */s/ Jennifer Pafiti*
> Jennifer Pafiti

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-cv-00076-SI