**ABRAHAM, FRUCHTER**
    **& TWERSKY, LLP**
IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
TAKEO A. KELLAR (SBN 234470)
TKellar@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

JEFFREY S. ABRAHAM
(Admitted *Pro Hac Vice*)
JAbraham@aftlaw.com
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

*Counsel for Movant the Glazer Funds*
*and Proposed Lead Counsel for the Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, on behalf of themselves and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE and CHRISTOPHER HARMS,<br><br>Defendants. | Case No. 3:20-cv-00076-SI<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE GLAZER FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>Date: November 6, 2020<br>Time: 10:00 a.m.<br>Judge: Hon. Susan Illston<br>Courtroom: 1, 17th Floor |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...............................................................................................................ii

I.    PRELIMINARY STATEMENT ...............................................................................................1

II.    ARGUMENT ............................................................................................................................1

    A.    The Glazer Funds Are the Presumptive Lead Plaintiff Because They Have the Largest Financial Interest of any Competing Movant .......................2

    B.    The Competing Movants Provide No Legitimate Basis to Rebut the Presumption That the Glazer Funds Are the Most Adequate Plaintiff ..............4

        1.    The Glazer Funds Are Not Subject to a Unique Defense Based Upon Their Post-April 30, 2020 Purchases ...........................................4

        2.    Meitav Fails to Demonstrate That the Glazer Funds Did Not Rely on the Defendants' Statements.................................................................8

        3.    The Glazer Funds Not Having Purchased Stock in the Earlier Part of the Class Period Does Not Make Them an Inadequate Class Representative....................................................................................10

        4.    The Work Done by Meitav's Counsel Does Not Create an Entitlement to a Leadership Position ...................................................13

III.    CONCLUSION .......................................................................................................................13

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF THE GLAZER FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 3:20-cv-00076-SI

- i -

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Armour v. Network Assocs., Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ............................................................................4

*Banerjee v. Avinger, Inc.*,
    No. 17-cv-03400-CW, 2017 WL 4552063 (N.D. Cal. Oct. 11, 2017) ......................11

*Bang v. Acura Pharm., Inc.*,
    No. 10 C 5757, 2011 WL 91099 (N.D. Ill. Jan. 11, 2011) .........................................9

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) .................................................................................................8

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ...................................................................................11

*Cohen v. U.S. Dist. Court for N. Dist. of California*,
    586 F.3d 703 (9th Cir. 2009) ...................................................................................13

*Deitrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ..............................................................................7

*Doherty v. Pivotal Software, Inc.*,
    No. 3:19-CV-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ..................4

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) .................................................................................................3

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ......................9

*Erickson v. Snap, Inc.*,
    No. 2:17-cv-03679-SVW-AGR, 2017 BL 484476 (C.D. Cal. Sept. 18, 2017).........12

*Godinez v. Alere, Inc.*,
    No. 1:16-CV-10766 (PBS) (D. Mass.) ......................................................................9

*Goldstein v. Puda Coal, Inc.*,
    827 F. Supp. 2d 348 (S.D.N.Y. 2011) ....................................................................6, 7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) .................................................................................................8

*Hessefort v. Super Micro Computer, Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ..................................................................4, 8

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ............................................................................11

*In re Atossa Genetics Inc Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017) ....................................................................................5

*In re BofI Holding, Inc. Sec. Litig.*,
    2020 WL 5951150 (9th Cir. Oct. 8, 2020) ............................................................6, 7

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010).................................................................3

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .........................................................................1, 13

*In re Connetics Corp. Sec. Litig.*,
    257 F.R.D. 572 (N.D. Cal. 2009) ..................................................................8, 11

*In re IAsia Works, Inc., Sec. Litig.*,
    No. C 01-3224 SI, 2002 WL 1034041 (N.D. Cal. May 15, 2002) ............................5

*In re MicroStrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ..................................................................9

*In re Silicon Storage Tech., Inc.*,
    No. C 05-0295 PJH, 2005 BL 83441 (N.D. Cal. May 3, 2005) ................................9

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009).........................................................................7

*In re Valence Technology Secs. Litig.*,
    No. C 95-20459 JW, 1996 WL 119468 (N.D. Cal. 1996).....................................7, 8

*Kanefsky v. Honeywell Int'l Inc.*,
    No. 18-CV-15536, 2020 WL 2520669 (D.N.J. May 18, 2020) ...............................12

