MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

CHRISTOPHER J. KELLER
(*Pro Hac Vice* forthcoming)
ckeller@labaton.com
FRANCIS P. McCONVILLE
(*Pro Hac Vice* forthcoming)
fmcconville@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

ANDREW J. ENTWISTLE (*Pro Hac Vice*)
aentwistle@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
401 Congress Avenue, Suite 1170
Austin, TX 78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7272

VINCENT R. CAPPUCCI (*Pro Hac Vice*)
vcappucci@entwistle-law.com
BRENDAN J. BRODEUR (*Pro Hac Vice*)
bbrodeur@entwistle-law.com
ANDREW M. SHER (*Pro Hac Vice*)
asher@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

*Attorneys for the Arbitrage Plaintiffs and Proposed Co-Lead Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, AND CHRISTOPHER HARMS,<br><br>Defendants. | Case No. 3:20-CV-00076-SI<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE ARBITRAGE PLAINTIFFS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND IN OPPOSITION TO COMPETING MOTIONS**<br><br>DATE: Friday, November 6, 2020<br>TIME: 10:00 a.m.<br>Courtroom 1, 17th Floor |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     ARGUMENT ................................................................................................................... 2

     A.      The Arbitrage Plaintiffs Have the Largest Financial Interest of Any
            Qualified Movant ................................................................................................. 2

     B.      The Arbitrage Plaintiffs Are Sophisticated Institutional Investors And Ideal
            Lead Plaintiffs Under The PSLRA ..................................................................... 4

III.    CONCLUSION ............................................................................................................. 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahlman v. Barnes*,
445 F. Supp. 3d 671 (C.D. Cal. 2020)....................................................................... 8

*Bang v. Acura Pharmaceuticals, Inc.*,
Case No. 10 C 5757, 2011 WL 98099 (N.D. Ill. Jan. 11, 2011)............................... 10

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975).................................................................................... 7

*Chan v. Orthologic Corp.*,
96cv01514-PHX-RCB, slip op. (D. Ariz. Dec. 17, 1996) ........................................ 7

*Chupa v. Armstrong Flooring, Inc.*,
No. 2:19-CV-09840-CAS, 2020 WL 1032420 (C.D. Cal. Mar. 2, 2020)................... 6

*Deering v. Galena Biopharma, Inc.*,
No. 3:14-CV-00367-SI, 2014 WL 4954398 (D. Or. Oct. 3, 2014)............................ 3

*Delgado v. New Albertson's, Inc.*,
No. 08-CV-00806-DOC, 2010 WL 11507599 (C.D. Cal. Mar. 15, 2010) ............... 6

*Eichenholtz v. Verifone Holdings, Inc.*,
Case No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ........... 10

*Erickson v. Snap, Inc.*,
2:17-cv-03678-SVW-AGR, 2017 U.S. Dist. LEXIS 221050 (C.D. Cal. Sept. 18, 2017) ........ 8

*Folsom v. Indymac Bancorp Inc.*,
No. CV 08-03812-GW, ECF No. 39 (C.D. Cal. Sept. 12, 2008)............................... 1

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................................ 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)................................................................................. 3, 8

*Hoexter v. Simmons*,
140 F.R.D. 416 (D. Ariz. 1991) .............................................................................. 10

*In re Bally Mfg. Sec. Corp. Litig.*,
141 F.R.D. 262 (N.D. Ill. 1992) ............................................................................. 10

*In re Bridgestone Investment Corp. Ltd.*,
789 Fed. Appx. 13 (9th Cir. Oct. 8, 2019) ........................................................... 8, 9

*In re Computer Scis. Corp. Sec. Litig.*,
  288 F.R.D. 112 (E.D. Va. 2012) ...................................................................................... 10

*In re Emerging Commcn's, Inc. Shareholders Litig.*,
  No. Civ. A 16415, 2004 WL 1305745 (Del. Ch. May 3, 2004) ............................................... 5

*In re Surebeam Corp. Sec. Litig*,
  No. 03 CV 1721 JM (POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ............................... 6

*In re Tesla, Inc. Sec. Litig.*,
  No. 18-CV-04865-EMC, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018) ................................ 6

