POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Plaintiff Meitav Tachlit Mutual Funds Ltd.*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, and CHRISTOPHER HARMS,<br><br>                              Defendants. | Case No. 20-cv-00076 (SI)<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORIES (1) IN SUPPORT OF MOTION OF MEITAV TACHLIT MUTUAL FUNDS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br>Date:     November 6, 2020<br>Time:     10:00 A.M.<br>Place:    Courtroom 1, 17th Floor<br>Judge:    Hon. Susan Illston |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

MEITAV SHOULD BE APPOINTED LEAD PLAINTIFF.................................................. 2

    1.   The Arbitrage Funds Have Signaled an Unwillingness to Represent the Class .......... 4

    2.   The Inclusion of Muoio & Co Disqualifies the Arbitrage Funds ............................... 6

    3.   The Competing Movants' Arbitrage Investment Strategies Render Them Inadequate, Atypical and Subject to Unique Defenses ............................................... 7

    4.   Purchasing Solely on or After February 6, 2020 Subjects the Funds to Unique Defenses .................................................................................................... 11

IN THE ALTERNATIVE, MEITAV SHOULD BE APPOINTED CO-LEAD PLAINTIFF .......... 13

CONCLUSION.................................................................................................................. 14

Case No. 20-cv-00076  (SI)

REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bang v. Acura Pharm., Inc.*, No. 10 C 5757,
2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) ...................................................... 9

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................................... 7, 8, 12

*Deutschman v. Beneficial Corp.*,
132 F.R.D. 359 (D. Del. 1990) ........................................................................................ 10

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008).................................................. 9

*Erickson v. Snap, Inc.*, 2:17-cv-03679,
2017 U.S. Dist. LEXIS 221050 (C.D. Cal. Sep. 18, 2017)............................................... 12

*In re Bank One S'holders Class Actions*,
96 F. Supp. 2d 780 (N.D. Ill. 2000) ................................................................................ 7

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) ................................................................................... 12

*In re Conseco, Inc. Sec. Litig.*,
120 F. Supp. 2d 729 (S.D. Ind. 2000).............................................................................. 7

*In re Emerging Communs. Inc. S'hareholders Litig.*, No. 16415,
2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004) ............................................................ 6

*In re MicroStrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................................................. 9

*In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH,
2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ................................................... 9

*In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR),
2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003)................................................. 6

*In re Valence Tech. Sec. Litig.*, No. C 05-20459 JW,
1996 U.S. Dist. LEXIS 21774 (N.D. Cal. Mar. 14, 1996).............................................. 12

*In re Versata, Inc.*, Case No. 01-cv-1439-SI,
2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 20, 2001)............................................... 6

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

ii

*In re World Access, Inc. Sec. Litig.*,
    310 F. Supp. 2d 1281 (N.D. Ga. Mar. 16, 2004) .......................................................... 12

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................... 8

*Isaacs v. Musk*, No. 18-cv-04865-EMC,
    2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018)........................................ 6

*Kanefsky v. Honeywell Int'l, Inc.*, 18-cv-15336,
    2020 U.S. Dist. Lexis 87108 (D.N.J. May 18, 2020)................................................. 14

*Marcus v. J.C. Penney Co. et al.*, 6:13-CV-736,
    2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014) .............................. 2, 3, 9

*Robb v. Fitbit Inc.*, Case No. 16-cv-0151-SI,
    2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) ...................................... 6, 10

*Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM,
    2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4, 2008)............................................. 9

*Xianglin Shi v. SINA Corp.*,
    2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) .............................................. 7

## **Rules**

Federal Rules of Civil Procedure Rule 23 ............................................................................ 4

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF
AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

iii

Lead Plaintiff Movant Meitav[1] respectfully submits this reply in further support of its motion for appointment as Lead Plaintiff and approval of Lead Counsel (Dkt. No. 81); and in further opposition to the competing motions of: (i) the Glazer Funds (Dkt. No. 63); and (ii) the Arbitrage Funds (Dkt. No. 80).

**PRELIMINARY STATEMENT**

The Court consolidated this Action on July 22, 2020 and denied the Arbitrage Funds' request to strike the Amended Complaint filed by Meitav on May 22, 2020.  The operative Class Period as defined in the Amended Complaint begins on February 7, 2019 and ends on May 15, 2020.  The majority of the material misstatements and/or omissions alleged in the Amended Complaint were made before February 6, 2020, when Forescout announced a definitive agreement to be acquired by the affiliates of Advent. Regardless, the date of that announcement of the failed Advent acquisition was chosen by the Arbitrage Funds as the first day of their purported class period, and the announcement of the Advent acquisition is the basis for both the Arbitrage Funds' and the Glazer Funds' purchases and claims here.

