IGNACIO E. SALCEDA, State Bar No. 164017
DIANE M. WALTERS, State Bar No. 148136
REBECCA L. EPSTEIN, State Bar No. 168226
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
Email:  isalceda@wsgr.com
        dwalters@wsgr.com
        bepstein@wsgr.com

Attorneys for Defendants
Michael DeCesare and Christopher Harms

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, and CHRISTOPHER HARMS,<br><br>Defendants. | CASE NO.:  3:20-cv-00076-SI<br><br><u>CLASS ACTION</u><br><br>**REPLY MEMORANDUM IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>Date:   March 19, 2021<br>Time:   10:00 a.m.<br>Dept:   Courtroom 1, 17th Floor<br><br>Before:  Hon. Susan Illston |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................1

I.      PLAINTIFFS IGNORE THEIR HEIGHTENED PLEADING BURDEN .........................2

II.     THE CAC FAILS TO ALLEGE FALSITY .....................................................................2

III.    THE CAC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER
        AGAINST MESSRS. DECESARE AND HARMS ...........................................................2

        A.      No Contemporaneous Facts Showing Scienter Are Pleaded ..................................3

                1.      The Conclusory "Access to Data" Allegations Do Not Plead
                        Scienter. ...............................................................................................3

                2.      Plaintiffs' "Admission" Allegations Fail. .....................................................4

        B.      The Allegations Attributed to Former Employees Do Not Plead Scienter .............5

        C.      The Delaware Proceeding Allegations Are Not Particularized Facts ....................8

        D.      The Rare Core Operations Inference Has No Application Here ............................9

        E.      The Motive Allegations Fail to Provide the Missing Inference of Scienter..........10

                1.      The Stock Sale Allegations Do Not Plead Scienter. ................................10

                2.      The Generic Compensation Allegations Do Not Plead Scienter...............13

                3.      Plaintiffs' Merger Motive Allegations Fail. ..............................................14

        F.      Temporal Proximity Does Not Plead Scienter .......................................................14

        G.      Plaintiffs' Allegations Fail Both Individually and Holistically ...........................15

IV.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION....................................................15

CONCLUSION ............................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Brodsky v. Yahoo! Inc.*,
592 F. Supp. 2d 1192 (N.D. Cal. 2008) ........................................................................... 12

*Browning v. Amyris, Inc.*,
No. 13-cv-02209-WHO, 2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ........................... 4

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) .................................................................. 7, 8, 10

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) .............................................................................. 12

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) .......................................................................................... 14

*Hatamian v. Advanced Micro Devices, Inc.*,
87 F. Supp. 3d 1149 (N.D. Cal. 2015) .............................................................................. 6

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ................................................................... 7, 8, 13

*In re Cerner Corp. Sec. Litig.*,
425 F.3d 1079 (8th Cir. 2005) .......................................................................................... 7

*In re ComUnity Lending, Inc.*,
No. C 08-00201 JW, 2009 WL 10699633 (N.D. Cal. Apr. 24, 2009) ............................... 8

*In re CRM Holdings, Ltd. Sec. Litig.*,
No. 10 Civ. 975 RPP, 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ................................ 8

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-cv-04883-BLF, 2018 WL 1411129 (N.D Cal. Mar. 21, 2018) ............................... 6

*In re Hall, Kinion & Assoc., Inc., Sec. Litig.*,
No. C 99–02943 WHA, 200 WL 1639503 (N.D. Cal. Oct. 27, 2000) ............................... 8

*In re Nektar Therapeutics*,
No. 18-cv-06670-HSG, 2020 WL 3962004 (N.D. Cal. July 13, 2020) ........................... 10

*In re Netflix, Inc. Sec. Litig.*,
No. C04-2978 FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005)  .............................. 11

*In re Quality Systems, Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ................................................................................. 6, 7, 12

*In re SunPower Corp. Sec. Litig.*,
No. 16-cv-04710-RS, 2018 WL 1863055 (N.D. Cal. Apr. 18, 2018) .............................. 15

*In re Twitter, Inc. Sec. Litig.*,
--- F. Supp. 3d ----, 2020 WL 7260479 (N.D. Cal. Dec. 10, 2020)................................... 5

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002), *abrogated on other grounds
as recognized by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776
(9th Cir. 2008) ..............................................................................................................8, 11

*Karpov v. Insight Enters., Inc.*,
No. CV 09-856-PHX-SRB, 2010 WL 4867634 (D. Ariz. Nov. 16, 2010),
*aff'd*, 471 F. App'x 607 (9th Cir. 2012) ............................................................................. 9

*Kovtun v. VIVUS, Inc.*,
No. C10-4957 PJH, 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012),
*aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015)........................ 10

*Lipton v. PathoGenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)....................................................................................... 12

*McGovney v. Aerohive Networks, Inc.*,
No. 18-CV-00435-LHK, 2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ............................ 8

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008).........................................................................2, 3, 6, 10, 12

*Park v. GoPro, Inc.*,
No. 18-cv-00193-EMC, 2019 WL 1231175 (N.D. Cal. Mar. 15, 2019)................... 10, 11

