# EXHIBIT 27



| | |
|---|---|
| **Company:** | FORESCOUT TECHNOLOGIES, INC |
| **Document:** | PREM14A · 03/03/2020 |
| **Section:** | Entire Document |
| **File Number:** | 001-38253 |
| **Pages:** | 222 |

6/15/2021 12:33:51 PM

Use these links to rapidly review the document
TABLE OF CONTENTS
TABLE OF CONTENTS

Table of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

## SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934 (Amendment No. )

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☒ Preliminary Proxy Statement

☐ **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☐ Definitive Proxy Statement

☐ Definitive Additional Materials

☐ Soliciting Material under §240.14a-12

---

**FORESCOUT TECHNOLOGIES, INC.**

(Name of Registrant as Specified In Its Charter)

**N/A**

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☐ No fee required.

☒ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.
   (1) Title of each class of securities to which transaction applies:
   Common stock, par value $0.001 per share, of Forescout Technologies, Inc. ("common stock")
   (2) Aggregate number of securities to which transaction applies:
   As of February 25, 2020, there were issued and outstanding: (1) 48,982,365 shares of common stock; (2) stock-based awards representing the right to receive up to 5,615,883 shares of common stock; and (3) options to acquire 2,654,346 shares of common stock.
   (3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):
   The maximum aggregate value was determined based upon the sum of: (1) 48,982,365 shares of common stock multiplied by $33.00 per share; (2) stock-based awards representing the right to receive up to 5,615,883 shares of common stock multiplied by $33.00 per share; and (3) options to acquire 2,654,346 shares of common stock with an exercise price per share below $33.00 multiplied by $26.15 per share (the difference between $33.00 and the weighted average exercise price of $6.85 per share). In accordance with Section 14(g) of the Securities Exchange Act of 1934, as amended, the filing fee was determined by multiplying the sum calculated in the preceding sentence by $0.0001298.
   (4) Proposed maximum aggregate value of transaction:
   $1,871,153,332
   (5) Total fee paid:
   $242,876

☐ Fee paid previously with preliminary materials.

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

   (1) Amount Previously Paid:
   (2) Form, Schedule or Registration Statement No.:
   (3) Filing Party:
   (4) Date Filed:

Table of Contents

**PRELIMINARY PROXY STATEMENT—SUBJECT TO COMPLETION**



**Forescout Technologies, Inc.**
**190 West Tasman Drive**
**San Jose, California 95134**
**[ ● ], 2020**

**To the Stockholders of Forescout Technologies, Inc.:**

You are cordially invited to attend a special meeting of stockholders, which we refer to as the "special meeting," of Forescout Technologies, Inc., which we refer to as "Forescout." The special meeting will be held on [ ● ], 2020, at [ ● ], Pacific time, at [ ● ].

At the special meeting, you will be asked to consider and vote on a proposal to adopt the Agreement and Plan of Merger (as it may be amended from time to time), dated February 6, 2020, which we refer to as the "merger agreement," by Forescout, Ferrari Group Holdings, L.P., which we refer to as "Parent," and Ferrari Merger Sub, Inc., which we refer to as "Merger Sub." Parent and Merger Sub are affiliates of Advent International Corporation, one of the largest and most experienced global private equity firms, which has invested $48 billion in over 350 private equity investments across 41 countries since 1989. We refer to the merger of Merger Sub (a wholly owned indirect subsidiary of Parent) with and into Forescout as the "merger." At the special meeting, you will also be asked to consider and vote on (1) a proposal to approve, on a non-binding, advisory basis, the compensation that will or may become payable by Forescout to its named executive officers in connection with the merger; and (2) a proposal for the adjournment of the special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies if there are insufficient votes to adopt the merger agreement at the time of the special meeting.

If the merger is completed, you will be entitled to receive $33.00 in cash, without interest and subject to any applicable withholding taxes, for each share of common stock that you own (unless you have properly exercised your appraisal rights). This amount represents a premium of approximately (1) 30 percent over Forescout's closing share price of $25.45 on October 18, 2019, the last full trading day prior to disclosure by Corvex Management LP and Jericho Capital Asset Management L.P. on October 21, 2019, that they agreed to form a "group" with respect to their respective investments in Forescout; and (2) 18 percent over Forescout's closing share price of $27.98 on February 5, 2020, the last full trading day prior to the announcement of the merger.

**Forescout's Board of Directors, after considering the factors more fully described in the enclosed proxy statement, unanimously: (1) determined that the merger agreement, the merger and the other transactions contemplated by the merger agreement are fair to, advisable and in the best interests of Forescout and its stockholders; and (2) adopted and approved the merger agreement, the merger and the other transactions contemplated by the merger agreement.**

**Forescout's Board of Directors unanimously recommends that you vote: (1) "FOR" the adoption of the merger agreement; (2) "FOR" the compensation that will or may become payable by Forescout to its named executive officers in connection with the merger; and (3) "FOR" the adjournment of the special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies if there are insufficient votes to adopt the merger agreement at the time of the special meeting.**

Table of Contents

The enclosed proxy statement provides detailed information about the special meeting, the merger agreement and the merger, and the other proposals to be considered at the special meeting. A copy of the merger agreement is attached as Annex A to the proxy statement.

The proxy statement also describes the actions and determinations of Forescout's Board of Directors in connection with its evaluation of the merger agreement and the merger. We encourage you to read the proxy statement and its annexes, including the merger agreement, carefully and in their entirety, as they contain important information.

Even if you plan to attend the special meeting in person, please sign, date and return, as promptly as possible, the enclosed proxy card (a prepaid reply envelope is provided for your convenience) or grant your proxy electronically over the internet or by telephone (using the instructions found on the proxy card). If you attend the special meeting and vote in person by ballot, your vote will revoke any proxy that you have previously submitted. If you fail to return your proxy or to attend the special meeting in person, your shares will not be counted for purposes of determining whether a quorum is present at the special meeting and will have the same effect as a vote against the adoption of the merger agreement.

If your shares are held through a bank, broker or other nominee, you are considered the "beneficial owner" of shares held in "street name." If you hold your shares in "street name," you should instruct your bank, broker or other nominee how to vote your shares in accordance with the voting instruction form provided by your bank, broker or other nominee. Your bank, broker or other nominee cannot vote on any of the proposals to be considered at the special meeting without your instructions. Without your instructions, your shares will not be counted for purposes of a quorum or be voted at the special meeting, and that will have the same effect as voting against the adoption of the merger agreement.

Your vote is very important, regardless of the number of shares that you own.

If you have any questions or need assistance voting your shares, please contact our proxy solicitor:

Innisfree M&A Incorporated
501 Madison Avenue, 20th Floor
New York, New York 10022
Stockholders call toll-free: (888) 750-5834
Banks and brokers call collect: (212) 750-5833

On behalf of Forescout's Board of Directors, thank you for your support.

Very truly yours,


Michael DeCesare
*Chief Executive Officer and President*

The accompanying proxy statement is dated [ ● ], 2020, and, together with the enclosed form of proxy card, is first being sent on or about [ ● ], 2020.

Table of Contents

PRELIMINARY PROXY STATEMENT—SUBJECT TO COMPLETION



## Forescout Technologies, Inc.
**190 West Tasman Drive**
**San Jose, California 95134**

**NOTICE OF SPECIAL MEETING OF STOCKHOLDERS**
**TO BE HELD ON [ ● ], 2020**

Notice is given that a special meeting of stockholders, which we refer to as the "special meeting," of Forescout Technologies, Inc., a Delaware corporation, which we refer to as "Forescout," will be held on [ ● ], 2020, at [ ● ], Pacific time, at [ ● ], for the following purposes:

1. To consider and vote on the proposal to adopt the Agreement and Plan of Merger (as it may be amended from time to time), dated as of February 6, 2020, by and among Forescout, Ferrari Group Holdings, L.P. and Ferrari Merger Sub, Inc., which we refer to as the "merger agreement";

2. To consider and vote on the proposal to approve, on a non-binding, advisory basis, the compensation that will or may become payable by Forescout to its named executive officers in connection with the merger of Ferrari Merger Sub, Inc., a wholly owned indirect subsidiary of Ferrari Group Holdings, L.P., with and into Forescout, which we refer to as the "merger";

3. To consider and vote on any proposal to adjourn the special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies if there are insufficient votes to adopt the merger agreement at the time of the special meeting; and

4. To transact any other business that may properly come before the special meeting.

Only stockholders as of the close of business on [ ● ], 2020, are entitled to notice of, and to vote at, the special meeting.

**Forescout's Board of Directors unanimously recommends that you vote: (1) "FOR" the adoption of the merger agreement; (2) "FOR" the compensation that will or may become payable by Forescout to its named executive officers in connection with the merger; and (3) "FOR" the adjournment of the special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies if there are insufficient votes to adopt the merger agreement at the time of the special meeting.**

Forescout stockholders who do not vote in favor of the proposal to adopt the merger agreement will have the right to seek appraisal of the "fair value" of their shares of common stock (exclusive of any elements of value arising from the accomplishment or expectation of the merger and together with interest (as described in the accompanying proxy statement) to be paid on the amount determined to be "fair value") in lieu of receiving the per share merger consideration if the merger is completed, as determined in accordance with Section 262 of the Delaware General Corporation Law (which is referred to as the "DGCL"). To do so, a Forescout stockholder must properly demand appraisal before the vote is taken on the merger agreement and comply with all other requirements of the DGCL, including Section 262 of the DGCL, which are summarized in the accompanying proxy statement, and must meet certain other conditions. Section 262 of the DGCL is reproduced in its entirety in Annex B to the accompanying proxy statement and is incorporated in this notice by reference.

Table of Contents

Even if you plan to attend the special meeting in person, please sign, date and return, as promptly as possible, the enclosed proxy card (a prepaid reply envelope is provided for your convenience) or grant your proxy electronically over the internet or by telephone (using the instructions found on the proxy card). If you attend the special meeting and vote in person by ballot, your vote will revoke any proxy that you have previously submitted. If you fail to return your proxy or to attend the special meeting in person, your shares will not be counted for purposes of determining whether a quorum is present at the special meeting and will have the same effect as a vote against the adoption of the merger agreement.

If your shares are held through a bank, broker or other nominee, you are considered the "beneficial owner" of shares held in "street name." If you hold your shares in "street name," you should instruct your bank, broker or other nominee how to vote your shares in accordance with the voting instruction form provided by your bank, broker or other nominee. Your bank, broker or other nominee cannot vote on any of the proposals to be considered at the special meeting without your instructions. Without your instructions, your shares will not be counted for purposes of a quorum or be voted at the special meeting, and that will have the same effect as voting against the adoption of the merger agreement.

