IGNACIO E. SALCEDA, State Bar No. 164017
DIANE M. WALTERS, State Bar No. 148136
REBECCA L. EPSTEIN, State Bar No. 168226
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: isalceda@wsgr.com
        dwalters@wsgr.com
        bepstein@wsgr.com

Attorneys for Defendants
Michael DeCesare and Christopher Harms

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>      v.<br><br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, and CHRISTOPHER HARMS,<br><br>        Defendants. | CASE NO.: 3:20-cv-00076-SI<br><br><u>CLASS ACTION</u><br><br>**INDIVIDUAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: September 17, 2021<br>Time: 10:00 a.m.<br>Dept: Courtroom 1, 17th Floor<br><br>Before: Hon. Susan Illston |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

I.   PLAINTIFFS FAIL TO PLEAD FALSITY ...........................................................2

II.  THE SAC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ......................2

     A.   Plaintiffs Have Not Alleged Any Direct Evidence of Scienter ...............................2

     B.   The CW Allegations Say Nothing About the Defendants' Mental States ..............3

          1.   The Access to Data Allegations Do Not Plead An Inference of Scienter. ...................................................................................................4

          2.   The "Pressure Campaign" Allegations Do Not Plead Fraud.....................6

          3.   The CEP Allegations Do Not Plead Scienter. .............................................7

          4.   The Sales Force Allegations Do Not Plead Scienter. ..................................8

          5.   The Channel Stuffing Allegations Fail............................................................8

     C.   The SAC Lacks Any Compelling Motive Allegations.............................................9

          1.   The Cursory Stock Sale Allegations Are Woefully Deficient. ...................9

          2.   The Merger Motive Allegations Fail to Plead Scienter............................11

     D.   The Delaware Litigation and Tender Offer Allegations Do Not Plead Scienter ....................................................................................................................12

          1.   Plaintiffs' Allegations About the Closing of the Merger Are Deficient. .................................................................................................12

          2.   The Other Borrowed Delaware Allegations Also Fail to Plead Scienter. ...................................................................................................13

     E.   The Rare Core Operations Inference Does Not Apply .........................................14

     F.   Plaintiffs' Allegations Fail Both Individually and Holistically ............................15

III. PLAINTIFFS' LOSS CAUSATION ARGUMENTS ARE FLAWED...........................15

CONCLUSION ....................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Akorn, Inc. v. Fresenius Kabi AG*,
No. CV 2018-0300-JTL, 2018 WL 4719347 (Del. Ch. Oct. 1, 2018),
*aff'd,* 198 A.3d 724 (Del. 2018) ...................................................................................... 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
65 F. Supp. 3d 840 (N.D. Cal. 2014),
*aff'd*, 856 F.3d 605 (9th Cir. 2017) ................................................................................... 14

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................................ 6, 7

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
No. 5:11-cv-04003-LHK, 2013 WL 2156358 (N.D. Cal. May 17, 2013) ........................ 11

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ................................................................................. 9

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ........................................................................................... 11

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ............................................................................... 4

*In re Allied Nevada Gold Corp. Sec. Litig.*,
743 F. App'x 887 (9th Cir. 2018) ....................................................................................... 4

*In re Amgen, Inc. Sec. Litig.*,
No. CV 07–2536 PSG, 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) .............................. 6

*In re CDnow, Inc. Sec. Litig.*,
138 F. Supp. 2d 624 (E.D. Pa. 2001) ......................................................................... 12, 13

*In re Mylan N.V. Sec. Litig.*,
379 F. Supp. 3d 198 (S.D.N.Y. 2019) .............................................................................. 13

*In re Nektar Therapeutics*,
No. 18-cv-06670-HSG, 2020 WL 3962004 (N.D. Cal. July 13, 2020) ............................ 10

*In re OSG Sec. Litig.*,
12 F. Supp. 3d 619 (S.D.N.Y. 2014) ................................................................................ 13

*In re Silicon Storage Tech., Inc. Sec. Litig.*,
No. C-05-0295-PJH, 2007 WL 760535 (N.D. Cal. Mar. 9, 2007) .................................... 13

*In re WageWorks, Inc. Sec. Litig.*,
No. 18-cv-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020) ................................ 8

*Kovtun v. VIVUS, Inc.*,
No. C10-4957 PJH, 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012),
*aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015).............. 8, 14, 15

*Lipton v. PathoGenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)....................................................................................5

*McCasland v. FormFactor Inc.*,
No. C 07-5545 SI, 2009 WL 2086168 (N.D. Cal. Jul. 14, 2009)........................................2

*McGovney v. Aerohive Networks, Inc.*,
No. 18-CV-00435-LHK, 2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ........................ 4, 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)...........................................................................2, 3, 10

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004)....................................................................................5

*Park v. GoPro, Inc.*,
No. 18-cv-00193-EMC, 2019 WL 1231175 (N.D. Cal. Mar. 15, 2019)............................6

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014).............................................................................2, 4, 5

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
No. 10-CV-03451-LHK, 2012 WL 1868874 (N.D. Cal. May 22, 2012),
*aff'd*, 759 F.3d 1051 (9th Cir. 2014) .............................................................................5

