UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER L. SAYCE, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>FORESCOUT TECHNOLOGIES, INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-00076-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. No. 143, 145 |

Before the Court are motions to dismiss, filed by defendant Forescout Technologies Inc. ("Forescout") and individual defendants Michael DeCesare and Christopher Harms (collectively "Individual Defendants"). Dkt Nos. 143; 145. For the reasons set forth below, the Court **GRANTS** Forescout's motion to dismiss and **GRANTS** individual defendants' motions to dismiss. The Court **DENIES** plaintiffs leave to amend and **DISMISSES** the Second Consolidated Amended Complaint with **PREJUDICE**.

## BACKGROUND

**I.　Factual Background**

The following allegations are taken from the Second Consolidated Amended Complaint ("SCAC"), which the Court must treat as true for purposes of this motion.

Forescout provides cybersecurity services for large computer networks. Dkt. No. 142 ¶ 1. Defendant Michael DeCesare is Forescout's President and Chief Executive Officer is defendant Christopher Harms was Forescout's Chief Financial Officer ("Individual Defendants"). *Id*. ¶¶ 24-25.

Prior to the Class Period, defendants told investors that Forescout predicted a 24% revenue

growth for the 2019 fiscal year. *Id*. at ¶ 1. During the Class Period, between February 7, 2019 and May 15, 2020, Forescout produced revenue results indicating the company did not meet projections for the first, second, and third quarters of 2019. *Id*. ¶ at 46. Defendants stated Forescout's decline in revenue was caused by customer order delays, Forescout's shift to a subscription revenue model, and deteriorating macroeconomic conditions in Europe, Middle East, and Africa regions. *Id*. at ¶ 47.

In October 2019, Forescout produced revenue results indicating revenue growth. *Id*. at ¶ 55. Defendants also announced Forescout was up for private sale. *Id*. at ¶¶ 9, 53. On February 6, 2020, Advent agreed to acquire Forescout ("the Acquisition"). *Id*. at ¶ 60. In March 2020, Forescout indicated the company did not meet revenue projections for the first quarter of 2020. *Id*. at ¶ 63. On April 20, 2020, Advent sent Forescout a letter stating Advent "was reviewing Forescout's business, operations, future prospects and financial condition in order to assess whether the conditions to closing [the Acquisition] would be met." *Id*. at ¶ 65. On April 23, 2020, Forescout stated the company "continues to expect the transaction to close in the second calendar quarter of 2020 following the completion of a customary debt 'marketing period' by Advent." *Id*. at ¶ 146. On May 11, 2020, Forescout disclosed the company failed to meet its predictions for the first quarter of 2020 because of two discounted hardware deals. *Id*. at ¶ 154.

After the Class Period, on May 19, 2020, Forescout filed a complaint in Delaware against Advent for specific performance of Advent's agreement to close the Advent Acquisition ("Delaware Litigation"). Dkt. No. 142-1, Ex. 1, at 2. On July 15, 2020, Forescout and Advent settled the Delaware Litigation. Dkt. No. 142 ¶ 74. On August 14, 2020, Advent acquired Forescout. *Id*. at 76.

## II.     Current Matter

On January 1, 2020 plaintiff Christopher Sayce, individually and on behalf of others similarly situated, filed this securities class action lawsuit against defendants. Dkt. No. 1. On December 18, 2020, plaintiffs Christopher Sayce, Meitav Tachlit Mutual Funds Ltd., The Arbitrage Fund, Water Island merger Arbitrage Institutional Comingled Master Fund LP, Water Island

2

LevArb Fund, LP, Water Island Diversified Event-Driven Fund (collectively "Plaintiffs") filed a consolidated amended complaint against defendants. Dkt. No. 116. On March 25, 2021, the Court issued an Order Granting Defendants' Motions to Dismiss, finding the consolidated amended complaint failed to adequately plead falsity and scienter. Dkt. No. 139. The Court held Plaintiffs adequately pled loss causation and granted Plaintiffs leave to amend their falsity and scienter claims. *Id*.

