**ABRAHAM, FRUCHTER**
    **& TWERSKY, LLP**
Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
pbishop@aftlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for Plaintiffs*
*and the Proposed Class*

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>                v.<br><br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, and CHRISTOPHER HARMS,<br><br>        Defendants. | CASE NO.: 3:20-cv-00076-SI<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>Hearing Date: February 2, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Susan Illston<br>Court Room: 1 – 17th Floor |

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
3:20-cv-00076-SI

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on February 2, 2024, at 10:00 a.m., or as thereafter as the matter may be heard before the Honorable Susan Illston, in Courtroom 1, Seventeenth Floor, of the United States District Court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiffs Glazer Capital Management, L.P., Glazer Enhanced Fund, L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd., Highmark Limited, in respect of its Segregated Account Highmark Multi-Strategy 2 (collectively, the "Glazer Funds"), and Meitav Mutual Funds Ltd. (f/k/a Meitav Tachlit Mutual Funds Ltd.) ("Meitav" and, with the Glazer Funds, "Plaintiffs") respectfully move, pursuant to Fed. R. Civ. P. 23, for an Order:

1. Certifying a class consisting of all persons and entities who purchased or otherwise acquired Forescout Technologies, Inc.'s ("Forescout") common stock between May 9, 2019 and May 15, 2020, both dates inclusive;

2. Appointing Plaintiffs as Class Representatives;

3. Appointing Plaintiffs' choice of counsel, Pomerantz LLP ("Pomerantz") and Abraham, Fruchter & Twersky LLP ("AFT") as Class Counsel.

Filed herewith in support of this motion are the supporting memorandum of law and the Declaration of Omar Jafri, Esq., with accompanying exhibits.  Submitted herewith is a proposed order granting certification.

Dated: October 27, 2023.

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*

Omar Jafri (admitted *pro hac vice*)
Patrick Dahlstrom (admitted *pro hac vice*)
Brian P. O'Connell (SBN 314318)
Genc Arifi (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505

Chicago, Illinois 60603
Tel: (312) 377-1181
ojafri@pomlaw.com
pdahlstrom@pomlaw.com
boconnell@pomlaw.com
garifi@pomlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY  10016
(212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com


        *-and-*

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

   */s/ Jeffrey S. Abraham*

Jeffrey S. Abraham (admitted *pro hac vice*)
Michael Jason Klein (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
JAbraham@aftlaw.com
mklein@aftlaw.com

Patrice L. Bishop
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
(310) 279-5125
pbishop@aftlaw.com


***Attorneys for Co-Lead Plaintiffs***

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION                                    -ii-
3:20-cv-00076-SI

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... iii

TABLE OF AUTHORITIES .................................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.     ISSUES TO BE DECIDED ......................................................................................1

II.    PRELIMINARY STATEMENT .............................................................................1

III.   PROCEDURAL HISTORY.....................................................................................2

IV.   FACTUAL SUMMARY .........................................................................................3

V.    ARGUMENT..........................................................................................................6

    A.    Class Certification is Appropriate Under Rule 23 ......................................6

    B.    The Proposed Class Meets the Requirements of Rule 23(a)......................6

        1.    Numerosity........................................................................................6

        2.    Commonality.....................................................................................7

        3.    Typicality ..........................................................................................8

        4.    Adequacy ..........................................................................................9

    C.    The Proposed Class Satisfies Rule 23(b)(3) ...........................................10

        1.    Common Questions of Law and Fact Predominate over Individual Questions........................................................................................10

        2.    Reliance Is Presumed Because Defendants Committed a Fraud-on-the Market-..........................................................................................11

            a.    Forescout's NASDAQ Listing Is Strong Evidence Of Market Efficiency .............................................................................. 14

            b.    Each of the Five *Cammer* Factors Confirms Market Efficiency .............................................................................. 15

                Factor One — Weekly Trading Volume..................................... 15

                Factor Two — Analyst Coverage .............................................. 15

                Factor Three — Market Makers and Arbitrage Activity ............. 16

Factor Four — S-3 Eligibility ...................................................... 17

Factor Five — Cause and Effect Relationship of Unexpected
Material News and Stock Price ......................................... 17

c.      Other Factors of Market Efficiency ............................................. 18

3.      Reliance Is Presumed Because of the *Affiliated Ute* Presumption of Class-
Wide Reliance ..................................................................................18

4.      Mechanical Damage Tabulations For Individual Class Members Will Not
Defeat Predominance ..................................................................................19

5.      A Class Action Is Superior to Other Methods for Resolving This
Controversy ..................................................................................20

VI.      PROPOSED CLASS COUNSEL SHOULD BE APPOINTED.......................................21

VII.      CONCLUSION..................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ............................................................................................. 18, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ...................................................................................................13

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................................. 2, 11, 12, 14

*Basile v. Valeant Pharm. Int'l, Inc.*,
No. 14-2004, 2017 U.S. Dist. LEXIS 37400 (C.D. Cal. Mar. 15, 2017).......................... 18

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999) ............................................................... 11, 12, 17

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........................................................... 2, 7, 8, 10, 19

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ................................................................ *passim*

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003).................................................................... 16

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
No. 18-cv-04844-BLF, 2022 U.S. Dist. LEXIS 83836 (N.D. Cal. May 9, 2022) ........ 7, 10

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)................................................................................ 19, 20

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ........................................................................ 3, 19

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
141 S. Ct. 1951 (2021).................................................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)............................................................................. 11, 12, 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................... 7, 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ............................................................................. 8

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) ............................................................................. 6

*Hatamian v. Advanced Micro Devices, Inc.*,
  No. 14-cv-00226 YGR, 2016 U.S. Dist. LEXIS 34150 (N.D. Cal. Mar. 16, 2016) ....... 8, 9

*Hayes v. MagnaChip Semiconductor Corp.*,
  No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 177787 (N.D. Cal. Dec. 22, 2016) ........... 7

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ................................................................................... 16

*In re Alco Intern. Group, Inc., Sec. Litig.*,
  158 F.R.D. 152 (S.D. Cal. 1994) ................................................................................... 10

*In re Cooper Companies Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ................................................................................. 6, 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) ................................................................................... 20

