# Exhibit A

**ABRAHAM, FRUCHTER**
   **& TWERSKY, LLP**
Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
Email:  pbishop@aftlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email:  jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Class*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FORESCOUT TECHNOLOGIES, INC., *et al.*,<br><br>Defendants. | Case No: 3:20-CV-00076-SI<br><br>**LEAD PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO EACH DEFENDANT**<br><br>Courtroom:  1 – 17th Floor<br>Judge:      Hon. Susan Illston |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiffs Glazer Capital Management, L.P., Glazer Enhanced Fund, L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd., Highmark Limited, in respect of its Segregated Account Highmark Multi-Strategy 2 (collectively the "Glazer Funds"), and Meitav Tachlit Mutual Funds Ltd. ("Meitav") (together with the Glazer Funds, the "Plaintiffs"), by and through their undersigned counsel, hereby request that Defendants Forescout Technologies, Inc., Michael DeCesare and Christopher Harms each produce for inspection within 30 days of the date of this request at the offices of Pomerantz LLP, located at 10 South LaSalle Street, Suite 3505, Chicago, Illinois 60603 and to Abraham, Fruchter & Twersky, LLP, located at 450 Seventh Avenue, 38th Floor, New York, NY 10123, all documents described below in accordance with the definitions and instructions that follow.

## DEFINITIONS

1.    "Advent" refers to Advent International Inc., immediately before the Merger, and all of its present and former officers, directors, committees, employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing at any time before the Merger.

2.    "Amended and Restated Merger Agreement" refers to the Amended and Restated Agreement and Plan of Merger entered into on July 15, 2020, between Forescout and Ferrari Group.

3.    "Booz Hamilton" refers to Booz Allen Hamilton Inc.

4.    "Class Period" refers to the time period between May 9, 2019, and May 15, 2020.

5.    "Clari" refers to the sales analytics and forecasting add-on platform designed by Clari, Inc. and used by Forescout during the Relevant Period.

6.    "Communication" and/or "Communications" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), or the attempt to transmit information, whether written, oral, electronic, or by any other means.

7.    "Complaint" refers to the Second Consolidated Amended Complaint for Violations of the Federal Securities Laws filed in this Action on May 10, 2021, at ECF No. 142.

8.     "Concern" and/or "Concerning" refers to relating to, referring to, describing, evidencing, or constituting.

9.     "COVID-19" refers to the novel coronavirus, the symptoms of which were first experienced by a cluster of patients on or about December 12, 2019, in Wuhan, China, with the United States Center for Disease Control reporting the first laboratory-confirmed case in the U.S. on January 20, 2020.

10.     "DeCesare" refers to defendant Michael DeCesare.

11.     "Defendants" refers collectively to Forescout, DeCesare and Harms.

12.     "Delaware Litigation" refers to *Forescout Technologies, Inc., v. Ferrari Group Holdings, L.P. and Ferrari Merger Sub, Inc.*, Case No. 2020-0385-SG, filed in the Delaware Court of Chancery.

13.     "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

14.     "Ferrari Group" refers collectively to Ferrari Group Holdings, L.P. and Ferrari Merger Sub, Inc., and each of their respective present and former officers, directors, committees, employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing.

15.     "Force Management" refers to Force Management, LLC, all of its present and former officers, directors, committees, employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing.

16.     "Forescout" or the "Company," as used in all Document Requests except for Document Requests 30-37, refers to Forescout Technologies, Inc., all of its present and former officers, directors, committees, employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing. "Forescout" or the "Company," as used in

Document Requests 30-37, refers to Forescout Technologies, Inc., immediately before the Merger, and all of its officers, directors, committees, employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing at any time before the Merger.

17.    "Harms" refers to defendant Christopher Harms.

18.    "Merger" refers to the merger consummated on August 17, 2020, pursuant to the terms of the Amended and Restated Merger Agreement.

19.    "Original Merger Agreement" refers to the Agreement and Plan of Merger between Ferrari Group and Forescout dated February 6, 2020.

20.    "Person" refers to any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

21.    "Plaintiffs" refers to Lead Plaintiffs Glazer Capital Management, L.P., Glazer Enhanced Fund, L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd., Highmark Limited, in respect of its Segregated Account Highmark Multi-Strategy 2, and Meitav Tachlit Mutual Funds Ltd.