*Kanefsky v. Honeywell Int'l, Inc.*,
    No. 18-CV-15536, 2020 BL 271129 (D.N.J. July 21, 2020) ..................................12

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007).........................................................................9

*Levy v. Gutierrez*,
    No. 14-CV-00443-JL, 2015 WL 13648077 (D.N.H.  May 20, 2015).........................6

*Mendali v. Och-Ziff Capital Mgmt. Grp. LLC*,
    328 F.R.D. 86 (S.D.N.Y. 2018).........................................................................7

*Milbeck v. TrueCar, Inc.*,
    No. 218CV02612SVWAGR, 2019 WL 2353010 (C.D. Cal. May 24, 2019)...........12

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ...............................................................................3, 6, 11

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013) ..............................................................................11

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016)..............1, 3, 13

*Rocco v. Nam Tai Electronics, Inc.,*
    245 F.R.D. 131 (S.D.N.Y. 2007)..................................................................................8

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.,*
    136 F.R.D. 658 (D. Or. 1991)....................................................................................8

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.,*
    177 F. Supp. 3d 838 (D. Del. 2016) ...........................................................................9

*Tsirekidze v. Syntax-Brillian Corp.,*
    No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008)....................9

**Statutes, Rules and Regulations**

15 U.S.C. § 78u–4(a)(2)(A)(iv) ...............................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .............................................................................................4

15 U.S.C. § 78u-4(b)(3)(b)(iii)(bb) ............................................................................................2

Fed. R. Evid. 201(b) ...................................................................................................................5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF THE GLAZER FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 3:20-cv-00076-SI

- iv -

Glazer Capital Management, L.P., Glazer Enhanced Fund L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd. and Highmark Multi-Strategy 2 (collectively referred to herein as the "Glazer Funds") respectfully submit this reply brief in further support of their motion to be appointed lead plaintiff pursuant to Section 21D(b)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(b)(3)(B), a provision added to the Exchange Act by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.  PRELIMINARY STATEMENT

The Glazer Funds unquestionably have the largest financial interest in the relief sought by the Class and have also made a *prima facie* showing that they are adequate class representatives with claims typical of the other class members making them the presumptive lead plaintiff.  The efforts of the Arbitrage Plaintiffs and Meitav to either claim a larger financial interest or disparage the Glazer Funds' adequacy and typicality are doomed to failure because they are based upon positions directly contrary to those they previously took with this Court in this case as well as inconsistent with the relevant facts and the weight of controlling legal authority.[1]  Therefore, and as discussed below in greater detail, the Glazer Funds should be appointed as the Lead Plaintiff in this action.

## II.  ARGUMENT

The PSLRA requires the Court to "examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *4 (N.D. Cal. May 10, 2016) (quoting *In re Cavanaugh*, 306 F.3d 726, 731 n.8 (9th Cir. 2002)).  Here, (a) the Glazer Funds are the

---

[1]  "Meitav" refers to Meitav Tachlit Mutual Funds Ltd. and "Arbitrage Plaintiffs" refers to The Arbitrage Fund, Water Island LevArb Fund, LP, Water Island Diversified Event-Driven Fund, Water Island Merger Arbitrage Institutional Comingled Master Fund, LP, AltShares Merger Arbitrage ETF, S. Muoio & Co. LLC and Amethyst Arbitrage International Master Fund.  Capitalized terms undefined herein are defined in the Glazer Funds' Memorandum of Points and Authorities in Opposition to the Competing Motions for Appointment as Lead Plaintiff (Dkt. No. 94).

presumptive lead plaintiff because they have the largest financial interest in the relief sought by the Class and (b) there exists no legitimate basis for finding them either inadequate or atypical.

### A. The Glazer Funds Are the Presumptive Lead Plaintiff Because They Have the Largest Financial Interest of any Competing Movant

The Glazer Funds previously demonstrated that they have the largest financial interest of any movant for lead plaintiff in this action. *See* Dkt. No. 94 at 6 (demonstrating the Glazer Funds' losses of $5,273,199 far exceeding the losses claimed by the competing movants). Levin and Meitav both concede that the Glazer Funds possess the largest financial interest, while the Arbitrage Plaintiffs present alternative loss charts utilizing April 30, 2020, rather than May 15, 2020, as the end date for the calculations of the movants' losses. *Compare* Dkt. No. 93 at 1 (Levin's Non-Opposition); Dkt. No. 96 at 7 (Meitav's Opposition) *with* Dkt. No. 97 at 12 (Arbitrage Plaintiffs' Opposition). The Arbitrage Plaintiffs' alternative loss calculations must be disregarded as inconsistent with controlling principles of law.