*In re Valence Technology Securities Litigation*,
  No. C 95-20459 JW, 1996 WL 119468 (N.D. Cal. March 14, 1996) ...................................... 1

*Kanefsky v. Honeywell, Int'l, Inc.*,
  18-cv-15526, 2020 U.S. Dist. LEXIS 87107 (D.N.J. May 18, 2020) ...................................... 8

*Levy v. Gutierrez*,
  448 F. Supp. 3d 46 (D.N.H. Sept. 30, 2019) ......................................................................... 9

*Rocco v. Nam TaiElectronics, Inc*.
  245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................................... 1

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.*,
  136 F.R.D. 658 (D. Or. 1991) ............................................................................................... 1

*San Antonio Fire and Pension Fund v. Dole Food Company, Inc.*,
  No. 1:15-cv-01140-SDL (D. Del.) .......................................................................................... 4

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................... 10

*Xianglin Shi v. Sina Group*,
  No. 05 CIV. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ................................. 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .............................................................................................. 3

ARBITRAGE PLS.' REPLY ISO MOTS. TO APPOINT LEAD PLS AND IN OPP TO COMPETING MOTIONS

## I.    INTRODUCTION

The Arbitrage Plaintiffs have the largest financial interest in the Action of any *qualified* movant and as a result are presumptively the most adequate lead plaintiffs. The Arbitrage Plaintiffs are sophisticated institutional investors with the resources and incentive necessary to vigorously pursue this litigation on behalf of the Class. They have demonstrated both their ability to work together for the benefit of the Class of investors and their commitment to meaningfully advance this litigation through filing a detailed complaint and successfully requesting that the Court permit a new lead plaintiff selection process to consider applications by investors that purchased during the expanded Class Period. Certain of the Water Island Funds have previously been appointed as lead plaintiffs in other cases and their investment manager has more than $2.5 billion in assets under management. The Amethyst Arbitrage International Master Fund is also a sophisticated investor, being a highly acclaimed investment fund with over $180 million under management, while S. Muoio & Co. LLC has been entrusted with the management of hundreds of millions of dollars and is regularly lauded by financial publications.

The arguments by the Glazer Funds and Meitav Tachlit do not rebut the Arbitrage Plaintiffs' position as the most adequate plaintiffs. While the Glazer Funds claim to have the largest financial interest, the Glazer Funds purchased nearly half of their Forescout shares following the April 30, 2020 release of a public report by Spruce Point Capital Management, which revealed facts undermining Forescout's prior representations regarding its financial performance and the related likelihood of the Advent-Forescout merger transaction closing. Because the Glazer Funds purchased nearly half of their shares after these facts were revealed, they will likely be subject to unique defenses, including a lack of reliance on public information, that render them incapable of adequately representing the Class. *See, e.g., In re Valence Technology Securities Litigation*, No. C 95-20459 JW, 1996 WL 119468 (N.D. Cal. March 14, 1996); *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 663 (D. Or. 1991); *Folsom v. Indymac Bancorp Inc.*, No. CV 08-03812-GW, ECF No. 39 (C.D. Cal. Sept. 12, 2008); *Rocco v. Nam TaiElectronics, Inc.* 245 F.R.D. 131, 136 (S.D.N.Y. 2007).

Meitav Tachlit claims a much smaller financial interest by any metric and does not trigger the most adequate plaintiff presumption.  Meitav Tachlit is also a net seller during the Class Period, an issue that could implicate its typicality were it otherwise adequate. Meitav Tachlit's arguments that the Arbitrage Plaintiffs are not typical because they did not purchase shares throughout the entire Class Period and have an "exotic" trading strategy are not supported by the facts or applicable case law, and its spurious arguments related to an isolated sixteen-year-old case involving the founder of S. Muoio & Co. LLC do not undermine the Arbitrage Plaintiffs' adequacy to serve as lead plaintiffs.

Because they are the most adequate plaintiffs, the Arbitrage Plaintiffs should be appointed lead plaintiffs and the Court should approve their selection of Susman Godfrey, Labaton Sucharow and Entwistle & Cappucci as co-lead counsel.