Moreover, both the Arbitrage Funds and the Glazer Funds purchased their Forescout securities *after* the initial disclosures of the Company's alleged fraud.  Both Funds purchased 100% of their stock after two significant partial disclosures that, as the Amended Complaint alleges, caused the Company's stock price to plummet by over 16% on May 9, 2019 (*see* Dkt. No. 31 ¶¶ 8-9) and by over 37% on October 10, 2019 (*see id.* ¶¶ 17-18).  More than half of the Glazer Funds' Forescout purchases occurred after a short seller sent a letter to Advent on or around April 30, 2020, imploring Advent not to complete its acquisition of Forescout or to offer a lower price due to Forescout's declining financial performance.  *See* Dkt. No. 97 at 11-15.  Courts generally decline to appoint Lead Plaintiffs who purchased the securities at issue after disclosures of the alleged fraud at issue.

The dubious timing of both the Arbitrage and Glazer Funds' transactions is even more problematic when viewed in light of the fact that both are admitted merger arbitrage investors, which essentially engage in hedging bets regarding the timing and likelihood of a merger being consummated rather than invest in a company based on its price and publicly issued statements.  Indeed, as detailed

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in Meitav's moving or opposition briefs.  *See* Dkt. Nos. 81, 97.

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

1

below, the "hedged" wording of each of the competing movants Certifications raises the serious concern that in addition to purchasing common stock, they might have also engaged in options or other exotic transactions which actually bet *against* Forescout's share price performance.  If that is the case, such hedging would clearly render these arbitrageurs atypical of the class and inadequate to serve as a Lead Plaintiff.  *See*, *e.g.*, *Marcus v. J.C. Penney Co. et al.*, 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *21, *21 n.4 (E.D. Tex. Feb. 28, 2014) (denying lead plaintiff motion by short seller, finding it "counter intuitive to assume the typical member of the proposed class would purchase shares of JCP stock with the hopes the stock would decrease.").

Meitav, on the other hand, is the only movant here that purchased Forescout common stock in the 12 months of the Class Period prior to the Advent Acquisition announcement, with claims based on the material misstatements and/or omissions that artificially inflated or maintained the inflated price of Forescout common stock during that 12-month period.  Meitav also purchased Forescout common stock in the three-and-one-half month period after February 6, 2020 with claims related to the failed Advent acquisition ("Acquisition Period").  Indeed, Meitav is the only movant that has standing to pursue the claims of all investors that purchased shares in the full Class Period, not merely in the three-and-a-half month Acquisition Period.

## ARGUMENT

### MEITAV SHOULD BE APPOINTED LEAD PLAINTIFF

As all the movants hereto attest, Meitav has suffered substantial losses as a result of the misrepresentations and/or omissions alleged in the Amended Complaint. In fact, Meitav is the only movant that purchased shares of Forescout common stock throughout the entire Class Period—i.e., both before and during the Acquisition Period.  Thus, Meitav is the only movant that has standing to bring claims on behalf of purchasers who held through all of the alleged partial disclosures/materializations of risk.  Indeed, Meitav's claims are typical of shareholders and investors that purchased their shares based on the alleged material misrepresentations and/or omissions, and in reliance on the information incorporated into the price of Forescout common stock.  Meitav shares the same legal theories that

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

focuses on conduct and statements as do all other members of the Class. Accordingly, Meitav is uniquely positioned to represent the full Class in this Action.

Furthermore, Meitav has already demonstrated its adequacy to represent the Class by its expenditures of time and resources in drafting the Amended Complaint. Meitav and its counsel investigated Forescout's business and operations, including but not limited to, the high turnover in the Company's actual sales force, the rapidly declining productivity of its salesforce, and the sharply deteriorating amount of committed deals in the sales pipeline since the beginning of 2019, which were all hidden from investors. Meitav and its counsel located and interviewed over a dozen Confidential Witnesses ("CW"), who corroborated the specific and particularized allegations in the Amended Complaint regarding the declining productivity of Forescout's sales force and the illusory nature of so-called "committed" deals in the Company's sales pipeline quarter after quarter in 2019. *See* Dkt. No. 31 at ¶¶ 44-62. These CWs provided direct evidence of Defendants' scienter, including sales reports and the noncommittal or failed status of specific deals known to Defendants before the false and misleading statements were made and the misleading quarterly guidance were issued that were incorporated into the Amended Complaint. *Id.*