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)...................................................................................... 2, 3

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
No. 10-CV-03451-LHK, 2012 WL 1868874 (N.D. Cal. May 22, 2012),
*aff'd*, 759 F.3d 1051 (9th Cir. 2014) .................................................................... 3, 4, 5, 6

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014), *overruled on other grounds by City of
Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856
F.3d 605 (9th Cir. 2017)............................................................................................. 9, 10

*Robb v. Fitbit Inc.*,
216 F. Supp. 3d 1017 (N.D. Cal. 2016) ........................................................................... 4

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001).................................................................................... 12, 14

*Scandlon v. Blue Coat Sys., Inc.*,
No. C-11-4293-RS, 2013 WL 5313168 (N.D. Cal. Sept. 23, 2013) ................................. 6

*Scheller v. Nutanix, Inc.*,
No. 19-cv-01651-WHO, 2020 WL 5500422 (N.D. Cal. Sept. 11, 2020) ......................... 7

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015)............................................................................ 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................... 2, 3, 15

*Waterford Township Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018),
    *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020) .......................... 9

*Welgus v. TriNet Grp., Inc.*,
    No. 15-cv-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
    *aff'd*, 765 F. App'x 239 (9th Cir. 2019) ........................................................................ 11

*Wis. Central Ltd. v. United States*,
    138 S. Ct. 2067 (2018) ..................................................................................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).......................................................................................... 5, 13

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(A) ....................................................................................................... 2

**INTRODUCTION**

Because the Consolidated Amended Complaint ("CAC") lacks the facts necessary to support plaintiffs' securities fraud claims, plaintiffs strain to recast their allegations in the Opposition and to add allegations not found in the CAC.  Plaintiffs' efforts are for naught, as it is axiomatic that a complaint cannot be amended through an opposition brief, and the CAC's allegations fall far short of meeting the heightened pleading requirements of the Private Securities Litigation Reform Act ("Reform Act").

Plaintiffs allege that the Individual Defendants engaged in a lengthy conspiracy to defraud investors by deliberately making false and misleading statements regarding virtually every aspect of Forescout's business during a sixteen-month period.  As shown in Forescout's motion to dismiss, plaintiffs' scattershot approach to pleading – *i.e.*, indiscriminately challenging statements regarding Forescout's revenue forecasts, sales pipeline, sales force, challenges in EMEA, the Advent transaction, and the COVID-19 pandemic – fails to plead falsity as the CAC lacks the requisite facts showing that any challenged statement was false when made.

Even if the CAC sufficiently pleaded falsity – it does not – the scienter allegations also fail on multiple grounds.  *First*, the CAC does not allege any specific, contemporaneous internal documents or facts that rendered any statement knowingly or deliberately false or misleading.  This failure alone is fatal to plaintiffs' fraud claims.

*Second*, the allegations attributed to former employees ("CWs") all suffer from the same critical defect:  none of the CWs claims to know anything about either Individual Defendant's state of mind at the time the statements were made.  Indeed, the CW allegations consist of little more than hearsay and personal opinions untethered to the challenged statements.  Plaintiffs cannot mask their pleading defects by attempting to substitute quantity for quality.  Both individually and collectively, the allegations fail to raise the required strong inference of scienter.

*Third*, although plaintiffs strain to come up with a compelling explanation as to why the Individual Defendants purportedly would engage in a lengthy conspiracy to commit securities fraud, none of the purported "motive" allegations supports a strong inference of scienter.  Indeed, the stock sale allegations are based on preplanned sales made pursuant to Rule 10b5-1 plans, thus

rebutting an inference of scienter.  Likewise, the merger and compensation motive allegations reflect little more than generalized desires common to every corporation and/or corporate officer – motives that have been found insufficient under the Reform Act.

*Finally*, when viewed holistically, the competing inferences of non-fraudulent conduct outweigh the CAC's unsupported securities fraud allegations.  Plaintiffs ignore that Forescout met or exceeded its guidance during the first half of 2019.  That Forescout found itself operating in a challenging business environment in the latter part of the class period does not suffice to plead fraud.  Moreover, the Individual Defendants' transparency in their public disclosures throughout the class period rebuts plaintiffs' unsupported allegations of fraudulent concealment.

In sum, the CAC fails to raise a strong inference of scienter and should be dismissed.

## I.    PLAINTIFFS IGNORE THEIR HEIGHTENED PLEADING BURDEN

Noticeably absent in the "Legal Standard" section of the Opposition is any discussion of the Reform Act's heightened pleading requirements.  *Compare* Opp. at 10-11, *with* Individual Defendants' Motion to Dismiss ("ID MTD"), ECF No. 129, at 4-5.  As the Ninth Circuit has made clear, "[d]ue in large part to the enactment of the [Reform Act], . . . plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal[.]" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008) (citation omitted).  These requirements serve as a "check" against "abusive" shareholder litigation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  The Reform Act is clear that, where, as here, the CAC lacks the requisite particularized facts, it "shall" be dismissed.  15 U.S.C. § 78u-4(b)(3)(A).