By Order of the Board of Directors,

Darren J. Milliken
*Senior Vice President, General Counsel, Corporate*
*Secretary and Chief Compliance Officer*

Dated: [●], 2020
San Jose, CA

Table of Contents

**IMPORTANT INFORMATION**

**Even if you plan to attend the special meeting in person, we encourage you to submit your proxy as promptly as possible: (1) over the internet; (2) by telephone; or (3) by signing and dating the enclosed proxy card (a prepaid reply envelope is provided for your convenience). You may revoke your proxy or change your vote at any time before your proxy is voted at the special meeting.**

If your shares are held through a bank, broker or other nominee, you are considered the "beneficial owner" of shares held in "street name." If you hold your shares in "street name," you should instruct your bank, broker or other nominee how to vote your shares in accordance with the voting instruction form provided by your bank, broker or other nominee. Your bank, broker or other nominee cannot vote on any of the proposals to be considered at the special meeting without your instructions. Without your instructions, your shares will not be counted for purposes of a quorum or be voted at the special meeting, and that will have the same effect as voting against the adoption of the merger agreement.

If you are a stockholder of record, voting in person by ballot at the special meeting will revoke any proxy that you previously submitted. If you hold your shares through a bank, broker or other nominee, you must obtain a "legal proxy" from the bank, broker or other nominee that holds your shares in order to vote in person by ballot at the special meeting.

We encourage you to read the accompanying proxy statement and its annexes, including all documents incorporated by reference into the accompanying proxy statement, carefully and in their entirety. If you have any questions concerning the merger, the special meeting or the accompanying proxy statement, would like additional copies of the accompanying proxy statement, or need help voting your shares, please contact our proxy solicitor:

Innisfree M&A Incorporated
501 Madison Avenue, 20th Floor
New York, New York 10022
Stockholders call toll-free: (888) 750-5834
Banks and brokers call collect: (212) 750-5833

Table of Contents

**TABLE OF CONTENTS**

|  | Page |
|---|---:|
| SUMMARY | 1 |
| Parties Involved in the Merger | 1 |
| Effect of the Merger | 2 |
| Per Share Merger Consideration | 2 |
| The Special Meeting | 3 |
| Recommendation of the Forescout Board and Reasons for the Merger | 4 |
| Opinion of Morgan Stanley & Co. LLC | 4 |
| Treatment of Equity Awards in the Merger | 5 |
| Employee Benefits | 6 |
| Interests of Forescout's Directors and Executive Officers in the Merger | 7 |
| Appraisal Rights | 8 |
| Material U.S. Federal Income Tax Consequences of the Merger | 9 |
| Regulatory Approvals Required for the Merger | 9 |
| Financing of the Merger | 9 |
| Solicitation of Other Acquisition Offers | 10 |
| Change in the Forescout Board's Recommendation | 11 |
| Conditions to the Closing of the Merger | 12 |
| Termination of the Merger Agreement | 13 |
| Termination Fees and Remedies | 14 |
| Limited Guarantee | 15 |
| Delisting and Deregistration of Our Common Stock | 15 |
| Effect on Forescout if the Merger is Not Completed | 15 |
| QUESTIONS AND ANSWERS | 16 |
| FORWARD-LOOKING STATEMENTS | 26 |
| THE SPECIAL MEETING | 28 |
| Date, Time and Place | 28 |
| Purpose of the Special Meeting | 28 |
| Record Date; Shares Entitled to Vote; Quorum | 28 |
| Vote Required; Abstentions and Broker Non-Votes | 28 |
| Shares Held by Forescout's Directors and Executive Officers | 29 |
| Voting of Proxies | 29 |
| Revocability of Proxies | 30 |
| The Forescout Board's Recommendation | 30 |
| Adjournment | 31 |
| Solicitation of Proxies | 31 |
| Anticipated Date of Completion of the Merger | 31 |
| Appraisal Rights | 31 |
| Other Matters | 32 |
| Important Notice Regarding the Availability of Proxy Materials | 32 |
| Householding of Special Meeting Materials | 32 |
| Questions and Additional Information | 33 |
| THE MERGER | 34 |
| Parties Involved in the Merger | 34 |
| Effect of the Merger | 35 |
| Effect on Forescout if the Merger is Not Completed | 35 |
| Per Share Merger Consideration | 35 |
| Background of the Merger | 36 |
| Recommendation of the Forescout Board and Reasons for the Merger | 46 |

i

Table of Contents

|  | Page |
|---|---|
| Opinion of Morgan Stanley | 50 |
| Financial Forecasts | 59 |
| Interests of Forescout's Directors and Executive Officers in the Merger | 63 |
| Closing and Effective Time of the Merger | 72 |
| Appraisal Rights | 72 |
| Accounting Treatment | 78 |
| Material U.S. Federal Income Tax Consequences of the Merger | 79 |
| Regulatory Approvals Required for the Merger | 82 |
| Limited Guarantee | 83 |
| Financing of the Merger | 84 |
| Delisting and Deregistration of Our Common Stock | 85 |
| PROPOSAL 1: ADOPTION OF THE MERGER AGREEMENT | 86 |
| PROPOSAL 2: APPROVAL, ON A NON-BINDING, ADVISORY BASIS, OF CERTAIN MERGER RELATED EXECUTIVE COMPENSATION ARRANGEMENTS | 87 |
| PROPOSAL 3: ADJOURNMENT OF THE SPECIAL MEETING | 88 |
| THE MERGER AGREEMENT | 89 |
| Closing and Effective Time of the Merger | 89 |
| Effects of the Merger; Certificate of Incorporation; Bylaws; Directors and Officers | 90 |
| Conversion of Shares | 90 |
| Payment Agent, Exchange Fund and Exchange and Payment Procedures | 92 |
| Representations and Warranties | 93 |
| Conduct of Business Pending the Merger | 97 |
| Solicitation of Other Acquisition Offers | 99 |
| The Forescout Board's Recommendation; Board Recommendation Change | 101 |
| Stockholder Meeting | 103 |
| Employee Benefits | 104 |
| Efforts to Close the Merger | 105 |
| Indemnification and Insurance | 107 |
| Conditions to the Closing of the Merger | 108 |
| Termination of the Merger Agreement | 109 |
| Termination Fees and Remedies | 110 |
| Fees and Expenses | 112 |
| No Third Party Beneficiaries | 112 |
| Amendment and Waiver | 113 |
| Governing Law and Venue | 113 |
| Waiver of Jury Trial | 113 |
| SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT | 114 |
| FUTURE STOCKHOLDER PROPOSALS | 117 |
| WHERE YOU CAN FIND MORE INFORMATION | 118 |
| MISCELLANEOUS | 120 |
| ANNEX A—Agreement and Plan of Merger | A-1 |
| ANNEX B—Section 262 of the Delaware General Corporation Law | B-1 |
| ANNEX C—Opinion of Morgan Stanley & Co. LLC | C-1 |

ii

Table of Contents

**Conditions to the Closing of the Merger**

The obligations of Parent, Merger Sub and Forescout, as applicable, to consummate the merger are subject to the satisfaction or waiver (where permitted by applicable law) of certain conditions, including the following:

- the adoption of the merger agreement by the requisite affirmative vote of Forescout stockholders;

- the expiration or termination of the waiting period under the HSR Act and the affirmative approval or clearance under certain other applicable foreign antitrust laws (the waiting period under the HSR Act was early terminated as of 5:15 p.m., Eastern time, on February 24, 2020); and

- the absence of any order, injunction or other judgment issued by any court of competent jurisdiction or other legal or regulatory restraint or prohibition preventing the consummation of the merger, any action taken by any governmental authority of competent jurisdiction and any law enacted, entered, enforced or deemed applicable to the merger, that, in each case, prohibits, makes illegal or enjoins the consummation of the merger.

In addition, the obligations of Parent and Merger Sub to consummate the merger are subject to the satisfaction or waiver (where permitted by applicable law) of each of the following additional conditions, any of which may be waived exclusively by Parent:

- the accuracy of the representations and warranties of Forescout in the merger agreement, subject to applicable materiality or other qualifiers, as of the effective time of the merger or the date in respect of which such representation or warranty was specifically made;

- Forescout having performed and complied with in all material respects all obligations under the merger agreement required to be performed and complied with by it prior to the effective time of the merger;

- receipt by Parent and Merger Sub of a customary closing certificate of Forescout; and

- the absence of any Company Material Adverse Effect (as defined under the section of this proxy statement captioned "The Merger Agreement—Representations and Warranties") having occurred after the date of the merger agreement that is continuing.

In addition, the obligations of Forescout to consummate the merger are subject to the satisfaction or waiver (where permitted by applicable law) of each of the following additional conditions, any of which may be waived exclusively by Forescout:

- the accuracy of the representations and warranties of Parent and Merger Sub in the merger agreement, subject to applicable materiality or other qualifiers, as of the effective time of the merger or the date in respect of which such representation or warranty was specifically made;

- Parent and Merger Sub having performed and complied with in all material respects all obligations under the merger agreement required to be performed and complied with by Parent and Merger Sub prior to the effective time of the merger; and

- the receipt by Forescout of a customary closing certificate of Parent and Merger Sub.

Table of Contents

**FORWARD-LOOKING STATEMENTS**

This proxy statement, the documents to which we refer you in this proxy statement and information included in oral statements or other written statements made or to be made by us or on our behalf contain "forward-looking statements" that do not directly or exclusively relate to historical facts, including, without limitation, statements relating to the completion of the merger. You can typically identify forward-looking statements by the use of forward-looking words, such as "may," "should," "could," "project," "believe," "anticipate," "expect," "estimate," "continue," "potential," "plan," "forecast" and other words of similar import. Forescout stockholders are cautioned that any forward-looking statements are not guarantees of future performance and may involve significant risks and uncertainties, and that actual results may vary materially from those in the forward-looking statements. These risks and uncertainties include, but are not limited to, the risks detailed in our filings with the SEC, including in our most recent filings on Forms 10-K and 10-Q, factors and matters described or incorporated by reference in this proxy statement, and the following factors:

- the inability to complete the merger due to the failure of Forescout stockholders to adopt the merger agreement or the failure to satisfy the other conditions to the completion of the merger, including that a governmental entity may prohibit, delay or refuse to grant a necessary regulatory approval;

- the risk that the merger agreement may be terminated in circumstances that require us to pay a termination fee;

- the outcome of any legal proceedings that may be instituted against us and others related to the merger agreement;

- risks that the merger affects our ability to retain or recruit employees;

- the fact that receipt of the all-cash per share merger consideration will be taxable to Forescout stockholders that are treated as U.S. Holders (as defined under the section of this proxy statement captioned "The Merger—Material U.S. Federal Income Tax Consequences of the Merger") for U.S. federal income tax purposes;

- the fact that, if the merger is completed, Forescout stockholders will forgo the opportunity to realize the potential long-term value of the successful execution of Forescout's current strategy as an independent company;

- the possibility that Forescout could, at a later date, engage in unspecified transactions, including restructuring efforts, special dividends or the sale of some or all of Forescout's assets to one or more as yet unknown purchasers, that could conceivably produce a higher aggregate value than that available to Forescout stockholders in the merger;

- the fact that under the terms of the merger agreement, Forescout is restrained at certain times from soliciting other acquisition proposals during the pendency of the merger;

- the effect of the announcement or pendency of the merger on our business relationships, customers, operating results and business generally, including risks related to the diversion of the attention of Forescout management or employees during the pendency of the merger;

- the amount of the costs, fees, expenses and charges related to the merger agreement or the merger;

- the risk that the proposed merger will not be consummated in a timely manner, exceeding the expected costs of the merger;

- the risk that our stock price may decline significantly if the merger is not completed; and

- risks related to obtaining the requisite stockholder approval to the merger.