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)................................................................... 1, 8, 10

*Scandlon v. Blue Coat Sys., Inc.*,
No. C 11-4293 RS, 2013 WL 5313168 (N.D. Cal. Sept. 23, 2013)................................. 15

*Welgus v. TriNet Grp., Inc.*,
No. 15-cv-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
*aff'd*, 765 F. App'x 239 (9th Cir. 2019) ........................................................................... 10

*Wilson v. Frito-Lay North America, Inc.*,
No. 12–1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013).........................................6

*Wozniak v. Align Tech., Inc.*,
No. C-09-3671 MMC, 2011 WL 2269418 (N.D. Cal. June 8, 2011) .............................. 11

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)...........................................................................2, 4, 15

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(A) ................................................................................................ 1

**INTRODUCTION**

This is plaintiffs' fourth attempt to plead fraud.  Once again, they have failed.  Like each of its predecessors, the SAC[1] lacks factual allegations showing that any of the Defendants' statements were false or misleading, much less knowingly or deliberately so.

Having failed to plead the particularized facts necessary to state a claim for fraud, plaintiffs' Opposition ("Opp.") largely ignores the Reform Act's stringent requirements.  Instead of identifying particularized facts, plaintiffs repeatedly ask the Court to make unsupported inferential leaps based on deficient confidential witness allegations.  The Opposition, however, does not dispute that the CW1-15 allegations – which the Court found insufficient in its March 25, 2021 Order ("March 25 Order") – remain largely unchanged and thus deficient.  The new CW allegations fare no better as they suffer from the same defects:  (i) none of the CWs claims to have knowledge about the challenged statements; and (ii) none of the CWs claims to know anything about Mr. DeCesare's or Mr. Harms' state of mind at the time any statement was made.

In addition to the failure to plead direct evidence of scienter, the SAC also fails to offer a compelling explanation as to why the Individual Defendants would engage in a scheme to defraud investors.  Indeed, the SAC's stock sale allegations are even weaker than in the CAC and now include just a single sentence regarding each Individual Defendant's sales.  The Ninth Circuit has made clear that such conclusory allegations fail to plead a strong inference of scienter, and the Court has held that the alleged merger financial motives are insufficient.

Moreover, the competing inferences of non-fraudulent conduct outweigh the unsupported fraud allegations.  Plaintiffs continue to disregard that Forescout met or exceeded its guidance during the first half of 2019.  As developments occurred, Forescout prospectively reduced guidance.  As the Ninth Circuit has made clear, that problems and difficulties occur – *i.e.*, "the daily work of business people" – "does not make a lie" out of any challenged statement.  *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).

In sum, the SAC fails to plead a strong inference of scienter.  Where, as here, the SAC

---

[1] Unless otherwise stated, defined terms have the same meaning as in the opening memorandum in support of the Individual Defendants' motion to dismiss ("ID MTD").

lacks the requisite particularized facts, it "shall" be dismissed.  15 U.S.C. § 78u-4(b)(3)(A).

## I.    PLAINTIFFS FAIL TO PLEAD FALSITY

As set forth in Forescout's motion to dismiss briefing, the SAC should be dismissed in its entirety for failing to plead an actionable misstatement or omission.  *See* Forescout Motion to Dismiss ("Forescout MTD"), ECF No. 143, Sections I-III; Forescout Reply Memorandum in Support of Motion to Dismiss ("Forescout Reply"), Sections I-III.

## II.    THE SAC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

In addition to pleading falsity, plaintiffs claiming securities fraud must plead particularized facts raising a strong inference that Mr. DeCesare or Mr. Harms made false or misleading statements with scienter, *i.e.*, "a mental state embracing intent to deceive, manipulate, or defraud."  *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (citation omitted).  In evaluating scienter allegations, courts must "compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  Like the CAC, the SAC fails to plead any inference – much less a strong ***malicious*** inference – of fraudulent scienter.

### A.    Plaintiffs Have Not Alleged Any Direct Evidence of Scienter

Plaintiffs fail to plead specific facts showing that any statement was false when made, much less knowingly or deliberately so.  ID MTD at 4-16.  In particular, the SAC fails to plead – as it must – "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (citation omitted).  Indeed, the Opposition does not dispute that the SAC fails to identify a single, contemporaneous internal email, report, or document demonstrating that any public statement was intentionally or deliberately false when made.  *See McCasland v. FormFactor Inc.*, No. C 07-5545 SI, 2009 WL 2086168, at *5 (N.D. Cal. Jul. 14, 2009) (no allegations that CWs "provided any ***specific*** information to defendants that contradict[ed] any public statement made," "that any defendant

received such [specific] information in an email" or internal report or "that any CW heard or read any specific private statement by a defendant that contradicted a public statement.").

The Ninth Circuit has made clear that merely alleging "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter[.]" *Metzler*, 540 F.3d at 1068. Rather, plaintiffs must plead "specific information conveyed to management ***and related to the fraud***." *Id.* (emphasis added). The SAC lacks any such facts. ID MTD at 4-5.