On May 10, 2021, Plaintiffs filed a second consolidated amended complaint ("SCAC"). Dkt. No. 142. According to the SCAC, Plaintiffs allege defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission. Dkt. No. 142 ¶¶ 167-182. Plaintiffs allege defendants knowingly made false and misleading statements and failed to disclose (1) Forescout employee layoffs beginning in early 2019, particularly from the sales department; (2) declined productivity of Forescout's sales employees; (3) lack of "better visibility into the pipeline"; (4) deals with Forescout that either did not close or were "tech wins" (5) artificial deals closing dates listed in Clari, Forescout's deals tracking platform; (6) an objective basis for Forescout's increased revenue projections; (7) Forescout's channel stuffing scheme; and (8) Advent's hesitation to acquire Forescout. *Id*. ¶¶ 80-82, 87, 93, 95-97, 99-100, 105, 110, 122, 125-126, 147-148. Plaintiffs allege Individual Defendants are liable under 20(a) of the Exchange Act as Forescout's senior officers in positions of control and authority. *Id*. at 179-182.

On June 24, 2021, Forescout and Individual Defendants (collectively "defendants") filed separate motions to dismiss the SCAC, Dkt. Nos. 143, 145.[1] On August 2, 2021, plaintiffs filed an

---

[1] Defendants also filed a Notice of Incorporation by Reference & Request for Judicial Notice supporting the two motions to dismiss. Dkt. No. 146. Plaintiffs did not file an opposition. Defendants request the Court take judicial notice of nineteen documents, consisting of Forescout's press releases, earnings call transcripts, and Forescout's public forms, incorporated throughout the SAC. The Court **GRANTS** defendants' requests for incorporation by reference and judicial notice. *See Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, [the Court] may consider . . . matters of public record); *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC filings subject to judicial notice). The Court will indicate which, if any, noticed contents are relied on for the purposes of this Order. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

3

opposition, Dkt. No. 153.[2] On August 24, 2021, defendants filed replies. Dkt. Nos. 155, 156. On September 17, 2021, the Court heard oral arguments on defendants' motions to dismiss. Dkt. No. 157.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court must assume the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

---

[2] Plaintiffs request the Court take notice of three exhibits including a digital brochure from Clari's (a revenue operations platform used by Forescout) public website, excerpts from Forescout's bylaws filed with the SEC, and filings made in *Forescout Technologies, Inc. v. Ferrari Holdings, L.P.*, C.A. No. 2020-0385-SG (Del. Ch.) Dkt. No. 154. Defendants oppose the court taking judicial notice of the digital brochure. Dkt. 156 at 5-6. The Court **GRANTS** plaintiffs' request for judicial notice to the extent the exhibits are relevant and not for the truth of the contents. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents … were in fact true'") (internal citation omitted).

deductions of fact, or unreasonable inferences." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## DISCUSSION

### I.   Section 10(b) of the Exchange Act

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security. . .any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary." 15 U.S.C. § 78j(b).  A plaintiff asserting a claim under Section 10(b) must adequately allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (citations omitted).

Defendants argue the SAC fails to adequately plead (A) actionable misstatements and (B) strong inference of scienter.[3] Dkt. Nos. 143 at 22, 24; 145 at 4-6, 8-11, 15-23.

#### A.   Actionable Misstatements

Defendant Forescout argues defendants' alleged misstatements are either forward-looking statements protected by the safe harbor provision or adequately alleged to be false. Dkt. No. 143 at 7-22.

##### 1.   Forward-Looking Statements

Defendants argue the alleged misstatements involving growth and revenue projections, plans and objectives, sales productivity, pipeline and deals are forward-looking statements protected by the safe harbor provision. Dkt. No. 143 at 7-11. Plaintiffs argue the statements are based on present or historical facts. Dkt. No. 142 at ¶¶ 169-172.  Plaintiffs assert the statements were made with actual knowledge and lacked adequate cautionary language. *Id.* at ¶¶ 152, 170-172.

---

[3] On March 25, 2021, the Court held Plaintiffs adequately pled loss causation. Dkt. No. 139 (Order Granting Defendants' Motion to Dismiss).