*In re Diamond Foods, Inc., Sec. Litig.*,
  295 F.R.D. 240 (N.D. Cal. 2013) ................................................................................... 19

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008) .................................................................................... 18

*In re DVI, Inc. Sec. Litig.*,
  639 F.3d 623 (3d Cir. 2011) .......................................................................................... 15

*In re Emulex Corp. Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) .................................................................................. 10

*In re Groupon, Inc. Sec. Litig.*,
  No. 1:12-cv-02450, 2014 U.S. Dist. LEXIS 137382 (N.D. Ill. Sept. 23, 2014) ............... 19

*In re HealthSouth Corp. Sec. Litig.*,
  257 F.R.D. 260 (N.D. Ala. 2009) .................................................................................. 20

*In re Heckmann Corp. Sec. Litig.*,
  No. 10-378, 2013 U.S. Dist. LEXIS 79345 (D. Del. June 6, 2013) ........................... 19, 20

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009) .................................................................................. 21

*In re Montage Tech. Grp. Ltd.*,
  No. 14-00722, 2016 U.S. Dist. LEXIS 53734 (N.D. Cal. Apr. 21, 2016) ................. 18, 19

*In re Nature's Sunshine Product's Inc. Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) ..................................................................................... 16

*In re Online DVD Rental Antitrust Litig.*,
  No. M 09-2029 PJH, 2010 U.S. Dist. LEXIS 138558 (N.D. Cal. Dec. 23, 2010) .......... 6, 7

*In re THQ, Inc. Sec. Litig.*,
  No. 00-1783, 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ............................ 6

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
3:20-cv-00076-SI

-vi-

*In re Verisign, Inc. Sec. Litig.*,
No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ................ 8

*Krogman v. Steritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ................................................................................ 18

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ....................................................................................... 9

*Lumen v. Anderson*,
280 F.R.D. 451 (W.D. Mo. 2012) ......................................................................... 14, 15

*Malriat v. QuantumScape Corp.*,
No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497 (N.D. Cal. Dec. 19, 2022) .... 13

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
No. C 19-04744 WHA, 2021 U.S. Dist. LEXIS 12458 (N.D. Cal. Jan. 21, 2021) .......... 18

*Purple Mt. Tr. v. Wells Fargo & Co.*,
No. 18-cv-03948-JD, 2022 U.S. Dist. LEXIS 145786 (N.D. Cal. Aug. 15, 2022) .......... 12

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ................................................................................. 19, 20

*Smilovits v. First Solar, Inc.*,
295 F.R.D. 423 (D. Ariz. 2013) .................................................................................. 14

*The Arbitrage Fund et al. v. Forescout Technologies, Inc. et al.*,
Docket No. 3:20-cv-03819-SI (N.D. Cal. Jun 10, 2020) ................................................. 2

*Todd v. Starr Surgical Co.*,
CV-14-05263-MWF-RZ, 2017 U.S. Dist. LEXIS 1919 (C.D. Cal. Jan. 5, 2017) ............ 15

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) ...................................................................................... 18

*Vaquero v. Ashley Furniture Indus.*,
824 F.3d 1150 (9th Cir. 2016) ..................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..................................................................................................... 7

*Zeisel v. Diamond Foods, Inc.*,
No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) ................ 6

**Statutes**

15 U.S.C. § 78u–4(e) ........................................................................................................ 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 2, 6, 7

Fed. R. Civ. P. 23(a) ................................................................................................................2, 6, 21

Fed. R. Civ. P. 23(a)(2)...................................................................................................................7

Fed. R. Civ. P. 23(a)(4).............................................................................................................9, 10

Fed. R. Civ. P. 23(b) ......................................................................................................................6

Fed. R. Civ. P. 23(b)(3).................................................................................................2, 10, 13, 20

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................................................21

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    ISSUES TO BE DECIDED**

A.    Whether this action ("Action") should be certified as a class action on behalf of those persons or entities (the "Class") that purchased or otherwise acquired the publicly traded common stock of Forescout from May 9, 2019 to May 15, 2020, both dates inclusive (the "Class Period").[1]

B.    Whether the Glazer Funds and Meitav should be appointed as Class Representatives.

C.    Whether Pomerantz and AFT should be appointed as Class Counsel.

**II.    PRELIMINARY STATEMENT**

Plaintiffs move to certify a Class for the claims against Defendants on behalf of those persons or entities that purchased or otherwise acquired the publicly traded common stock of Forescout during the Class Period. Additionally, Plaintiffs request that the Court appoint the Glazer Funds and Meitav as Class Representatives and appoint Pomerantz and AFT as Class Counsel.

The Class's claims against Forescout, Michael DeCesare ("DeCesare") and Christopher Harms (together with DeCesare, the "Individual Defendants," and collectively with Forescout, the "Defendants"), are ideally suited for class treatment. Each claim focuses almost entirely, if not entirely, on issues common to the Class, including the veracity and fulsomeness of the underlying misrepresentations, whether the price of Forescout's securities during the Class Period were artificially inflated because of the Defendants' misrepresentations and omissions, to what extent the members of the Class have sustained damages, the proper measure of damages, and whether the Individual Defendants controlled Forescout.

---

[1] Excluded from the Class are Defendants, officers and directors of Forescout, any entity in which the Defendants have or had a controlling interest; and affiliates, family members, legal representatives, heirs, successors or assigns of any of the above.

Certification of the Class's claims will permit the efficient and effective prosecution of this Action on behalf of Plaintiffs and thousands of other shareholders. The use of class action procedures to adjudicate claims under the federal securities laws has been upheld by the "overwhelming weight" of authority throughout the federal bar. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). Courts liberally construe the requirements of Federal Rule of Civil Procedure 23 in favor of class certification of securities fraud cases in order to protect investors. As explained below, this Action satisfies each requirement of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## III.    PROCEDURAL HISTORY

On January 2, 2020, Christopher Sayce, individually and on behalf of all others similarly situated, filed this securities fraud action against Defendants, alleging violations of the federal securities laws between February 7, 2019, and October 9, 2019. Dkt. No. 1. On March 23, 2020, the Court appointed Meitav as Lead Plaintiff and Pomerantz as Lead Counsel. Dkt. No. 27.