22.    "SecurityMatters" refers to SecurityMatters B.V., all of its present and former officers, directors, committees, employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting, or purporting to act, on behalf of any of the foregoing.

23.    "Smartsheet" refers to the spreadsheet-centric work management platform designed by Smartsheet, Inc. and used by Forescout during the Relevant Period.

24.    "Strategic Committee" refers to the committee formed to evaluate Forescout's options should Advent not close the merger pursuant to the Original Merger Agreement.

25.    "Termination Letter" refers to the May 15, 2020 letter sent from Advent to Forescout Concerning Advent's decision to terminate the Original Merger Agreement.

26.    "You" or "Your" refers to the party responding to this request, including Forescout, DeCesare and Harms.

27.    "¶ or ¶¶" refers to specific paragraphs of the Complaint.

# **INSTRUCTIONS**

1.      For any relevant timeframe pertaining to a specific Request, a Document should be considered to be within that relevant timeframe if it refers or relates to Communications, meetings, or other events or Documents that occurred or were created within that timeframe, regardless of the date of creation of the responsive Document.

2.      In responding to these Requests, You should produce responsive Documents that are in Your possession, custody or control, or in the possession, custody or control of Your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of Your respective partners, directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.  A Document is within Your control if You have the ability or right to secure the Document or a copy of the Document from another Person having possession or custody of the Document.

3.      You are required to produce for inspection and copying original Documents as they are kept in the usual course of business in their original folders, binders, covers, and containers or facsimiles thereof.  If the original is not in Your custody, You are required to provide a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.      Documents shall be produced in an electronic format on a hard drive, thumb drive or for download via FTP.  If the parties have entered into an ESI Protocol, the production format should comply with the ESI Protocol.  If the parties have not yet entered into an ESI Protocol, You should not delay production and should instead produce ESI Documents as follows: Documents that were originally in black-and-white shall be produced as black-and-white single page TIFF images with a standard Opticon cross reference file and Concordance .DAT data load file containing their corresponding extracted text and related metadata fields (including, at a minimum, custodian, filename, document date, document time, BegNo, EndNo, and for emails, also including, at a minimum, sender, recipient, cc, bcc, importance, subject, and identifying by Bates number all attachments, which shall be produced).  Spreadsheets and presentations should be produced in native format.  All other Documents that were originally in color may be produced as black-and-white single page TIFF images or colored JPEGs; however, if produced in black-and-white You must promptly

make color images available upon request. Black-and-white images should, at a minimum, be 300 DPI Group IV single-page TIFFs. All files and TIFF images should be assigned a unique Bates number. Plaintiffs are available to meet-and-confer about any ESI-related questions.

5.      Your response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. Where You are objecting to a request, You must state whether any responsive materials are being withheld on the basis of that objection. Where You are objecting to only part of the request, You must state with specificity which part of the request You are objecting to, and produce the rest.

6.      If a portion of any Document responsive to these requests is withheld under any claim of privilege, any non-privileged portion of such Document must be produced with the portion claimed to be privileged redacted.

7.      You are to produce each Document requested herein in its entirety, with attachments and enclosures without deletion or excision (except as qualified herein) regardless of whether You consider the entire Document to be relevant or responsive to the requests. All pages now stapled or fastened together should be produced, stapled or fastened together, and each Document that You cannot legibly copy should be produced in its original form.

8.      Documents not otherwise responsive to any of the discovery requests herein must be produced if such Documents mention, discuss, refer to, or explain the Documents which are called for by these requests, or if such Documents are attached to Documents called for by these requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials. Whenever a Document or group of Documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the Document or group of Documents.

9.      Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document which are not being produced. All Documents redacted or withheld shall be logged in sufficient detail to understand the nature, timing,

authors, and recipients of the Document and to substantiate the claim of privilege (including, with respect to Documents for which a claim of attorney-client privilege or attorney work-product protection is asserted, sufficient information to assess whether the Document served primarily a business or legal function).

10.    If You require additional clarification to respond to any of these Requests, please contact us as soon as possible, and at any rate before the response date, so that we may clear up any confusion You may have and You may produce documents as required on the response date.

## RELEVANT PERIOD

Unless otherwise indicated, the Relevant Period ("Relevant Period") covered by these Requests is from January 1, 2018, through the present and shall include all events or circumstances which occurred during such period, as well as related Documents and information produced or created during that period.  However, if a Document prepared prior to January 1, 2018, is necessary for a correct or complete understanding of any Document covered by a Request, the Document shall be produced.  If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request.