The PSLRA is pellucid in requiring that the Court look to the "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(b)(3)(b)(iii)(bb); *see also In re Cavanaugh*, 306 F.3d at 730. Here, the relief sought by the Class runs through and including May 15, 2020, as reflected in the complaints filed by both the Arbitrage Plaintiffs and Meitav, as well as the Court-ordered notice disseminated by Meitav on July 29, 2020, and the notice distributed by the Arbitrage Plaintiffs on June 11, 2020. *See* Dkt. 31 (Meitav's Amended Complaint) ¶¶1, 124; *The Arbitrage Fund v. Forescout Techs., Inc.*, No. 3:20-cv-03819-SI, Dkt. No. 1 (N.D. Cal.) (the "Arbitrage Complaint"), ¶¶12, 104; Dkt. No. 38-1 (the Arbitrage Plaintiffs' PSLRA notice stating that May 15, 2020 was the final day of the purported class period); Dkt. No. 65-3 (this Court's order for republication of notice by Meitav's counsel stating that May 15, 2020 was the final day of the purported class period).

Similarly, in their opening brief, the Arbitrage Plaintiffs – prior to their apparent disappointment at not being the presumptive lead plaintiff – used the last day of the class period alleged in the complaint they previously filed with this Court. *See* Dkt. No. 65-2 (identifying their financial interest in the litigation as $3,394,626.17 based upon a May 15, 2020 measuring

date).   Indeed, the Arbitrage Plaintiffs conceded that the transactions in which Forescout common stock was purchased by AED, ARB and MACO, who are members of their group, before April 30, 2020, but sold before May 15, 2020, caused those funds to have no cognizable losses for purposes of the federal securities laws based upon the controlling decision of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).   *See* Dkt. No. 94 at 3-4 (Glazer Funds' Opposition) (citing Dkt. No. 65-2 at 2 (the Arbitrage Plaintiffs' loss calculations)).   Principles of judicial estoppel preclude the Arbitrage Plaintiffs from disclaiming these prior positions they have taken in this litigation, and more specifically in connection with their motion now before the Court.   *See, e.g., New Hampshire v. Maine,* 532 U.S. 742, 743 (2001) (judicial estoppel is designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.").

The Arbitrage Plaintiffs' argument must also be rejected because it improperly seeks to conflate identifying the presumptive lead plaintiff with the issue of typicality, which is a separate analysis taking place only after the movant with the largest financial interest has been properly identified by the Court.   *See, e.g., Robb,* 2016 WL 2654351, at *2 (the court must consider which movant has the largest financial interest and only then determine whether that movant's claims are typical); *see also In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433-34 (S.D. Tex. 2010) ("[N]umerous courts have favored using the longest-noticed class period" for purposes of selecting a lead plaintiff )(citing cases)).   In any event, as demonstrated below, the Arbitrage Plaintiffs' typicality argument is meritless given its inconsistency with controlling Ninth Circuit authority as well as a relevant prior decision of this Court.   *See* Point II.B., *infra.*[2]

---

[2]   Indeed, even if April 30, 2020, is used as the proper date to measure damages – which, as discussed above, it cannot be used based upon controlling principles of law –  Meitav has demonstrated that S. Muoio & Co. LLC ("Muoio") is not an adequate class representative based upon the past misconduct of Salvatore Muoio. *See* Dkt. No. 96 at 4-5.  Once the fund managed by Muoio is excluded, the Glazer Funds still have a larger financial interest in the relief sought by the class than the Arbitrage Plaintiffs, even if the relevant period were to end on April 30, 2020. *See* Dkt. No. 98-2.

**B.**     **The Competing Movants Provide No Legitimate Basis to Rebut the Presumption That the Glazer Funds Are the Most Adequate Plaintiff**

The presumptive lead plaintiff "need only make a *prima facie* showing of its typicality and adequacy." *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018). The PSLRA then requires "proof" to overcome the presumption entitling the most adequate plaintiff to appointment as lead plaintiff; speculative assertions are insufficient. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001). Here, the arguments raised by the Arbitrage Plaintiffs and Meitav fail to rebut the presumption afforded to the Glazer Funds and, instead, lack merit.