## II.    ARGUMENT

### A.    The Arbitrage Plaintiffs Have the Largest Financial Interest of Any Qualified Movant

As detailed in the Arbitrage Plaintiffs' opposition brief (ECF No. 97), the Glazer Funds purchased nearly half of their Forescout shares following the April 30, 2020 release of a public report by Spruce Point that revealed  facts undermining Forescout's prior representations regarding its financial performance and cast doubt about whether the Forescout-Advent merger transaction would close. In fact, not only did the Glazer Funds purchase nearly half of their Forescout shares after the Spruce Point report was released to the public, the *majority* of the Glazer Funds' claimed losses incurred during the Class Period were derived from shares purchased after that release.[1]

These post-Spruce Point purchases – made after the defendants' prior representations had been publicly called into question – make the Glazer Funds particularly vulnerable to the unique defense that they did not rely on those representations. *See* ECF No. 97 at 7-11. By statute, and

---

[1] Specifically, the Glazer Funds purchased 643,697 total shares during the Class Period. *See* ECF No. 98-1.  Of those, 292,200 (or 45%) were purchased after the report was issued on April 30, 2020. *See* ECF No. 98-3. Likewise, the Glazer Funds expended $20,561,112.53 in funds purchasing Forescout stock during the Class Period. *See* ECF No. 98-1. Of that amount, the Glazer Funds expended $9,126,853.00 (or 44%) after the report was issued. *See* ECF No. 98-3. And the Glazer Funds incurred approximately $5.27 million in claimed losses. *See* ECF No. 98-1. Of that amount, approximately $2.7 million (or 51%) corresponds to shares the Glazer Funds purchased after the report was issued. *See* ECF No. 98-3.

under the prevailing case law, plaintiffs subject to unique defenses rendering them incapable of adequately representing the class should not be appointed lead. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("a named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it") (quotation omitted).

Because the Glazer Funds are subject to unique defenses, they should not be deemed to be adequate representatives with claims that are typical of other Class members. Under the applicable PSLRA standards, the Court must turn to the movant with the next-greatest losses: the Arbitrage Plaintiffs. By any measure, the Arbitrage Plaintiffs suffered significantly greater losses than the remaining movant, Meitav Tachlit. Considering actual losses suffered throughout the Class Period, *Meitav Tachlit's losses amount to approximately 7% of the losses suffered by the Arbitrage Plaintiffs*. Considering only *Dura* losses, that figure is closer to 2%.

**Losses by Movant (Class Period)[2]**

| Movant | Actual Losses (FIFO) | Actual Losses (LIFO) | *Dura* Losses (FIFO/LIFO) |
|---|---|---|---|
| Arbitrage Plaintiffs | $3,394,626.17 | $3,370,882.06 | $2,750,619.08 / $2,756,931.59 |
| Meitav Tachlit | $285,312.22 | $212,522.78 | $58,103.04 / $46,453.80 |

These small losses are not surprising because Meitav Tachlit was a *net seller* during the Class Period. Specifically, Meitav Tachlit sold 32,533 more Forescout shares than it purchased during the Class Period, an issue courts have found can make a lead plaintiff movant subject to a disqualifying unique defense. *See, e.g.*, *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) ("Courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial.").

---

[2] *See* ECF No. 98-1.

**Losses By Movant**
**(Excluding Losses from Purchases After the April 30, 2020 Spruce Point Report)[3]**

| Movant | Actual Losses (FIFO) | Actual Losses (LIFO) | *Dura* Losses (FIFO/LIFO) |
|---|---|---|---|
| Arbitrage Plaintiffs | $3,237,202.04 | $3,227,337.26 | $2,603,066.00 / $2,610,052.77 |
| Glazer Funds | $2,576,227.10 | $3,135,151.29 | $1,782,675.00 / $2,048,978.15 |
| Meitav Tachlit | $283,356.67 | $210,543.05 | $56,567.09 / $44,917.85 |

The Glazer Funds argue that the Arbitrage Plaintiffs did not have the greatest losses because certain of the group's members did not have *Dura* losses. But the Glazer Funds failed to articulate why the Court should only consider *Dura* losses here. Moreover, only a small minority of the Arbitrage Plaintiffs do not have a *Dura* loss and in total the Arbitrage Plaintiffs have greater *Dura* losses than the Glazer Funds when losses attributable to purchases made after the issuance of the Spruce Point report are excluded.