Meitav and its counsel have reviewed Forescout's public statements, wire and press releases, United States Securities and Exchange Commission filings and analyst reports regarding the Company's business and financial condition. Meitav and its counsel analyzed the Individual Defendants' insider sales during the Class Period, and found that Defendants DeCesare and Harms took advantage of the Company's artificially-inflated stock price to reap nearly $12 million in stock sales, which are dramatically out of line with their prior trading history or over four and a half times the dollar amount that Defendant DeCesare reaped from open market sales before the Class Period, and nearly two and a half times the dollar amount that Defendant Harms reaped from open market sales before the Class Period. *See* Dkt. No. 31 ¶¶ 119-23.

Based on the results of the investigation and Meitav's counsel's efforts, Meitav drafted and filed a comprehensive 38-page Amended Complaint on behalf of all persons or entities who purchased or

Case No. 20-cv-00076 (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

otherwise acquired the common stock of Forescout between February 7, 2019 and May 15, 2020. Indeed, Meitav and its counsel have already added significant value to all investors who purchased Forescout stock between February 7, 2019 and May 15, 2020, and Meitav and its counsel will continue to adequately represent the interests of all investors during the Class Period. Obviously, none of the competing movants can say the same. Indeed, it was only after Meitav filed its detailed Amended Complaint on May 22, 2020, expanding the Class Period to end on May 15, 2020, that the Arbitrage Funds showed any interest in this litigation and filed their own complaint alleging only the Acquisition Period of the Class Period in the Amended Complaint, and ignoring the rest of the Class Period.

For all of the foregoing reasons, Meitav strongly satisfies the requirements of Rule 23 and is entitled to the PSLRA's "strong presumption" of being the Lead Plaintiff.

### 1. The Arbitrage Funds Have Signaled an Unwillingness to Represent the Class

When the Arbitrage Funds filed their complaint on June 10, 2020, Meitav's Amended Complaint had already been on the record for over two weeks with a Class Period of February 7, 2019 through May 15, 2020. Regardless, the Arbitrage Funds only listed February 6, 2020 to May 15, 2020 as the class period for their complaint, evidencing that they only intended to represent investors that purchased Forescout common stock after February 6, 2020. *See The Arbitrage Fund et al. v. Forescout Technologies, Inc. et al.* ("*Arbitrage Fund* Action"), Dkt. No. 1 at 1.

When Meitav filed a motion to consolidate the actions, the Arbitrage Funds opposed and treated the Amended Complaint as a nullity, arguing that only the initial *Sayce* complaint should be considered by the Court to analyze the bases for consolidation. *See* Dkt. No. 41 at 7-10. The Arbitrage Funds argued that there was no commonality between the *Sayce* allegations, which related to the 12-month period before February 6, 2020, and the Arbitrage Funds complaint, which related solely to the announcement of the failed Advent Acquisition announced on February 6, 2020. *Id.* at 12-14. In sum, the Arbitrage Funds have never sought, or claimed, to represent any investor of Forescout common stock that purchased prior to the announcement of the Advent acquisition on February 6, 2020.

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

4

Further evidence of their lack of willingness to represent the interests of the Class members in the first 12 months of the Class Period can be found in the Arbitrage Funds' Opposition to Competing Motions for appointment of Lead Plaintiff (Dkt. No. 97). In their Opposition, they exclude all but investors who purchased on or after February 6, 2020 from what they claim is the definition of Action: "This case relates to a failed merger between Forescout and Advent.  Forescout announced the merger agreement with Advent on February 6, 2020. Water Island Action, Dkt. No. 1 ¶ 1." Arbitrage Funds' Opposition at 3.  The Arbitrage Funds' definition of the case, therefore, excludes each of the alleged material misrepresentations and/or omissions, as well as excludes any other allegation in the Amended Complaint, from February 7, 2019 through February 6, 2020, *i.e.,* the first 12 months of the Class Period. As such, they make no secret that they are not seeking to be appointed as lead plaintiff for any member of the Class that purchased Forescout common stock prior to February 6, 2020.