## II.    THE CAC FAILS TO ALLEGE FALSITY

As set forth in Forescout's motion to dismiss briefing, the CAC should be dismissed in its entirety for failing to plead an actionable misstatement or omission.  *See* Forescout Motion to Dismiss, ECF No. 127, Section I & Forescout Reply Memorandum, Sections I-II.

## III.    THE CAC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER AGAINST MESSRS. DECESARE AND HARMS

To state a claim for securities fraud, plaintiffs must plead particularized facts giving rise to

a strong inference that Mr. DeCesare or Mr. Harms made false or misleading statements with scienter, *i.e.*, "a mental state embracing intent to deceive, manipulate, or defraud." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (citation omitted). To qualify as "strong," the inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as an opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The CAC fails to plead any inference – much less a strong inference – of scienter.

### A. No Contemporaneous Facts Showing Scienter Are Pleaded

Plaintiffs' failure to plead "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made" – alone – is fatal to plaintiffs' fraud claims. *Metzler*, 540 F.3d at 1066 (citation omitted); *see* ID MTD at 6-8.

### 1. The Conclusory "Access to Data" Allegations Do Not Plead Scienter.

The CAC fails to identify a single contemporaneous internal document demonstrating that any public statement was false or misleading when made, much less that any statement was made with an intent to deceive or defraud. *See* ID MTD at 6-8; *see Intuitive Surgical*, 759 F.3d at 1063 ("Missing are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives."). Instead, the CAC offers only vague allegations concerning pipeline data available on Forescout's Salesforce platform and unspecified pipeline reports. ¶ 160. "Mere access to reports containing undisclosed sales data," however, "is insufficient to establish a strong inference of scienter." *Intuitive Surgical*, 759 F.3d at 1063.

Unable to point to any specific internal documents demonstrating scienter, the Opposition relies on a vague allegation by a former Forescout salesperson in the Midwest (CW7) who was purportedly ***told by others*** that Mr. DeCesare reviewed unspecified information on Salesforce. Opp. at 31; ¶ 162. This hearsay allegation, however, lacks critical details: (i) what specific information was reviewed; (ii) when; and (iii) most importantly, how did the unidentified information render any public statement knowingly or deliberately false when made? As Judge Koh explained, the "'particularity' requirement of the PSLRA cannot be satisfied by a mere conclusory assertion that Defendants had 'access to, and use of the information' collected by the

[c]ompany's tracking software." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012) (citation omitted), *aff'd*, 759 F.3d 1051 (9th Cir. 2014). "Rather, particularity requires pleading the who, what, where, when, and how regarding each Defendant's access to the relevant information that belies fraudulent intent." *Id.* The CAC lacks these essential details.

Nor do conclusory allegations regarding the receipt of unidentified pipeline reports at unspecified times by other non-defendant officers suffice to plead scienter. Opp. at 31. Neither the Opposition nor the CAC identifies the dates or contents of any internal documents reviewed by other officers, much less explain how any unidentified documents rendered any challenged statements intentionally false or misleading when made. The allegations in the CAC thus stand in stark contrast to the detailed internal report allegations in *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) (Opp. at 31), which included allegations from a data scientist hired to analyze Fitbit's fitness devices who personally provided monthly reports directly to the COO regarding device technology failures that allegedly rendered defendants' statements about the devices' accuracy misleading. 216 F. Supp. 3d at 1032. No such detailed facts are alleged here.

### 2.      Plaintiffs' "Admission" Allegations Fail.

Plaintiffs further argue that the Individual Defendants' purported knowledge of "material adverse undisclosed facts" is "confirm[ed]" by certain of the Individual Defendants' public statements. Opp. at 30. The alleged statements, however, reflect nothing more than that Messrs. DeCesare and Harms were doing precisely what they and other senior executives should do, *i.e.*, generally overseeing the business and working to improve sales productivity. *See, e.g.*, ¶ 107 ("we certainly track on a very, very, very consistent basis"); ¶ 115 ("we've been tracking [big deals] very closely"); ¶ 132 (alleged statement about "diving into the field" in July); ¶ 164 (alleged statement regarding "spend[ing] a lot of time" on sales execution and productivity). These allegations fail to plead scienter as they lack particularized details, such as "'hard numbers or other specific information' about what the data showed." *Browning v. Amyris, Inc.*, No. 13-cv-02209-WHO, 2014 WL 1285175, at *16 (N.D. Cal. Mar. 24, 2014) (citation omitted). Moreover, plaintiffs do not identify any information that the Individual Defendants learned that rendered any

public statement false when made.  ID MTD at 8; *see, e.g.*, *In re Twitter, Inc. Sec. Litig.*, --- F. Supp. 3d ----, 2020 WL 7260479, at \*13 (N.D. Cal. Dec. 10, 2020) (allegations regarding review of metrics were "insufficient to draw a *strong* inference of scienter because they do not describe with particularity the specific contents," and "were "not sufficiently specific . . . to infer that the contents of the reports were inconsistent with any . . . statements").