26

Table of Contents

Consequently, all of the forward-looking statements that we make in this proxy statement are qualified by the information contained or incorporated by reference in this proxy statement, including: (1) the information contained under this caption; and (2) information in our most recent filings on Forms 10-K and 10-Q, including the information contained under the caption "Risk Factors," and information in our consolidated financial statements and notes thereto. No assurance can be given that these are all of the factors that could cause actual results to vary materially from the forward-looking statements.

Except as required by applicable law, we undertake no obligation to publicly update forward-looking statements, whether as a result of new information, future events or otherwise. Forescout stockholders are advised to consult any future disclosures that we make on related subjects as may be detailed in our other filings made from time to time with the SEC.

Table of Contents

Merger Sub as of immediately prior to the effective time of the merger will be cancelled and extinguished without any conversion thereof or consideration paid therefor;

- each share of common stock that is issued and outstanding as of immediately prior to the effective time of the merger (other than the shares identified in the prior bullet and shares of common stock held by Forescout stockholders who have (1) neither voted in favor of the adoption of the merger agreement nor consented thereto in writing; and (2) properly and validly exercised their statutory rights of appraisal in respect of such shares in accordance with the DGCL) will be cancelled and extinguished and automatically converted into the right to receive cash in an amount equal to the per share merger consideration; and

- each certificate formerly representing any shares of common stock or any book-entry shares that represented shares of common stock immediately prior to the effective time of the merger will automatically be cancelled and retired and all such shares will cease to exist and will thereafter only represent the right to receive the per share merger consideration.

At or prior to the closing of the merger, a sufficient amount of cash will be deposited with a designated payment agent to pay the aggregate per share merger consideration. Once a Forescout stockholder has provided the payment agent with his, her or its stock certificates (or an affidavit of loss in lieu of a stock certificate) or customary agent's message with respect to book-entry shares, appropriate letter of transmittal and other items specified by the payment agent, then the payment agent will pay the stockholder the appropriate portion of the aggregate per share merger consideration. For more information, see the section of this proxy statement captioned "The Merger Agreement—Payment Agent, Exchange Fund and Exchange and Payment Procedures."

After the merger is completed, each Forescout stockholder will have the right to receive the per share merger consideration for each share of common stock that such stockholder owned, as described in the section of this proxy statement captioned "The Merger Agreement—Conversion of Shares," but will no longer have any rights as a Forescout stockholder (except that Forescout stockholders who properly and validly exercise and perfect, and do not validly withdraw or subsequently lose, their appraisal rights will have the right to receive payment for the "fair value" of their shares, determined pursuant to an appraisal proceeding contemplated by the DGCL as described below under the section of this proxy statement captioned "The Merger—Appraisal Rights").

**Background of the Merger**

*The following chronology summarizes the key meetings and events that led to the signing of the Merger Agreement. This chronology does not purport to catalogue every conversation of or among the Forescout Board or its committees, Forescout's representatives, and other parties. Other than as described below, there have been no material contacts between Forescout and Advent in the past two years.*

The Forescout Board regularly evaluates Forescout's strategic direction and ongoing business plans with a view toward strengthening Forescout's business and enhancing stockholder value. As part of this evaluation, the Forescout Board has, from time to time, considered a variety of strategic alternatives. These have included, among others, (1) the continuation of Forescout's current business plan with Forescout remaining as a standalone entity; (2) the investment in, and development of, new products; (3) potential expansion opportunities through acquisitions, partnerships or other commercial relationships; (4) the sale of Forescout; and (5) capital raising activities.

During the second half of 2019, Michael DeCesare, Forescout's President, Chief Executive Officer and member of the Forescout Board, met with a senior executive of a company with whom Forescout has ongoing business relationships. We refer to this company as "Strategic A." At various points during these conversations, the Strategic A executive expressed informal interest in an acquisition of Forescout by Strategic A. These discussions were highly preliminary and, prior to November 2019, never advanced

36

Table of Contents

beyond the informal stage. Mr. DeCesare regularly updated the Forescout Board about these discussions.

On October 10, 2019, Forescout publicly announced that, for the third quarter of 2019, it preliminarily expected both total revenue and non-GAAP (as defined in the section of this proxy statement captioned "—Financial Forecasts") operating loss to be below Forescout's prior public guidance.

On October 21, 2019, Corvex Management LP and Jericho Capital Asset Management L.P. publicly disclosed that they had formed a "group" to work together to engage with Forescout regarding Forescout's business and prospects. We refer to these stockholders, together with their applicable affiliates, as the "Corvex/Jericho Group." At the time of the October 21, 2019, disclosure, the Corvex/Jericho Group beneficially owned approximately 14.5 percent of the common stock.

Following the disclosures by the Corvex/Jericho Group, certain members of the Forescout Board spoke informally with one another and members of Forescout management about the disclosures by the Corvex/Jericho Group and various options available to Forescout. A focus of these discussions was the likelihood that certain stockholders may seek strategic, operational or other changes at Forescout given (1) the substantial position of the Corvex/Jericho Group in Forescout's stock; (2) the recent announcement that Forescout's results for the third quarter of 2019 would be below Forescout's prior public guidance; and (3) Forescout's ongoing transition toward a subscription-based business model. These directors and members of Forescout management also discussed the retention of a financial advisor to assist Forescout in connection with its engagement with the Corvex/Jericho Group and, if determined appropriate by the Forescout Board, any review of strategic alternatives available to Forescout. These directors and members of Forescout management determined that it would be appropriate to contact Morgan Stanley about its ability to serve as Forescout's financial advisor in view of Morgan Stanley's familiarity with Forescout, as well as its qualifications, expertise, international reputation and knowledge of the industry in which Forescout operates, and its experience in similar situations.

At various points from October 21, 2019, until February 6, 2020, the Forescout Board and the Strategic Committee (as defined below) met to discuss the Corvex/Jericho Group and stockholder activism more broadly. During this period, at the direction and under the supervision of the Forescout Board and the Strategic Committee, members of Forescout management and representatives of Morgan Stanley engaged in discussions with representatives of the Corvex/Jericho Group concerning Forescout. At times during these discussions, representatives of the Corvex/Jericho Group expressed their view to Forescout management and representatives of Morgan Stanley that (1) Forescout's business model transition was likely to be challenging and take several years to complete; (2) a sale of Forescout in the near term could be an attractive option for Forescout stockholders in view of these challenges; and (3) if Forescout were to pursue a sale, it should do so quickly. Certain of these discussions occurred after Forescout entered into limited duration confidentiality agreements with the Corvex/Jericho Group prior to the public announcement of Forescout's final results for the third quarter of 2019 on November 6, 2019.

On October 28, 2019, the Forescout Board approved the retention of Morgan Stanley as Forescout's financial advisor to advise the Forescout Board with respect to stockholder activism and a review of strategic alternatives available to Forescout. The Forescout Board also established a strategic committee (which we refer to as the "Strategic Committee") to, among other things, oversee and coordinate Forescout's response to stockholder activism generally (and the Corvex/Jericho Group specifically) and, if determined appropriate by the Forescout Board, oversee a review of strategic alternatives. The Strategic Committee was formed in light of (1) the potentially significant workload that could be involved in relation to Forescout's engagement with stockholders; (2) the possibility that Forescout could elect to evaluate a broad range of strategic alternatives and the workload associated

37

Table of Contents

with that decision; (3) the possibility that Forescout management may need feedback and direction on relatively short notice; and (4) the benefits and convenience of having a subset of independent directors authorized to oversee and direct the process of considering strategic alternatives (should the Forescout Board determine to undertake that effort). The Forescout Board authorized the Strategic Committee, among other things, to (1) oversee and provide assistance to Forescout management and Forescout's advisers with respect to engagement with Forescout's stockholders; (2) if determined appropriate, explore, evaluate, consider, review and negotiate the terms and conditions of any transaction relating to any sale of Forescout, and to take such other actions with respect to any such transaction as the Strategic Committee deemed necessary, appropriate or advisable; (3) determine whether any proposed sale of Forescout is fair to, and in the best interests of, Forescout and Forescout stockholders; and (4) recommend to the Forescout Board what action, if any, should be taken by Forescout with respect to any such transaction. The Forescout Board retained the power and authority to approve the final decision on a sale of Forescout, and it was understood that the Forescout Board would continue to have an active role in the consideration of strategic alternatives, including any sale of Forescout. The Forescout Board appointed Theresia Gouw, Mark Jensen and Enrique Salem as the members of the Strategic Committee. The Forescout Board did not provide for the payment of any compensation to the members of the Strategic Committee in consideration of their service on the committee.

Later on October 28, 2019, Forescout formally retained Morgan Stanley.

On October 31, 2019, the Forescout Board met, with members of Forescout management and representatives of each of Wilson Sonsini Goodrich & Rosati, Professional Corporation, outside counsel to Forescout (which we refer to as "Wilson Sonsini"), and Morgan Stanley in attendance. Members of Forescout management (1) reviewed Forescout's results for the third quarter of 2019; and (2) provided their perspective on Forescout's projected results for the fourth quarter of 2019, considering, among other things, Forescout's sales pipeline and competitive positioning. The representatives of Wilson Sonsini discussed with the members of the Forescout Board their fiduciary duties as directors. The representatives of Morgan Stanley reviewed with the Forescout Board various matters related to the Corvex/Jericho Group and the likely perspectives of other Forescout stockholders regarding Forescout. Included in this discussion were various considerations related to future interactions between the Corvex/Jericho Group and Forescout, as well as an analysis of various strategic or operational changes that the Corvex/Jericho Group might desire that Forescout undertake (including a sale of Forescout). The representatives of Morgan Stanley also discussed the major strategic alternatives available to Forescout, including (1) the continuation of Forescout's current business plan with Forescout remaining as a standalone company; (2) accelerating Forescout's business model transition; and (3) a sale of Forescout. As part of this discussion, the representatives of Morgan Stanley provided Morgan Stanley's current view as to the most likely potential strategic and financial acquirers of Forescout, based on (1) Morgan Stanley's judgment and experience; (2) the strategic fit of Forescout with each potential acquirer; and (3) the ability and likelihood of each potential acquirer to engage in an acquisition of Forescout. After considering Forescout's near- and long-term prospects as a standalone company, the Forescout Board determined that a sale of Forescout in the near-term could be in the best interests of Forescout and its stockholders. As a result, the Forescout Board determined to explore, following the public announcement of Forescout's final results for the third quarter of 2019, a possible sale of Forescout through a targeted private process focused on the strategic and financial buyers identified by Morgan Stanley (and agreed to by the Forescout Board or the Strategic Committee) as the most likely to have an interest in acquiring Forescout. The Forescout Board believed that a targeted private process had the greatest potential to minimize the risk of unwanted public disclosure and speculation that Forescout was pursuing a sale at a time when Forescout was already subject to speculation concerning its future given the disclosures of the Corvex/Jericho Group. The Forescout Board believed that public disclosure and speculation concerning Forescout would be harmful to Forescout's business and competitive position, as well as to its relationships with employees, customers and prospects. The Forescout Board instructed the Strategic Committee to supervise this process.