Like the SAC, the Opposition relies upon general statements by Messrs. DeCesare and Harms regarding overseeing the business and working to improve sales productivity as purported "admissions" of scienter. *E.g.*, Opp. at 31 ("DeCesare admitted that he and Harms spent a lot of time on 'sales ramping and productivity,' and Harms admitted that both Defendants 'probed' the sales pipeline"). As this Court found in the March 25 Order, however, "without additional corroboration showing defendants' statements about the pipeline or big deals were false, defendants' admissions to monitoring the pipeline and big deals are insufficient to plead a strong inference of scienter." March 25 Order at 14. The SAC lacks any such corroborative facts.

Instead, the Opposition appears to suggest that the new CWs – who, like the other CWs, say nothing about the challenged statements – somehow provide the missing corroboration. Opp. at 32. As set forth below, the new CW allegations suffer from the same defects as in the CAC.

**B.      The CW Allegations Say Nothing About the Defendants' Mental States**

The Opposition effectively concedes that the allegations attributed to CWs 1-15 remain largely unchanged in the SAC. *See, e.g.*, Opp. at 9-10 (referencing CW8 and CW1 allegations that were in the CAC); *id*. at 10 (CW9); *id.* at 14 (CW1, CW7). These allegations thus remain deficient and fail to support a strong inference of scienter. *See* March 25 Order at 13 ("[I]ndividually and collectively, the CWs' statements lack detail to establish either the reliability of CWs' statements or that the statements themselves are indicative of scienter.").

Because the CW1-15 allegations remain unchanged, the Opposition focuses primarily on the five new CWs. The Opposition only highlights the same glaring deficiency in the new CW allegations: ***none of the CWs*** claims to have any personal knowledge as to what Messrs.

DeCesare or Harms knew at the time any challenged statement was made.  ID MTD at 5-16.  In particular, the Opposition does not – and cannot – dispute that no CW: (i) claims that the challenged statements were false or misleading; (ii) is alleged to have had any involvement in corporate decision-making or public reporting; or (iii) directly communicated with Mr. DeCesare or Mr. Harms.  *See* March 25 Order at 14 ("plaintiffs failed to adequately allege how the CWs' reports contradict defendants' statements."); *id.* at 13 ("None of the CWs reported to individual defendants about their experiences with sales and hiring or personally heard individual defendants speak about sales productivity, the pipeline, or Forescout's deals.").

As Judge Wilken explained, "it is difficult to surmise how the opinions and observations" of CWs who "had no personal interactions" with the Individual Defendants "could support a reasonable inference about what these individual Defendants knew or did not know at the time each of the challenged statements was made." *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010); *see Intuitive Surgical*, 759 F.3d at 1063 ("Missing are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives.").  The CW allegations thus fail to support any inference of scienter.  *See, e.g.*, *McGovney v. Aerohive Networks, Inc.*, No. 18-CV-00435-LHK, 2019 WL 8137143, at *19 (N.D. Cal. Aug. 7, 2019) (CWs not alleged to have "reported to or had direct personal contact" with the defendants "provide little reliable basis to support an inference of the Defendants' scienter because the CWs do not have personal knowledge as to what the Defendants knew").[2]

        **1.**       **The Access to Data Allegations Do Not Plead An Inference of Scienter**.

Like the SAC, the Opposition makes general assertions regarding Forescout's use of "Clari

---

[2] Plaintiffs attempt to defend the CW hearsay, speculation, and opinion allegations (Opp. at 37), but disregard that the Ninth Circuit has held that such allegations do not suffice to plead scienter.  *See Intuitive Surgical*, 759 F.3d at 1063 (CW allegations insufficient to defeat competing inference where CWs lacked "first hand [sic] knowledge regarding what the individual defendants knew or did not know"); *Zucco*, 552 F.3d at 997 ("vague hearsay" is "not enough to satisfy *Daou's* reliability standard").  Plaintiffs mischaracterize *In re Allied Nevada Gold Corp. Securities Litigation*, 743 F. App'x 887 (9th Cir. 2018).  The opinion says nothing about "improper evidentiary objections at the pleading stage" (Opp. at 37), but rather, found that more detailed allegations than the SAC's sufficed to plead scienter.  743 F. App'x at 888 (company "sought permission from regulators for an extensive drilling program to investigate and possibly remediate the permeation issues," and which also were the subject of CW allegations).

to monitor sales representatives, deals, and the Company's forecasts." Opp. at 30. Absent, however, are pleaded facts identifying *any* specific, contemporaneous Clari data that purportedly rendered any challenged statement misleading. In particular, what did the unidentified Clari data purportedly show, when did it show it, and most importantly, how did it render any challenged statement knowingly false when made? The SAC does not say. As the Ninth Circuit explained in *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002), "[a]lthough plaintiffs refer to the existence of [certain data]" and generally assert "what they think the data shows, plaintiffs do not allege with particularity any specific information showing that [the] data informed defendants" that their statements were false when made. Plaintiffs' allegations concerning the Individual Defendants' alleged review of unspecified Clari data at unspecified times thus fail to plead a strong inference of scienter. *See Intuitive Surgical*, 759 F.3d at 1063 ( "[m]ere access to reports containing undisclosed sales data is insufficient to establish a strong inference of scienter").[3]

It is not enough for the Opposition to claim that Forescout had "granular data" (*e.g.*, Opp. at 2, 30, 31, 32), when plaintiffs fail to supply the missing particularized facts. As courts have recognized, "particularity requires pleading the who, what, where, when, and how regarding each Defendant's access to the relevant information that belies fraudulent intent." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014). Such details are missing in the SAC.