The Private Securities Litigation Reform Act's ("PSRLA") safe harbor states "a defendant will not be liable for a false or mislding statement if it is forward-looking *and* either is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017). "[S]tatements containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items" are forward-looking. 15 U.S.C. § 78u–5(i)(1)(A). Forward looking statements include statements of plans and objectives of management for future operations and statements of the assumptions underlying or relating to those plans and objectives. *Wochos v. Tesla Inc.,* 985 F.3d 1180, 1191 (9th Cir. 2021). Unlike statements indicating a company is "on track" to meet a particular goal, "concrete factual assertions about a specific present or past circumstances [that go beyond] the assertion of a future goal, and . . . describ[e] concrete circumstances that have already occurred . . . [are] not forward-looking." *Id.* at 1192.

Defendants' statements regarding Forescout's sales productivity, pipeline, and deals contain concrete factual assertions about Forescout's operations that go beyond assertions of future goals. *Compare In re Quality Systems*, 856 F.3d at 1146-47 (finding defendant's revenue projections were forward-looking statements accompanied by non-forward looking statements such as "pipeline [is] 'growing,'"; "there's nothing out of character in the pipeline that we're reporting today versus what we have seen in the past couple of years"; and "confidence in the prediction to the state of the current sales pipeline.") *with* Dkt. No. 142 ¶¶ 93 ("[W]e feel like we are tracking very well against our sales productivity, the investment levels that we have been making . . . [follow] that path to profitability and investing at levels below where our top line is growing."); 101 ("Those deals are ones where we've already got the tech win."); 108 ("I feel our pipeline is large enough where we can still achieve our capacity expectations without those deals closing in the second quarter."); 128 ("We will continue to broaden and invest in our value added and system integrator channel partner relationships to increase distribution of our products."); *and* 146 ("Forescout continues to expect the transaction to close in the second quarter of 2020 following the completion of a customary debt 'marketing period' by Advent."). Defendants' statements contain reasons why Forescout will meet

6

revenue projections—concrete circumstances that have already occurred. *See Wochos*, 985 F.3d at 1192 ("[O]ne can readily announce an objective *without* stating, for example, that the reason why it is achievable . . . If such factual assertions are made and are false, then they are outside the safe harbor and potentially actionable"). Accordingly, the Court finds defendants' statements contain non-forward looking statements to the extent the statements involved concrete assertions about defendants' sales productivity, pipeline, and deals.

To the extent defendants' statements are forward-looking statements, as discussed below, the Court finds the statements were not made with actual knowledge of falsity and are protected by the PSLRA's safe harbor provision.

### 2. Falsity

Defendants argue the SCAC fails to adequately plead how defendants' alleged misstatements were false. Dkt. No. 143 at 11-22. Plaintiffs argue the SCAC adequately pleads falsity of statements regarding (a) sales employee hiring, (b) deals and sales pipeline, (c) Advent Acquisition, (d) revenue projections, and (e) channel stuffing. Dkt. No. 153 at 8-27.

To establish falsity, a complaint must state with particularity each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and all facts on which such belief is formed. 15 U.S.C. § 78u–4(b)(1). Furthermore, a statement or omission "must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

#### a. Sales Employee Hiring

Plaintiffs argue defendants' statements that Forescout was "hiring like crazy," had "hundreds of sales reps," "we feel like are tracking very well against our sales productivity," "we're quite happy with . . . the percentage of our sales reps that have been hired in the more recent cohorts" and "[sales force] is tracking very well for us" were actionable misstatements. Dkt. No. 142 at ¶¶ 87, 108, 113. Plaintiffs assert falsity is established by confidential witnesses ("CW") 1, 7, 16, 17, and

7

18. Dkt. No. 153 at 13-15. Defendants argue the CW statements lack particularized facts indicating falsity. Dkt. No. 143 at 18-20.

The Court finds the SCAC fails to adequately plead facts demonstrating falsity of defendants' statements regarding sales employee hiring. Defendants' alleged misstatements did not indicate there would be no employee turnover, and statements such as Forescout "hiring like crazy" and "we've got hundreds of sales reps" are puffery. *See Scheller v. Nutanix*, 450 F.Supp.3d 1024, 1036 (N.D. Cal. Mar. 9, 2020) (finding statements "we are big on hiring" and "a lot of hiring [is going on]" are nonactionable puffery); *cf. In re Pivotal Sec. Lit.*, 19-cv-3589, 2020 WL 4193384 at *7 (N.D. Cal. July 21, 2020) ("General optimistic statements . . . [may be actionable if] statements 'address *specific* aspects of a company's operation that the speaker knows to be performing poorly'") (internal citations omitted) (emphasis added).