On May 22, 2020, Meitav filed an amended complaint extending the class period to May 15, 2020, when Advent International Corporation ("Advent") notified the Company that it would not proceed with an acquisition as scheduled, faulting Forescout's poor performance that was worse than its competitors despite the onset of the Covid-19 pandemic. Dkt. No. 31. On June 10, 2020, another plaintiff filed an action against Defendants in this Court. *See The Arbitrage Fund et al. v. Forescout Technologies, Inc. et al.*, Docket No. 3:20-cv-03819-SI (N.D. Cal. Jun 10, 2020). After contested motion practice, the Court consolidated the two actions on July 22, 2020, finding that both arose from the same common nucleus of facts, but opened the lead plaintiff proceedings in light of the merger with Advent that took place after this Action was initially filed. Dkt. No. 55. Following dueling motions seeking appointment of lead plaintiff to control the litigation, on November 19, 2020, the Court appointed Meitav and the Glazer Funds as Co-Lead Plaintiffs and Pomerantz and AFT as Co-Lead Counsel. Dkt. No. 115.

On December 18, 2020, Plaintiffs filed a Consolidated Amended Complaint, Dkt. No. 116, which the Court dismissed with leave to amend, and on May 10, 2021, Plaintiffs subsequently filed

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:20-cv-00076-SI

-2-

a Second Amended Complaint (hereafter the "SAC").  Dkt. No. 142.  On October 6 and 12, 2021, respectively, the Court dismissed the SAC and entered judgment.  Dkt. Nos. 158, 162.

Plaintiffs appealed, and on March 16, 2023, the SAC's dismissal was affirmed in part, reversed in part, and remanded for further proceedings.  *See Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 781-82 (9th Cir. 2023).  The Ninth Circuit reinstated Plaintiffs' claims related to "(1) the statements made on May 9, 2019, August 7, 2019, August 12, 2019, October 10, 2019, and November 6, 2019, asserting that (i) the disappointing second quarter performance was due to 'slipped' deals, (ii) the 'slipped' deals were 'tech wins,' (iii) the sales pipeline was large, healthy, and continuing to grow, and (iv) the third quarter revenue miss was due to delays in closing caused by economic conditions in the EMEA area; and (2) the May 11, 2020, press release stating that Forescout 'look[ed] forward to completing [the] pending transaction with Advent.'"  *Id.*  The Class Period for the reinstated claims runs from May 9, 2019 through May 15, 2020.

The case is now in discovery.  On June 30, 2023, the parties filed their initial case management statement.  Dkt. No. 180.  On July 7, 2023, the Court held the Initial Case Management Conference.  The Court deferred entering a full discovery schedule, setting a briefing schedule on class certification, with Plaintiffs' opening brief due on October 27, 2023; Defendants' opposition due on December 22, 2023, and Plaintiffs' reply due on January 19, 2024.  Dkt. No. 181.

**IV.    FACTUAL SUMMARY**

Forescout is a cybersecurity company focusing on securing large computer networks.  ¶¶1, 27-31.[2]  The Company went public in 2017 and, after experiencing rapid double-digit growth in revenue, began to fall behind its competitors that provided superior cybersecurity solutions designed for the emerging cloud computing marketplace.  ¶¶31-35.  This industry shift coincided with a slowdown in Forescout's sales in the beginning of 2019 as its sales personnel began to miss

---

[2] The factual summary contained in this Motion discusses only those claims and issues pled in the SAC that were reinstated by the Ninth Circuit's opinion on appeal.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:20-cv-00076-SI

-3-

their quotas because of competitive pressure and a lack of interest in Forescout's products and services. ¶¶36.A-E.

Before the Class Period commenced, a third-party consultant hired by Defendants also warned that a majority of Forescout's forecasts for "committed" deals had only a 50% chance of closing. ¶¶49-51. Nevertheless, in February 2019, Defendants released extraordinarily bullish guidance for 2019, with year-over-year growth of 24% at the midpoint. ¶80. Soon afterwards, however, Defendants announced that Forescout's performance in the second quarter of 2019 would be disappointing. ¶89. To prepare the market for a soft landing, Defendants repeatedly assured investors that the Company would meet its revenue target for 2019 because it had a large, healthy pipeline, and deals expected to close in the second quarter had merely slipped into later quarters and because Forescout had already been awarded the business. ¶¶97-108. In an attempt to reassure investors, Defendants claimed further that "it's not common for a customer to award a technology win to a vendor and then not buy their product for an extended period of time. So that gives us a high degree of confidence." ¶105.

Sales personnel at the Company, however, paint a very different internal picture. Several of them, who serve as Confidential Witnesses in this Action, described a persistent, companywide pressure campaign to identify illusory deals as "committed," ¶¶52.A-G, significant customer losses in certain regions during the Class Period, ¶99.C, a material amount of deals in the pipeline miscategorized as "committed," ¶99.D, deals that lingered in the forecast file with no prospect of closing, and deals forecasted to close within weeks of a quarter that inevitably slipped into the next quarter. ¶99.E. The SAC also pleads a strong inference to suggest that Defendants were aware that the overall sales pipeline was unreliable during the Class Period because they pressured sales executives to fudge the numbers, ¶99.E, paid attention to details, received granular internal reports, and monitored sales data in real time. ¶¶43-45.

In August 2019, Defendants maintained that the rate of closing deals remained very strong and very healthy, and the Company remained very comfortable about its sales pipeline and how deals "were taking shape." ¶¶110-116. However, on October 10, 2019, Defendants again

announced that revenue for the third quarter of 2019 would fall well short of earlier guidance. ¶117. This caused Forescout's stock price to plunge by over 37% on October 10, 2019 as the market began to understand that Defendants' earlier representations about "slipped" deals were false. ¶118. In the next few months, instead of coming clean with investors, Defendants repeatedly shifted blame from the U.S. market to alleged approval cycles and deteriorating macroeconomic conditions abroad where Forescout conducted a small amount of its business. ¶¶117-120. An additional partial disclosure revealed the falsity of these statements as Forescout's financial performance continued to deteriorate, and the Company failed to meet its own lackluster revenue target for the first quarter of 2020. ¶154.