## DOCUMENT REQUESTS

1.    Documents sufficient to show Forescout's organizational structure, including organizational charts showing reporting lines to DeCesare and Harms and for all personnel with responsibilities or roles that relate to Forescout's sales and/or forecasting.

2.    All Documents and Communications Concerning Forescout's revenue guidance for Fiscal Year 2019 or revenue guidance for any quarter of Fiscal Year 2019, including but not limited to any assumptions, goals, plans, models, or projections that supported the revenue guidance or Concern Your decision to adjust, increase, decrease, revise, or withdraw the revenue guidance.

3.    All Documents and Communications Concerning the reasons that the Company's revenue guidance or growth rates in Fiscal Year 2019 missed the original guidance range of $363.1 million to $373.1 million.

4.    All Documents and Communications Concerning the reasons that the Company's preliminary financial results for the third quarter of 2019 differed from prior revenue guidance of $98.8 million and $101.8 million for the third quarter of 2019.

5.    All Documents and Communications Concerning the reasons that the Company's financial results for the first quarter of 2020 differed from the illustrative guidance of $62 million for the first quarter of 2020.

6.    All Documents and Communications with any outside auditor Concerning Forescout's revenue recognition practices.

7.    All Documents and Communications between You, on the one hand, and Force Management, on the other hand, including but not limited to: (1) why Force Management was retained; (2) any work Force Management performed for You; (3) any advice, suggestions or feedback You received from Force Management Concerning sales or the pipeline for Forescout's products and services; and (4) any decision You made to adopt or reject Force Management's advice, suggestions, or feedback.

8.    Documents sufficient to show the definition or meaning of a "committed" deal or transaction or otherwise considered a "technology win" by You as described and referred to in DeCesare's and Harms' public statements to investors in the earnings call held on May 9, 2019, and identified in ¶¶97, 101, 105, and 108 of the Complaint.

9.    All Documents and Communications Concerning any actual or potential sale or deal that You anticipated would close before the end of each quarter in 2019, and which You incorporated into the Fiscal Year 2019 revenue guidance or any quarterly guidance given in 2019.

10.    Documents sufficient to reflect any sale or deal You considered to be "committed," including but not limited to its quality, certainty, significance, size, or otherwise considered by You to constitute a "technology win" during the Relevant Period.

11.    All Communications Concerning any sale or deal You considered to be "committed," or concluded was a "technology win," including but not limited to all Communications between sales personnel, Salesforce reports, email alerts, or any information accumulated by any sales pipeline predictor tool that You used during the Relevant Period.

12.     All Documents and Communications Concerning any "slipped" deal that You stated was "still in pipeline," as described and referred to in the earnings call held on May 9, 2019, and specifically identified in ¶¶97, 101, 105, and 108 in the Complaint, including but not limited to: (1) an identification of each "slipped" deal; (2) the reasons why You concluded the deal "slipped"; (3) the specific status of negotiations with the customer for any "slipped deal"; and (4) all information Concerning Your claim that the "slipped" deal still remained a "technology win."

13.     All Documents and Communications between You and any actual or potential customer Concerning any "committed" or "slipped" deal or any "technology win."

14.     All Documents and Communications Concerning Your decision to upgrade any deal to the "committed" category during the Relevant Period, including but not limited to any actual or potential deal with the University of Wisconsin at Madison.

15.     All documents and Communications Concerning the sales quota or target of any sales personnel at Forescout, including but not limited to whether the quota or target was met during the Relevant Period, and the rate at which deals closed or did not close during the Relevant Period.

16.     All Documents and Communications Concerning any agreements, business prospects, or contracts with Booz Hamilton during the Relevant Period.

17.     All Documents and Communications Concerning any agreements, business prospects, or contracts with any customer located in the State of Texas during the Class Period.

18.     All Documents and Communications Concerning any meeting to discuss the sales pipeline, including but not limited to weekly or monthly conference calls, internal business review calls, sales forecasting calls, or all-hands quarterly conference calls.

19.     All Documents and Communications Concerning Harms' representation described in ¶44 of the Complaint that he and DeCesare "probed" the sales pipeline, spent time in the field "asking the additional questions as it related to customers['] buying preferences," and "all of that is baked into how we are guiding for the full year."

20.     All Documents and Communications between Harms or DeCesare and any actual or potential customer during the Relevant Period.