**1.**     **The Glazer Funds Are Not Subject to a Unique Defense Based Upon Their Post-April 30, 2020 Purchases**

The Arbitrage Plaintiffs contend that the Glazer Funds are subject to a unique defense because many of their purchases occurred after April 30, 2020, the date that Spruce Point Partners ("Spruce Point"), a short-seller, "revealed substantial facts undermining Forescout's prior representations regarding its financial performance." Dkt. No. 97 at 1 (Arbitrage Plaintiffs' Opp.). This argument is inconsistent with the both the relevant facts and the weight of legal authority, including controlling principles of law.

The Arbitrage Plaintiffs' argument is factually infirm because it is initially premised on artfully misrepresenting the nature of the April 30, 2020, Spruce Point statements. In truth and in fact, Spruce Point did ***not*** issue a formal report that day but, instead, issued a press release stating that Spruce Point would "be sharing details of [its] thoughts and research opinions throughout the day exclusively on Twitter @sprucepointcap." *See* Declaration of Jeffrey S. Abraham in Support of the Motion of the Glazer Funds for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Abraham Decl."), filed herewith, at Exhibit ("Exh.") A (press release). Those Tweets were, in turn, issued throughout the day on April 30, 2020 with the final Tweet made on May 1, 2020. *See* Abraham Decl. ¶3 and Exh. B. The report in the form in which the Arbitrage Plaintiffs have submitted to the Court was not issued on April 30, 2020 but, instead, on May 12, 2020. *See* Dkt. No. 98-4 at 4.

Regardless of the date, however, the Arbitrage Plaintiffs ignore that Spruce Point's public statements did not disclose anything new and were exclusively "***based upon publicly available information***." Dkt. No. 98-4 (May 12, 2020 Spruce Point's report) at 3/56 (emphasis added); *see also* Abraham Decl., Exh. B at 2/34 (Spruce Point's Twitter Disclaimer noting that "all information has been obtained from public sources we believe to be accurate and reliable, and who are not insiders or connected persons of the stock covered…."). In addition, Spruce Point also did not disclose, nor could it have disclosed, that Advent would seek to avoid completing its acquisition of Forescout. Spruce Point, instead, stated its opinion that "Advent should consider its offer lower or abandoning the transaction outright." *See* Dkt. No. 97 at 8 (Arbitrage Plaintiffs' Opp.) (quoting Dkt. No. 98-4 at 13). Spruce Point also disclosed that it had accumulated a short position in Forescout's stock and hoped to profit through the information it packaged as a report. *See* Dkt. No. 98-4 at 7.

The facts also demonstrate that investors did not take the Spruce Point analysis to be a disclosure of adverse facts on April 30, 2020, as evidenced by there being no material impact on the trading price of Forescout's stock. Rather, from Spruce Point's first tweet at 10:08 am on April 30, 2020 (*see* Abraham Decl., Exh. B at 5/34), to close of markets that day, Forescout's stock declined by seven cents, from $31.83 to $31.76. *See* Abraham Decl., Exh. C (minute-by-minute stock prices on April 30, 2020 and May 1, 2020) and Exh. D (graphic representation of Forescount common stock trading price on April 30, 2020).[3] By the close of trading on May 1, 2020, Forescout common stock was trading for $31.92, representing a similarly small increase from the $31.83 price of Forescout common stock when Spruce Point started Tweeting. *See* Abraham Decl., Exh. C. Indeed, the Arbitrage Complaint does ***not*** allege that the Spruce Point

---

[3]    This Court may take judicial notice of facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See also In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017) (granting a "motion for judicial notice because historical stock prices are 'not subject to reasonable dispute' and 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"). Information concerning the trading price of publicly listed securities falls within that category of information. *See, e.g., In re IAsia Works, Inc., Sec. Litig.*, No. C 01-3224 SI, 2002 WL 1034041, at *7 (N.D. Cal. May 15, 2002) (recognizing stock prices are appropriate matters for judicial notice).

analysis or Tweets of April 30, 2020, constituted a corrective or partial disclosure, let alone the key disclosure, and makes no allegation concerning any impact of the Spruce Point analysis on the trading price of Forescout common stock. Case No. 3:20-cv-03819, Dkt. No. 1, ¶53 (the only mention of the Spruce Point disclosures in the Arbitrage Complaint).