**B.     The Arbitrage Plaintiffs Are Sophisticated Institutional Investors And Ideal Lead Plaintiffs Under The PSLRA**

There is no serious dispute that the Arbitrage Plaintiffs are adequate and typical representatives for the Class.

The Arbitrage Plaintiffs consist of three sophisticated institutions:  the Water Island Funds, Amethyst Arbitrage International Master Fund and S. Muoio & Co. LLC. Each of these institutions is highly regarded in the investment community. For example, the Water Island Funds' investment manager has over $2.5 billion in assets under management and the Water Island Funds have a history of successfully serving as lead plaintiffs in securities class actions, including the *Dole* securities litigation, one of the first securities actions to successfully assert artificial deflation of the subject securities, which ultimately resulted in a $74 million settlement. *See, e.g.*, *San Antonio Fire and Pension Fund v. Dole Food Company, Inc.*, No. 1:15-cv-01140-SDL (D. Del.). Moreover, the Water Island Funds filed a detailed complaint in this matter and successfully requested the Court consider new lead plaintiff movants. Amethyst has more than $180 million in assets under

---

[3] *See* ECF No. 98-2.

management and has been recognized with a variety of accolades, including being named Best Hedge Fund in Canada 2016. S. Muoio & Co. LLC is also a highly respected investment firm and has been entrusted with managing hundreds of millions of dollars for sophisticated individual and institutional clients for over three decades. S. Muoio & Co. LLC has been repeatedly lauded by financial publications and is frequently recognized as a leader in the industry. In this regard, in 2018, one of S. Muoio's & Co.'s related funds (SM Investors II LP) was recognized by *Acquisition International* as Best U.S. Multi-Strategy Hedge Fund.  S. Muoio & Co. LLC's founder, Salvatore Muoio, is also regularly cited by financial publications (*see, e.g.*, *The Fiscal Times*, "Viacom's New Lead Independent Director Pledges Close Eye on Strategy"[4]) and frequently a featured speaker at industry conferences (*see, e.g.*, Investment Management Institute 12th Annual Alternative Investment Consultants Summit[5]). Mr. Muoio serves on the board of directors at CIBL, Inc. and LICT Corp, and maintains an outstanding reputation in the investment community.

Meitav Tachlit attempts to argue that S. Muoio & Co. LLC is not adequate because of a single sixteen-year-old Chancery Court decision in a case involving Mr. Muoio's membership on the Emerging Communications board of directors.  *See In re Emerging Commcn's, Inc. Shareholders Litig.*, No. Civ. A 16415, 2004 WL 1305745 (Del. Ch. May 3, 2004).[6]  In that case, Mr. Muoio was not on the special committee responsible for evaluating the proposal, relied on bankers and lawyers hired to advise the board who evaluated the proposal at length, was not provided with the information from which the Chancery Court concluded the deal was unfair and did not receive any personal gain or benefit as a result of his vote in favor of the subject transaction. Nevertheless, the court found, "with reluctance" that Mr. Muoio's "significant experience in finance and the telecommunications sector" and "specialized financial expertise" should have

---

[4] Seltzer Decl., Ex. 1.

[5] Seltzer Decl., Ex. 2.

[6] While Meitav Tachlit's own history was not previously discussed due to its minor financial interest in this litigation, based upon even a cursory review it appears that Meitav Tachlit and its corporate parent are themselves subject to numerous allegations of wrongdoing in connection with the illegal collection of management fees, its underwriting services and loan collection practices. *See* Seltzer Decl., Ex. 3, at pp. 110-119.

enabled him to divine what the bankers and lawyers hired for the purpose could not—that the transaction was unfair.[7]   Other than underscoring the movant's expertise, the events in *Emerging Communications* happened almost 20 years ago, did not involve any claim of self-interest or self-dealing, and have no bearing on the issues before the Court here.