Indeed, nowhere in their Opposition do they reference any of the allegations from the Amended Complaint, and, instead, cite only to their own complaint as though the Court never consolidated the actions and established the Amended Complaint as operative. Their opposition is drafted as though this Court never stated:

> As a threshold matter, the Court declines to strike Meitav Tachlit's Amended Complaint. The Arbitrage Fund Plaintiffs cite no authority for this request, which they raise in their opposition brief rather than through a properly noticed motion.

Dkt. No. 55 at 5.  Or, that the Court did not later explain:

> Since both actions share common issues of law and fact, the Court will consolidate the two actions in the interest of judicial economy. The Amended Complaint subsumes the class period of the Arbitrage Complaint, and both actions name the same defendants and federal securities law claims. Both the Arbitrage Complaint and the Amended Complaint cite to the same Forescout disclosures and press release concerning the failed Advent acquisition. Although the Arbitrage Complaint focuses solely on the alleged misrepresentations regarding the failed acquisition . . . there is enough overlap between the two that *not* consolidating these cases would needlessly waste the resources of the parties and of the Court.

*Id.* at 7 (emphasis in original).  The Arbitrage Funds' defiance of the Court's ruling, especially after the Court explicitly denied their attempt to strike the Amended Complaint, demonstrates rejection of any role as lead plaintiff for all investors who purchased Forescout common stock during the Class Period.  This

explicit rejection is clear evidence of their antagonistic interests to class members in the consolidated actions who purchased before February 6, 2020, which renders them inadequate to be appointed as lead plaintiff for the Class.

### 2.    The Inclusion of Muoio & Co Disqualifies the Arbitrage Funds

The Arbitrage Funds initially filed the Arbitrage Complaint solely on behalf of related Water Island Funds. *See generally* Arbitrage Fund Action, Dkt. No. 1. Counsel for the Water Island funds subsequently added two additional investors to form a group of three unrelated investors, Muoio & Co. and Amethyst. Muoio & Co. claims actual losses of $576,612.47, and Amethyst's claimed losses of $2.167 million are the largest losses of the group. Dkt. No. 65-2. While there is no bright line rule against groups or "set criteria" to vet them, this Court has applied "a flexible, case-by-case inquiry" to ascertain whether a group can proceed as a lead plaintiff. *In re Versata, Inc*., Case No. 01-cv-1439-SI, 2001 U.S. Dist. LEXIS 24270, at *5 (N.D. Cal. Aug. 20, 2001); *see also Robb v. Fitbit Inc.,* Case No. 16-cv-0151-SI, 2016 U.S. Dist. LEXIS 62457, at *13-*14 (N.D. Cal. May 10, 2016).

Here, the inclusion of Muoio & Co. should disqualify the Arbitrage Funds from proceeding as a lead plaintiff because the principal who signed on behalf of Muoio & Co., Salvatore Muoio, has been adjudicated by the Chancery Court of Delaware to have violated his fiduciary duties of loyalty and good faith to investors. *See In re Emerging Communs. Inc. S'hareholders Litig.*, No. 16415, 2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004). The duty of loyalty and good faith are the duties that each lead plaintiff owes to absent class members in any class action. It is inconceivable that a person found by the Delaware Chancery Court to have violated duties of loyalty and good faith to investors would be proposed as a lead plaintiff here. *See*, *e.g.*, *Isaacs v. Musk*, No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *12, *15 (N.D. Cal. Nov. 27, 2018) (denying motion, finding that movant "will likely be subject to unique defenses" due to prior misconduct "that may well become the focus of the litigation to the detriment of the class"); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *21–25 (S.D. Cal. Dec. 31, 2003) (finding lead plaintiff movant inadequate because he was subject to "complaints to securities regulators including misrepresentation,

Case No. 20-cv-00076 (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

6

unauthorized trading in client accounts, and use of unsuitable investments" and "had his National Association of Securities Dealers ('NASD') membership terminated"); *Xianglin Shi v. SINA Corp.*, 2005 U.S. Dist. LEXIS 13176, at \*14-\*15 (S.D.N.Y. July 1, 2005) (denying motion by movant with criminal background because "[h]onesty and trustworthiness are . . . relevant factors in determining and [*sic*] individual's ability to serve as a class representative").