### B.   The Allegations Attributed to Former Employees Do Not Plead Scienter

Like the CAC, the Opposition relies heavily on allegations purportedly attributable to former Forescout employees.  Where, as here, plaintiffs try to establish scienter through such allegations, plaintiffs must allege facts with "'sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged'" and that the allegations themselves are "indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (citation omitted).  The CW allegations, however, consist largely of opinion and hearsay and fail to raise a strong inference of scienter.  ID MTD at 9-16.[1]

Plaintiffs concede they have no witness with any knowledge about the state of mind of Mr. DeCesare or Mr. Harms at the time the challenged statements were made.  Opp. at 31.  In particular, plaintiffs do not dispute that:  (i) none of the CWs had any visibility regarding global, overall demand; (ii) none of the CWs is alleged to have had any involvement in corporate decision-making, forecasting, or the making of any public statements; and (iii) none of the CWs is alleged to have had any contact with the Individual Defendants.  ID MTD at 9-16.  The CWs thus have no personal knowledge regarding the mental states of Mr. DeCesare or Mr. Harms at the time any challenged statement was made.  *Id*; *see Zucco*, 552 F.3d at 998 ("generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state").  As a result, the CW "accounts offer little, if any, reliable basis from which to infer scienter." *Police Ret. Sys.*, 2012 WL 1868874, at \*20 ("None of the other witnesses offer

---

[1] Although plaintiffs seek to defend the hearsay nature of many of the CW allegations (Opp. at 32), plaintiffs disregard that the Ninth Circuit has held that vague hearsay allegations do not plead scienter.  *See Zucco*, 552 F.3d at 997 ("A majority of the confidential witnesses base their knowledge on vague hearsay, which is not enough to satisfy *Daou's* reliability standard.").

anything close to an attestation that they actually communicated with any . . . Defendants[.]").

Because none of the CW allegations suffices to plead a strong inference of scienter, plaintiffs repeatedly attempt to substitute quantity for quality, arguing that the "individual reliability of each CW's account" is "further bolstered by so many current and former employees providing the same or similar testimony[.]" Opp. at 29.[2] The mere number of confidential witnesses, however, does not suffice to plead scienter. *Cf., e.g.*, *Metzler*, 540 F.3d at 1056, 1069 n.13, 1072 (affirming dismissal of complaint with allegations from 20 CWs, finding that the CW allegations "did not convey information sufficient to support the strong inference of scienter"). Moreover, a review of the allegations attributed to the CWs reveals that they were low-level employees who provided, at most, isolated, anecdotal information that is not tied to a specific public statement. ID MTD at 9-16; *see also Scandlon v. Blue Coat Sys., Inc.*, No. C-11-4293-RS, 2013 WL 5313168, at *3 n.3 (N.D. Cal. Sept. 23, 2013) ("the witnesses' generalized reports of various issues within the company at certain points in time are insufficient to show that any positive statements were false when made"). Indeed, none of the CWs identifies any of the Defendants' public statements as being false or misleading. ID MTD at 9-16.

Thus, unlike the complaint in *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130 (9th Cir. 2017) (Opp. at 33), the CAC does not contain detailed CW allegations attributed to multiple individuals who held senior, corporate-level positions and had knowledge of the defendants' mental states, nor does the CAC contain allegations regarding contemporaneous internal documents refuting the company's public statements. 865 F.3d at 1138-39, 1144-46. Indeed, a comparison of the detailed allegations in *Quality* only emphasizes the deficient nature of the CAC. For example, the *Quality* complaint contained particularized allegations regarding:

---

[2] Plaintiffs' authority is inapposite. Opp. at 29. In *In re Extreme Networks, Inc. Securities Litigation*, No. 15-cv-04883-BLF, 2018 WL 1411129 (N.D Cal. Mar. 21, 2018), the CW allegations included, among others, allegations from two CWs regarding conversations with the defendant CEO during which he acknowledged problems with sales force integration, and a third CW, a senior executive who attended meetings with senior management and the board during which sales force integration was discussed. *Id.* at *5, *13. In *Hatamian v. Advanced Micro Devices, Inc.*, the court pointed to allegations regarding numerous meetings concerning the wafer yield at issue that multiple CWs corroborated and which concerned a "critical product for AMD's financial success[.]" 87 F. Supp. 3d 1149, 1163 (N.D. Cal. 2015).

(i) CWs who were former officers with personal knowledge regarding the defendants' alleged knowledge of information contradicting their public statements; (ii) a former board member who sued the company and CEO for securities fraud; (iii) real-time Salesforce data and reports showing a steep decline in sales due to market saturation; and (iv) internal admissions by the CEO that the company would be forced to change its business model.  865 F.3d at 1138-40, 1144-46.[3]

No such similarly detailed allegations are present in the CAC.  Although certain CWs allegedly opined that **they believed** that certain deals had unrealistic classifications and/or did not close (ID MTD at 12-13, 15-16), the CAC does not explain how the status of any particular deal rendered any public statement knowingly or deliberately misleading when made.  *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1065 (N.D. Cal. 2012) ("Plaintiffs fail to allege facts explaining how the performance of either CW5's group or the Verizon sales impacted the revenues of Juniper as a whole.").  Indeed, none of the CWs claims to have had **any** communications with the Individual Defendants concerning these deals, much less communications showing scienter.  ID MTD at 10-16; *see In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010) ("it is difficult to surmise how the opinions and observations of the CWs could support a reasonable inference about what these individual Defendants knew or did not know at the time" each challenged statement was made).  In any event, "[a] company could conceivably lose a material number of deals it had pursued, and yet continue to see a strong demand for its products."  *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1084 (8th Cir. 2005).