38

Table of Contents

On November 2, 2019, the Forescout Board met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. Members of Forescout management provided additional perspective and analysis on Forescout's projected results for the fourth quarter of 2019. The representatives of Morgan Stanley continued to discuss with the Forescout Board the strategic alternatives available to Forescout, including (1) the continuation of Forescout's current business plan with Forescout remaining as a standalone company; (2) accelerating Forescout's business model transition; and (3) a sale of Forescout. The Forescout Board discussed and confirmed its decision from October 31, 2020, that it wished to keep private the process of exploring a sale of Forescout given the Forescout Board's continuing desire to minimize disruption to Forescout and its business, employees, customers and prospects.

On November 4, 2019, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley discussed a proposed list of 12 potential acquirers (composed of six strategic acquirers (including Strategic A) and six financial acquirers (including Advent)) that, in Morgan Stanley's view, were the most likely to have an interest in an acquisition of Forescout based on (1) Morgan Stanley's judgment and experience; (2) the strategic fit of Forescout with each potential acquirer; and (3) the ability and likelihood of each potential acquirer to engage in an acquisition of Forescout. The Strategic Committee approved Morgan Stanley contacting these potential acquirers about their interest in an acquisition of Forescout following the announcement of Forescout's final results for the third quarter of 2019 on November 6, 2019. The representatives of Wilson Sonsini discussed with the members of the Forescout Board their fiduciary duties as directors. Mr. Salem described his business relationship with one of the potential acquirers (which was not Advent) and informed the Strategic Committee that he had decided to recuse himself from any discussions or decisions of the Strategic Committee related to the potential acquisition of Forescout if that potential acquirer pursued an acquisition of Forescout. From this point forward, Mr. Salem recused himself from the portions of any meetings of the Strategic Committee or the Forescout Board at which discussions concerning an acquisition of Forescout occurred. However, Mr. Salem did participate in the meeting of the Forescout Board on February 5, 2020, during which the Forescout Board approved the merger.

On November 6, 2019, Forescout publicly announced its final results for the third quarter of 2019. As previously disclosed, both total revenue and non-GAAP (as defined in the section of this proxy statement captioned "—Financial Forecasts") operating loss were below Forescout's prior public guidance.

Beginning on November 6, 2019, Morgan Stanley started contacting the 12 potential acquirers approved by the Strategic Committee. Throughout November 2019 and into early December 2019, Morgan Stanley arranged meetings and calls between members of Forescout management and the potential strategic and financial acquirers approved by the Strategic Committee to review Forescout's business and historical and projected operating and financial results.

On November 11, 2019, Bloomberg published an article speculating that Forescout was pursuing a sale process.

On November 13, 2019, Strategic A informed Morgan Stanley that, although it could see a strategic fit with Forescout, it was not interested in pursuing an acquisition at that time.

On November 15, 2019, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Wilson Sonsini discussed with the members of the Strategic Committee their fiduciary duties as directors. The representatives of Morgan Stanley provided an update on the status of the ongoing process relating to the potential sale of Forescout, including as to the status of each potential acquirer's interest in an acquisition of Forescout. The representatives of Morgan Stanley noted that following the publication of the Bloomberg article on November 11, 2019, a financial acquirer contacted Morgan

39

Table of Contents

Stanley on an unsolicited basis to express its desire to explore a potential acquisition of Forescout. In view of this party's interest and its experience and reputation, the Strategic Committee approved including this financial acquirer in the targeted sale process.

Throughout the sale process overseen by the Strategic Committee, Morgan Stanley contacted six potential strategic acquirers (including Strategic A) and seven potential financial acquirers (including Advent) regarding their interest in an acquisition of Forescout. Of these, 10 entered into, or were already party to, confidentiality agreements with Forescout. These confidentiality agreements do not prohibit the counterparty from making non-public acquisition proposals to Forescout.

On November 19 and November 20, 2019, the Forescout Board held a regularly scheduled meeting. Forescout's historical practice is for Forescout management to review an early draft of Forescout's operating plan with the Forescout Board in November of each year, with the operating plan finalized following the completion of Forescout's fiscal year. Consistent with that practice, during a portion of this meeting, which was attended by members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley, members of Forescout management reviewed with the Forescout Board preliminary drafts of the Target Plan (as defined under the section of this proxy statement captioned "—Financial Forecasts") and the Preliminary Alternate Plan (as defined under the section of this proxy statement captioned "—Financial Forecasts"). Forescout management also described the process of preparing the Target Plan and the Preliminary Alternate Plan (including their present "tops-down" nature), as well as the additional work to be undertaken to finalize Forescout's operating plan for further review by the Forescout Board. For additional information on the Target Plan and the Preliminary Alternate Plan, see the section of this proxy statement captioned "—Financial Forecasts." The Forescout Board approved Morgan Stanley providing the Target Plan to potential acquirers in order to assist the potential acquirers with their valuation work. Morgan Stanley subsequently provided this information. The representatives of Morgan Stanley also provided an update on the status of the ongoing process relating to the potential sale of Forescout, including as to the status of each potential acquirer's interest in an acquisition of Forescout.

On November 22, 2019, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley provided an update on the status of the ongoing process relating to the potential sale of Forescout, including as to the status of each potential acquirer's interest in an acquisition of Forescout and the management meetings held to date. The members of the Strategic Committee discussed (1) Forescout's expected financial results in the fourth quarter of 2019 and 2020 and beyond; and (2) the continued business opportunities and challenges faced by Forescout.

By the end of November 2019, Forescout management had held management presentations with Strategic B (as defined below) and Strategic C (as defined below). A management presentation with an additional potential strategic acquirer was in the process of being scheduled for early December 2019. Of the six potential strategic acquirers contacted by Morgan Stanley concerning an acquisition of Forescout, three (including Strategic A but not including Strategic B, Strategic C or the potential strategic acquirer that had not yet received a management presentation) had informed Morgan Stanley that they would not proceed with additional consideration of an acquisition of Forescout. Also by this time, Forescout management had held management presentations with all seven potential financial acquirers, and two had informed Morgan Stanley that they would not proceed with additional consideration of an acquisition of Forescout.

On December 5, 2019, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Wilson Sonsini discussed with the members of the Strategic Committee their fiduciary duties as directors. The representatives of Morgan Stanley provided an update on the status of the ongoing process relating to the potential sale of Forescout, including as to the status of each potential acquirer's

40

Table of Contents

interest in an acquisition of Forescout. The members of the Strategic Committee discussed (1) the Target Plan and the Preliminary Alternate Plan (including the assumptions regarding Forescout's business included in those plans); and (2) Forescout's forecasted financial results for 2020 and beyond.

Also on December 5, 2019, Morgan Stanley sent letters to the two potential strategic acquirers and five potential financial acquirers that were still actively engaged in considering an acquisition of Forescout (the management presentation for an additional potential strategic acquirer had not yet been held and, as a result, this party was not sent this letter). These letters requested the submission of preliminary, nonbinding indications of interest no later than December 16, 2019. The letter was reviewed and approved by members of the Strategic Committee prior to its distribution.

On December 10, 2019, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Wilson Sonsini discussed with the members of the Strategic Committee their fiduciary duties as directors. The members of Forescout management further described the Target Plan and the Preliminary Alternate Plan and the material assumptions in each, as well as preliminary results for Forescout's fourth quarter of 2019. The representatives of Morgan Stanley provided an update on the status of the ongoing process relating to the potential sale of Forescout, including as to the status of each potential acquirer's interest in an acquisition of Forescout. During this update, the representatives of Morgan Stanley informed the Strategic Committee that one of the potential strategic acquirers (which we refer to as "Strategic B") had informed Morgan Stanley in writing that, although it was interested in further exploring an acquisition of Forescout, it was not prepared to do so until after Forescout publicly announced its results for the fourth quarter of 2019 (which was expected to occur in early February 2020). Of the potential strategic acquirers included in the process being coordinated by Morgan Stanley, Strategic B was expressing, as of that time, the strongest level of interest in pursuing an acquisition of Forescout.

On December 14, 2019, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley discussed their preliminary financial analysis of Forescout in relation to the Target Plan and the Preliminary Alternate Plan. The Strategic Committee approved the use of both plans by Morgan Stanley for purposes of its financial analysis of Forescout.

By December 18, 2019, Forescout received preliminary, nonbinding written indications of interest from four different potential financial acquirers concerning their respective interest in pursuing an acquisition of Forescout. Advent proposed an acquisition of Forescout for $38.00 to $41.00 per share of common stock in cash; a financial acquirer that we refer to as "Financial A" proposed an acquisition of Forescout for $36.00 to $38.00 per share of common stock in cash; a financial acquirer that we refer to as "Financial B" proposed an acquisition of Forescout for $33.50 to $40.00 per share of common stock in cash; and a financial acquirer that we refer to as "Financial C" proposed an acquisition of Forescout for $34.00 to $35.00 per share of common stock in cash. No potential strategic acquirers submitted a written indication of interest. However, Strategic B and one other potential strategic acquirer (which we refer to as "Strategic C") expressed ongoing interest in considering an acquisition of Forescout and requested updates on Forescout's results for the fourth quarter of 2019 when available. A third potential strategic acquirer was still in the process of scheduling a management presentation.

On December 18, 2019, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley reviewed the indications of interest provided by Advent, Financial A, Financial B and Financial C, as well as the statements of Strategic B and Strategic C, and the efforts to schedule a management presentation with a third potential strategic acquirer. After considering the indications of interest received, the Strategic Committee determined to invite Advent, Financial A, Financial B and Financial C to proceed with additional due diligence (including through access to an online data room)

41

Table of Contents

in order to permit each of them to refine their acquisition proposals. The Strategic Committee also determined that those potential strategic acquirers (including Strategic B and Strategic C) who were still considering an acquisition should be allowed to continue with preliminary due diligence in the hopes that doing so would permit them to submit an acquisition proposal. In view of the indications of interest received and the ongoing dialogue with potential acquirers, as well as (1) the desire to limit disruption to Forescout and (2) the existing press speculation that Forescout was pursuing a sale process, the Strategic Committee determined not to instruct Morgan Stanley to contact additional potential acquirers about their interest in an acquisition of Forescout. The Strategic Committee expressed its desire to announce any sale of Forescout at the same time as the public announcement of Forescout's results for the fourth quarter of 2019 (which was expected to occur in early February 2020). Morgan Stanley subsequently informed those parties still considering an acquisition of Forescout of this timing.