Conceding that the SAC does not identify any particular Clari data reviewed by Mr. DeCesare (or Mr. Harms) (Opp. at 30), plaintiffs attempt to add new allegations through their Opposition, citing an undated Clari "advertising brochure." Opp. at 30-31. Even if judicial notice

---

[3] *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) is inapposite. Opp. at 31. In *Oracle*, the company announced that its revenue would be $230 million below its earlier projections of $2.9 billion. 380 F.3d at 1228-29. The complaint included detailed allegations regarding four lost deals that accounted for $186 million of the shortfall. The court found that it was "reasonable to believe" that Oracle knew earlier that it would not make its projections in light of the lost deals, particularly given that the CEO had made such statements as "'I was involved in an awful lot of those deals'" and "'we know exactly how much we have sold in the last hour around the world.'" *Id*. at 1231-32. Unlike *Oracle*, the SAC does not tie any specific deals to Forescout's public guidance or other public statements.

of the "brochure" were proper – it is not[4] – it adds nothing to the scienter analysis.  That a third party included a general comment from Mr. DeCesare about one of its products says nothing about what he did or did not know about specific Clari data at the time any challenged statement was made.

The CW20 allegations regarding the preparation of periodic reports using Smartsheet are similarly lacking in critical details.  Opp. at 31.  Indeed, the SAC fails to identify the dates or specific contents of any such reports, much less explain how any unidentified report rendered any challenged statement knowingly false or misleading when made.  *See* ID MTD at 15-16.

Plaintiffs' contention that particularized allegations are not necessary is incorrect.  Opp. at 33.  Courts find scienter allegations to be deficient where, as here, the SAC lacks "specific allegations about the timing of what Defendants knew and when they knew it." *Park v. GoPro, Inc.*, No. 18-cv-00193-EMC, 2019 WL 1231175, at *22 (N.D. Cal. Mar. 15, 2019); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064-65 (N.D. Cal. 2012) (CW allegations regarding review of reports at weekly meetings insufficient to show that executives believed company could not meet its long term goals).[5]

**2.    The "Pressure Campaign" Allegations Do Not Plead Fraud**.

Like the CAC, the SAC alleges that there was a "Company-wide pressure campaign" to improperly report deals as "committed." *See, e.g.*, Opp. at 32, 34.  As the Court found in the March 25 Order, however, "there is no reliable CW statement [in the CAC] that the pressure to artificially list deals as 'closed' or 'committed' came from individual defendants."  March 25 Order at 8.  Because the Court already found that the "pressure campaign" allegations in the CAC were insufficient as to Mr. DeCesare (*id*.) and because the SAC offers no new facts regarding Mr.

---

[4] *See, e.g.*, *Wilson v. Frito-Lay North America, Inc.*, No. 12–1586 SC, 2013 WL 1320468, at *4 (N.D. Cal. Apr. 1, 2013) (denying judicial notice of website not referenced in complaint, finding that it was "an impermissible attempt to amend the pleadings").

[5] Plaintiffs' reliance on *In re Amgen, Inc. Securities Litigation*, No. CV 07–2536 PSG (PLAx), 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) is misplaced.  Opp. at 33.  There, the court found that it was not necessary to plead additional "tangential" details where the plaintiffs already had pleaded particularized facts regarding the "content of the Run 4 data, along with other facts such as the identities of the individual participants at the . . . meeting and the date and time of the meeting." 2014 WL 12585809, at *11.  No such similarly detailed allegations are pleaded in the SAC.

DeCesare's purported involvement in the alleged campaign, the allegations regarding Mr. DeCesare remain insufficient.  *Compare* CAC ¶73, *with* SAC ¶52.f.  There are no allegations in the SAC that Mr. Harms was part of any purported pressure campaign, and the "pressure" allegations thus also fail as to him.[6]

The only "new" allegations regarding a purportedly "widespread" pressure campaign are from CW19, but they make no mention of Mr. DeCesare or Mr. Harms.  Opp. at 34-35.  Rather, CW19 alleges that, during a January 2020 sales meeting breakout session with unidentified attendees, he heard the VP of the Americas purportedly "instruct[] sales representatives to identify deals as 'committed' in the Salesforce platform based only on a single conversation with a senior executive of the customer in the negotiation stage[.]"  ¶99.F.  CW19, however, does not allege that Messrs. DeCesare and Harms were aware of any such purported instructions.  ¶57.  Moreover, CW19 does not identify any such deals as being included in internal sales forecasts or public guidance.  *See, e.g.*, *Royal Oak*, 880 F. Supp. 2d at 1065 ("Plaintiffs fail to allege facts explaining how the performance of either CW5's group or the Verizon sales impacted the revenues of Juniper as a whole").  Plaintiffs' attempts to transform this anecdotal, hearsay allegation into a "widespread" companywide "pressure campaign" thus fail.