Although the CW statements indicate employees left Forescout during the Class Period, the CW statements also indicate that Forescout was hiring. *See* Dkt. No. 142 ¶¶ 40E ("According to CW16, Forescout. . . hired financial advisors in anticipation of the Merger in October 2019"); 88A ("Any new hiring the Company was doing was necessitated by the departure of experienced sales representatives necessary to continue driving the Company's revenue growth."). Therefore, the CW statements are not sufficient to plead falsity and the SCAC fails to plead facts demonstrating defendants assumed a duty to disclose the particular details of Forescout's layoffs and hiring. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc. et al.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (holding disclosures are not required to follow "a rule of completeness . . . [because] '[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.'") (internal citations omitted)

Accordingly, the SCAC fails to adequately plead falsity of defendants' statements regarding employee sales hiring.

### b. Deals and the Sales Pipeline

Plaintiffs argue defendants' statements that Forescout experienced "tech wins," the rate of closing deals "remain strong," and the sales pipeline continued to grow were materially false

1   because Forescout lost business and falsely listed deals in the sales pipeline as "committed." Dkt.
2   No. 153 at 16-19. Defendants argue the SCAC fails to plead particularized facts alleging
3   defendants' statements were false. Dkt. 143 at 15-19.

4   The Court finds the SCAC fails to adequately plead falsity of defendants' statements
5   regarding deals and the sales pipeline. Plaintiffs rely on CW statements to demonstrate falsity.
6   However, the CW statements consist of the CWs' speculation and fail to provide sufficient facts
7   indicating any of the "committed" deals were *falsely* reported as "committed." *See Id*. at ¶¶ 50
8   (CW18 estimates that a majority of Forescout's forecasts for "committed" deals were, in fact,
9   generated based on the "Prove" category where deals had only a 50% chance of closing and hence
10  could not constitute "tech wins."); 52A ("CW9 stated that CW9's immediate boss instructed CW9
11  to move a $1 million deal from the upside category to the committed category"); 52B ("CW10
12  described $1 million worth of deals that CW10 inherited as 'mostly BS.'"). Accordingly, the CW
13  statements fail to provide sufficient detail about alleged deals to allege falsity. *See Scheller*, 450
14  F.Supp.3d at 1036 ("[P]laintiffs fail to provide any details about these hiring freezes, such as how
15  many there were, how long they lasted, how often they were instituted, how many employees they
16  affected, or what locations they covered").

### c. Advent Acquisition

19  Plaintiffs argue that defendants' statements, made on April 23, 2020, April 29, 2020, and
20  May 11, 2020,[4] that Forescout expected the Advent Acquisition to close were materially false

---

[4] The SCAC alleges
> On April 23, 2020, at the extraordinary shareholders meeting, Daniel J. Milliken, the Company's general counsel, stated that: "We currently expect the merger to be consummated on or about May 18, 2020, after buyer's remarketing period ends."
> . . . .
> On April 29, 2020, [Forescout] filed a Form 10k/A stating . . . Forescout expects the proposed acquisition of Forescout by entities affiliated with Advent . . . to close in the second quarter of 2020
> . . . .
> In its May 11, 2020[] press release, [Forescout] stated "we look forward to completing our pending transaction with Advent"

SCAC ¶¶ 142; 149; 154.

9

1    because defendants did not disclose Advent sent a letter to defendants, on April 20, 2020, stating
2    Advent was "assess[ing] whether the conditions to closing provided in the Original merger would
3    be met." Dkt. No. 153 at 27-29. Defendants argue defendants' statements were opinions and
4    Advent's letter, sent during the COVID-19 pandemic, does not contradict defendants' statements.
5    Dkt. No. 155 at 13-15.

6    Liability may attach to an opinion statement if the statement "omits material facts about the issuer's inquiry or knowledge concerning a statement of opinion . . . [and] those facts conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v, Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015). "[P]leading falsity under an omissions theory would be 'no small task' for an investor. A plaintiff 'cannot just say that the issuer failed to reveal [the] basis' for the opinion at issue." *City of Dearborn Heights Act 345 Police & Fire Retire. System v. Align Tech. Inc., et al.,* 856 F.3d 605, 615 (9th Cir. 2017) (citing *Omnicare*, 575 U.S. at 194). Rather, a plaintiff must "call into question the issuer's basis for offering the opinion . . . [by] identify[ing] particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the insurer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 194.