As Forescout's business began to decline in 2019, the Company put itself up for sale no later than October 2019. ¶53. Key to Defendants' effort to obtain a premium price was portraying the Company as poised for revenue growth, and Defendants prepared forecasts for potential acquirers anticipating even higher revenue growth in 2020. ¶¶54-57. A shortfall in realized revenue became worse, however, in the first quarter of 2020 just after Advent agreed to enter into a merger agreement pursuant to which it would purchase Forescout for $33.00 per share. ¶¶58-60. Advent became alarmed at Forescout's declining financial performance in the spring of 2020, and began to review the Company's business and prospects to assess whether the conditions necessary to close the merger could be met. ¶¶62-65. On May 8, 2020, a representative of Advent called Forescout's CEO, DeCesare, to reiterate that Advent could not "make the numbers work" for the planned acquisition and expressed concerns regarding whether the conditions for closing could be met. ¶68. Despite knowing this nonpublic, adverse information, on May 11, 2020, DeCesare told investors that "we look forward to completing our pending transaction with Advent." ¶154.

On May 18, 2020, Forescout disclosed that Advent refused to proceed with the planned acquisition. ¶70. Upon this disclosure, Forescout's stock price again plunged over the next three trading days. ¶71. On the next day after this disclosure, Forescout sued Advent in the Delaware Chancery Court to enforce the merger agreement. ¶73. In this Delaware litigation, Forescout itself

described Advent's May 8, 2020 telephone call with DeCesare as a signal of Advent's intention "to renege on the [m]erger [a]greement." ¶155.

## V.    ARGUMENT

### A.    Class Certification is Appropriate Under Rule 23

The SAC details material misrepresentations and omissions that damaged thousands of similarly situated shareholders. "The law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re THQ, Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *8-9 (C.D. Cal. Mar. 22, 2002) (citations omitted). Courts recognize that any doubt as to the propriety of certification should be resolved in favor of certifying the class. *See Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608, at *19 (N.D. Cal. June 7, 2011).

### B.    The Proposed Class Meets the Requirements of Rule 23(a)

For a class to be certified, Plaintiffs must satisfy the prerequisites of Rule 23(a) and one requirement of Rule 23(b). Under Rule 23(a), a plaintiff must establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 633 (C.D. Cal. 2009); *see also In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 U.S. Dist. LEXIS 138558, at *39 (N.D. Cal. Dec. 23, 2010). All elements under Rule 23(a) are satisfied with respect to the proposed Class.

#### 1.    Numerosity

The numerosity requirement is met where the class is "so numerous that joinder of all members is impracticable." *In re Online DVD Rental Antitrust Litig.*, 2010 U.S. Dist. LEXIS 138558, at *42 (internal quotations omitted). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "No exact numerical cut-off is required;

rather, the specific facts of each case must be considered." *Cooper*, 254 F.R.D. at 634. In securities cases, numerosity is presumed when millions of shares are traded during the proposed class period. *Id.* Throughout the Class Period, Forescout's stock traded regularly and actively, demonstrating a large Class. During the Class Period, the number of Forescout shares outstanding ranged from approximately 45.1 million to 49.3 million shares. *See* Declaration of Omar Jafri ("Jafri Decl."), Ex. A, Expert Report of Zachary Nye (hereafter the "Nye Report"), ¶24. Average weekly turnover during the Class Period was approximately 12.1%, over six times the 2% deemed a strong indicator of market efficiency by *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989). Nye Report, ¶24; *compare, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 177787, at *17-18 (N.D. Cal. Dec. 22, 2016) (turnover of 4.2% deemed sufficient); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-04844-BLF, 2022 U.S. Dist. LEXIS 83836, at *17 (N.D. Cal. May 9, 2022) (certifying class and finding that turnover of 1.53 percent of outstanding shares was an indicator of market efficiency).

Accordingly, the evidence here demonstrates that the numerosity requirement is satisfied in support of class certification.

### 2. Commonality

A proposed class meets the commonality requirement if there are "questions of law or fact common to the class." *In re Online DVD Rental Antitrust Litig*., 2010 U.S. Dist. LEXIS 138558, at *43; Fed. R. Civ. P. 23(a)(2). Not all questions of fact and law need to be common to satisfy Rule 23(a)(2). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). This factor is "construed permissively," and "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. at 1019; *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (commonality can be met when claims depend on a contention capable of class-wide resolution).

The SAC describes a "common course of conduct," the hallmark for certifying a securities action for class treatment under Rule 23. The Ninth Circuit explained in *Blackie* that when a company's statements are repeatedly misleading for the same reason "courts have taken the

common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit." 524 F.2d at 902; *see also Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226 YGR, 2016 U.S. Dist. LEXIS 34150, at *13 (N.D. Cal. Mar. 16, 2016).

Defendants' misstatements and omissions were made to the Class as a whole, and injured market participants in the same way. Thus, here the proposed Class meets the commonality requirement in support of class certification. *See, e.g.*, *Blackie*, 524 F.2d at 902-05; *Advanced Micro Devices, Inc.*, 2016 U.S. Dist. LEXIS 34150, at *13. Indeed, common questions of fact and law in this Action include: (i) whether Forescout and the Individual Defendants made materially false and misleading statements and omitted to disclose material information that rendered their statements misleading; (ii) whether the underlying misrepresentations and omissions were made with scienter; (iii) whether the Individual Defendants are control persons of Forescout for purposes of the Exchange Act; (iv) whether the price of Forescout's securities during the Class Period was artificially inflated because of the Defendants' misconduct; (v) to what extent the members of the Class have sustained damages; and (vi) the proper measure of damages.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Advanced Micro Devices, Inc.*, 2016 U.S. Dist. LEXIS 34150, at *13. "Typicality refers to the nature of the *claim or defense* of the class representative, and *not to the specific facts* from which it arose or the relief sought." *In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *20 (N.D. Cal. Jan. 13, 2005) (emphasis in the original); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In determining whether this requirement is met, courts look to "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'" *In re Verisign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at *20 (*quoting Hanon*, 976 F.2d at 508).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                -8-
3:20-cv-00076-SI

Plaintiffs easily satisfy the typicality requirement. Plaintiffs purchased Forescout shares during the same period of time as the putative class members did so. In addition, Plaintiffs' claims derive from the same legal theories and the same misrepresentations and omissions as the claims of the Class as a whole. Accordingly, Plaintiffs' claims here are typical of those of the Class, which support class certification. *See Advanced Micro Devices, Inc.*, 2016 U.S. Dist. LEXIS 34150, at \*13-14.