21.    All Documents and Communications with any Person at the company previously known as SecurityMatters, including but not limited to James Crowley, Concerning any deals or sales during the Class Period, including but not limited to the quality, certainty, significance, size, and details of any actual, expected, forecasted or projected sales or customer accounts.

22.    All Documents and Communications Concerning the sales kickoff meeting held in January 2020.

23.    Documents and Communications sufficient to show the information You viewed or analyzed on Clari or Smartsheet or any other tool You utilized to monitor or track sales during the Class Period, including but not limited to pipeline reports, sales performance reports, forecast reports, lead conversion reports, territory reports, product and price book reports, sales funnel reports, win/loss analysis reports, activity reports, campaign reports, and any custom reports.

24.    All Documents and Communications between You and any Forescout employee, including but not limited to Aaron Martin, Steven Redman or Brian Gumbel Concerning any actual or potential deal or the sales pipeline during the Relevant Period.

25.    All Documents that any Forescout employee, including but not limited to Aaron Martin, Steven Redman or Brian Gumbel, reviewed or analyzed to prepare for any meeting with DeCesare or Harms during the Relevant Period.

26.    All Documents and Communications Concerning DeCesare's or Harms' compensation during the Class Period, including all stock sales, SEC Rule 10b-5 trading plans, or any financial benefit associated with the Merger.

27.    All Documents and Communications Concerning Your expectation to launch any cybersecurity products or services with cloud-enabled features during the Relevant Period.

28.    All Documents and Communications sufficient to show the average length of Your sales cycles for new or existing customers during the Relevant Period.

29.    All Documents and Communications related to Your decision in 2019 to sell the Company or take it private, including when such decision was considered or made.

30. All Documents You provided to Advent during the negotiations of the Merger that relate to the sales pipeline or any actual or potential deal, discounts or payment terms, a decline in Your earnings or Your financial performance during the Relevant Period.

31. All Documents that You utilized in prosecuting the Delaware Litigation.

32. All Documents that You produced to Advent, formally or informally, in the Delaware Litigation.

33. All unredacted copies of any pleading or other filing maintained under seal in the Delaware Litigation.

34. All Documents and Communications relating to the impact which COVID-19 was having on the Merger, including but not limited to Advent's ability to fund the Merger.

35. All Documents and Communications between You and Advent Concerning the: (a) Original Merger Agreement; (b) Termination Letter; (c) Delaware Litigation; (d) Amended and Restated Merger Agreement, (e) the satisfaction of or failure to meet any conditions to the Original Merger Agreement, or (f) Concerning the impact of COVID-19 on the Company's operations or future business prospects.

36. All Documents and Communications Concerning whether the Merger may or may not close, including but not limited to any Communications between DeCesare and any Advent representative on May 8, 2020, and Your representation in the Delaware Litigation that "Advent signaled its intention to renege on the deal."

37. All Documents and Communications Concerning the Strategic Committee's discussions related to the Merger or the Original Merger Agreement.

38. All Documents and Communications Concerning Your: (a) May 9, 2019 Press Release and Earnings Call; (b) August 7, 2019 Press Release and Earnings Call and August 12, 2019 Investor Conference; (c) October 10, 2019 Press Release; (d) November 6, 2019 Press Release and Earnings Conference; and (e) the May 11, 2020 Press Release.

Dated: June 23, 2023

By:     */s/Genc Arifi*

**POMERANTZ LLP**

Omar Jafri (admitted *pro hac vice*)
Patrick Dahlstrom (admitted *pro hac vice*)
Brian O'Connell (SBN 314318)
Genc Arifi (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184
Email:   ojafri@pomlaw.com
         pdahlstrom@pomlaw.com
         boconnell@pomlaw.com
         garifi@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email:   jpafiti@pomlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email:   jalieberman@pomlaw.com
         ahood@pomlaw.com

*-and-*

**ABRAHAM, FRUCHTER
   & TWERSKY, LLP**
Jeffrey S. Abraham (admitted *pro hac vice*)
Michael Jason Klein (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone:  (212) 279-5050
Facsimile:   (212) 279-3655
Email:  jabraham@aftlaw.com
         mklein@aftlaw.com

Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone:  (310) 279-5125
Email:  pbishop@aftlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on June 23, 2023, I served a copy of the foregoing to counsel of record for Defendants via email delivery.

Executed on June 23, 2023, in Chicago, Illinois.


*/s/ Genc Arifi*
Genc Arifi