Instead, the Arbitrage Plaintiffs alleged in the complaint that they filed with this Court that the putative class period extended through May 15, 2020, pleading only one corrective disclosure made on May 18, 2020, and including an allegation that a May 11, 2020, Forescout press release was materially false or misleading and the source of damages to class members. *See* Case No. 3:20-cv-03819, Dkt. No. 1, ¶¶12, 104. As a result, the Arbitrage Plaintiffs are estopped from making any argument to the contrary "given that [they] proposed a class period that extends until the date of [the final] corrective disclosure." *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 & n.6 (S.D.N.Y. 2011); *see also Levy v. Gutierrez*, No. 14-CV-00443-JL, 2015 WL 13648077, at \*4 & n.3 (D.N.H. May 20, 2015) (rejecting a similar argument where "the date of that disclosure bears no relationship to the class periods alleged in the complaint"); *see also New Hampshire v. Maine, supra.*

*In re BofI Holding, Inc. Sec. Litig.*, 2020 WL 5951150 (9th Cir. Oct. 8, 2020), demonstrates that Spruce Point's press release and Tweets of April 30, 2020 cannot reasonably be considered even a partial corrective disclosure. *BofI* involved Internet posts made by a short-seller which were based upon its investigation of nominally public information, which included the short-seller "scouring through hundreds of Uniform Commercial Code filings, bankruptcy court documents, and other companies' registration documents" in order to identify entities with which BofI had "hidden its relationship." *Id.* at \*11. In concluding in the context of a motion to dismiss that the short-seller's report did not constitute a corrective disclosure of the alleged fraud, the Ninth Circuit held "it is not plausible that the market reasonably perceived these posts as revealing the falsity of BofI's prior misstatements, thereby causing the drops in BofI's stock price on the days the posts appeared." *Id.* at \*12. The Ninth Circuit further stated that its holding was based on the fact that "[t]he posts [1] were authored by anonymous short-sellers [2] who had a financial incentive to convince others to sell, and [3] the posts included

disclaimers from the authors stating that they made 'no representation as to the accuracy or completeness of the information set forth in this article.'" *Id.*

Here too, the Spruce Point report was authored by a short-seller with clear financial incentives to precipitate a sell-off of Forescout common stock through publication of a report that also disclaimed the accuracy of the representations made therein. *See* Dkt. No. 98-4 at 3, 7. Indeed, the only factor distinguishing the Spruce Point report with the short-seller report at issue in *Bofl* is that Spruce Point did not publish its report anonymously – a distinction that ultimately proves meaningless. *See, e.g., Mendali v. Och-Ziff Capital Mgmt. Grp. LLC*, 328 F.R.D. 86, 92 (S.D.N.Y. 2018) (the claims of the plaintiff were typical even though he purchased stock after *The Wall Street Journal* disclosed that the company was facing an investigation); *Goldstein*, 827 F. Supp. 2d at 355 & n.6 (purchases after third-party report did not make the plaintiffs' claims atypical) (citing *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009); *Deitrich v. Bauer*, 192 F.R.D. 119, 125 n.1 (S.D.N.Y. 2000)).

If anything, the facts supporting the short-seller report in *BofI* being a corrective disclosure were far stronger than in this action because the *BofI* short-seller report involved digging through information that was only "nominally" public, including those of a hidden business relationship. 2020 WL 5951150 at *11. In addition, the short-seller report in *BofI* could be tied to an actual decline in the price of BofI stock. *Id.* at *10 (addressing "each of the eight posts [by short-sellers] that were followed by a decline in stock price."). Here, in contrast, Spruce Point's analysis depended on facts which were widely disseminated, did not involve any hidden business relationship and, accordingly, the price of Forescout's stock did not react to the April 30, 2020 press release and the related Tweet storm. *See,* p. 5, *supra.*

*In re Valence Technology Secs. Litig.*, No. C 95-20459 JW, 1996 WL 119468 (N.D. Cal. 1996), the lead case cited by the Arbitrage Plaintiffs, demonstrates just how far afield the facts of this case are from one in which the defendants could ever claim that the Spruce Point analysis constituted full disclosure of the underlying fraud. In *Valance,* the relevant disclosure was made by ***the company*** that there would be a significant delay in creating a commercially viable product, causing a ***stock price decline of 46%***. *Id.* at *1-2. The April 30, 2020, analysis by

Spruce Point, in contrast, involves a short-seller analysis causing no material change in the price of Forescout's stock.