As detailed in the Arbitrage Plaintiffs' motion, S. Muoio & Co., the Water Island Funds and Amethyst conferred regarding their backgrounds, investment strategies, prior experiences and successes in the financial services industry. ECF No. 64. The group further discussed their investments in Forescout and strategies in the Forescout litigation, and determined it would be in the best interest of the Class to jointly seek appointment as lead plaintiffs.  In this regard, the Class will have the benefit of three highly sophisticated institutional investors to prosecute the Action on behalf of the Class.[8]

---

[7] In any event, in the Ninth Circuit "[m]ost courts have rejected the contention that a proposed representative is inadequate because of prior *unrelated* unsavory, unethical, or even illegal conduct."  *Chupa v. Armstrong Flooring, Inc.*, No. 2:19-CV-09840-CAS (MRWx), 2020 WL 1032420, at *3 (C.D. Cal. Mar. 2, 2020) (appointing convicted armed bank robber as lead plaintiff, noting the "crime also occurred nearly twenty years ago"); *Delgado v. New Albertson's, Inc.*, No. 08-CV-00806-DOC (MLGx), 2010 WL 11507599, at *4 (C.D. Cal. Mar. 15, 2010) (a plaintiff's unrelated "past felony criminal conviction," standing alone, is "irrelevant to [a] plaintiff's ability to represent the class vigorously and responsibly").

[8] The cases cited by Meitav Tachlit are readily distinguishable because, in each case, there was another compelling reason *related to the subject action* to not appoint the challenged movant.  In *Isaacs v. Musk*, the court declined to appoint a lead plaintiff movant because in addition to its founder being convicted of money laundering and bribery, the movant overstated its losses and was a short seller subject to a unique defense due to its atypical trading pattern.  No. 18-CV-04865-EMC, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018).  In *In re Surebeam Corp. Sec. Litig*, the court rejected a movant on the grounds the movant was the subject of "sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments," "had his National Association of Securities Dealers membership terminated," and, unlike here, it was unclear "whether these accusations involve Surebeam securities or bear any relation to the present action."  No. 03 CV 1721 JM (POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004).  In *Xianglin Shi v. Sina Group*, the court declined to appoint a group of seven unrelated individual investors because the largest individual with the largest asserted loss had a felony conviction for providing false information to a financial institution and because the group had not demonstrated it could work together effectively because only five of the seven members had signed their joint affidavit affirming their motion.  No. 05 CIV. 2154 (NRB), 2005 WL 1561438, at *4-5 (S.D.N.Y. July 1, 2005).

Meitav Tachlit also contends that because the Arbitrage Plaintiffs did not make significant purchases throughout the entire Class Period, they are somehow inadequate and atypical. This argument is completely unfounded.  Indeed, courts have routinely found that lead plaintiffs that did not own the subject company's securities during the full class period have standing to represent the entire class. *See, e.g.*, *Blackie v. Barrack,* 524 F.2d 891, 910 (9th Cir. 1975) ("[I]nterim corrective disclosures . . . do not necessarily bring predisclosure purchasers into conflict with post-disclosure purchasers. Because both share an interest in maximizing overall inflation, the latter purchaser will no doubt strive to show a substantial market effect from disclosure of the lesser (or partial) causes of inflation . . .").

In addition to not being supported by the applicable law, Meitav Tachlit's argument is contrary to its argument in seeking to consolidate the Water Island Funds' action.  Indeed, the Water Island Funds complaint solely sought to represent investors following the announcement of the Forescout-Advent transaction. When the Water Island Funds suggested that Meitav Tachlit improperly used its appointment as lead plaintiff to expand the complaint to include an extended Class Period covering the post-merger announcement period, Meitav Tachlit vigorously argued that pre- and post-merger announcement allegations were a "clear continuation of the conduct alleged in the initial complaint" and should be litigated together. ECF No. 43. Having now succeeded in consolidating the cases, Meitav Tachlit cannot now be fairly heard to argue that investors with post-merger announcement purchases cannot adequately represent all investors during the Class Period. In *Orthologic,* where the court had consolidated complaints with separate class periods, the court rejected a similar argument, noting that "the mere fact" that some of the plaintiffs' purchases occurred in a different segment of the class period did "not necessarily create a conflict" because the appropriate criteria is whether they have "the same or similar injury" and "were injured by the same course of conduct."[9] Meitav Tachlit previously argued, successfully, that that the allegations covering the expanded Class Period belong together saying that they involve a common course of