Either the Water Island Fund and Amethyst knew of the violations, but were more interested in forming a group with large losses, or they were unaware of the serious violations. Muoio should have disclosed the violation to the Water Funds and Amethyst, but those two arbitrage funds also should have vetted Muoio before allowing the group to be cobbled together. A lack of knowledge is evidence of a lack of oversight on a fundamental requirement for appointment as lead plaintiff, which each of three arbitrage funds admitted in their Joint Declaration. *See* Dkt. No. 65 at ¶¶ 14-20.

### 3.    The Competing Movants' Arbitrage Investment Strategies Render Them Inadequate, Atypical and Subject to Unique Defenses

Taken together, the arbitrage strategies of the Glazer and Arbitrage Funds render them inadequate, atypical and subject to unique defenses. Arbitrage funds, heretofore, have been found to be inadequate to serve as lead plaintiff in securities class actions. *See, e.g., In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (refusing to appoint an arbitrage fund as lead plaintiff because of its unique trading strategy); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) (same). In addition to rendering the Arbitrage and Glazer Funds inadequate, these same issues subject them to a unique defense. Defendants are effectively certain to seek to establish that the funds' arbitrage strategies render them unable to rely upon the fraud-on-the-market doctrine or the *Basic* presumption of reliance—*i.e.*, that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988). The *Basic* presumption is rebuttable if a defendant "can make 'any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at fair

market price[.]'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 292 (S.D.N.Y. 2003) (quoting *Basic*, 485 U.S. at 248). The nature of the funds' arbitrage strategies are such that Defendants will make every effort to sever the necessary link between their alleged misstatements and the funds' investment decisions, and are likely to succeed in doing so.

Unlike a typical member of the Class who relied on Defendants' false statements concerning the Company's salesforce and sales pipeline, the Glazer and Arbitrage Funds admittedly relied on market inefficiencies and hedging strategies solely based on a bet about the completion of the Advent acquisition and did "not invest based on market fundamentals." *See* https://waterislandcapital.com/strategies.[2] Indeed, the Arbitrage Funds explain the meaning of event-driven investing as a strategy that "deliver[s] a return that is less correlated to stocks and bonds, as such companies tend to no longer trade in line with the direction of broader markets but rather in line with the prospects for the catalysts' eventual outcomes." *See* http://altshares.s3.amazonaws.com/arb/FAQ-ARB.pdf. Likewise, the investment manager of the Glazer Funds engages in a "risk arbitrage" strategy that "aims to take advantage of market miscalculations just before or after a merger or acquisition." *See* https://finance.yahoo.com/news/paul-glazer-glazer-capital-return-191719626.html. As such, they are not focused on the same misconduct that forms the core basis of the Class's operative complaint because they myopically focus exclusively on allegations related to the merger and ignore the vast majority of the claims raised in the Amended Complaint.

The hedging strategy utilized by the Glazer Funds is "risk arbitrage,"—*i.e.,* an event-driven form of investing that "take[s] advantage of market miscalculations just before or after a merger or acquisition." *See* https://finance.yahoo.com/news/paul-glazer-glazer-capital-return-191719626. It is a speculative trading strategy that attempts to generate profits by taking a position in the stock of a target company and, generally, combining it with a hedge position such as a short position or an option. Indeed, the Glazer Funds notably limited their Schedule A listing in Forescout transactions to "common stock."

---

[2] Water Island Capital LLC continued its strategy by purchasing Forescout put options on 87,500 shares in the second quarter of 2020. *See* https://www.sec.gov/Archives/edgar/data/1222765/0001222765-20-000009-index.htm.

Case No. 20-cv-00076 (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

8

*See* Dkt. No. 66-3 at *3-*7.  As such, this Court has no insight as to whether Glazer bought or sold options as part of its hedging strategy which bet against the price of Forescout's stock, rendering Glazer either antagonistic or at least atypical of other investors.  *See, e.g., J.C. Penney*, 2014 U.S. Dist. LEXIS 197529, at *21, *21 n.4 (denying motion by short seller); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *36 (N.D. Cal. Aug. 22, 2008) (finding movant atypical because of day-trading investment strategy, "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility.").[3]