CW8's hearsay allegations that Mr. DeCesare purportedly was a "micromanager" (Opp. at 30) also add nothing to the scienter analysis.  Courts routinely hold that conclusory allegations regarding a "hands-on" management style do not suffice to plead a strong inference of scienter.

---

[3] The CW allegations in the CAC are also distinguishable from those in *Scheller v. Nutanix, Inc.*, No. 19-cv-01651-WHO, 2020 WL 5500422 (N.D. Cal. Sept. 11, 2020).  Opp. at 29.  In *Nutanix*, the court found that, although it was a "close question," certain of the CW allegations sufficed to plead scienter where, unlike here, the complaint included detailed allegations regarding:  (i) CWs who personally attended meetings with the defendants during which Nutanix's pipeline, deal status, and revenue targets were discussed; (ii) an admission by the defendant CEO at an internal all-hands meeting that Nutanix had lost sales leads from Dell (allegedly a large source of revenue); and (iii) internal sales data and purported knowledge "throughout the company that the pipeline was 'in trouble'" and "'drying up.'"  2020 WL 5500422, at *9.

*See McGovney v. Aerohive Networks, Inc.*, No. 18-CV-00435-LHK, 2019 WL 8137143, at *21 (N.D. Cal. Aug. 7, 2019) (citing cases).

Finally, to the extent that certain CWs have similar allegations regarding alleged pressures to meet internal sales targets and sales force turnover, the similarity is not surprising given that such matters are common to the sales profession. *Cf., e.g.*, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002) (alleging "very high sales force turnover"); *Royal Oak*, 880 F. Supp. 2d at 1064-65 (CW allegations regarding sales concerns and missed sales targets); *Accuray*, 757 F. Supp. 2d at 949 (CW allegations regarding "unrealistic" sales targets); *see also In re Hall, Kinion & Assoc., Inc., Sec. Litig.*, No. C 99–02943 WHA, 2000 WL 1639503, at *2 (N.D. Cal. Oct. 27, 2000) (allegations included failure to meet internal targets and sales underperformance; "every company has internal management challenges and normally tries hard to detect under-performance and ways to improve"). Nor do the CWs explain how the alleged sales issues rendered specific public statements false or misleading when made. *See* ID MTD at 9-16.

**C.    The Delaware Proceeding Allegations Are Not Particularized Facts**

The CAC's allegations from the Delaware Proceeding (Opp. at 34-36) also fail to plead scienter as they are just that – unproven and contested allegations. *See, e.g.*, *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1262 (C.D. Cal. 2015) ("allegations from other complaints or documents, which are unproved and are contested, may not be used to establish facts to demonstrate scienter") (citation omitted); *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975 RPP, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) ("citation to 'unproven allegations' made in the WCB or NYAG complaints do not constitute factual allegations").

Plaintiffs suggest that an attorney's Rule 11 obligations somehow bolster the Delaware Proceeding allegations. Opp. at 35. Plaintiffs' reliance on *In re ComUnity Lending, Inc.*, No. C 08-00201 JW, 2009 WL 10699633 (N.D. Cal. Apr. 24, 2009), in support of this proposition is misplaced. In *ComUnity*, the court merely accepted as true the balance of the defendant's bankruptcy estate as stated in plaintiff's attorneys' fee motion where the defendant did not dispute it was correctly stated. *Id.* at *2, n.5. The Delaware Proceeding allegations, however, were contested and never proceeded to trial. *See* Forescout Motion to Dismiss, at 6, 19. Thus, the

Advent Termination Letter and Advent's allegations in the Delaware Proceeding (¶¶ 91, 96, 156, 166) do not constitute particularized facts sufficient to plead a strong inference of scienter.

Plaintiffs' reliance on *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), is also misplaced. Opp. at 35. The "significant facts that came to light during the investigations and lawsuits" regarding the BP oil spills in *Reese* are in no way comparable to the unproven allegations in the Delaware Proceeding. 747 F.3d at 567. Nor were there any statements allegedly made by Forescout that equate to the contradictory disclosures in *Reese*. *Id.* at 575. The CAC's allegations about purported admissions in the Delaware Proceeding regarding the loss of partners due to conflicts with Advent (¶¶ 25, 26, 148(c)) are not probative of scienter (nor are they "admissions"). Indeed, the risk of merger-related lost business was disclosed in connection with the transaction. Ex. 15 at 16 ("customers and other persons . . . may . . . terminate . . . as a result of the Merger").