On December 20, 2019, Forescout opened an online data room containing due diligence information. Advent, Financial A, Financial B and Financial C were provided access to the data room.

By early January 2020, representatives of Strategic A again confirmed to Mr. DeCesare that Strategic A was not prepared to pursue an acquisition of Forescout in the near term. In addition, a potential financial acquirer had informed Morgan Stanley that it would not proceed with additional consideration of an acquisition of Forescout.

On January 3, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. Members of Forescout management reviewed Forescout's preliminary results for the fourth quarter of 2019. These results reflected revenue below Forescout's public guidance due to, among other things, continued sales weakness and a greater than expected shift away from perpetual licenses and toward term-based licenses. The Strategic Committee discussed how this revenue shortfall (and the related failure to achieve Forescout's public guidance) was likely to negatively impact Forescout's stock price and could potentially impact the amount that a potential acquirer was willing to pay to acquire Forescout. The representatives of Morgan Stanley provided an update on the status of the ongoing process relating to the potential sale of Forescout, including that no potential strategic acquirers were pursuing an acquisition at this point and that Financial B had decreased its level of activity related to considering an acquisition. The members of the Strategic Committee also discussed various potential terms to be included in the draft merger agreement, including a "go shop" provision that would permit Forescout, for a specified period, to affirmatively solicit alternative transactions following entry into the merger agreement. The Strategic Committee concluded that a "go shop" provision might have significant value given the statements by Strategic B that it may further consider an acquisition of Forescout after the public announcement of Forescout's results for the fourth quarter of 2019.

On January 6, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. Members of Forescout management further reviewed Forescout's preliminary results for the fourth quarter of 2019, as well as forecasts of Forescout's sales pipeline for 2020. The Strategic Committee instructed Morgan Stanley to provide a summary of these preliminary results to Advent, Financial A, Financial B, Financial C, Strategic B and Strategic C. Morgan Stanley subsequently provided this information.

On January 8, 2020, the Strategic Committee authorized Advent, Financial A and Financial C to begin contacting potential debt financing sources in order to allow these parties to conduct additional work in support of a possible acquisition of Forescout. The Strategic Committee determined not to allow Financial B to contact potential debt financing sources until Financial B demonstrated a deeper level of engagement in an acquisition of Forescout. At Advent's request, the Strategic Committee also authorized Advent to contact certain potential co-investors concerning their interest in partnering with Advent on an acquisition of Forescout.

42

Table of Contents

On January 10, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley provided an update on the status of the ongoing process relating to the potential sale of Forescout, including with respect to the reactions of Advent, Financial A, Financial B and Financial C to Forescout's preliminary results for the fourth quarter of 2019, and the status of the ongoing due diligence reviews. The representatives of Morgan Stanley also noted that Strategic C and Financial B did not appear to be contemplating an acquisition of Forescout as they had decreased their level of activity in support of an acquisition. The Strategic Committee reviewed a draft of the merger agreement and approved it being provided to Advent, Financial A, Financial B and Financial C. The Strategic Committee concluded that the draft merger agreement should include a 45-day "go shop" period during which Forescout would be permitted to affirmatively solicit alternative transactions following entry into the merger agreement. The Strategic Committee believed that such a provision was appropriate given, among other things, (1) the desire of the Strategic Committee to announce an agreement to acquire Forescout simultaneously with the public announcement of Forescout's results for the fourth quarter of 2019; and (2) the statements by Strategic B that it may further consider an acquisition of Forescout after the public announcement of Forescout's results for the fourth quarter of 2019.

On January 15, 2020, a draft of the merger agreement was posted to Forescout's online data room and made available to Advent, Financial A and Financial B.

On January 17, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley (1) provided an update on the ongoing process relating to the status of the potential sale of Forescout, including the status of the ongoing due diligence reviews; and (2) continued to discuss the reactions of Advent, Financial A, Financial B and Financial C to Forescout's preliminary results for the fourth quarter of 2019, including with respect to possible weakness in Forescout's sales pipeline for 2020.

On January 22, 2020, Morgan Stanley sent letters to Advent, Financial A and Financial C requesting comments to the draft merger agreement by January 28, 2020, and final acquisition proposals by January 31, 2020.

On January 24, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley provided an update on the ongoing process relating to the status of the potential sale of Forescout, including that Financial A did not appear to be contemplating an acquisition of Forescout as it had decreased its level of activity in support of an acquisition. Members of Forescout management described their evolving understanding of the trends that impacted Forescout's results for the fourth quarter of 2019 and the negative impact that those trends were likely to have on Forescout's results for 2020 and beyond. They also discussed Forescout's sales pipeline for 2020, which reflected greater weakness than originally anticipated. Although members of Forescout management expressed their belief that the 2020 financial results contemplated by the Target Plan were still achievable, they informed the Strategic Committee that it was likely that Forescout's 2020 financial results would be below the estimates in the Target Plan and the Preliminary Alternate Plan.

On January 27, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley described recent conversations with representatives of Financial A. During these conversations, the representatives of Financial A stated that, as a result of Forescout's preliminary results for the fourth quarter of 2019, Financial A (1) was not going to make a revised acquisition proposal because its updated view of valuation for Forescout would likely be below $30.00 per share; and (2) believed that Forescout should proceed with its scheduled earnings announcement on

43

Table of Contents

February 6, 2020, after which the parties could potentially resume discussions regarding an acquisition. In view of these conversations with Financial A and the lack of engagement by Financial B, the Strategic Committee believed that only Advent and Financial C were still considering a potential acquisition of Forescout prior to the public announcement of Forescout's results for the fourth quarter of 2019. The members of Forescout management further described their evolving understanding of the trends that impacted Forescout's results for the fourth quarter of 2019 and the negative impact that those trends were likely to have on Forescout's expected results for 2020. They also again reviewed Forescout's sales pipeline for 2020 (which continued to be impacted by greater weakness than originally anticipated). The members of Forescout management described their current expectations for Forescout's public guidance for the first quarter and full year of 2020, respectively, which guidance included the information contained in the Illustrative Guidance (as defined under the section of this proxy statement captioned "—Financial Forecasts"); such guidance would be released, in the absence of a sale of Forescout, in connection with Forescout's results for the fourth quarter of 2019. Together with the Strategic Committee, the members of Forescout management reviewed a draft of the Alternate Plan (as defined under the section of this proxy statement captioned "—Financial Forecasts"), including its "bottoms-up" nature. For additional information on the Alternate Plan, see the section of this proxy statement captioned "—Financial Forecasts." The members of Forescout management also described the potential negative impact that Forescout's results for the fourth quarter of 2019 and expected financial guidance for 2020 could have, individually and collectively, on Forescout's stock price. The Strategic Committee approved the use of the (1) Alternate Plan (in lieu of the Preliminary Alternate Plan), (2) Target Plan and (3) Illustrative Guidance for purposes of Morgan Stanley's financial analysis of Forescout. The Strategic Committee instructed Morgan Stanley to provide the Alternate Plan to Advent and Financial C. Morgan Stanley subsequently provided this information.

By January 29, 2020, Forescout received revised drafts of the proposed merger agreement from Advent and Financial C. Both Advent and Financial C removed the "go shop" provision from their respective drafts of the merger agreement.

On January 31, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley described discussions with each of Advent and Financial C about the Alternate Plan, and noted that Advent and Financial C were continuing to review the Alternate Plan. The representatives of Wilson Sonsini discussed the draft merger agreements received from Advent and Financial C. The Strategic Committee provided guidance and input to Wilson Sonsini on the appropriate response to the revised drafts of the merger agreement received from Advent and Financial C, including that the Strategic Committee was not willing to eliminate the "go shop" provision. The Strategic Committee instructed Wilson Sonsini to provide further revised drafts of the merger agreement to Advent and Financial C.

Also on January 31, 2019, representatives of each of Advent and Financial C separately informed Morgan Stanley that they required more time to make their final proposal given work that they and their financing sources needed to do to review and analyze the Alternate Plan. As such, the Strategic Committee, in consultation with Morgan Stanley, agreed to move the deadline for final acquisition proposals to February 3, 2020.

On February 1, 2020, representatives of Wilson Sonsini, on behalf of Forescout, provided a revised draft of the merger agreement to representatives of Advent. Consistent with the direction of the Strategic Committee, the revised draft, among other things, reinserted the "go shop" provision and made a new proposal for the amount of the termination fee payable by Forescout in order to accept a superior acquisition proposal from a third party after entry into the merger agreement with the successful bidder.

44

Table of Contents

On February 2, 2020, representatives of Wilson Sonsini, on behalf of Forescout, provided a revised draft of the merger agreement to representatives of Financial C. Consistent with the direction of the Strategic Committee, the revised draft, among other things, reinserted the "go shop" provision and made a new proposal for the amount of the termination fee payable by Forescout in order to accept a superior acquisition proposal from a third party after entry into the merger agreement with the successful bidder.

On February 3, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Morgan Stanley described recent conversations with representatives of Financial C. During these conversations, the representatives of Financial C expressed Financial C's (1) continued interest in acquiring Forescout; (2) need to reduce its per share price proposal (which was previously $34.00 to $35.00 in cash per share of common stock) by "a couple of dollars" per share in view of the information contained in the Alternate Plan; and (3) need for additional time to complete its work. At this point, a revised proposal had not yet been received from Advent.

Later on February 3, 2020, Advent provided a revised proposal to acquire Forescout for $32.00 per share of common stock in cash. This proposal was accompanied by a revised draft of the merger agreement and drafts of the equity commitment letter and limited guarantee. Among other things, Advent's proposed revisions to the draft merger agreement included the removal of the "go shop" provision but accepted Forescout's proposal related to the amount of the termination fee payable by Forescout in order to accept a superior acquisition proposal from a third party after entry into the merger agreement with Advent.

Still later on February 3, 2020, Financial A reaffirmed its overall interest in an acquisition of Forescout and its willingness to continue to discuss an acquisition following the public release of Forescout's results for the fourth quarter of 2019.

On February 4, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Wilson Sonsini discussed with the members of the Strategic Committee their fiduciary duties as directors. The representatives of Morgan Stanley described the proposal from Advent and reminded the members of the Strategic Committee of the recent discussions with Financial C. The Strategic Committee directed Morgan Stanley to make a counterproposal to Advent contemplating an acquisition of Forescout for $34.00 per share of common stock in cash and providing for a 30-day "go shop" period. In the interest of attempting to preserve a competitive process, the Strategic Committee also instructed Morgan Stanley to make a similar proposal to Financial C and indicate that Forescout (1) was nearing a deal with another potential acquirer; and (2) was prepared to entertain an acquisition proposal of $34.00 per share of common stock in cash with a 30-day "go shop" period.

Throughout February 4, 2020, representatives of Morgan Stanley spoke with representatives of Advent and Financial C. Advent ultimately revised its acquisition proposal to $33.00 per share of common stock in cash with a 30-day "go shop" period. Financial C continued to express an interest in working toward an acquisition but declined to make a revised acquisition proposal.