### 3.    The CEP Allegations Do Not Plead Scienter.

The internally inconsistent allegations regarding the CEP model also fail to plead a strong inference of scienter.  CW18 alleges that Forescout retained a consultant, Force Management, in June 2018 to develop a new forecasting model referred to in the SAC as CEP.  ¶¶49-50.  According to CW18, under a CEP model, a "majority" of the Forescout deals that had been identified internally as "committed" were "miscategorized."  ¶88.D.  CW18, however, "estimates" that "1 out of 5 deals in the global sales pipeline was miscategorized as 'committed'" – *i.e.*, 20%, not more than 50%.  ¶99.D.  The Opposition attempts to reconcile these inconsistent allegations by arguing the "majority" estimate was made by Force Management and not CW18.  Opp. at 11.  Yet, CW18 is the

---

[6] Because the CAC contained similar allegations regarding non-defendant Redman's purported participation in a "pressure campaign," such allegations also remain insufficient to plead scienter.  Opp. at 34; *see* CAC ¶74 (alleging Redman "instigated" pressure campaign).

source of both allegations.  Thus, even assuming, *arguendo*, that any deal was miscategorized, CW18's alleged estimate of 20% shows that even **CW18** did not agree with the purported Force Management estimate.

In any event, plaintiffs' attempts to mis-portray Forescout's internal forecasting processes as lacking any basis are refuted by the fact that Forescout met or exceeded its public guidance in the first two quarters of 2019.  *See* Forescout MTD at 4.

**4.      The Sales Force Allegations Do Not Plead Scienter**.

Plaintiffs contend that alleged statements by Mr. DeCesare in *2020* regarding sales force reductions in *2019* purportedly show "Defendants' knowledge or recklessness with respect to their false statements about sales productivity" – statements made months before Mr. DeCesare's 2020 discussion of reductions.  Opp. at 35.  It is well-established, however, that such fraud-by-hindsight allegations do not plead fraud.  *See Ronconi*, 253 F.3d at 430 n.12 ("[F]raud by hindsight is not actionable.") (citation omitted); *Kovtun v. VIVUS, Inc.*, No. C10-4957 PJH, 2012 WL 4477647, at *5 (N.D. Cal. Sept. 27, 2012) ("The [PSLRA] was enacted by Congress in 1995 to establish uniform and stringent pleading requirements for securities fraud actions, and to put an end to the practice of pleading 'fraud by hindsight.'") (citation omitted), *aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015).[7]

**5.      The Channel Stuffing Allegations Fail**.

Conceding that the SAC lacks any facts to suggest that Mr. DeCesare or Mr. Harms engaged in channel stuffing, the Opposition attempts to bolster the deficient allegations by arguing that Mr. DeCesare was a "micromanager" who had "access to the Clari system" and thus must

---

[7] *In re WageWorks, Inc. Securities Litigation*, No. 18-cv-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020) is inapposite.  Opp. at 35.  There, the company disclosed that its past financial statements needed to be restated and announced the departures of the CEO and CFO. 2020 WL 2896547, at *2, *6.  The court stated that it would not "'close [its] eyes' to the circumstances of [the executives] resignations, as well as to WageWorks' own post-mortem diagnosis of the problems that led to false financial statements," given that, among other things, the executives' resignations were announced in the same press release as the restatement, and plaintiffs alleged that the company's auditors had called for the CEO's resignation, had stated that they could not rely on the CEO's representations, and had recommended that an independent investigation of "management override" of controls be conducted.  *Id.* at *6-7.  No similar inferences may be drawn from the lone allegation regarding Mr. DeCesare's purported statement in 2020 regarding past and future sales force reductions.

have known of purported channel stuffing. Opp. at 41. Merely combining multiple sets of deficient allegations, however, does not render them any more compelling. As explained *supra* at 5-6, "access to data" allegations do not plead fraud, and courts also routinely hold that conclusory allegations regarding a "hands-on" management style fail to plead the requisite strong inference of scienter. *See McGovney*, 2019 WL 8137143, at *21 (citing cases).

### C.     The SAC Lacks Any Compelling Motive Allegations

Despite four opportunities to attempt to articulate a coherent fraud theory, plaintiffs still fail to offer any compelling explanation as to why Messrs. DeCesare and Harms purportedly would have engaged in a conspiracy to defraud investors.

### 1.     The Cursory Stock Sale Allegations Are Woefully Deficient.

The Opposition's attempt to resuscitate the deleted stock sale allegations from the CAC – allegations the Court already found insufficient – only serves to highlight the deficient nature of the SAC's allegations. Opp. at 43 (citing CAC paragraphs that were not included in the SAC). With the exception of two sentences in the "Parties" section of the SAC, plaintiffs deleted all of the CAC's stock sale allegations (CAC ¶¶167-168). Because the Court already held that the more lengthy stock sale allegations in the CAC were insufficient, the two sentences of cursory allegations in the SAC thus also fail to plead an inference of scienter. *See* March 25 Order at 14.