The Court finds the SCAC failed to adequately plead defendants' Advent Acquisition statements are actionable misstatements. A reasonable person could interpret Advent's statement, "assess[ing] conditions to closing," as a review of conditions resulting in an actual close of the Advent Acquisition. *See Omnicare,* 575 U.S. at 176 ("A reasonable investor does not expect that every fact known to an issuer supports its opinion statement."); *Brody v. Transitional Hospitals Corp*, 280 F.3d 997, 1006 (9th Cir. 2002) ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not"). Moreover, defendants' statements that Forescout "expect[ed]" and "look[ed] forward" to closing the Advent Acquisition do not create an affirmative impression or promise that the Acquisition would close. *See In re Lifelock, Inc. Securities Litigation*, 690 Fed.Appx. 947, 951-52 (9th Cir. 2017) (affirming district court's holding that defendants' statement referring to "our compliance

10

with the FTC Order" as not misleading because the statement "does not affirmatively create an impression that [defendant] was actually in compliance with the FTC Order"); *Brody*, 280 F.3d at 1006 ("To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."). Accordingly, the SCAC fails to adequately plead defendants' statements about the Advent Acquisition are actionable.

#### d. Revenue Projections

Plaintiffs argue defendants' revenue projections for 2019 were actionable misstatements because defendants lacked a reasonable basis to provide guidance figures. Dkt. No. 153 at 9-10. Defendants argue the revenue projections are not actionable misstatements. Dkt. No. 155 at 12-13.

The Court finds the SCAC fails to adequately plead falsity of defendants' revenue projections. Here, plaintiffs rely on CW statements and an opinion from expert David Linthicum to argue defendants knew of a dramatic shift in the market from Forescout's local network devices towards "cloud" computing. However, as previously discussed, the SCAC and plaintiffs' CWs fail to specify which deals were artificially listed as "closed" or "committed" and when, during the class period, the deals were artificially closed. Plaintiffs' reliance on Linthicum's opinion to argue defendants' knowledge about the market is speculation about what defendants knew. Moreover, the SCAC fails to plead how Linthicum's opinion relates to defendants' use of Clari, Forescout's revenue operations platform used to predict revenue. Dkt. No. 142 ¶ 43.

#### e. Channel Stuffing

Finally, Plaintiffs argue defendants engaged in a channel stuffing scheme by falsely listing deals as closed. Dkt. No. 153 at 20-23. Plaintiffs further assert an anonymous Forescout whistleblower sent Advent a letter alleging Forescout involved a business partner in stuffing channels in connection with the Advent Acquisition. Dkt. No. 153 at 22.

The Court finds the SCAC fails to adequately plead defendants engaged in a channel stuffing scheme. Although Plaintiffs argue defendants admitted to channel stuffing during the Delaware

11

1  Litigation, a complete reading of the SCAC and attached Delaware Litigation Documents reveals
2  defendants did not admit to channel stuffing. Plaintiffs rely on a statement from Advent—not
3  defendant—alleging defendants "provided non-standard discounts" to allege channel stuffing. *See*
4  Dkt. No. 142 at 70.B. The SCAC's reference to Forescout's statement "[a]ny discounts Forescout
5  gave were consistent with the way Forescout has operated in the past" is not an admission to channel
6  stuffing. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Channel
7  stuffing is the oversupply of distributors in one quarter to artificially inflate sales, which will then
8  drop in the next quarter as the distributors no longer make orders, while they deplete their excess
9  supply."); *Yaron v. Instersect ENT, Inc.,* 19-cv-02647-JSW, 2020 WL 6750568 at *7 (N.D. Cal.
10 June 19, 2020) (finding channel stuffing claim where defendant "admitted that discounted bulk
11 sales took place over six quarters and that it resulted in inventory build-up worth 2% to 3% of
12 annual sales."). Overall, plaintiffs' vague accusations about Forescouts' practices, reference to
13 an anonymous whistleblower, and CW15 fail to establish defendants' alleged method of channel
14 stuffing. *See City of Dearborn Heights Act 345 Police & Fire Retire. System v. Align Tech. Inc.,*
15 *et al.*, 856 F.3d 605, 617-19 (9th Cir. 2017) (finding failure to plead channel stuffing claim where
16 there are "no facts establishing that defendants used the inflated 2010 revenues that resulted from
17 Cadent's channel stuffing to conduct its goodwill impairment testing at the end of 2011, and [failure
18 to plead] the exact assumptions that defendants used.").