### 4. Adequacy

The adequacy element of Rule 23(a)(4) is intended to ensure that class representatives will "fairly and adequately protect the interests of the class." *Advanced Micro Devices, Inc.*, 2016 U.S. Dist. LEXIS 34150, at \*14; Fed. R. Civ. P. 23(a)(4). Two criteria determine adequacy. "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (citations omitted). Plaintiffs meet these requirements. Plaintiffs have engaged qualified, experienced and capable attorneys. Proposed Class Counsel are highly experienced in complex class litigation, especially securities fraud actions, and have the ability and willingness to prosecute this Action vigorously. *See* Firm Resumes, Dkt. Nos. 66-5, 86-4.

Moreover, Plaintiffs are well suited to represent the Class. Plaintiffs' interests are the same as those of the absent Class members, and there are no conflicts between them and the Class. Each Plaintiff has been actively involved in this litigation and is willing to serve as a representative party on behalf of the Class, and understands its duties as a class representative. Dkt. Nos. 66-3, 86-3 And, importantly, Plaintiffs are willing and able to prosecute this Action on behalf of the Class to a successful conclusion. *Id*.

Far from showing any conflict of interest, the record in this case demonstrates that Plaintiffs' interests are aligned with those of the Class. Plaintiffs and all Class members have suffered losses from purchasing Forescout securities at artificially inflated prices. They have been injured by the identical wrongful underlying misrepresentations and omissions, and the

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION                    -9-
3:20-cv-00076-SI

misconduct of the Individual Defendants as the control persons of Forescout. It is in Plaintiffs' interest to vigorously prosecute this Action on behalf of the Class. Accordingly, Plaintiffs "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). In sum, the adequacy requirement has been more than satisfied here, which supports class certification.

### C.    The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to the class 'predominate' over questions affecting the individual members and, on balance, a class action is superior to other methods available for adjudicating the controversy." *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002); *see also Oracle Corp.*, 2022 U.S. Dist. LEXIS 83836, at \*15. Plaintiffs meet both requirements.

### 1.    Common Questions of Law and Fact Predominate over Individual Questions

Where a complaint alleges a "common course of conduct" consisting of misrepresentations, omissions and other wrongful acts that affect all members of the Class in the same manner, common questions predominate. *Blackie*, 524 F.2d at 902-05; *In re Alco Intern. Group, Inc., Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994). In assessing whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. *Blackie*, 524 F.2d at 902; *see also Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.").

As discussed above, there are many common questions of law and fact in this Action that predominate over individual questions because Defendants' misconduct affected all Class members in the same manner and artificially inflated the price of Forescout stock to the same extent. Once these questions are resolved, all that remains is the mechanical computation of damages for each Class member, which will be the lesser of the magnitude of the several price

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION                    -10-
3:20-cv-00076-SI

declines attributable to Defendants' fraud, and the maximum damages permissible under the PSLRA.  *See* 15 U.S.C. § 78u–4(e).

In contrast, no significant individual issues, let alone individual issues, predominate over the substantial common issues to be litigated.  Plaintiffs' claims arising under the federal securities laws do not require proof of individual reliance.  Plaintiffs are entitled to the fraud-on-the-market presumption of reliance because Forescout's shares traded in an efficient market during the Class Period.  Nye Report, ¶¶6, 11-57, 64.  This presumption is based on the fact that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Basic*, 485 U.S. at 247.  Thus, Defendants' misleading statements and material omissions defrauded purchasers of securities whether or not purchasers directly relied on Defendants' misstatements and omissions.  *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999).

### 2. Reliance Is Presumed Because Defendants Committed a Fraud-on-the-Market

The Supreme Court first recognized the fraud-on-the-market presumption in *Basic*.  485 U.S. at 241-42.  It explained that in well-developed securities markets, a misleading statement or omission of material fact is incorporated in the price of a stock.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282-83 (2014) ("*Halliburton II*") (discussing *Basic*).

The Supreme Court gave several reasons for the fraud-on-the-market theory.  *First*, the Court was concerned that at least in the case before it, without the theory and presumption of reliance, it would be impossible for any securities action to proceed as a class.  *Basic*, 485 U.S. at 242; *see also Halliburton II*, 573 U.S. at 266-69 (noting that investors' ability to recover through class actions was important to *Basic*).  *Second*, the traditional concept of actual reliance on a specific statement is an unrealistic model of modern securities markets.  *See Basic*, 485 U.S. at 244-45. Investors buy *from the market*, rather than from individual sellers, and sellers sell into it; the market itself processes the information, transmitting it to investors as the security's price.  *Id. Third*, investors rely on the market price, because they rely on the assumption that information

incorporated into it was true. The Supreme Court ruled, "[b]ecause most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." *Id.* at 247.

*Basic* left unsettled how to prove that the false information was incorporated into a stock's price triggering the presumption. A year after *Basic*, a district court, in a decision which would become the leading case on the subject, did so. *See Cammer*, 711 F. Supp. at 1286-87. The Ninth Circuit adopted the *Cammer* approach. *See Binder*, 184 F.3d at 1064-65. Courts in the Ninth Circuit continue to apply *Cammer* to ascertain whether a market is efficient for purposes of applying the fraud-on-the-market presumption. *See, e.g.*, *Purple Mt. Tr. v. Wells Fargo & Co.*, No. 18-cv-03948-JD, 2022 U.S. Dist. LEXIS 145786, at *10 (N.D. Cal. Aug. 15, 2022).

As the *Cammer* court explained, plaintiffs obtain the presumption of reliance by proving that the security trades on an efficient market. The five factors articulated in *Cammer* concerned whether public information was generally incorporated into that security's price. The *Cammer* factors are: (1) whether average weekly trading volume was substantial, since such a showing implies investor interest in the company, and therefore that investors would discover new information and trade on it; (2) the number of analysts covering the company, since they disseminate information, analysis, and opinion; (3) the number of market makers, since they would quickly buy and sell stock when new news was released; (4) whether the company was eligible to file a registration statement on Form S-3, since eligibility presumes that an issuer's stock trades on an efficient market, and (5) whether the plaintiff has shown instances when the company's stock price reacted to corporate news. 711 F. Supp. at 1285-87.