In any event, even assuming, *arguendo*, that the Spruce Point analysis can be considered a partial corrective disclosure – and it clearly cannot for the reasons discussed above – it would make no difference because "[t]he weight of authority is 'that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement.'" *Hessefort*, 317 F. Supp. 3d at 1061 (quoting *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009) (Illston, J.) (concluding the same at the more rigorous class certification stage)). Indeed, this Court's prior decision in *Connetics* rejected the analysis of *Valence* as well as almost every case upon which the Arbitrage Plaintiffs now seeks to rely. 257 F.R.D. at 577 (citing *Valence, supra, Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991), and *Rocco v. Nam Tai Electronics, Inc.,* 245 F.R.D. 131, 136 (S.D.N.Y. 2007)). The decisions cited by the Arbitrage Plaintiffs pre-date *Connetics* and provide no reason for this Court to revisit its holding in *Connetics*.

### 2. Meitav Fails to Demonstrate That the Glazer Funds Did Not Rely on the Defendants' Statements

Meitav contends that the Glazer Funds "did **not** make their investment decisions in reliance upon the Defendants' Class Period statements, but rather as part of a strategy for betting whether or not the Advent Acquisition would be consummated" which, it argues, calls into question the Glazer Funds' ability to utilize the presumption of reliance established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). Dkt. No. 96 at 4 (Meitav's Opposition) (emphasis in original). Meitav's argument lacks merit as the Supreme Court has recognized that a "value investor" who "attempts to 'beat the market' by buying the undervalued stocks and selling the overvalued ones" does not undercut *Basic*'s presumption of reliance. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 273-74 (2014).

The evidence Meitav submits to challenge the Glazer Funds is limited to a quote from a *Yahoo! News* article stating that Glazer Capital, which manages the Glazer Funds, "engages in a 'risk arbitrage' strategy that 'aims to take advantage of market miscalculations just before or after a merger or acquisition.'" Dkt. No. 96 at 8 (Meitav's Opposition). Meitav argues that

Defendants will seek to prove the Glazer Funds did not invest in reliance on Class Period statements, but only as a bet as to whether the Advent Acquisition would be consummated. *Id.* Meitav's argument boils down to its speculation that the Glazer Funds, and all arbitrageurs, did not rely on Defendants' statements and instead chose an investment strategy akin to that of an "in-and-out trader" who does not rely either on market efficiency or statements made by Defendants. Meitav's speculation is unsubstantiated by any facts and posits that the Glazer Funds, with over $1 billion of assets under management, behave like an irrational gambler in investing tens of millions of dollars on a merger's chance of closing without evaluating the relevant class period statements made by Defendants. That does not accurately reflect how arbitrageurs, including the Glazer Funds, make their investments and, indeed, courts have routinely appointed arbitrage funds as lead plaintiffs. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007) (appointing arbitrage funds as lead plaintiffs); *San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, 177 F. Supp. 3d 838, 840 (D. Del. 2016) (same); *Godinez v. Alere, Inc.,* No. 1:16-CV-10766 (PBS) (D. Mass.) (appointing the Glazer Funds as a class representative in a securities class action that settled for $20 million).

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008), *In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH, 2005 BL 83441, at *8 (N.D. Cal. May 3, 2005), *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008), *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000), and *Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 WL 91099, at *6 (N.D. Ill. Jan. 11, 2011), upon which Meitav relies, are not on point because they were cases in which the plaintiffs did not rely on either the statements made by the defendants or the efficiency of the trading market. Instead, the plaintiffs in those cases employed a strategy attempting to take advantage of price disparities in different securities without regard to any representations made by the defendants.

Equally lacking in merit is Meitav's attempt to create new facts by asserting that the Glazer Funds' certification is "circumspect" because it fails to include trades in options or other exotic securities relating to the value of Forescout common stock. *See* Dkt. No. 96 at 14

(Meitav's Opposition). However, the Glazer Funds only traded in Forescout common stock. Abraham Decl. ¶6. Meitav's contention that the Glazer Funds' PSLRA certification is "circumspect" for only listing transactions in Forescout "common stock" (*see* Dkt. No. 96 at 15) ignores that the PSLRA requires a plaintiff to file a certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u–4(a)(2)(A)(iv). Here, Forescout's common stock is the only subject of the complaint. *See* Dkt. No. 31, ¶124.