---

[9] *Chan v. Orthologic Corp*., 96cv01514-PHX-RCB, slip op. (D. Ariz. Dec. 17, 1996). The Order and Opinion can be found at http://securities.stanford.edu/filings-documents/1005/OLGC96/or1.html.

conduct and should be estopped from arguing otherwise at this juncture. Moreover, the Arbitrage Plaintiffs' losses significantly outnumber those of Meitav Tachlit, demonstrating how the Arbitrage Plaintiffs' interests are in line with other Class members.[10]

Notably, the above-referenced cases do not save the Glazer Funds from being inadequate. The Court need not find that defendants will succeed in demonstrating that the Glazer Funds are subject to the defense of non-reliance because they were indifferent to detailed adverse information about the veracity of Forescout's public statements based on their very substantial purchases made after the publication of Spruce Point's report. Rather, the test is whether it can be expected that the Glazer Funds will be subject to a unique defense that will preoccupy them or distract the Glazer Funds from prosecuting the case on behalf of the Class. *See Hanon*, 976 F.2d at 508 (the question is whether plaintiff must "prepare to meet defenses that are not typical of the defenses which may be raised against the members of the proposed class"); *In re Bridgestone Investment Corp. Ltd.*, 789 Fed. Appx. 13, 15 (9th Cir. Oct. 8, 2019) (finding that district court did not err in finding that potential plaintiff was "entangled with a unique defense and therefore atypical" where call options made up a significant amount of plaintiff's loss and were likely to be vigorously challenged by defendants). Unlike the Arbitrage Plaintiffs, the Glazer Funds purchased nearly half of their shares of Forescout stock after the publication of the Spruce Point report, which disclosed facts undermining Forescout's representations regarding its financial performance and the likelihood the Forescout-Advent transaction would close. For example, the Spruce Point report revealed that when Forescout management announced the deal with Advent on February 6, it cancelled its earning call scheduled for later that day. ECF No. 98-4 at 20. *See also* Seltzer Decl., Ex. 4 (Spruce Point Capital's April 30, 2020 tweet). Instead, it released its Q4 results immediately upon announcing

---

[10] *Kanefsky v. Honeywell, Int'l, Inc.*, 18-cv-15526, 2020 U.S. Dist. LEXIS 87107 at *7, n.4 (D.N.J. May 18, 2020) and *Erickson v. Snap, Inc.*, 2:17-cv-03678-SVW-AGR, 2017 U.S. Dist. LEXIS 221050, *8-9 (C.D. Cal. Sept. 18, 2017) are inapposite. Meitav Tachlit has not explained how any partial corrective disclosures prior to the announcement of the Advent acquisition would subject the Arbitrage Plaintiffs to unique defenses. *See Ahlman v. Barnes*, 445 F. Supp. 3d 671, 686 (C.D. Cal. 2020) (". . . if Plaintiffs' claims were truly subject unique defenses that would distract them from prosecuting the class claims, presumably Defendants would be able to readily identify them. Because they cannot do so, the Court finds that Plaintiffs are typical of the proposed classes and subclasses.").

the deal, and chose not to disclose the guidance that it planned to issue on the call, "figures that would have disappointed Q1 and full-year FY20 consensus by 21% and 6%, respectively, and which would have revealed management's expectation that Q1 sales would have *contracted* year-over-year." *Id.* The April 30, 2020 letter also disclosed how Forescout had not given "complete, timely, or realistic access to information with respect to its financial projections," *id.* at 14, and the report further described how Forescout "was showing signs of fundamental strain even prior to the onset of the COVID-19 pandemic," which provided a strong justification for Advent to renegotiate or terminate the deal. *Id.* at 18. *See also* Seltzer Decl., Ex. 5 (Spruce Point Capital's April 30, 2020 tweet). The Glazer Funds purchased nearly half of their shares after the Spruce Point report undermined Forescout's representations about the transaction. In light of the Spruce Point report, they will surely be forced to litigate whether they are subject to the defense of non-reliance in connection with their motion for class certification, which will distract from prosecuting the case on behalf of the Class. By contrast, the Arbitrage Plaintiffs purchased their shares shortly after the announcement of the Forescout-Advent transaction (long before the Spruce Point Report was issued) and based upon Forescout's representations about said transaction. *See Bridgestone* at \*15 (approving court's selection of lead plaintiff where there was no evidence that other plaintiff was subject to the same rebuttal argument).