These speculative strategies were on display in this Action.  Neither Glazer nor the Arbitrage Funds purchased any Forescout stock before February 6, 2020, the day of the announcement of the Acquisition.  *See* Dkt. Nos. 65-2; 66-4. Their speculative arbitrage strategies for making their purchases were tied to beating the spread between the then-current market price and the firm acquisition price.  The true price of the stock was irrelevant, as the arbitrageurs were not purchasing based on the true value of the stock, but merely trying to beat the spread regardless of the stock prices. The arbitrageurs were purchasing based on a bet about the event, the Advent Acquisition, not the truth or falsity of any matter asserted by the defendants.  "A merger arbitrageur will review the probability of a merger not closing on time or at all and will then purchase the stock before the acquisition, expecting to make a profit when the merger or acquisition completes."  *See* Investopedia, "Merger Arbitrage" (https://www.investopedia.com/terms/m/mergerarbitrage.asp#:~:text=Merger%20arbitrage%20is%20an%20investment,inefficiencies%20surrounding%20mergers%20and%20acquisitions).  Put simply, these merger arbitrageurs invested in Forescout as part of a hedged bet on the likelihood and timing of a merger

---

[3] *See also In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *26 (N.D. Cal. May 3, 2005) (in-and-out traders found to be atypical of class); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *18 (D. Ariz. Apr. 4, 2008) (denying motion by investor who employed a "unique trading pattern"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000) (denying lead plaintiff motion by hedge fund because it "was an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates"); *Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550, at *16 (N.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high-frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions.").

being consummated, whereas the majority of investors would look to the conduct of the defendants vis-à-vis the truth of the statements regarding such conduct as, *inter alia*, representations about the Company's sales force, the number and nature of so-called "committed" deals in the Americas, the sales pipeline, and the Company's false revenue guidance quarter after quarter in 2019. The fact that the arbitrage investment strategies are focused on defendants' conduct that is not related to the alleged misrepresentations and omissions in the Amended Complaint evinces that the Glazer and Arbitrage Funds are not typical of the Class in the Amended Complaint. *See Robb*, 2016 U.S. Dist. LEXIS 62457, at *19-21 (quoting *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 373 (D. Del. 1990)) ("The focus of the typicality inquiry is not on Plaintiff's behavior, but defendants.'").

The impact of these merger strategies is evident from the Certifications filed by the Glazer and Arbitrage Funds. As noted above, the Glazer Funds only listed their transactions in Forescout common stock, leaving open the possibility that they engaged in options or other transactions betting against Forescout's stock performance. The Arbitrage Funds fare no better. The Amethyst Arbitrage International Master Fund ("Amethyst") is a Canadian hedge fund available exclusively to non-Canadian residents that, like Glazer, utilized an event-driven strategy based mainly on mergers and acquisitions and listed only its transactions in Forescout common stock. *See* Dkt. No. 70-1 ¶ 4; https://cristallin.ca/eng/Pages/fund/amethyst_arbitrage_fund_international. Muoio and the Water Island Funds list their transactions in Forescout "debt and equity," and again omit any reference to option or other hedging transactions. *See Arbitrage Fund* Action Dkt. Nos. 73-1 ¶ 4, 77-1 ¶ 4. It is simply unclear as to why Muoio and the Water Island Funds listed both common stock and debt transactions when Amethyst did not. What is Amethyst hiding? In stark contrast, Meitav's Certification lists "all of Meitav's transactions in Forescout securities during the Class Period," making it abundantly clear that it was listing the ***entirety*** of its Class Period transactions in Forescout securities. *See* Dkt. No. 86-3.

Accordingly, neither the Glazer Funds nor the Arbitrage Funds should be appointed as lead plaintiff here.