Finally, even if consideration of the channel stuffing or "front loading" allegations in the Delaware Proceeding were proper, they lack critical details, *e.g.*, "[s]pecific transactions, specific shipments, specific customers, specific times, or specific dollar amounts[.]" *Waterford Township Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1147 (C.D. Cal. 2018) (citation omitted), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020); *see also* Forescout Reply, Section I.C. Moreover, the CAC lacks any facts suggesting that the Individual Defendants were aware of any "channel stuffing scheme." *See, e.g.*, *Karpov v. Insight Enters., Inc.*, No. CV 09-856-PHX-SRB, 2010 WL 4867634, at *9 (D. Ariz. Nov. 16, 2010) (channel stuffing allegations "not clearly linked to" any defendant for purposes of scienter), *aff'd*, 471 F. App'x 607 (9th Cir. 2012).[4]

### D.     The Rare Core Operations Inference Has No Application Here

None of the criteria supporting application of the rarely applied – and unalleged – core operations inference is present here. ID MTD at 21 n.5; Opp. at 30. In particular, plaintiffs fail to plead particularized facts sufficient to infer each defendant's "actual" exposure to contemporaneous, contradictory information that rendered any challenged statement deliberately

---

[4] Although plaintiffs claim that the channel stuffing allegations purportedly were "corroborated" by CW15 (Opp. at 34), a review of the CW15 allegations in the CAC shows otherwise. None of the allegations attributed to CW15 discusses the alleged Merlin transaction in 4Q2019, nor does CW15 claim to have any knowledge regarding the 1Q2020 forecasts. ¶¶ 75, 83.

REPLY MEMO ISO IND. DEFS.' MOTION TO DISMISS             -9-
CASE NO.: 3:20-cv-00076-SI

false when made.  *See, e.g.*, *Kovtun v. VIVUS, Inc.*, No. C10-4957 PJH, 2012 WL 4477647, at *19 (N.D. Cal. Sept. 27, 2012) (core operations inference will not support scienter "absent 'additional detailed allegations about the defendants' actual exposure to information'") (citation omitted)), *aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015).  The CAC also falls far short of describing circumstances so rare that it would be "absurd" not to impute scienter.  Opp. at 30.  For example, the unpredictability of lengthy sales cycles – a fact Defendants expressly disclosed – is drastically different from the catastrophic oil spills in *Reese*.  *Id.*  In *Reese*, a BP executive publicly stated that a large oil spill in one of its pipelines was an anomaly, but a leak in another pipeline was later discovered.  747 F.3d at 563.  The court found that it was "absurd" to suggest that the officer overseeing operations in the spill locations, who had received corrective action orders from regulators, was not aware of the pipelines' comparable condition.  *Id.* at 576.

### E.    The Motive Allegations Fail to Provide the Missing Inference of Scienter

Neither the CAC nor the Opposition offers any compelling explanation as to why Mr. DeCesare or Mr. Harms purportedly would conspire to engage in fraud.  *See* ID MTD at 18-21.

### 1.    The Stock Sale Allegations Do Not Plead Scienter.

The Opposition strains to portray the Individual Defendants' stock sales as providing the missing inference of scienter.  As plaintiffs acknowledge (Opp. at 37-38), however, the sales were preplanned, nondiscretionary sales made pursuant to Rule 10b5-1 plans.  ID MTD at 18-19.  Numerous courts have found that such predetermined sales do not plead a strong inference of scienter.  *See, e.g.*, *Metzler*, 540 F.3d at 1067 n.11 ("Sales according to pre-determined plans may 'rebut [ ] an inference of scienter.'") (alteration in original) (citation omitted); *In re Nektar Therapeutics*, No. 18-cv-06670-HSG, 2020 WL 3962004, at *16 (N.D. Cal. July 13, 2020) (sales pursuant to Rule 10b5-1 plans "weigh[] against an inference of scienter"); *Royal Oak*, 880 F. Supp. 2d at 1069 (such plans provide "innocent, alternative explanation for the stock sales," thus "negat[ing] an inference of scienter").

Despite plaintiffs' attempts to argue to the contrary (Opp. at 37-38), courts routinely consider Rule 10b5-1 plans on motions to dismiss and conclude that sales pursuant to plans do not suffice to plead scienter.  *See* ID MTD at 18; *supra* at 10; *see also Park v. GoPro, Inc.*, No.

18-cv-00193-EMC, 2019 WL 1231175, at *23 ("In this case, the innocent alternative explanation that the sales were from a non-discretionary 10b5-1 plan negates scienter."); *Welgus v. TriNet Grp., Inc.*, No. 15-cv-03625-BLF, 2017 WL 6466264, at *18 (N.D. Cal. Dec. 18, 2017) ("predetermined" plan stock sales "rebut[] an inference of scienter"), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *In re Netflix, Inc. Sec. Litig.*, No. C04-2978 FMS, 2005 WL 1562858, at *8 (N.D. Cal. June 28, 2005) (considering Rule 10b5-1 plans, among other factors, in concluding stock sale allegations failed to plead scienter).