Throughout February 4, 2020, and February 5, 2020, representatives of each of Wilson Sonsini and outside legal counsel to Advent negotiated the terms of the merger agreement and the related disclosure letter, the limited guarantee, the equity commitment and the debt commitment letter.

On February 5, 2020, the Forescout Board met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The representatives of Wilson Sonsini discussed with the members of the Forescout Board their fiduciary duties as directors. The representatives of Morgan Stanley reviewed for, and discussed with, the Forescout Board the financial analysis of Morgan Stanley of the per share merger consideration based on the Target Plan,

45

Table of Contents

the Alternate Plan and the Illustrative Guidance. The representatives of Morgan Stanley provided the Forescout Board with customary disclosures regarding its relationships with Advent and its affiliates. The representatives of Morgan Stanley rendered to the Forescout Board Morgan Stanley's oral opinion, subsequently confirmed in writing, that, as of February 5, 2020, and based on and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations on the scope of review undertaken by Morgan Stanley as set forth in the written opinion, the per share merger consideration to be received by the holders of shares of common stock (other than the excluded shares) pursuant to the merger agreement was fair from a financial point of view to such holders of shares of common stock. The representatives of Wilson Sonsini reviewed with the members of the Forescout Board the key terms of the merger agreement, the limited guarantee, the equity commitment letter and the debt commitment letter. The members of the Strategic Committee expressed support for the transaction with Advent. The Forescout Board, after considering the factors more fully described in this proxy statement, (1) determined that the merger agreement, the merger and the other transactions contemplated by the merger agreement are fair to, advisable and in the best interests of Forescout and its stockholders; and (2) adopted and approved the merger agreement, the merger and the other transactions contemplated by the merger agreement. The representatives of Morgan Stanley described solicitation activities that could be undertaken during the "go shop" period. The Forescout Board directed Forescout management and Morgan Stanley, under the supervision of the Strategic Committee, to engage in these activities once the merger agreement was signed and announced.

Early on February 6, 2020, before the opening of trading of the common stock on Nasdaq, the merger agreement was signed by Forescout and Advent, and Forescout publicly disclosed the merger. Forescout also publicly announced its results for the fourth quarter of 2019.

Also on February 6, 2020, as directed by the Forescout Board, Forescout management and representatives of Morgan Stanley began contacting each of the potential strategic and financial acquirers previously contacted (including Strategic A, Strategic B, Strategic C, Financial A, Financial B and Financial C) concerning their interest in a possible acquisition of Forescout.

On February 7, 2020, the Corvex/Jericho Group publicly disclosed that they had terminated their "group" with respect to Forescout. Corvex Management LP also disclosed that it sold all of its shares of common stock.

On February 12, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The members of Forescout management and the representatives of Morgan Stanley described their efforts in support of soliciting an alternative transaction to the merger. The Strategic Committee instructed Morgan Stanley to contact seven additional potential strategic acquirers and four additional potential financial acquirers concerning, in each case, their interest in an acquisition of Forescout.

On February 18, 2020, the Strategic Committee met, with members of Forescout management and representatives of each of Wilson Sonsini and Morgan Stanley in attendance. The members of Forescout management and the representatives of Morgan Stanley described their efforts in support of soliciting an alternative transaction to the merger, including as to the status of each potential acquirer's interest in an acquisition of Forescout.

On March 2, 2020, Jericho Capital Asset Management L.P. disclosed that it sold all of its shares of common stock.

**Recommendation of the Forescout Board and Reasons for the Merger**

*Recommendation of the Forescout Board*

The Forescout Board unanimously: (1) determined that the merger agreement, the merger and the other transactions contemplated by the merger agreement are fair to, advisable and in the best interests

46

Table of Contents

of Forescout and its stockholders; and (2) adopted and approved the merger agreement, the merger and the other transactions contemplated by the merger agreement.

**The Forescout Board unanimously recommends that you vote: (1) "FOR" the adoption of the merger agreement; (2) "FOR" the compensation that will or may become payable by Forescout to our named executive officers in connection with the merger; and (3) "FOR" the adjournment of the special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies if there are insufficient votes to adopt the merger agreement at the time of the special meeting.**

*Reasons for the Merger*

In evaluating the merger agreement, the merger and the other transactions contemplated by the merger agreement, the Forescout Board consulted with Forescout management, Wilson Sonsini and Morgan Stanley. In recommending that Forescout stockholders vote "FOR" the adoption of the merger agreement, the Forescout Board considered a number of factors, including the following (which factors are not necessarily presented in order of relative importance), each of which the Forescout Board believed supported its determination and recommendation:

- *Financial Condition, Results of Operations and Prospects of Forescout.* The current, historical and projected financial condition, results of operations and business of Forescout, as well as Forescout's prospects and risks if it were to remain an independent company. The Forescout Board considered Forescout's current business plans, including (1) the risks and uncertainties associated with achieving and executing on Forescout's business plans in the short and long term; (2) the impact of general market, customer and competitive trends on Forescout; and (3) the general risks of market conditions that could reduce the price of the common stock. Among the potential risks identified by the Forescout Board were:

  - Forescout's competitive positioning and prospects as a standalone company. Included in this was the consideration of Forescout's size, as well as its strategic and financial resources, relative to those of its competitors.

  - Forescout's ongoing business model transition and the likely impact that this transition would have on Forescout's results of operations in the near term.

  - Forescout's sales pipeline in 2020 and beyond, as well as the status and expected execution of Forescout's sales organization.

  - Forescout's financial and operating results for the third and fourth quarters of 2019, both of which did not meet forecasts provided in Forescout's prior public guidance.

  - The historical execution of Forescout's business plan by Forescout management and their ability to continue to drive Forescout's business.

- *Certainty of Value.* The consideration to be received by Forescout stockholders in the merger consists entirely of cash, which provides liquidity and certainty of value. The receipt of cash consideration eliminates uncertainty and risk for Forescout stockholders related to the continued execution of Forescout's business. The Forescout Board also considered that the merger was not subject to any financing condition.

- *Results of Strategic Review Process.* The merger was the result of an extensive strategic review process overseen by the Strategic Committee. The Forescout Board considered that Morgan Stanley contacted six potential strategic acquirers and seven financial acquirers (including Advent) concerning their interest in an acquisition of Forescout and that of these only Advent made a proposal that was capable of being accepted. The Forescout Board also was aware of the public speculation since early November 2019 that Forescout was pursuing a sale.

47

Table of Contents

- *Best Value Reasonably Obtainable.* The belief of the Forescout Board that the per share merger consideration represents the best value reasonably obtainable for the shares of common stock, taking into account the Forescout Board's familiarity with the business, operations, prospects, business strategy, assets, liabilities and general financial condition of Forescout on a historical and prospective basis. The Forescout Board also considered that the per share merger consideration of $33.00 constituted a premium of approximately (1) 30 percent over Forescout's closing share price of $25.45 on October 18, 2019, the last full trading day prior to disclosure by Corvex Management LP and Jericho Capital Asset Management L.P. on October 21, 2019, that they agreed to form a "group" with respect to their respective investments in Forescout; and (2) 18 percent over Forescout's closing share price of $27.98 on February 5, 2020, the last full trading day prior to the announcement of the merger.

- *Fairness Opinion of Morgan Stanley.* The oral opinion of Morgan Stanley, subsequently confirmed in writing, rendered to the Forescout Board, that as of February 5, 2020, and based upon and subject to the assumptions made, procedures followed, matters considered, and qualifications and limitations on the scope of the review undertaken by Morgan Stanley as set forth in the written opinion, the per share merger consideration to be received by the holders of shares of common stock (other than the holders of the excluded shares) pursuant to the merger agreement was fair from a financial point of view to such holders of shares of common stock, as set forth in such opinion as more fully described below in the section of this proxy statement captioned "—Opinion of Morgan Stanley."

- *Potential Strategic Alternatives.* The (1) possible alternatives to the merger, including the possibility of continuing to operate Forescout as an independent entity or pursuing another transaction, and the desirability and perceived risks of those alternatives; (2) potential benefits to Forescout stockholders of these alternatives and the timing and likelihood of effecting such alternatives; and (3) Forescout Board's assessment that none of these alternatives was reasonably likely to present superior opportunities for Forescout to create greater value for Forescout stockholders, taking into account risks of execution as well as business, competitive, financial, industry, market and regulatory risks.

- *Permitted Solicitation of Alternative Acquisition Proposals.* The merger agreement permits Forescout and its representatives, at the direction of the Forescout Board, from the date of the merger agreement until the no-shop period start date, to (1) initiate, solicit, propose, induce or encourage any alternative acquisition proposals from third parties; (2) provide nonpublic information to third parties; and (3) participate in discussions and negotiations with third parties regarding alternative acquisition proposals.

- *Negotiations with Parent and Terms of the Merger Agreement.* The terms of the merger agreement, which was the product of arms'-length negotiations, and the belief of the Forescout Board that the merger agreement contained customary terms. The factors considered include (subject to the terms and conditions of the merger agreement):

  - Forescout's ability to affirmatively solicit alternative transactions for a period of time.

  - Forescout's ability, under certain circumstances, to furnish information to, and conduct negotiations with, third parties regarding acquisition proposals.

  - The Forescout Board's view that the terms of the merger agreement would be unlikely to deter third parties from making a superior proposal.

  - The Forescout Board's ability, under certain circumstances, to withdraw or modify its recommendation that Forescout stockholders vote in favor of the adoption of the merger agreement.

48

Table of Contents

- The Forescout Board's ability, under certain circumstances, to terminate the merger agreement to enter into an alternative acquisition agreement. In that regard, the Forescout Board believed that the termination fee payable by Forescout in such instance was reasonable, consistent with or below similar fees payable in comparable transactions, and not preclusive of other offers.

- The limited conditions to Parent's and Merger Sub's obligation to consummate the merger, making the merger reasonably likely to be consummated.

- The reverse termination fee of $111,664,539 payable by Parent in certain circumstances and the other remedies available to Forescout under the merger agreement and the limited guarantee guaranteeing payment thereof (subject to the terms and conditions of the limited guarantee).

- The consummation of the merger not being subject to a financing condition.

- *Appraisal Rights.* The appraisal rights in connection with the merger available to Forescout stockholders who timely and properly exercise such appraisal rights under the DGCL if certain condition are met.

In recommending that Forescout stockholders vote "FOR" the adoption of the merger agreement, the Forescout Board also considered a number of uncertainties and risks and other potentially negative factors, including the following (which factors are not necessarily presented in order of relative importance):

- *No Stockholder Participation in Future Growth or Earnings.* That the nature of the merger as a cash transaction means that Forescout stockholders will not participate in the future earnings or growth of Forescout and will not benefit from any appreciation in value of the surviving corporation. The Forescout Board also considered the other potential alternative strategies available to Forescout, which, despite significant uncertainty, had the potential to result in a more successful and valuable company.