Indeed, the SAC lacks even basic details that were present in the CAC's stock sale charts, such as the date and amount of each sale. The deletion of these charts is not surprising, given that they undermined rather than supported an inference of scienter, as the sales were made with regularity over the course of the lengthy Class Period. CAC ¶¶167-168. For example, Mr. Harms' stock sales reflect predetermined amounts sold near the middle of every month. *Id.* ¶167 (*e.g.*, exactly 9,815 shares sold five months in a row). Likewise, Mr. DeCesare sold shares in every month of 2019, excluding June and October. *Id.* ¶¶167-168.[8]

_____

[8] Plaintiffs' attempts to create new allegations regarding dates and/or stock prices from the deleted charts are unavailing. Opp. at 43 (newly arguing that sale in CAC chart was large and making another new argument about prices not alleged in SAC). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (alteration in original) (citation omitted).

Ignoring the fact that the more expansive stock sale allegations in the CAC were not sufficient to plead scienter (March 25 Order at 14-15), plaintiffs strain to argue that the more skeletal allegations in the SAC somehow support the required strong inference of scienter. Opp. at 43-44. They do not. Courts routinely find far more detailed allegations insufficient. *See, e.g.*, *Metzler*, 540 F.3d at 1067 (stock sale allegations regarding CEO stock sales of 37% of holdings and CFO sales of 100% of holdings insufficient to plead scienter); *Ronconi*, 253 F.3d at 435-36 (sales by seven insiders in excess of 69% insufficient where timing of sales was not suspicious).

Moreover, plaintiffs would have the Court ignore the fact that all of the stock sales were made pursuant to predetermined, non-discretionary Rule 10b5-1 trading plans disclosed on the SEC filings for each sale. March 25 Order at 14; Ex. 20; Ex. 21. Numerous courts have found that such sales undermine an inference of scienter. ID MTD at 18; *see also In re Nektar Therapeutics*, No. 18-cv-06670-HSG, 2020 WL 3962004, at *16 (N.D. Cal. July 13, 2020) (sales pursuant to Rule 10b5-1 plans "weigh[] against an inference of scienter"); *Welgus v. TriNet Grp., Inc.*, No. 15-cv-03625-BLF, 2017 WL 6466264, at *18 (N.D. Cal. Dec. 18, 2017) (sales "executed pursuant to predetermined" plans "rebuts an inference of scienter"), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).

Plaintiffs' new, unalleged claim that defendants purportedly tried to "hide the trading plan[s]" also fails. Opp. at 43-44. Courts routinely consider the existence of trading plans from Forms 4 filings without reviewing the plans. *See supra* at 10; ID MTD at 18.

Plaintiffs' contention that the stock sales purportedly were suspicious simply because the total amount sold during the Class Period was higher than the total amount sold before the Class Period also falls flat. ¶¶24, 25. As an initial matter, the total amounts sold were reflected in the stock sale allegations in the now-dismissed CAC. Moreover, because Forescout only went public in October 2017 (¶1), there is not a lengthy trading history from which to assess comparable periods and "no pattern to compare the trades to." *Welgus*, 2017 WL 6466264, at *18 (finding that "amendment in this respect would be futile because the SAC also adds an allegation that the Officer Defendants were subject to lock-up agreements that prevented them from trading for 180 days following the IPO, so there is no pattern to compare the trades to"). Following the IPO and a

March 2018 secondary offering, the Individual Defendants were subject to lockups precluding them from selling any shares. ID MTD at 18.[9] Thus, there were only seven months before the start of the Class Period in which the Individual Defendants could sell stock. It is hardly surprising that they sold fewer shares over the seven months before the Class Period than they did during the sixteen-month Class Period. Plaintiffs' assertion that it is "uncontested that **both** the number of shares sold . . . and the dollar amount obtained during the Class Period are dramatically out of line with the Individual Defendants' trading history" (Opp. at 43) is, quite simply, false.

Plaintiffs' attempt to provide the missing inference of scienter by including allegations about stock sales by a non-defendant are equally unavailing. Opp. at 43. Sales by non-defendants are irrelevant. *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-cv-04003-LHK, 2013 WL 2156358, at *9 (N.D. Cal. May 17, 2013) ("If the sales were by non-defendants, they are irrelevant to show motive on the part of the individual defendants."); *Wozniak v. Align Tech., Inc.*, No. C-09-3671 MMC, 2011 WL 2269418, at *14 (N.D. Cal. June 8, 2011) ("Sales by insiders not named as defendants, however, are irrelevant to the determination of the named defendant's scienter."). Moreover, the SAC fails to plead facts showing that the stock sales were unusual or suspicious. *Ronconi*, 253 F.3d at 435.

### 2. The Merger Motive Allegations Fail to Plead Scienter.

Plaintiffs contend that a purported desire to sell Forescout at a premium allegedly motivated Defendants to mislead investors and potential acquirors. ¶¶24-25, 54, 61; ID MTD at 19-20. As this Court held in its March 25 Order, however, "financial motives arising from the potential acquisition are insufficient to establish a strong inference" of scienter. March 25 Order at 15 (citing *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008)). Moreover, plaintiffs do not dispute that the merger "motive" allegations could not have provided a motive for securities fraud during the first eight months of the putative class period, *i.e.*, the period before October 2019 when plaintiffs allege Forescout "put itself up for sale." ¶53.