19 Accordingly, the Court finds the SAC fails to adequately plead falsity. For this independent
20 reason, the Court **GRANTS** defendant Forescout's motion to dismiss.

21

22 **B.  Scienter**

23 Individual Defendants argue the SAC fails to plead a strong inference of scienter. Dkt. No.
24 145 at 4-23.

25 "To adequately plead scienter, the complaint must. . . 'state with particularity facts giving
26 rise to a strong inference that the defendant acted with the required state of mind.'" *Zucco Partners,*
27 *LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (citing 15 U.S.C. § 78u–4(b)(2)). "[T]he
28 inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent

12

1    and compelling, thus strong in light of other explanations." *Tellabs*, 551 U.S. at 324. The scienter
2    inquiry "is whether all of the facts alleged, taken collectively, give rise to a strong inference of
3    scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."
4    *Tellabs*, 551 U.S. at 322–23. In *Zucco*, the Ninth Circuit explained that the scienter inquiry requires
5    "a dual inquiry: first, we will determine whether any of the plaintiff's allegations, standing alone,
6    are sufficient to create a strong inference of scienter; second, if no individual allegations are
7    sufficient, we will conduct a 'holistic' review of the same allegations to determine whether the
8    insufficient allegations combine to create a strong inference of intentional conduct or deliberate
9    recklessness." *Zucco*, 552 F.3d at 992.

Plaintiffs argue scienter is adequately plead because (1) defendants' access to internal reports, (2) CW statements, (3) the Delaware Litigation, and (4) stock sales establish a strong inference of scienter.

For the reasons stated below, whether considered individually or holistically, plaintiffs' allegations do not plead a strong inference of scienter.

### 1.    Access to Internal Reports

Defendants argue the SCAC fails to identify information Individual Defendants learned throughout the course of their corporate positions at Forescout. Dkt. No. 145 at 16-17. Defendants allege Individual Defendants made no statements indicating scienter. *Id*. Plaintiffs allege defendants' access to internal reports, through Clari[5], establishes a strong inference of scienter. Dkt. No. 153 at 30.

The existence of internal reports or data may establish a strong inference of scienter if defendants had actual access to the reports or data. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230-31 (9th Cir. 2004). To adequately plead a strong inference of scienter based on access to internal reports or data, a complaint must assert "hard numbers or other

---

[5] Clari is a "software that provides information about the status of sales representatives, the sales pipeline, and forecasts with real-time accuracy to monitor deals and sales representatives during the Class Period." Dkt. No. 142 ¶ 7. Clari used artificial intelligence to find patterns, identify risks, and make forward-projections. *Id*. at ¶ 43.

specific information" within the internal reports or data. *Id.* at 1231. General assertions about the internal reports or data are insufficient to establish a strong inference of scienter. *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1036 (9th Cir. 2002).

The Court finds the SCAC fails to adequately plead Individual Defendants had access to internal reports or data. On August 7, 2019, defendant Harms admitted to "probing . . . deals [that] are taking shape across new logos and expansion." Dkt. No. 128-10 at 13. However, defendant Harms did not admit to accessing Clari or any specific deals. *See Nursing Home Pension Fund*, 380 F.3d at 1231 (finding defendant statement "I can now . . . look at, for example, our forecast on a global basis, our forecast around the world *up to the minute at any level of detail that you want to see . . . I can see every deal* out there that my reps around the world are making" as admission to access of internal reports and data) (emphasis added). Plaintiffs also rely on CW20's statement that CW20[6] inputted information on deals valued at $500,000 on Clari, prepared reports about the information, and presented reports to Aaron Martin, Senior Vice President of Revenue Operations, for Martin to then report to defendant DeCesare. Dkt. No. 153 at 31. However, the SCAC fails to plead what, if any, information Martin conveyed to defendant DeCesare. *See City of Dearborn*, 856 F.3d at 620 (9th Cir. 2017) (finding complaint fails to plead defendants had actual access because "Plaintiff does not allege [defendants] personally accessed the data room, or that the confidential informants *personally disclosed* Cadent's channel stuffing to [defendants].") (emphasis added). The SCAC fails to plead how CW20, a senior deals manager, would otherwise have reliable information regarding Individual Defendants' actual access to Clari or Forescout's internal reports. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996-97 (9th Cir. 2009) ("The lack of detail in [CWs'] allegations" and fact CWs were "simply not positioned to know the information alleged" do not support allegations of scienter.").