*Halliburton II* clarified the standard for fraud on the market. 573 U.S. 277-82. The Supreme Court reaffirmed the efficient market presumption in *Basic*, which requires a showing that: (i) the misrepresentation or omission of fact was material,[3] (ii) was issued publicly, and (iii)

---

[3] With respect to materiality, allegations suffice. *Proof* of materiality or any other element of Plaintiffs' claim is not required at the class certification stage. *Id.* at at 282 ("Even though materiality is a prerequisite for invoking the *Basic* presumption, we held that it should be left to

the security traded in an efficient market.  Notably, the Court clarified that these prerequisites were really proxies for the fact that underlies the presumption of reliance: that the misrepresentation or omission affected the market price of the security (*i.e.*, "price impact").  *Id.* at 280-81.  *Halliburton II* further clarified that a plaintiff can show fraud on the market ***either*** by providing evidence that the company's stock generally traded on an efficient market, ***or*** by direct evidence that the misleading statement had a price impact.  *Id.*  Defendants may similarly show a lack of price impact by direct evidence.  *Id.*  In fact, Defendants bear the heavy burden to show that there was no price impact to defeat a motion for class certification, and the inquiry at this stage cannot be a free-ranging exercise into the merits.  *See Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  Indeed, courts must continue to assume that a plaintiff's allegations are true at the class certification stage.  *See Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497, at *8 (N.D. Cal. Dec. 19, 2022).

*Halliburton II* also rejected the defendants' contention that the Court should "overrule *Basic's* presumption of reliance and to instead require every securities fraud plaintiff to prove that he actually relied on the defendant's misrepresentation in deciding to buy or sell a company's stock."  573 U.S. at 266-74.  It pellucidly declared that even assuming  a "value investor 'does not believe that the market price accurately reflects public information *at the time he transacts*' … [t]he value investor also presumably tries to estimate how undervalued or overvalued a particular stock is, and such estimates can be skewed by a market price tainted by fraud."  *Id.* at 273-74 (emphasis in the original).

In addition, in *Halliburton II*, the Supreme Court confirmed that market efficiency for purposes of the fraud-on-the-market presumption is not tied to any academic strain of market efficiency.  *Id.* at 272-73 (rejecting notion that efficiency related to "any particular theory of how

the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3). We reasoned that materiality is an objective issue susceptible to common, classwide proof. . . .  We also noted that a failure to prove materiality would necessarily defeat every plaintiff's claim on the merits; it would not simply preclude invocation of the presumption and thereby cause individual questions of reliance to predominate over common ones.") (citations omitted).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:20-cv-00076-SI

-13-

quickly and completely publicly available information is reflected in market price.").  Instead, it is based on the "fairly modest premise that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Id.* (quotation and citation omitted).  Accordingly, "[d]ebates about the precise degree to which stock prices accurately reflect public information are thus largely beside the point." *Id.*

The holding that a plaintiff need not show price impact directly leaves unchanged lower court precedent establishing that a plaintiff who shows that a stock trades on an efficient market is entitled to a presumption of reliance.  But plaintiffs may now ***also*** show that they are entitled to a presumption of reliance through direct evidence that the misrepresentation or omission had an impact on the stock's price (*i.e.*, caused the price to be inflated).

### a.　　Forescout's NASDAQ Listing Is Strong Evidence Of Market Efficiency

Throughout the Class Period, Forescout shares were listed and traded on the second largest established stock market in the world: the NASDAQ.  Nye Report, ¶17.  Congress, the Supreme Court, and the seminal *Cammer* decision all recognize that such well-developed markets are generally efficient in reflecting publicly-available information in the prices of securities traded on those markets.

In *Basic*, the Supreme Court noted that in "drafting [the 1934] Act, Congress expressly relied on the premise that securities markets are affected by information, and enacted legislation to facilitate an investor's reliance on the integrity of those markets. . . .  Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." 485 U.S. at 245-46; *see also Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 430-431 (D. Ariz. 2013) (discussing same); *Lumen v. Anderson*, 280 F.R.D. 451, 459 (W.D. Mo. 2012) ("*Basic* itself recognized the NYSE as an efficient market").  Similarly, *Cammer* quoted with approval treatise commentary that "there should be a presumption -- probably conditional for class determination -- that certain markets are developed and efficient for virtually all the securities traded there: the

New York and American Stock Exchanges, the Chicago Board Options Exchange and the NASDAQ National Market System." 711 F. Supp. at 1292.

Accordingly, "federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency." *Todd v. Starr Surgical Co.*, CV-14-05263-MWF-RZ, 2017 U.S. Dist. LEXIS 1919, at *17 (C.D. Cal. Jan. 5, 2017); *see also In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011) ("[T]he listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency."); *Lumen*, 280 F.R.D. at 459-460 (cases "too numerous to cite . . . establish the NYSE and NASDAQ are at least entitled to a *presumption* of efficiency — making it incumbent upon Defendants to rebut the presumption.") (emphasis in original).

> **b.    Each of the Five *Cammer* Factors Confirms Market Efficiency**

Dr. Nye's holistic analysis of the *Cammer* factors and other indicia of market efficiency demonstrate beyond dispute that Forescout's common stock traded in an efficient market during the Class Period.

**Factor One — Weekly Trading Volume:** "[A] large weekly volume of stock trades . . . implies significant investor interest in the company [which] implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information." *Cammer*, 711 F. Supp. at 1286. The average weekly share trading volume for Forescout's stock during the Class Period was 12.1% of shares outstanding. *See* Nye Report, ¶24. The 12.1% weekly turnover is more than six times the 2.0% weekly turnover that the *Cammer* court explained would justify a "strong presumption that the market for the security is an efficient one." *Cammer*, 711 F. Supp. at 1286. Therefore, this factor weighs strongly in favor of a presumption of reliance. Nye Report, ¶¶22-25.