### 3. The Glazer Funds Not Having Purchased Stock in the Earlier Part of the Class Period Does Not Make Them an Inadequate Class Representative

Meitav also contends that the Arbitrage Plaintiffs are not adequate class representatives for the investors who purchased Forescout common stock from February 2019 through February 2020 because the Arbitrage Plaintiffs did not include that period in the complaint they filed with this Court demonstrating their lack of interest in those claims. *See* Dkt. No. 96 at 10 (Meitav's Opposition). Meitav then seeks to connect the Glazer Funds to this purported demonstrated disinterest in the claims by noting that the Glazer Funds, in their lead plaintiff motion, cited the Arbitrage Plaintiffs' complaint. *Id*. at 12. This argument is based upon multiple levels of speculation which are unsupported by any record facts and do not rise to the requisite level of "proof" required to prove the Glazer Funds inadequate to serve as Lead Plaintiff.[4]

It is well-settled that a lead plaintiff need not have purchased securities after each alleged materially false or misleading statement. This Court has previously held that courts have "repeatedly recognized that putative intra-class conflicts relating to the times at which particular class members purchased their securities, and which could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods, relate to damages and do not warrant denial of class certification." *Connetics*, 257

---

[4]    It is irrational to connect the Glazer Funds to actions taken by, or the purported intentions of, the Arbitrage Plaintiffs, as Meitav attempts to do based solely upon the Glazer Funds citing allegations from the Arbitrage Plaintiffs' complaint in their lead motion papers (*see* Dkt. No. 96 at 12), especially given that the Glazer Funds also cited to Meitav's amended complaint. *See* Dkt. No. 63 at 5-7; *see also* Dkt. No. 66-3 (certifying having reviewed both complaints).

F.R.D. at 578 (quoting *In re Alstom SA Sec. Litig.,* 253 F.R.D. 266, 277 (S.D.N.Y. 2008) (citing *Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir. 1975))).  *Banerjee v. Avinger, Inc.*, No. 17-cv-03400-CW, 2017 WL 4552063, at *3 (N.D. Cal. Oct. 11, 2017), is also on point in holding that the timing of a movant's purchases were insufficient to subject him to a unique defense.  *See also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013) ("Nothing in the PSLRA indicates that district courts must choose a Lead Plaintiff with standing to sue on every available cause of action....  Nor do we think it necessary that a different Lead Plaintiff be appointed to bring every single available claim, as such a requirement would contravene the main purpose of having a Lead Plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole.") (internal quotation marks and citations omitted).

Meitav's argument is also contrary to its prior contention it made in briefing before this Court that there were common questions of fact throughout the Class Period.  *See* Dkt. No. 43 at 3.  Meitav went on to identify those common questions of facts as being that "[t]he dramatic drop in Forescout's stock on May 18, 2020 following the breakup of the deal with Advent was the result of a risk that materialized because Defendants failed to disclose the actual problems with the Company's sales pipeline and the productivity of its sales force throughout the Class Period."  *Id.* at 5.  Principles of judicial estoppel preclude Meitav from disregarding these arguments it previously made in this action.  *See, e.g.*, *New Hampshire v. Maine*, *supra.*

Equally meritless is Meitav's argument that its presence in this case is necessary if statements during the post-February 2020 period are dismissed and the claims during the pre-February 2020 period are sustained.  *See* Dkt. No. 96 at 12.  This argument is beyond speculative and one which Meitav is precluded from making because it filed a complaint alleging that those claims are actionable and the Court has held, consistent with a position advocated by Meitav, that the entire period beginning in February 2019 and ending on May 15, 2020, constitutes a single class period and there has been no finding by the Court that the Glazer Funds lack standing to sue.  *See* Dkt. No. 55 at 7.