Finally, Meitav Tachlit makes the unsupported argument that the Arbitrage Plaintiffs' "exotic" trading strategies somehow render them inadequate. But courts have long held that investors like the Arbitrage Plaintiffs are entitled to rely on the *Basic* presumption because "[v]alue investors trade in the same efficient markets as more traditional investors and generally are no different in their thinking." *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 59 (D.N.H. Sept. 30, 2019). Indeed, there is no reason to suppose that the Arbitrage Plaintiffs are "indifferent to the integrity of market prices" as Meitav Tachlit suggests:

> Such an investor implicitly relies on the fact that a stock's market price will eventually reflect material information—how else could the market correction on which his profit depends occur? To be sure, the value investor does not believe that the market price accurately reflects public information at the time he transacts. But to indirectly rely on a misstatement in the sense relevant for the *Basic* presumption, he need only trade stock based on the belief that the market price will incorporate public information within a reasonable period. The value investor also presumably

tries to estimate how undervalued or overvalued a particular stock is, and such estimates can be skewed by a market price tainted by fraud.

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 273-274 (2014) (internal citation and quotation omitted).

Investors who seek to capture the difference between a stock's price and expected merger consideration by evaluating, accepting and managing the risks of merger failure in light of publicly available information about the target and the acquirer, reduction in merger consideration due to regulatory, market and company-specific events, macroeconomic risks such as inflation and interest rate increases (credit crisis) and the long-term standalone value of the company in the possible event of merger failure, are entitled to the same protections of the securities laws, including damages when a company's share price decreases following the disclosure that the company disseminated materially false information. "When a fraud has been perpetrated on the market, all persons trading in the market, regardless of their sophistication, are subject to injury by the deceit." *Hoexter v. Simmons*, 140 F.R.D. 416, 420 (D. Ariz. 1991) (disagreeing with defendants' argument that that class representatives' claims were not typical of claims that would be made by "institutional investors and sophisticated individual investors, or arbitragers who purchased the Valley National stock during the relevant period"). Common sense dictates that "[m]ost investors purchase stock based on the belief that the market is, in some way and for some reason, undervaluing the stock and that the stock will thereafter appreciate." *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 123 (E.D. Va. 2012). "The fact that these traders have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price paid no part whatsoever in their decision making." *In re Bally Mfg. Sec. Corp. Litig.*, 141 F.R.D. 262, 269 n.6 (N.D. Ill. 1992) (internal citations and quotations omitted).[11]

---

[11] The cases cited by Meitav Tachlit are inapposite as they involve considerations of movants who were day traders, which is an often litigated and unsettled question but not one at issue here. *Eichenholtz v. Verifone Holdings, Inc.*, Case No. C 07-06140 MHP, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008); *Bang v. Acura Pharmaceuticals, Inc.*, Case No. 10 C 5757, 2011 WL 98099, at *6 (N.D. Ill. Jan. 11, 2011). The Arbitrage Plaintiffs are not day traders, nor does Meitav Tachlit accuse them of being day traders.

## III.    CONCLUSION

For the foregoing reasons, the Arbitrage Plaintiffs respectfully request the Court to:  (i) appoint the Arbitrage Plaintiffs as lead plaintiffs; (ii) approve their selection of Susman Godfrey, Labaton Sucharow and Entwistle & Cappucci as co-lead counsel for the Class; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated:  October 20, 2020                          Respectfully submitted,

Marc M. Seltzer
Krysta Kauble Pachman
P. Ryan Burningham
SUSMAN GODFREY L.L.P.

Andrew J. Entwistle
Vincent R. Cappucci
Brendan J. Brodeur
Andrew M. Sher
ENTWISTLE & CAPPUCCI LLP

Christopher J. Keller
Francis P. McConville
LABATON SUCHAROW LLP

By:    */s/ Marc M. Seltzer*
         Marc M. Seltzer

*Attorneys for the Arbitrage Plaintiffs and Proposed Co-Lead Counsel*