**4.** **Purchasing Solely on or After February 6, 2020 Subjects the Funds to Unique Defenses**

The Glazer Funds and Arbitrage Funds are subject to a unique defense because they purchased *100% of their shares* after two significant partial disclosures that caused the Company's stock price to plummet by over 16% on May 9, 2019 and by over 37% on October 10, 2019. These belated purchases were made after February 6, 2020 solely in an attempt to execute the Glazer Funds' and the Arbitrage Funds' speculative investing strategies. None of the competing movants had any interest in Forescout common stock when the price of Forescout's common stock declined by over 16% on May 9, 2019 or by over 37% on October 10, 2019. Dkt. No. 31 at ¶ 9, ¶ 18. The Funds ignore the operative Amended Complaint, which alleges that, based on the particularized allegations of eleven CWs, Forescout suffered the most serious downturn in the *Americas*, and falsely blamed the global pandemic for its woes since none of its peers had poor financial results for the first quarter of 2020 even though the pandemic had reached American shores by then. Dkt. No. 31 at ¶¶ 43-62, ¶ 109. Indeed, it was the undisclosed but known, serious decline in "committed" deals in the *Americas* that caused Forescout to announce that revenues for the second quarter of 2019 would be lower due to "slipped deals," Dkt. No. 31 at ¶ 8, and that the Company would miss its revenue guidance by millions of dollars for the third quarter of 2019. *Id.* at ¶ 17. These partial disclosures caused the price of the Company's common stock to decline by over 16% on May 9, 2019 and by over 37% on October 10, 2019 respectively. *Id.* at ¶ 9, ¶ 18. Indeed, the Arbitrage Funds do not even acknowledge the core issues—the high turnover and rapidly declining productivity of the Company's sales force and the known, illusory nature of so-called "committed" deals in the *Americas* throughout the Class Period—that are the gravamen of the operative Amended Complaint. Dkt. No. 97 at 3-4. These underlying and very serious performance related issues, in fact, caused Advent to back out of the deal unless Forescout accepted a lower price. Dkt. No. 31 at ¶ 113. Advent, in fact, told Forescout that the terms of the merger were not acceptable, in part, because of Forescout's poor financial performance from *Q1 2019 to Q1 2020*, which further corroborates the well-pled accounts of the CWs identified in the Amended Complaint. On this partial disclosure, the price of Forescout stock again plunged by nearly 24% on May 18, 2020, but the final

Case No. 20-cv-00076 (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

11

partial disclosure simply materialized the undisclosed risks associated with Forescout's deteriorating sales pipeline and rapidly declining sales productivity throughout the Class Period.   As such, both of the Glazer and Arbitrage Funds purchased *all* of their Forescout securities after the market was already alerted to significant financial performance issues which contradicted the Company's pre-Acquisition public statements and forecasts.

Courts have long held that Defendants successfully rebutted the *Basic* presumption of reliance where plaintiffs, like the Glazer and Arbitrage Funds here,  purchased stock after a partial disclosure even though plaintiffs argued that the full scale of the fraud was not revealed to the market until a few months later. *See In re Valence Tech. Sec. Litig.,* No. C 05-20459 JW, 1996 U.S. Dist. LEXIS 21774, at *14-15 (N.D. Cal. Mar. 14, 1996). *See also Erickson v. Snap, Inc*., 2:17-cv-03679, 2017 U.S. Dist. LEXIS 221050, *8-9 (C.D. Cal. Sep. 18, 2017) (ruling that a large purchase of shares after corrective disclosures could render a plaintiff atypical, and refusing to appoint plaintiff as lead who purchased 60% of his stock following partial disclosures even though the plaintiff nominally had the largest loss); *In re Cardinal Health, Inc. Sec. Litig.,* 226 F.R.D. 298, 310 (S.D. Ohio 2005) (finding that plaintiff was subject to unique defenses because it continued to purchase stock through multiple partial disclosures even though its final purchases were made before the end of the class period and the final disclosure)*; In re World Access, Inc. Sec. Litig.*, 310 F. Supp. 2d 1281, 1300 (N.D. Ga. Mar. 16, 2004) (finding that defendants rebutted the presumption of reliance because the plaintiff continued to purchase the company's stock after disclosures in the hope that the company would be acquired by another company).

Defendants are nearly certain to spend inordinate time in discovery on the arbitrageur's unique defenses with document requests, interrogatories, and depositions of the Glazer Funds' and Arbitrage Funds' principals regarding their strategies for investing in general, and investing in target companies specifically, as well as their hedging methods.  The time will be spent attacking these arbitrageurs' unique defenses unrelated to the material misstatements and omissions that are at the heart of this litigation, and that are unrelated to the conduct that all but the arbitrageurs challenge.  If Defendants successfully rebut the *Basic* presumption of reliance because the plaintiffs purchased stock for reasons unrelated to the

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

12

alleged partial disclosures, *e.g.,* to beat the acquisition spread per their arbitrage strategy, the Class will be rendered rudderless.