Plaintiffs' own allegations show that the sales were made with periodic regularity pursuant to these plans and were far from unusual or suspicious. ¶¶ 167, 168. Indeed, Mr. Harms' stock sales reflect predetermined amounts sold near the middle of every month, including, for example, the sale of exactly 9,815 shares five months in a row. ¶ 167. Likewise, Mr. DeCesare sold shares in every month of 2019, excluding June and October. ¶¶ 167, 168.

Attempting to avoid the import of the Rule 10b5-1 plans, the Opposition makes a number of arguments seeking to portray these routine stock sales as suspicious, all to no avail.

*First*, plaintiffs argue that the Individual Defendants' stock sales were suspicious because they sold more stock during the class period (February 7, 2019 through May 15, 2020) than before the class period. Opp. at 40. Although plaintiffs suggest that the CAC's pre-class period comparison period is comparable to the nearly 16-month class period, it is not. Indeed, plaintiffs acknowledge that the Individual Defendants were subject to trading lockups (*id.*) during much of the earlier comparison period. Those lockups expired in April 2018 and June 2018. Ex. 22 at 120. Thus, the only period during which the Individual Defendants could sell stock prior to the start of the class period was during the seven-month period between June 2018 and February 2019. It is hardly surprising that the Individual Defendants sold fewer shares over the course of seven months than over 16 months. *See, e.g.*, *Vantive*, 283 F.3d at 1092 ("lengthening the class period has allowed the plaintiffs to sweep as many stock sales into their totals as possible, thereby making the stock sales appear more suspicious than they would be with a shorter class period"). Moreover, plaintiffs ignore that their own allegations show that both Messrs. DeCesare and Harms began making regular monthly stock sales shortly after the lockup expired and in the months

leading up to the start of the class period.  ¶ 168.  The frequency and regularity of these sales refutes plaintiffs' attempts to portray the trading patterns as suspicious.

*Second*, the percentages sold are not unusually high, particularly in light of the lengthy period over which they occurred.  Mr. DeCesare sold approximately 22% of his holdings, and Mr. Harms sold approximately 47.5%.  ID MTD at 19.  Courts have found significantly higher percentages to be insufficient to plead scienter.  *See, e.g.*, *Metzler*, 540 F.3d at 1067 (CEO stock sales of 37% of holdings and CFO sales of 100% of holdings); *Ronconi v. Larkin*, 253 F.3d 423, 435-436 (9th Cir. 2001) (sales by seven insiders in excess of 69% insufficient).

*Third*, plaintiffs' new argument attempting to compare the Individual Defendants' stock sales to their annual salaries is unavailing.  Opp. at 38-39.  As an initial matter, the salary and stock sale comparison theory is not alleged in the CAC, and plaintiffs cannot amend their pleading through the Opposition brief.  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (alteration in original) (citation omitted).  In any event, it is far from unusual for executives' stock-based compensation to significantly exceed their cash salaries.  *See Wis. Central Ltd. v. United States*, 138 S. Ct. 2067, 2076 (2018) (Breyer, J., dissenting) ("Often, . . . executives' stock-based compensation far exceeds their cash salary.").  Thus, it is also not unusual for an executive's stock sales in any given year to also exceed base salary.[5]

*Fourth*, the timing of the sales was not unusual.  Although plaintiffs suggest that selling stock shortly after company announcements is unusual (Opp. at 39), the opposite is true.  As the Ninth Circuit has recognized, "[o]fficers of publicly traded companies commonly make stock transactions following the public release of quarterly earnings and related financial disclosures." *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002); *see Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1205-06 (N.D. Cal. 2008) (timing of sales "not suspicious" where defendants "regularly sold stock following earnings releases, which is common practice").

---

[5] Plaintiffs' attempt to compare the Individual Defendants' sales to the stock sales in *Quality* (Opp. at 39) is unavailing.  Unlike the routine, preplanned sales alleged in the CAC, the CEO in *Quality* sold **87% of his total holdings in a single day**.  865 F.3d at 1140.

*Fifth*, plaintiffs' new and inconsistent theories regarding the stock transactions in 2020 also fail to support an inference of scienter.  For example, plaintiffs suggest that it is suspicious that Mr. Harms "sold relatively small amounts of stock after the end of 2019."  Opp. at 39.  Yet, plaintiffs acknowledge that Mr. Harms' preplanned Rule 10b5-1 plan sales did, in fact, continue after 2019 and instead attempt to draw an inference of scienter from the fact that certain of the 2020 sales were executed at prices slightly lower than the anticipated merger consideration.  Opp. at 36 n.5.  As the CAC itself reflects, however, there is nothing unusual about the continuation of Mr. Harms' Rule 10b5-1 stock sales, which included predetermined amounts of shares timed near the middle of every month in 2020 through the end of the class period.  ¶ 167.  Although plaintiffs also attempt to draw an inference of scienter from the fact that Mr. DeCesare did not sell any additional shares in 2020 after the Merger was announced, plaintiffs fail to explain why it would be unusual or suspicious for an executive to continue to hold his shares through the consummation of a recently announced merger.  Indeed, plaintiffs inconsistently suggest that Mr. Harms should have terminated his Rule 10b5-1 plan in order to do just that.  Opp. at 36 n.5.