- *Risk Associated with Failure to Consummate the Merger.* The possibility that the merger might not be consummated, and if it is not consummated, (1) Forescout's directors, senior management and other employees will have expended extensive time and effort and will have experienced significant distractions from their work during the pendency of the transaction; (2) Forescout will have incurred significant transaction costs; (3) Forescout's continuing business relationships with customers, business partners and employees may be adversely affected; (4) the trading price of the common stock could be adversely affected; (5) the reverse termination fee of $111,664,539 payable by Parent to Forescout will not be available in all instances in which the merger agreement is terminated and the reverse termination fee may not be sufficient to compensate Forescout for the damage suffered by its business as a result of the pendency of the merger or of the strategic initiatives forgone by Forescout during this period; (6) that the other contractual and legal remedies available to Forescout in the event of termination of the merger agreement may be insufficient, costly to pursue or both; (7) the potential adverse perception of the market on Forescout's prospects; and (8) the termination fee of $55,832,270 may become payable by Forescout to Parent (or its designee) upon termination of the merger agreement under specified circumstances.

- *Interim Restrictions on Forescout's Business Pending the Completion of the Merger.* The restrictions on the conduct of Forescout's business prior to the consummation of the merger, including the requirement that Forescout conduct its business in the ordinary course, subject to specific limitations, which may delay or prevent Forescout from undertaking strategic initiatives before the completion of the merger that, absent the merger agreement, Forescout might have pursued.

49

Table of Contents

The Forescout Board also considered the restrictions on soliciting other acquisition proposals prior to the consummation of the merger.

- *Effects of the Merger Announcement.* The effect of the public announcement of the merger agreement, including (1) effects on Forescout's sales, employees, customers, operating results and stock price; (2) the impact of the public announcement of the merger on Forescout's ability to attract and retain key management, sales and marketing and technical personnel; and (3) the potential for litigation in connection with the merger.

- *Termination Fee Payable by Forescout.* The requirement that Forescout pay Parent a termination fee under certain circumstances following termination of the merger agreement, including if the Forescout Board terminates the merger agreement to accept a superior proposal. The Forescout Board considered the potentially discouraging impact that this termination fee could have on another company's interest in making a competing proposal to acquire Forescout.

- *Taxable Consideration.* That the receipt of cash in exchange for shares of common stock pursuant to the merger will be a taxable transaction for U.S. federal income tax purposes for many Forescout stockholders.

- *Interests of Forescout's Directors and Executive Officers.* That Forescout's directors and executive officers may have interests in the merger that are different from, or in addition to, those of Forescout's other stockholders.

This discussion is not meant to be exhaustive. That is, it summarizes the material factors considered by the Forescout Board in its consideration of the merger. After considering these and other factors, the Forescout Board concluded that the potential benefits of the merger outweighed the uncertainties and risks. In light of the variety of factors considered by the Forescout Board and the complexity of these factors, the Forescout Board did not find it practicable to, and did not, quantify or otherwise assign relative weights to the foregoing factors in reaching its determination and recommendations. Moreover, each member of the Forescout Board applied his or her own personal business judgment to the process and may have assigned different relative weights to the different factors. The Forescout Board adopted and approved the merger agreement, the merger and the other transactions contemplated by the merger agreement and recommended that Forescout stockholders adopt the merger agreement based upon the totality of the information presented to, and considered by, the Forescout Board.

**Opinion of Morgan Stanley**

Forescout retained Morgan Stanley to provide it with financial advisory services and a financial opinion in connection with the possible sale of Forescout. The Forescout Board selected Morgan Stanley to act as its financial advisor based on Morgan Stanley's qualifications, expertise and reputation, its knowledge of and involvement in recent transactions in Forescout's industry, its knowledge of Forescout's business and affairs and its understanding of Forescout's business based on its long-standing relationship with Forescout. At the meeting of the Forescout Board on February 5, 2020, Morgan Stanley rendered its oral opinion, subsequently confirmed in writing, that as of February 5, 2020, and based upon and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations on the scope of review undertaken by Morgan Stanley as set forth in the written opinion, the per share merger consideration to be received by the holders of shares of common stock (other than the holders of the excluded shares) pursuant to the merger agreement was fair from a financial point of view to such holders of shares of common stock.

**The full text of the written opinion of Morgan Stanley, dated as of February 5, 2020, which sets forth, among other things, the assumptions made, procedures followed, matters considered and qualifications and limitations on the scope of the review undertaken by Morgan Stanley in rendering**

50

Table of Contents

advisory services. Morgan Stanley, its affiliates, directors and officers may at any time invest on a principal basis or manage funds that invest, hold long or short positions, finance positions, and may trade or otherwise structure and effect transactions, for their own account or the accounts of their customers, in debt or equity securities or loans of Advent, Parent, Forescout and their respective affiliates, or any other company, or any currency or commodity, that may be involved in the merger, or any related derivative instrument. In addition, Morgan Stanley, its affiliates, directors or officers, including individuals working with Forescout in connection with the merger, may have committed and may commit in the future to invest in private equity funds managed by Advent or its affiliates.

Under the terms of its engagement letter, Morgan Stanley provided Forescout financial advisory services and an opinion, described in this section and attached to this proxy statement as Annex C, in connection with the merger, and Forescout has agreed to pay Morgan Stanley a fee of approximately $29.9 million for its services, $7.5 million of which has been paid following delivery of the opinion described in this section and attached as this proxy statement as Annex C and the remainder of which is contingent upon the consummation of the merger. Forescout has also agreed to reimburse Morgan Stanley for certain of its expenses, including certain fees of outside counsel and other professional advisors, incurred in connection with its engagement. In addition, Forescout has agreed to indemnify Morgan Stanley and its affiliates, its and their respective officers, directors, employees and agents and each other person, if any, controlling Morgan Stanley or any of its affiliates against certain liabilities and expenses related to, arising out of or in connection with Morgan Stanley's engagement.

In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for Forescout and have received approximately $3.1 million in fees in connection with such services. In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for Advent and its affiliates (an affiliate of Advent is the ultimate controlling stockholder of Parent) and have received approximately $30.0 million to $50.0 million in fees in connection with such services. Morgan Stanley may also seek to provide financial advisory and financing services to Advent, Parent and Forescout and their respective affiliates in the future and would expect to receive fees for the rendering of these services.

**Financial Forecasts**

Other than in connection with its regular earnings press releases and related investor materials, Forescout does not, as a matter of course, make public projections as to its future financial performance. However, Forescout management regularly prepares internal financial forecasts regarding its future operations for subsequent fiscal years.

In connection with Forescout's strategic planning process and the preparation of Forescout's operating plan, Forescout management prepared and provided to the Forescout Board or the Strategic Committee (as well as Morgan Stanley and potential acquirers as described below) various forward-looking financial information for fiscal years 2019 through 2023. This information included:

- An operating plan that we refer to as the "Target Plan" and an operating plan that we refer to as the "Preliminary Alternate Plan."

- These operating plans were prepared by Forescout management in November 2019 on a tops-down basis. Neither the Target Plan nor the Preliminary Alternate Plan reflected (1) a bottoms-up analysis of Forescout's sales pipeline (which was in process as of November 2019 and would not be completed until January 2020); (2) a bottoms-up expense analysis (which was in process as of November 2019 and would not be completed until January 2020); or (3) Forescout's results for the fourth quarter of 2019. The Target Plan and the Preliminary Alternate Plan were prepared to illustrate to the Forescout Board the degree of variability of the factors described in the preceding sentence.

59

Table of Contents

- Forescout management generally characterized (1) the Target Plan as reflecting the resumption of customer sales transactions with bookings of $10 million or more to levels experienced in 2017 and 2018 but not in 2019; and (2) the Preliminary Alternate Plan as reflecting the absence of such customer sales transactions.

- The Forescout Board reviewed the Target Plan and the Preliminary Alternate Plan in November 2019, and they were shared with Morgan Stanley on November 20, 2019, and the Target Plan was subsequently provided to the potential acquirers.

- The Forescout Board approved providing the Target Plan to potential acquirers in order to assist the potential acquirers with their valuation work.

- Morgan Stanley prepared extrapolations of the Target Plan for fiscal years 2024 through 2029 based upon the guidance and direction of Forescout management.

- An operating plan that we refer to as the "Alternate Plan."

  - The Alternate Plan was prepared in January 2020 by Forescout management on a bottoms-up basis. It reflected (1) a bottoms-up analysis of Forescout's sales pipeline; (2) a bottoms-up expense analysis; and (3) Forescout's results for the fourth quarter of 2019.

  - The Strategic Committee reviewed the Alternate Plan on January 27, 2020, and it was shared with Morgan Stanley on January 28, 2020.

  - Also at that time, the Strategic Committee approved providing the Alternate Plan to Advent and Financial C (the only two potential acquirers who were actively considering an acquisition of Forescout at that time), and the Alternate Plan was subsequently provided to both of them on January 27, 2020.

  - Morgan Stanley prepared extrapolations of the Alternate Plan for fiscal years 2024 through 2029 based upon the guidance and direction of Forescout management.

We refer to the Target Plan, the Preliminary Alternate Plan and the Alternate Plan collectively as the "Forecasts." A summary of the Forecasts appears in the tables below.

The Target Plan and the Alternate Plan, and the extrapolations of each, were used, with the approval of Forescout management, to calculate cash flows for fiscal years 2020 through 2029 for purposes of Morgan Stanley's discounted free cash flow analysis (as described in more detail under the section of this proxy statement captioned "—Opinion of Morgan Stanley").

In late January 2020, Forescout management also provided Morgan Stanley with an illustrative revenue guidance amount of $62 million and $355 million for the first quarter and all of 2020, respectively. We refer to this as the "Illustrative Guidance." The Illustrative Guidance represented preliminary, but not finalized, revenue guidance that Forescout management shared with the Strategic Committee and Morgan Stanley.

The Forecasts were developed by Forescout management without giving effect to the merger or any changes to Forescout's operations or strategy that may be implemented after the consummation of the merger. The Forecasts also do not take into account the effect of any failure of the transactions contemplated by the merger agreement to be completed and should not be viewed as accurate or continuing in that context.

The Forecasts were not prepared with a view toward public disclosure or complying with accounting principles generally accepted in the United States (which we refer to as "GAAP"). In addition, the Forecasts were not prepared with a view toward complying with the guidelines established by the SEC or the American Institute of Certified Public Accountants with respect to prospective

Table of Contents

financial information. In addition, the Forecasts assume that Forescout would continue as a standalone company and do not reflect the impact of the merger (if it is completed).

The Forecasts were prepared by, and are the responsibility of, Forescout management. In the opinion of Forescout management, the Forecasts (1) were prepared on a reasonable basis; (2) reflected the best currently available estimates and judgments; and (3) presented, to Forescout management's knowledge, the expected future financial performance of Forescout within the parameters and under the assumptions specified in preparing the Forecasts. Because the Forecasts reflect estimates and judgments, they are susceptible to sensitivities and assumptions, as well as multiple interpretations based on actual experience and business developments. The Forecasts also cover multiple years, and such information by its nature becomes less predictive with each succeeding year. The Forecasts will be affected by Forescout's ability to achieve its strategic goals, objectives and targets over the applicable periods. The Forecasts reflect assumptions as to certain business decisions that are subject to change. The Forecasts cannot, therefore, be considered a guarantee of future operating results, and should not be relied on as such.