---

[9] Plaintiffs erroneously suggest that the lockups expired in April 2018. Opp. at 44. The lockups did not expire until several months after the March 2018 secondary offering (Ex. 22 at 120), and the first stock sale after the offerings was not made until July 2018. CAC ¶168.

**D.      The Delaware Litigation and Tender Offer Allegations Do Not Plead Scienter**

**1.      Plaintiffs' Allegations About the Closing of the Merger Are Deficient**.

Plaintiffs fail to rebut that Advent's true intentions about the Merger were unknown until delivery of the May 15, 2020 Termination Letter. ID MTD at 20-21. Plaintiffs' attempts to characterize Defendants' merger termination arguments as "spin" (Opp. at 39) are belied by Advent's admission in the Delaware Litigation that, as of May 13, 2020, the Merger closing was *still planned* for May 18, 2020, and Advent and Forescout were continuing to have closing planning meetings (SAC, Ex. 2 at ¶77). Plaintiffs' allegations that Defendants misled investors about the transaction's closing cannot be credited in light of this admission about Advent's own efforts, ongoing as of May 13, towards closing. Opp. at 40; ¶¶154-157; SAC, Ex. 2 at ¶77.

Plaintiffs' selective quotations regarding the May 8, 2020 conversation in which Advent claimed "it could not make the numbers work" also fail to plead scienter. Opp. at 39; SAC, Ex. 1 at ¶8. Plaintiffs posit this was the same as Advent telling Defendants "that the transaction would not be closing," but this unsubstantiated theory is contradicted by Advent's own description of the conversation, which explained not that termination was a foregone conclusion but that Advent had "concerns regarding whether the conditions to Closing *would be met*." Opp. at 39-40; SAC, Ex. 2 at ¶8 (emphasis added). An acquiror's expression of concern is *not* the same thing as a termination. Indeed, the case plaintiffs rely upon shows that an acquiror may "no longer like[] the deal," but still be prepared to "live up to its obligations" if the changed circumstances do not amount to an MAE.[10] *Akorn, Inc. v. Fresenius Kabi AG*, No. CV 2018-0300-JTL, 2018 WL 4719347, at *23 (Del. Ch. Oct. 1, 2018), *aff'd*, 198 A.3d 724 (Del. 2018); *see also In re CDnow, Inc. Sec. Litig.*, 138 F. Supp. 2d 624, 633-34 (E.D. Pa. 2001) (acquiror's concerns about post-signing information regarding merger party's poor cash flow position not sufficient to plead that defendant "knew the merger would not be consummated"). As in *CDnow*, 138 F. Supp. 2d at

---

[10] Plaintiffs omit a critical part of Forescout's allegation – that Advent had said the numbers "not working" was "100% COVID related." SAC, Ex. 1 at ¶8. This is significant, lending support to the compelling, competing inference that Defendants reasonably believed that the MAE clause in the Merger Agreement, which expressly excluded epidemics and pandemics, precluded any pandemic-related termination by Advent (*id.* at ¶57).

632, a case ignored by the Opposition, plaintiffs' allegations are not sufficient to plead Defendants' knowledge of the termination prior to receipt of the Termination Letter.

With respect to Mr. DeCesare's purported May 14, 2020 "made-for-litigation" email (Opp. at 39-40), Forescout denied this allegation (SAC, Ex. 3 at ¶44), and in any event, the May 14 email came after Defendants' last challenged statement regarding the Merger on May 11, 2020 (¶155).  Moreover, Advent "assessing" the closing conditions in April and Forescout's appointment of a Strategic Committee to consider all scenarios (Opp. at 39) are consistent with prudent contingency planning against the backdrop of a global pandemic – not predictions that the transaction would be terminated.  As stated in the Tender Offer Recommendation upon which the SAC relies, "[t]hroughout the remainder of April 2020 and into the first half of May 2020, Forescout and Advent continued to work toward closing the acquisition[.]"  Ex. 30 at 32.

**2.      The Other Borrowed Delaware Allegations Also Fail to Plead Scienter**.

As in the CAC, plaintiffs' reliance on unproven, borrowed allegations fails to supply the missing inference of scienter.  Plaintiffs cherry pick the Delaware Complaint  (Opp. at 38-39) regarding the loss of certain partners and other business (something expected and disclosed), ignoring that Forescout also "managed to secure large deals and see renewals in 2020" and that the lost business was due to conflicts "with Advent's portfolio companies"—not due to Forescout or its products.  SAC, Ex. 1 at ¶93; *id.* at ¶57 (lost business due to the Merger itself excluded from MAE definition); Forescout Reply at III.D.  Plaintiffs similarly ignore that Forescout denied Advent's allegation that Forescout's business had "cratered" (SAC, Ex. 3 at ¶26), a claim that also is belied by Forescout's reported financial results.  In short, the SAC lacks any particularized facts suggesting that Defendants did not have a good faith belief in the financial information that was provided to Advent and publicly disclosed.[11]