The SCAC also fails to plead specific allegations regarding Forescout's internal reports or data. The SCAC pleads CW20 inputted "granular data . . . about the status of deals worth more than 500,000," Dkt. No. 142 at ¶ 45(I), without specifying what the data actually entailed. *Compare*

---

[6] CW20 was a senior deal desk manager at Forescout from August 2018 to April 2020. Dkt. No. 142 at ¶ 45H.

14

*Nursing Home Pension Fund*, 380 F.3d at 1231 (finding sufficient allegations where former vice president of finance stated "defendants would have known at least six weeks prior to the end of the third quarter that the applications sales growth would miss projections by at least 50%" as sufficient to indicate scienter) *with Lipton*, 284 F.3d at 1036 (finding insufficient allegations where complaint referred to "the existence of IMS data and [made] a general assertion about what they think the data showed.").

### 2. CW statements

Plaintiffs argue CW statements support a strong inference of scienter for defendants' statements about (a) the deals and sales pipeline, (b) sales employee hiring, and (c) channel stuffing. Dkt. No. 153 at 33-38.  Defendants argue the CW statements are unreliable hearsay and speculation. Dkt. No. 145 at 5-17.

The Court may rely on CW reports if (1) the CW is described with sufficient particularity to establish reliability and personal knowledge of the information alleged; and (2) the statements themselves are indicative of scienter. *Zucco,* 552 F.3d at 995.  "Naming sources is unnecessary so long as the sources are described 'with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged' and the complaint contains 'adequate corroborating details.'" *In re Daou Systems, Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005).

#### a. Sales and Deals Pipeline

Plaintiffs argue CW statements confirm defendant DeCesare and Forescout's Chief Revenue Officer, Redman, instigated a pressure campaign to falsely identify deals as "committed" within the sales and deals pipeline. Dkt. No. 153 at 34. However, the SCAC fails to plead how the CWs, as named account managers and administrative assistants, would have either known that the alleged pressure campaign was caused by Individual Defendants or that Individual Defendants knew about the alleged pressure campaign. *See Zucco*, 552 F.3d at 998 (finding CW statements that executives "had to have known what was going on" and certain managers "knew" are generalized claims of

15

corporate knowledge and do not indicate scienter); *Shenwick v. Twitter*, 282 F.Supp.3d 1115, 1148 (N.D. Cal. 2017) (finding CW statements do not establish scienter because "the allegations in the Complaint do not permit the Court to conclude that any CW had personal knowledge of the individual defendants' state of mind.")

### b. Sales Employee Hiring

Plaintiffs rely on CW18 to establish a strong inference of scienter regarding Individual Defendants' statements about sales employee hiring. CW18, Forescout's Global Talent and Enablement Manager from June 2018 to December 2020, was reported to have "heard DeCesare state that Forescout reduced its sales force in 2019 and additional cuts needed [were] needed . . . because Company failed to grow revenues in 2019." Dkt. No. 142 at 40(G). However, CW18's statement does not indicate when or to whom this statement was allegedly made. *See* Zucco, 552 F.3d at 999 (confidential witness report of statement made directly to CW by defendant can be "indicative of scienter"); *Shenwick v. Twitter*, 282 F.Supp.3d 1115, 1148 (N.D. Cal. 2017) (finding CW statements do not establish scienter because "the allegations in the Complaint do not permit the Court to conclude that any CW had personal knowledge of the individual defendants' state of mind."); *In re Cadence Design Systems, Inc. Securities Litigation*, 654 F.Supp.2d 1037, 1047-48 (N.D. Cal. 2009) (finding CW statements that "do not provide any concrete allegations that Individual Defendants actually knew about the accounting errors, or that they were familiar with the key details of the 1Q or 2Q agreements, such that they could have identified them as subscription contracts" as failing to establish scienter.").