**Factor Two — Analyst Coverage:** Analyst coverage on a stock implies that information about the company is rapidly reflected in the stock price. *Cammer*, 711 F. Supp. at 1286. During the Class Period, there were over 100 analyst reports issued by well-known investment firms, including JPMorgan, Morgan Stanley, BofA Global Research, UBS Equities, FBN Securities,

Berenberg, Macquarie Research, Needham & Company Inc., Piper Sandler Companies, and Summit Insights Group. *See* Nye Report, ¶28; *see also In re Nature's Sunshine Product's Inc. Sec. Litig.*, 251 F.R.D. 656, 662-63 (D. Utah 2008) (explaining that coverage by four or more analysts weighs in favor of market efficiency) (citations omitted).

The sheer volume of news stories about, and coverage of, the Company also support an efficient market because that information was thus available to investors. Nye Report, ¶¶29, 31. During the Class Period, a multitude of news stories and press releases featuring Forescout appeared in sources that included Barron's, Bloomberg, Business Wire, Contify Investment News, Dow Jones Newswires, Reuters, The Wall Street Journal and others. *Id.* at ¶29. This volume of news coverage supports an inference that the stock traded on an efficient market. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 499 (S.D. Fla. 2003) (524 news items over two years showed efficient market).

**Factor Three — Market Makers and Arbitrage Activity:** "The existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F. Supp. at 1286-87; *see also Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 269 (N.D. Cal. 2011) (finding that the existence of 20 market makers satisfies *Cammer* Factor 3). Throughout the Class Period, Forescout was actively traded by over 100 market makers. Nye Report, ¶34. Moreover, the level of short interest, the degree of institutional ownership, and the tightness of the bid/ask spreads for a stock are indicators of arbitrage activity. *Id.* at ¶35. During the Class Period, the average short interest for Forescout common stock was 7.0% of the shares outstanding compared to the 4.1% average short interest of shares outstanding for the total U.S. market. *Id.* at ¶37. Between 193 and 231 institutional investors held Forescout common stock at the end of each quarter during the Class Period, and the average bid/ask spread for Forescout common stock was much lower than that of the sample of stocks listed on the NASDAQ Global Select Market. *Id.* at ¶39-41.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:20-cv-00076-SI

-16-

**Factor Four — S-3 Eligibility:** The *Cammer* Court found that a Company's eligibility to file a short-form registration statement on SEC Form S-3 supports a finding of an efficient market. *Cammer*, 711 F. Supp. at 1285. Here, Forescout was a "large accelerated filer" under SEC Rules that adhered to all of the SEC's Form S-3 requirements. *See* Nye Report, ¶¶45-46. Hence, this factor supports a finding of market efficiency.

**Factor Five — Cause and Effect Relationship of Unexpected Material News and Stock Price:** This factor requires showing that there are "empirical facts showing a cause-and-effect relationship between unexpected corporate events or financial releases and an immediate response in stock price." *Binder*, 184 F.3d at 1065 (*quoting Cammer*, 711 F. Supp. at 1286-87). An event study is a multiple step process to test this response. Dr. Nye employed an event study covering the Class Period to determine the impact of new material information on Forescout's stock price. *See* Nye Report, ¶49. In an efficient market, it would be expected that the price of a stock would respond to news. *Id.* at ¶¶47-48. Those steps include: "(i) the *a priori* definition and selection of events to study; (ii) identification of a study period; (iii) estimation of a regression model to remove non-company-specific effects from the security's return; (iv) testing for statistical significance; and (v) interpretation of empirical results." *Id.* at ¶48.

To determine which events to analyze, Dr. Nye relied on academic literature that evaluates information that typically affects stock prices. *Id.* at ¶50. Based on this literature, Dr. Nye examined six earnings-related event dates on which Company-specific information, including press releases, conference calls, SEC filings, new articles and analyst reports were released. *Id.* at ¶¶51-52.

Dr. Nye noted that 67% of the event dates examined during the Class Period demonstrated statistically significant residual returns, at the 95% confidence level, whereas ordinarily only 5% of dates are statistically significant at this level in a random sample. *Id*. at ¶51. Based on his analyses, Dr. Nye concluded at or above the 95% confidence level "that Forescout's stock price reflected the information disclosed to the market, and promptly responded to the disclosure of new,

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:20-cv-00076-SI
-17-

material, unexpected information, thereby supporting [his] conclusion that the market for Forescout stock was efficient throughout the Class Period." *Id.* at ¶¶50, 52.

### c.    Other Factors of Market Efficiency

Courts have deemed a large market capitalization and a large public float indicators of market efficiency. *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 212 (E.D. Pa. 2008); *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 (5th Cir. 2005); *Krogman v. Steritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001). Forescout's market capitalization of $1.95 billion at the start of the Class Period was higher than 78.7% of NASDAQ-listed stocks. Nye Report, ¶¶54-55. Forescout's average public float of 95.2% of shares outstanding during the Class Period was also higher than the average public float for stocks listed in the United States between 2003 and 2011. *Id.* at ¶57.

Courts have also observed that a smaller bid-ask spread is indicative of market efficiency. *See Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2021 U.S. Dist. LEXIS 12458, at *19-20 (N.D. Cal. Jan. 21, 2021). Forescout's bid-ask spreads were much smaller, on average, than those of other randomly sampled stocks listed on the NASDAQ. Nye Report, ¶¶40-41, 56.

### 3.    Reliance Is Presumed Because of the *Affiliated Ute* Presumption of Class-Wide Reliance

A presumption of reliance also exists regarding Defendants' omissions. In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), the Supreme Court held that where a plaintiff alleges "a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of his decision." *Id.* at 153-54; *see also Basile v. Valeant Pharm. Int'l, Inc.*, No. 14-2004, 2017 U.S. Dist. LEXIS 37400, at *40-45 (C.D. Cal. Mar. 15, 2017); *In re Montage Tech. Grp. Ltd.*, No. 14-00722, 2016 U.S. Dist. LEXIS 53734, at *17-20 (N.D. Cal. Apr. 21, 2016).