However, even assuming, *arguendo*, that Meitav's speculation about the outcome of not yet filed motions to dismiss proves correct, this Court still has the capacity to later reform its lead plaintiff selection. *Kanefsky v. Honeywell Int'l Inc.*, No. 18-CV-15536, 2020 WL 2520669 (D.N.J. May 18, 2020), the lead case upon which Meitav relies, illustrates this point.  In *Kanefsky,* the lead plaintiff purchased shares on September 11, 2018, before an October 19, 2018, corrective disclosure alleged in the complaint.  *Id.* at *3-5 & n.4; *Kanefsky* Dkt. No. 1, ¶¶30-32.  The court later found that the October 19, 2018, statement was not a corrective disclosure causing the lead plaintiff, who had purchased all his shares after August 23, 2018, to lose standing to pursue the underlying claims.  2020 WL 2520669, at *7.  The court then reopened the PSLRA's lead plaintiff selection process.  *Kanefsky v. Honeywell Int'l, Inc.*, No. 18-CV-15536, 2020 BL 271129 (D.N.J. July 21, 2020).

*Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 BL 484476 (C.D. Cal. Sept. 18, 2017), another case relied upon by Meitav, based its decision on large purchases "after the exact revelation of fraud that [the proposed lead plaintiff] pled in his own complaint."  *Id.* at *3.  Here, the Glazer Funds' purchases did not occur after the fraud was revealed on May 18, 2020, which is the end date for the class period in the complaints filed by Meitav and the Arbitrage Plaintiffs.  *See* Dkt. No. 31 at ¶¶110-11; Case No. 3:20-cv-03819, Dkt. No. 1, ¶96. In addition, *Erickson* is inconsistent with this Court's decision in *Connetics* and the weight of authority establishing that purchases made after a corrective disclosure do not cause a class representative to be either inadequate or atypical.  *See* Point II.B.1, *supra.*  Indeed, Judge Wilson, who decided *Erickson,* in a subsequent case ruled that a "decision to make post-disclosure purchases does not necessarily cast doubt on its reliance[] on Defendants' alleged omissions and misrepresentations during the Class Period; rather, Lead Plaintiff may have made post-disclosure purchases because it believed that doing so at the stock's significantly lower post-disclosure price constituted a worthwhile investment."  *Milbeck v. TrueCar, Inc.*, No. 218CV02612SVWAGR, 2019 WL 2353010, at *3 (C.D. Cal. May 24, 2019).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF THE GLAZER FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 3:20-cv-00076-SI

- 12 -

### 4. The Work Done by Meitav's Counsel Does Not Create an Entitlement to a Leadership Position

As a last-ditch argument, Meitav argues that prior work in this case justifies a position as co-lead counsel and co-lead plaintiff. *See* Dkt. No. 96 at 19-20 (Meitav's Opposition). That argument is untenable and is indistinguishable from an argument that Meitav is more adequate to serve as lead plaintiff. This Court has recognized this is not a "round-robin" but a sequential process. *Robb*, 2016 WL 2654351, at \*4. Because the Glazer Funds cannot be found inadequate or atypical, Meitav's motion cannot be reached. *Id.* (quoting *Cavanaugh*, 300 F.3d at 731 n.8).

In effect, Meitav seeks to have its counsel appointed as a lead counsel without reference to whether it has the largest financial interest in the relief sought by the class and without demonstrating any inadequacy in the Glazer Funds' representation of the class. This argument runs directly afoul of the Ninth Circuit's holding that "it is the lead plaintiff who selects lead counsel[.]" *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 709 (9th Cir. 2009). Here, the Glazer Funds selected Abraham, Fruchter & Twersky, LLP as lead counsel and none of the other movants contests, nor could they reasonably, the ability of Abraham, Fruchter & Twersky, LLP to competently and capably act as lead counsel in this action.

## III.    CONCLUSION

Therefore, and for the reasons stated in previous submissions to this Court, the Glazer Funds' motion for appointment as lead plaintiff in this action and the approval of their selection of Abraham, Fruchter & Twersky, LLP as lead counsel should be granted and the competing motions should be denied.

Dated: October 20, 2020

Respectfully Submitted,

**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**

/s/     *Jeffrey S. Abraham*
JEFFREY S. ABRAHAM
(Admitted *Pro Hac Vice*)
JAbraham@aftlaw.com
MICHAEL J. KLEIN
(*Pro Hac Vice* Forthcoming)
MKlein@aftlaw.com
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

- And -

IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
TAKEO A. KELLAR (SBN 234470)
TKellar@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

*Counsel for Movant the Glazer Funds*
*and Proposed Lead Counsel for the Class*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF THE GLAZER FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 3:20-cv-00076-SI

- 14 -