Here, the Arbitrage Funds argue that the Glazer Funds are subject to unique defenses for purchasing Forescout common stock after the publication of a short seller report arguing "[f]ederal courts have routinely held that such a pattern of purchases of the defendant company's stock after full or partial disclosure of materially false statements and omissions of material fact, either during the class period or after the close of the class period, may disqualify a plaintiff from serving as a lead plaintiff or class representative." *See* Dkt. No. 97, at 7. Curiously, the Arbitrage Funds also purchased after the short seller's report, yet they do not claim to be subject to the same unique defense to which they argue the Glazer Funds are subject. Both funds, however, listed ***all*** of their shares as having been purchased after the two partial disclosures or partial materialization of the risk in 2019. Clearly, if there are unique defenses for purchasing after the partial disclosure in the short seller report, there are unique defenses for purchases after the partial disclosures/materialization of the risk in 2019. The Arbitrage Funds have cast stones at their own glass house. As noted above, the Glazer and Arbitrage Funds purchased their shares on or after the announcement of the Acquisition pursuant to arbitrage strategies that did not rely on or even consider the alleged misstatements and omissions related to the partial disclosures in 2019. They have defenses unique to their purchases that likely have no relation or relevance to shareholders that purchased Forescout common stock in reliance on the misrepresentations and/or omissions that truth of which were partially disclosed, or risk partially materialized, on May 9, 2019 and October 20, 2019.

## IN THE ALTERNATIVE, MEITAV SHOULD BE APPOINTED CO-LEAD PLAINTIFF

Should the Court view that the losses of either the Glazer Funds or Arbitrage Funds compel either of the arbitrage funds a role in leading this Action, Meitav respectfully requests that it be appointed as Co-Lead Plaintiff and Pomerantz LLP be appointed as Co-Lead Counsel. Meitav, with purchases both before and during the Acquisition period, is the only movant with standing (or incentive) to litigate this action during the entire Class Period.

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

13

Given the glaring deficiencies identified above with both the Glazer Funds and the Arbitrage Funds, appointing Meitav as Co-Lead Plaintiff and Pomerantz as Co-Lead Counsel will protect the interests of the entire Class and assure that the litigation will not be delayed should either the Glazer Funds' or the Arbitrage Funds' trading strategies be found subject to unique defenses during any stage of the litigation. Meitav is the only movant that purchased Forescout common stock at all relevant periods during the Class Period, i.e., before and after the Acquisition announcement. As such, it is not subject to any unique defense based on its purchases, and none of the competing movants attest otherwise. Under similar circumstances, a court has directed the parties to add an additional co-lead plaintiff where the original lead-plaintiff did not purchase stock before the initial corrective disclosures. *See Kanefsky v. Honeywell Int'l, Inc.*, 18-cv-15336, 2020 U.S. Dist. Lexis 87108, at *7 n.4 (D.N.J. May 18, 2020) (noting that lead plaintiff's purchase of shares after the first corrective disclosure raised concerns about typicality and adequacy, and directing the parties to resolve foreseeable class representation issues to avoid additional delay).

Moreover, as noted above, Meitav and Pomerantz have conducted a thorough investigation that resulted in the Amended Complaint. Pomerantz filed the first of the since-consolidated actions on behalf of Forescout investors on behalf of the initial plaintiff, Christopher L. Sayce. *See* Dkt. No. 1. On the March 2, 2020 statutory motion deadline, only Meitav and Pomerantz—and no other Class member or law firm—respectively sought appointment as Lead Plaintiff and Lead counsel in the Action. *See* Dkt. No. 17. Only after Meitav filed its Amended Complaint on May 22, 2020 (Dkt. No. 31)—which, again, was the product of extensive efforts, including the identification and interviewing of more than a dozen CWs, did other investors or law firms begin to take any interest in this Action. With sizeable losses, typical claims, and proven adequacy, Meitav will work with either of the arbitrageurs to fulfill their collective duty to advance the claims of all Class members.

## CONCLUSION

For the foregoing reasons, Meitav respectfully requests that the Court grant its motion in all respects and deny the competing motions.

Case No. 20-cv-00076 (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

Dated: October 20, 2020

POMERANTZ LLP

By: */s/ Omar Jafri*

Patrick V. Dahlstrom
Omar Jafri
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com
ojafri@pomlaw.com

Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
jpafiti@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Meitav Tachlit*
*Mutual Funds Ltd.*

Case No. 20-cv-00076  (SI)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES (1) IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL AND (2) IN OPPOSITION TO COMPETING MOTIONS

15

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2020, a copy of the foregoing was filed electronically via the Court's CM/DKT. system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/DKT. System.

Dated:  October 20, 2020

POMERANTZ LLP


By:  */s/ Omar Jafri*
Omar Jafri

*Lead Counsel for Meitav Tachlit
Mutual Funds Ltd.*