*Finally*, the allegations regarding irrelevant stock sales by a ***non-defendant*** director also fail to plead a strong inference of scienter.  ¶¶ 35, 171; ID MTD at 19.  Plaintiffs argue that Messrs. DeCesare and Harms purportedly conspired to engage in fraud in order to "allow[] ***other insiders***" to sell shares and to "further entrench and endear themselves to a key director and shareholder who is also an active venture capitalist."  ¶ 171 (emphasis added).  Missing from the CAC, however, are any facts, much less particularized facts, to support this bald assertion.

**2.     The Generic Compensation Allegations Do Not Plead Scienter**.

The allegations regarding FY2019 bonuses consist of little more than a general assertion that the Individual Defendants' bonuses were tied to increasing sales and revenue and employee retention.  ¶ 170.  The linking of executive compensation to performance is neither unusual nor suspicious, and such "generalized assertions of motive, without more, are inadequate[.]"  *Zucco*, 552 F.3d at 1004-05 (citation omitted); *see* ID MTD at 20; *see also Accuray*, 757 F. Supp. 2d at 951 ("linking executive compensation to company performance is not unusual or suspicious").  Plaintiffs' skeletal allegations thus fail to satisfy the Reform Act's stringent requirements.

**3.    Plaintiffs' Merger Motive Allegations Fail**.

Plaintiffs argue that the commencement of merger discussions in October 2019 provided Defendants with a "clear incentive to make [the company] look as attractive to potential buyers as possible." Opp. at 41. Although plaintiffs contend that "[c]ourts have routinely recognized similar allegations as supporting a strong inference of scienter" (*id.*), plaintiffs ignore that the Ninth Circuit has held that merely alleging, as plaintiffs do here, "a personal profit motive on the part of officers . . . contemplating a merger is insufficient to raise a strong inference of scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) ("We join our sister circuits and hold that evidence of a personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter."); ID MTD at 20. Moreover, plaintiffs concede that the merger discussions could not have provided a motive for fraud during the first eight months of the putative class period since they had not yet occurred.

Nor are there any pleaded facts to support the suggestion that Defendants "were able to conceal Forescout's true financial and operating condition long enough to attract Advent as a buyer." Opp. at 41. A more compelling inference is that, as with any merger, Advent conducted extensive diligence (Ex. 19), and there are no facts pleaded to suggest Advent was not fully aware of Forescout's financial and operating performance. Moreover, the fact that Advent proceeded with the merger undercuts any notion that material information was concealed. ID MTD at 2-3.

**F.    Temporal Proximity Does Not Plead Scienter**

Plaintiffs further argue that the "temporal proximity" of Mr. DeCesare's May 11, 2020 statement expressing optimism regarding completing the pending Advent acquisition "three days after Advent had informed DeCesare that it was considering not closing the Acquisition [] was extremely reckless if not knowingly false." Opp. at 36. As the closing of the Advent transaction confirms, however, Mr. DeCesare's confidence that the merger would proceed was well-founded. *See also* Forescout Reply, Section II. In any event, mere proximity, in the absence of other allegations pleading scienter, does not raise a strong inference of scienter. *See Ronconi*, 253 F.3d at 437 ("Because the . . . remaining allegations do not comport with the requirements of the PSLRA, the temporal proximity of the statements, in and of itself, is insufficient.").

### G.    Plaintiffs' Allegations Fail Both Individually and Holistically

The Supreme Court has mandated that courts must conduct a comparative scienter inquiry, including considering opposing inferences of non-fraudulent conduct. *Tellabs*, 551 U.S. at 323. That inquiry weighs against scienter here. Rather than concealing information, Defendants repeatedly cautioned investors regarding, among other things, Forescout's dependence on large deals, the unpredictability of the lengthy sales cycles, and the fact that some deals occurred later than anticipated. *See* Forescout Motion to Dismiss at 3-6, 9-10. The transparency of these disclosures undercuts any suggestion of fraudulent concealment.

Indeed, a more compelling inference is that Forescout simply found itself operating in a challenging business environment in the latter part of 2019, and then had to deal with the impact of a pandemic. That does not equate to fraud. At most, the allegations suggest "that the results they hoped for did not come to pass, but not that they knew the projections were groundless when made." *In re SunPower Corp. Sec. Litig.*, No. 16-cv-04710-RS, 2018 WL 1863055, at *3 (N.D. Cal. Apr. 18, 2018).

## IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

The CAC also separately fails to plead loss causation. *See* Forescout Motion to Dismiss, Section III & Reply, Section IV.[6]

### CONCLUSION

For the foregoing reasons, the Individual Defendants request that the CAC be dismissed.

Dated: March 5, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/    Ignacio E. Salceda
        Ignacio E. Salceda

Attorneys for Defendants Michael DeCesare and
Christopher Harms

---

[6] Because the Section 10(b) claim fails, the Section 20(a) claim also fails. ID MTD at 22.