Neither Forescout's independent registered public accounting firm nor any other independent accountants have (1) compiled, reviewed, audited, examined or performed any procedures with respect to the Forecasts; (2) expressed any opinion or any other form of assurance on such information or the achievability of the Forecasts; or (3) assumed any responsibility for the Forecasts. Forescout's independent registered public accounting firm disclaims any association with the Forecasts.

The Forecasts are forward-looking statements. Although the Forecasts are presented with numerical specificity, they reflect numerous assumptions and estimates as to future events made by Forescout management that Forescout management believed were reasonable at the time that the Forecasts were prepared, taking into account the relevant information available to Forescout management at that time. However, the Forecasts are not fact and should not be relied upon as being necessarily indicative of future results. Important factors that may affect actual results and cause the Forecasts not to be achieved include, among others, (1) general economic conditions; (2) the accuracy of certain accounting assumptions; (3) changes in actual or projected cash flows; (4) competitive pressures; and (5) changes in tax laws. Additional factors that may impact Forescout and its business can be found in the various risk factors included in Forescout's periodic filings with the SEC. All of these factors are difficult to predict, and many of them are outside of Forescout's control. As a result, there can be no assurance that the Forecasts will be realized, and actual results may be materially better or worse than those contained in the Forecasts. The Forecasts may differ from publicized analyst estimates and forecasts and do not consider any events or circumstances after the date that they were prepared, including the announcement of the merger. **Forescout does not intend to update or otherwise revise the Forecasts to reflect circumstances existing after the date that they were made or to reflect the occurrence of future events, even if any or all of the assumptions underlying the Forecasts are shown to be in error or no longer appropriate.**

Certain of the financial measures included in the Forecasts are "non-GAAP financial measures." These are financial performance measures that are not calculated in accordance with GAAP. These non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures, and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures because they exclude charges and credits that are required to be included in a GAAP presentation. Accordingly, these non-GAAP financial measures should be considered together with, and not as an alternative to, financial measures prepared in accordance with GAAP.

Financial measures included in forecasts provided to a financial advisor and a board of directors in connection with a business combination transaction, such as the Forecasts, are excluded from the definition of "non-GAAP financial measures" under applicable SEC rules and regulations. As a result,

61

Table of Contents

the Forecasts are not subject to SEC rules regarding disclosures of non-GAAP financial measures, which would otherwise require a reconciliation of a non-GAAP financial measure to a GAAP financial measure. Reconciliations of non-GAAP financial measures were not provided to or relied upon by the Forescout Board, the Strategic Committee or Morgan Stanley. Reconciliations of non-GAAP financial measures were not provided to any potential acquirers of Forescout (including Advent). Accordingly, no reconciliation of the financial measures included in the Forecasts is provided in this proxy statement.

By including the Forecasts in this proxy statement, neither Forescout nor any of its representatives has made or makes any representation to any person regarding Forescout's ultimate performance as compared to the information contained in the Forecasts. The inclusion of the Forecasts should not be regarded as an indication that the Forescout Board, the Strategic Committee, Forescout or any other recipient of the Forecasts considered, or now considers, the Forecasts to be predictive of actual future results. Further, the inclusion of the Forecasts in this proxy statement does not constitute an admission or representation by Forescout that the information presented is material. The Forecasts are included in this proxy statement solely to give Forescout stockholders access to the information that was made available to the Forescout Board, the Strategic Committee, Morgan Stanley and potential acquirers of Forescout (including Advent), and are not included in this proxy statement in order to influence any Forescout stockholder to make any investment decision with respect to the merger, including whether or not to seek appraisal rights with respect to the common stock or to influence the decision of any Forescout stockholder on how to vote at the special meeting.

**Forescout stockholders are cautioned not to rely on the Forecasts, as Forescout may not achieve the Forecasts whether or not the merger is completed.**

*Forecasts*

*Target Plan*

The following table summarizes the Target Plan for fiscal years 2019 through 2023 and the extrapolated forecast of the Target Plan for fiscal years 2024 through 2029. The extrapolations were reviewed and approved by Forescout management.

| (Dollars in millions)[1] | Target Plan | | | | | Extrapolations | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2019E | 2020E | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E |
| Revenue | $ 342 | $ 389 | $ 442 | $ 505 | $ 616 | $ 732 | $ 846 | $ 952 | $ 1,041 | $ 1,105 | $ 1,138 |
| Non-GAAP EBIT[2] | $ (36) | $ 13 | $ 34 | $ 46 | $ 88 | $ 121 | $ 158 | $ 199 | $ 240 | $ 280 | $ 313 |
| Depreciation | $ 12 | $ 13 | $ 16 | $ 21 | $ 26 | $ 29 | $ 33 | $ 34 | $ 36 | $ 35 | $ 34 |
| EBITDA[3] | $ (24) | $ 26 | $ 50 | $ 67 | $ 114 | $ 150 | $ 191 | $ 233 | $ 276 | $ 315 | $ 347 |
| Stock-based compensation | $ (54) | $ (50) | $ (51) | $ (53) | $ (55) | $ (55) | $ (55) | $ (55) | $ (55) | $ (55) | $ (55) |
| Taxes | $ 0 | $ 0 | $ 0 | $ 0 | $ (8) | $ (16) | $ (26) | $ (36) | $ (46) | $ (56) | $ (64) |
| Change in deferred revenue | $ 26 | $ 26 | $ 140 | $ 180 | $ 161 | $ 155 | $ 139 | $ 116 | $ 87 | $ 56 | $ 25 |
| Change in net working capital | $ (3) | $ (33) | $ (63) | $ (30) | $ (35) | $ (37) | $ (36) | $ (33) | $ (28) | $ (20) | $ (10) |
| Capital expenditures | $ (8) | $ (12) | $ (18) | $ (24) | $ (32) | $ (35) | $ (38) | $ (39) | $ (39) | $ (37) | $ (34) |
| Unlevered free cash flow[4] | $ (63) | $ (43) | $ 58 | $ 140 | $ 145 | $ 161 | $ 175 | $ 186 | $ 195 | $ 202 | $ 208 |

(1)    Totals may not foot due to rounding.
(2)    Non-GAAP EBIT is defined as Forescout's earnings before interest and taxes and excludes stock-based compensation expense and amortization of intangible assets.
(3)    EBITDA is defined as EBIT before depreciation and amortization of intangibles assets.
(4)    Unlevered free cash flow is defined as EBITDA less (1) stock-based compensation expense, (2) taxes, (3) change in net working capital and (4) capital expenditures plus (5) change in deferred revenue.

Table of Contents

*Preliminary Alternate Plan*

The following table summarizes the Preliminary Alternate Plan for fiscal years 2019 through 2023. The Preliminary Alternate Plan was not extrapolated.

| (Dollars in millions)[1] | 2019E | 2020E | 2021E | 2022E | 2023E |
|---|---|---|---|---|---|
| Revenue | $ 342 | $ 356 | $ 394 | $ 446 | $ 538 |
| Non-GAAP EBIT[2] | $ (36) | $ (11) | $ (1) | $ 2 | $ 31 |

[1]  Totals may not foot due to rounding.
[2]  Non-GAAP EBIT is defined as Forescout's earnings before interest and taxes and excludes stock-based compensation expense and amortization of intangible assets.

*Alternate Plan*

The following table summarizes the Alternate Plan for fiscal years 2019 through 2023 and the extrapolated forecast of the Alternate Plan for fiscal years 2024 through 2029. The extrapolations were reviewed and approved by Forescout management

| (Dollars in millions)[1] | Alternate Plan | | | | | Extrapolations | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2019E | 2020E | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E |
| Revenue | $ 337 | $ 386 | $ 417 | $ 464 | $ 549 | $ 635 | $ 718 | $ 794 | $ 858 | $ 905 | $ 933 |
| Non-GAAP EBIT[2] | $ (38) | $ 4 | $ 20 | $ 33 | $ 64 | $ 91 | $ 122 | $ 156 | $ 191 | $ 225 | $ 256 |
| Depreciation | $ 12 | $ 13 | $ 16 | $ 20 | $ 26 | $ 25 | $ 27 | $ 28 | $ 29 | $ 29 | $ 28 |
| EBITDA[3] | $ (26) | $ 17 | $ 36 | $ 53 | $ 90 | $ 116 | $ 149 | $ 184 | $ 220 | $ 254 | $ 284 |
| Stock-based compensation | $ (55) | $ (56) | $ (57) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) |
| Taxes | $ 0 | $ 0 | $ 0 | $ 0 | $ (1) | $ (8) | $ (16) | $ (24) | $ (33) | $ (42) | $ (50) |
| Change in deferred revenue | $ 16 | $ 36 | $ 129 | $ 175 | $ 172 | $ 157 | $ 134 | $ 106 | $ 75 | $ 46 | $ 20 |
| Change in net working capital | $ 13 | $ (66) | $ (50) | $ (35) | $ (34) | $ (27) | $ (26) | $ (24) | $ (20) | $ (15) | $ (9) |
| Capital expenditures | $ (8) | $ (12) | $ (18) | $ (24) | $ (32) | $ (31) | $ (32) | $ (33) | $ (32) | $ (30) | $ (28) |
| Unlevered free cash flow[4] | $ (60) | $ (81) | $ 40 | $ 110 | $ 137 | $ 149 | $ 151 | $ 151 | $ 152 | $ 154 | $ 160 |

[1]  Totals may not foot due to rounding.
[2]  Non-GAAP EBIT is defined as Forescout's earnings before interest and taxes and excludes stock-based compensation expense and amortization of intangible assets.
[3]  EBITDA is defined as EBIT before depreciation and amortization of intangibles assets.
[4]  Unlevered free cash flow is defined as EBITDA less (1) stock-based compensation expense, (2) taxes, (3) change in net working capital and (4) capital expenditures plus (5) change in deferred revenue.

**Interests of Forescout's Directors and Executive Officers in the Merger**

When considering the recommendation of the Forescout Board that you vote to approve the proposal to adopt the merger agreement, you should be aware that our directors and executive officers have interests in the merger that are different from, or in addition to, the interests of Forescout stockholders. In (1) evaluating and negotiating the merger agreement; (2) approving the merger agreement and the merger; and (3) recommending that the merger agreement be adopted by Forescout stockholders, the Forescout Board was aware of and considered these interests to the extent that they existed at the time, among other matters. These interests are more fully described below.

*Insurance and Indemnification of Directors and Executive Officers*

Pursuant to the terms of the merger agreement, directors and officers of Forescout will be entitled to certain ongoing indemnification and insurance coverage, including under directors' and officers' liability insurance policies. For more information, see the section of this proxy statement captioned "The Merger Agreement—Indemnification and Insurance."