---

[11] Plaintiffs' authority is inapposite.  The court in *In re Mylan N.V. Securities Litigation*, 379 F. Supp. 3d 198, 215 (S.D.N.Y. 2019), approved the use of borrowed allegations based on government investigation where plaintiffs' counsel "'reached out'" to the investigators to verify the allegations.  *Cf. also In re Silicon Storage Tech., Inc. Sec. Litig.*, No. C-05-0295-PJH, 2007 WL 760535, at *30 (N.D. Cal. Mar. 9, 2007) (analyzing whether scienter can be pled through retained experts); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 621 (S.D.N.Y. 2014) (while some district courts in the Second Circuit have "adopted the broad rule that a complaint may never

The inferences plaintiffs are attempting to create through the short-lived, hotly contested Advent litigation should not be credited, nor should any allegations based on the July Case, prepared months *after* the pandemic commenced and thus not relevant to plaintiffs' claims regarding earlier forecasts.  Opp. at 40, ¶77.G.[12]

### E.   The Rare Core Operations Inference Does Not Apply

None of the criteria supporting application of the rarely applied – and unalleged – core operations inference is present here.  ID MTD at 24 n.12; Opp. at 42.  In particular, plaintiffs fail to plead particularized facts sufficient to infer each defendant's "actual" exposure to contemporaneous, contradictory information that rendered any challenged statement deliberately false when made.  *See supra* Section II.A-B; *see, e.g.*, *Kovtun*, 2012 WL 4477647, at *19 (core operations inference will not support scienter "absent 'additional detailed allegations about the defendants' actual exposure to information'") (citation omitted)).  The SAC also falls far short of describing circumstances so rare that it would be "absurd" not to impute scienter.

The Opposition's new argument that the core operations inference should apply because the Advent merger was a "highly material fact" (Opp. at 42) misapprehends the nature of the inference.  Although mergers typically are material events for a corporation, they also are routine corporate activities that do not present the "rare" type of circumstances such that it would be "absurd" not to infer scienter.  *Supra* at 14; *see, e.g.*, ID MTD at 19-20; *cf. e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 859 (N.D. Cal. 2014), *aff'd*, 856 F.3d 605 (9th Cir. 2017) (rejecting contention that various factors, including the individual defendants' involvement in corporate acquisition, sufficed to plead scienter).

---

reference allegations from a separate proceeding," there is no Second Circuit precedent regarding the same).

[12] Plaintiffs also mischaracterize one of Forescout's Delaware Litigation denials as "weak." Opp. at 39.  This red herring argument pertains to plaintiffs' allegation, based on Advent's contested Counterclaims, that Defendants purportedly knew at the time of the Proxy that the Q1 2020 portion of the Illustrative Guidance was inconsistent with information Forescout provided Advent on March 20, 2020.  *Id*.  The portion of the Counterclaims that Forescout denied based on "lack of knowledge or information to form a  belief" was neither "weak" nor surprising given that the allegations concerned *Advent's purported perceptions*.  SAC, Ex. 3 at ¶¶27-28.

### F.    Plaintiffs' Allegations Fail Both Individually and Holistically

"When conducting [a] holistic review," courts "must also 'take into account plausible opposing inferences' that could weigh against a finding of scienter." *Zucco*, 552 F.3d at 1006 (citation omitted).  Like its predecessors, the SAC is devoid of any facts giving rise to a strong inference that the Individual Defendants intentionally deceived investors.  *See, e.g.*, *Kovtun*, 2012 WL 4477647, at *23 (scienter allegations deficient where "plaintiff fail[ed] to plead facts sufficient to show that [the CWs] were in a position to know anything about defendants' motives and intent" and the allegations were based on "conclusory allegations about defendants' motives extrapolated from routine corporate objectives . . . and non-discretionary stock trades").

Plaintiffs do not dispute that Defendants repeatedly warned about the risks that Forescout faced, including, among other things, dependence on large deals, the unpredictable nature of lengthy sales cycles, and the fact that some deals occurred later than anticipated.  ID MTD at 23-34.  Such disclosures further undermine any suggestion that Defendants fraudulently concealed information from investors.  Here, an "equally plausible inference is that to the extent any statements were unduly positive, that was merely another aspect of management's failure to understand and respond well to business conditions." *Scandlon v. Blue Coat Sys., Inc.*, No. C 11-4293 RS, 2013 WL 5313168, at *3 (N.D. Cal. Sept. 23, 2013).

### III.    PLAINTIFFS' LOSS CAUSATION ARGUMENTS ARE FLAWED

The SAC also fails to allege loss causation for the period between October 10, 2019 and February 6, 2020.  *See* Forescout MTD, Section IV.[13]

### CONCLUSION

The Individual Defendants respectfully request that the SAC be dismissed with prejudice.

Dated:  August 24, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/    *Ignacio E. Salceda*
        Ignacio E. Salceda

Attorneys for Defendants Michael DeCesare and Christopher Harms

---

[13] Because the Section 10(b) claim fails, the Section 20(a) claim also fails.  ID MTD at 25.