### c. Channel Stuffing

Plaintiffs argue CW8 and CW18's descriptions of defendant as a micromanager establish a strong inference of scienter regarding plaintiff's channel stuffing claims. Dkt. No. 153 at 41. The Court finds these statements to be vague and not indicative of scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996-97 (9th Cir. 2009) ("The lack of detail in [CWs'] allegations" and fact CWs were "simply not positioned to know the information alleged" do not support

16

allegations of scienter.").

### 3. Advent Acquisition and Resulting Delaware Litigation

Plaintiffs argue defendants' filings in the Delaware Litigation establish a strong inference of scienter. Dkt. No. 153 at 38-41. Plaintiffs argue defendants gave a sales pipeline report to Advent, in anticipation of the Advent Acquisition, which shows defendants expected sales to decrease before defendants made the following statement:

> [We will] [e]xpand our presence in the market by leveraging our ecosystem of channel partners. We will continue to broaden and invest in our value added and system integrator channel partner relationships to increase distribution of our products. We are focused on educating existing partners and investing in sales enablement to expand our market reach through our channel partner network, particularly into midmarket enterprises.

Dkt. Nos. 142 at ¶ 128; 153 at 38-39.

Notably, however, the SCAC fails to plead the actual language of the sales pipeline report. Plaintiffs' and the SCAC's citation to Forescout's Answer in the Delaware Litigation does not refer to defendants' state or mind. *See* 142-2 (Exhibit 3) at 188 (bates stamp). ("Forescout denies the characterization . . . except admits that *Advent* purport to characterize indications derived from Foresout's sales pipeline e predictor tool").

Plaintiffs also argue on May 8, 2019, Advent told defendant DeCesare that Advent "could not make the numbers work" and, on May 14, 2019, defendants sent Advent a "made-for-litigation" email. Dkt. No. 153 at 39-40. However, the SCAC fails to indicate the actual contents of the email and the Court is unable to discern from the SCAC's attached and redacted exhibits any statements indicating Individual Defendants' states of mind. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996-97 (9th Cir. 2009) ("The lack of detail in [CWs'] allegations" and fact CWs were "simply not positioned to know the information alleged" do not support allegations of scienter.").

### 4. Stock Sales

Plaintiffs argue Individual Defendant's stock sales were suspicious. Dkt. No. 153 at 43-44. However, as previously stated in the Court's Order Granting Defendants' Motion to Dismiss, the

17

stock sales were made pursuant to Rule 10b 5-1 trading plans and do not indicate a strong inference of scienter. *See Metzler Inv. GMBH v. Corinthian Colleges*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) ("Sales according to pre-determined plans may rebut [ ] an inference of scienter.'") (internal citations omitted).

Accordingly, when considering plaintiffs' scienter factors individually and holistically, the Court finds that the SAC fails to adequately plead a strong inference of scienter. The SCAC fails to adequately plead defendants had actual knowledge of falsity in their alleged misstatements at the time when the alleged misstatements were made during the class period. For this additional reason, the Court **GRANTS** Individual Defendants' second motion to dismiss.

## II. Section 20a of the Exchange Act

Individual Defendants move to dismiss Plaintiffs' claims under Section 20(a) of the Securities Exchange Act. Dkt. Nos. 145 at 25.

The Court finds Plaintiffs failed to adequately plead their Section 20A claims. *See In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1488 (N.D. Cal. 1992), *aff'd.*, 11 F.3d 865 (9th Cir. 1993) (requiring plaintiffs to adequately plead independent violation of securities law to establish Section 20A claims). For this additional reason, the Court **GRANTS** Individual Defendants' motion to dismiss

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** defendants' separate motions to dismiss. The Court **DENIES** plaintiffs leave to amend and dismisses the second consolidated amended complaint **WITH PREJUDICE**. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir.2008) ("The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."); *see e.g., Zucco*, 552 F.3d at 1007 (finding plaintiff's failure to correct deficiencies in second amended complaint as 'a strong

indication that the plaintiffs have no additional facts to plead.'") (internal citation omitted).

**IT IS SO ORDERED**.

Dated: October 6, 2021

_____
SUSAN ILLSTON
United States District Judge