Plaintiffs are not required to show materiality at the class certification stage. *See Basile*, 2017 U.S. Dist. LEXIS 37400, at *40. Still, the Ninth Circuit has already held that the Defendants

failed to disclose material information. *See Forescout Techs., Inc.*, 63 F.4th at 779. For example, in its opinion, the Ninth Circuit agreed that Defendants' omission of Advent's expressed reluctance to close the merger with Forescout was a material fact, rendering Defendants' positive statements about closing misleading when made. *Id.* No more is required for the *Affiliated Ute* presumption to apply. *See In re Montage Tech. Grp. Ltd.*, 2016 U.S. Dist. LEXIS 53734, at *17-20.

### 4.    Mechanical Damage Tabulations For Individual Class Members Will Not Defeat Predominance

The Ninth Circuit has held that "the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2016). This is especially true for securities fraud cases, where the process of computing damages after liability is established is "virtually a mechanical task." *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013) (*quoting Blackie*, 524 F.2d at 905). "Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine, if a suitable representative steps forward." *Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010).

For this reason, courts do not require a formal damages model to demonstrate that damages can be determined on a Class-wide basis. Instead, to the extent any evidence is required, an event study like that provided by Dr. Nye that quantifies Forescout's per share price decline upon disclosure of the fraud will suffice.[4] *See, e.g.*, *Diamond Foods*, 295 F.R.D at 251-52; *see also In re Groupon, Inc. Sec. Litig.*, No. 1:12-cv-02450, 2014 U.S. Dist. LEXIS 137382, at *9 (N.D. Ill. Sept. 23, 2014) (ruling that *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), addressing formal damages models in the context of certification of an antitrust action, "is inapposite in a securities fraud class action"); *see also In re Heckmann Corp. Sec. Litig.*, No. 10-378, 2013 U.S. Dist. LEXIS

---

[4] This is because once the dollar per share price decline caused by revelation of the fraud is determined, damages per share can easily be calculated for each Class Member during the Class Period. Nye Report at ¶62.

79345, at *43 (D. Del. June 6, 2013) (*Comcast* "was not in regard to a securities fraud litigation, which have generally been certified for class status.").

Moreover, Dr. Nye's expert report provides a "general economic framework for quantifying per-share damages on a Class-wide basis," ultimately concluding that "[d]amages incurred by purchasers of Forescout stock during the Class Period can be calculated on a class-wide basis in this manner." Nye Report, ¶¶58, 63. As courts have recognized, once the Class-wide damages are established, each investor's damages calculation "usually can be established mechanically." *See Schleicher*, 618 F.3d at 682.

### 5. A Class Action Is Superior to Other Methods for Resolving This Controversy

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts have recognized that the class action device is superior to other available methods for managing litigation involving a large number of purchasers of securities injured by violations of the securities laws. "[C]lass action treatment presents a superior method for the fair and efficient resolution of securities fraud cases." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 284 (N.D. Ala. 2009); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 623-24 (C.D. Cal. 2009) (superiority clearly met where parties "need only establish what happened within Countrywide, when, and who knew (or should have known)").

Rule 23(b)(3) enumerates the following factors to consider in determining the issue of superiority: (1) the class members' interests in individually controlling the prosecution . . . of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by . . . class members, (3) the desirability . . . of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Each factor is satisfied here.

The Class members are too numerous and the typical claim is too small for class members to maintain separate actions. Further, this Court is an appropriate forum because a substantial part

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    -20-
3:20-cv-00076-SI

of the alleged misconduct occurred in this District.  Moreover, the geographical dispersion of class members, arising from Forescout's sale of the stock on a national exchange, makes it desirable that litigation of the claims involved be concentrated in this forum.  *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009) (observing that "it is almost certain that there will be thousands of class members.  Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum").  Finally, Plaintiffs foresee no management difficulties that would preclude this Action from being maintained as a class action, as securities fraud cases usually proceed.

## VI.    PROPOSED CLASS COUNSEL SHOULD BE APPOINTED

Beyond Rule 23(a)'s adequacy of representation prong (*see* §II.A.4., *supra*), factors considered in appointing class counsel are "(i) the work counsel has done in identifying or investigating [claims]; (ii) counsel's experience in handling class actions [] and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit [.]" Fed. R. Civ. P. Rule 23(g)(1)(A).  These considerations all weigh in favor of appointing Pomerantz and AFT – firms that have identified and prosecuted the claims, investigated their legal and factual bases, drafted the complaints, successfully convinced the Ninth Circuit to reinstate a significant number of claims, and advanced the Action into discovery – as Class Counsel.  All the foregoing work has been performed on a wholly contingent basis.

Both firms have extensive experience prosecuting securities claims and achieving substantial recoveries, including among the largest-ever obtained for investors.  *See* Dkt. Nos. 66-5, 86-4, 115 at 10.  The firms are prepared to continue to devote staff and substantial resources to advance the Action and the Class's interests through discovery, summary judgment, and trial.  For these reasons, Plaintiffs respectfully request that the Court appoint Pomerantz and AFT as Class Counsel.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request entry of an Order certifying this Action as a class action, appointing Meitav and the Glazer Funds as Class Representatives, and

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:20-cv-00076-SI

-21-

appointing Pomerantz and AFT as Class Counsel. Should the Court grant this motion, the Court should direct the parties to meet and confer on the form and manner of providing notice and require the parties to file their proposal for providing notice for Court approval within sixty days from entry of the Order granting class certification.

Dated: October 27, 2023.

Respectfully submitted,

**POMERANTZ LLP**

 */s/ Omar Jafri*
Omar Jafri (admitted *pro hac vice*)
Patrick Dahlstrom (admitted *pro hac vice*)
Brian P. O'Connell (SBN 314318)
Genc Arifi (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel: (312) 377-1181
ojafri@pomlaw.com
pdahlstrom@pomlaw.com
boconnell@pomlaw.com
garifi@pomlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY  10016
(212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

*-and-*

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

 */s/ Jeffrey S. Abraham*
Jeffrey S. Abraham (admitted *pro hac vice*)
Michael Jason Klein (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
JAbraham@aftlaw.com

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:20-cv-00076-SI

-22-

mklein@aftlaw.com

Patrice L. Bishop
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
(310) 279-5125
pbishop@aftlaw.com

***Attorneys for Co-Lead Plaintiffs***

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION                                    -23-
3:20-cv-00076-SI

**Certificate of Service**

I certify that, on the date stamped above, I caused this document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing by email to counsel of record for all parties.

*/s/ Omar Jafri*