**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

**ABRAHAM, FRUCHTER**
   **& TWERSKY, LLP**
Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
pbishop@aftlaw.com

*Co-Lead Counsel for Lead Plaintiffs*
*and the Proposed Class*

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FORESCOUT TECHNOLOGIES, INC., *et al.*,<br><br>Defendants. | CASE NO.: 3:20-cv-00076-SI<br><br>CLASS ACTION<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>Hearing Date: April 5, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Susan Illston<br>Court Room: 1 – 17th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

ARGUMENT.....................................................................................................................2

    I.     Class-Wide Damages Can Easily Be Calculated ..............................................2

    II.    Defendants Have Failed to Demonstrate That Sub-Classes Are Appropriate................7

    III.   Disaggregation Is Premature and Irrelevant to Class Certification ..............................9

    IV.   The Glazer Funds' Claims Are Typical and They Are Adequate Class Representatives ..................................................................................................10

         A.  The Glazer Funds' Claims Are Typical of Other Investors........................10

         B.  The Glazer Funds Relied Upon the Pipeline Representations...................12

         C.  The Glazer Funds Are Not Subject to Unique Defenses............................13

    V.    There Is No Disabling Conflict Between Meitav and the Glazer Funds ....................14

CONCLUSION................................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ................................................................................................................ 1, 2, 8

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ....................................................................................................................... 5, 8

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................................................................................ 15

*City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*,
    No. 17-cv-00554-YGR, 2018 U.S. Dist. LEXIS 175573 (N.D. Cal. Oct. 11, 2018) .............. 10

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    No. 18-cv-04844-BLF, 2022 U.S. Dist. LEXIS 83836 (N.D. Cal. May 9, 2022) ................ 2, 3

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................................ 1, 2, 3

*Dougherty v. Esperion Therapeutics*,
    No. 16-10089, 2020 U.S. Dist. LEXIS 216515 (E.D. Mich. Nov. 19, 2020) .......................... 9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ........................................................................................................................ 5

*Erickson v. Jernigan Capital, Inc.*,
    No. 1:20-cv-09575 (JLR) (KHP),
    2023 U.S. Dist. LEXIS 163288 (S.D.N.Y. Sep. 14, 2023) ....................................................... 4

*Ferris v. Wynn Resorts Ltd.*,
    No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374 (D. Nev. Mar. 1, 2023) .......... 3

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ........................................................................................................... 4

*Greenfield v. Flying Diamond Oil Corp.*,
    1981 U.S. Dist. LEXIS 11924 (S.D.N.Y. Mar. 30, 1981) ....................................................... 11

*Hatamian v. Advanced Micro Devices, Inc.*,
    No. 14-cv-00226 YGR, 2016 U.S. Dist. LEXIS 34150 (N.D. Cal. Mar. 16, 2016) ....... 8, 9, 10

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 177787 (N.D. Cal. Dec. 22, 2016) ................. 8

*In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG),
    2021 U.S. Dist. LEXIS 170310 (S.D.N.Y. Sep. 8, 2021) ......................................................... 9

*In re Apple Sec. Litig.*,
    No. 4:19-cv-2033-YGR, 2022 U.S. Dist. LEXIS 23771 (N.D. Cal. Feb. 4, 2022) .......... 3, 4, 5

*In re Banc of Cal. Sec. Litig.*,
    326 F.R.D. 640 (C.D. Cal. 2018) ....................................................................................... 9

*In re Bofi Holding, Inc. Sec. Litig.*,
    No. 3:15-cv-02324-GPC-KSC, 2021 U.S. Dist. LEXIS 159675
    (S.D. Cal. Aug. 23, 2021)........................................................................................... 4, 5, 9

*In re BP P.L.C. Sec. Litig.*,
    No. 10-md-2185, 2013 U.S. Dist. LEXIS 173303 (S.D. Tex. Dec. 6, 2013) ..................... 8, 15

*In re Connetics Corp. Sec. Litig.*,
    257 F.R.D. 572 (N.D. Cal. 2009) ..................................................................................... 13

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997) ....................................................................................... 13

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)............................................................................................ 7

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) .............................................................................. 8, 14, 15

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
    No. 14-cv-00722-SI, 2016 U.S. Dist. LEXIS 53734 (N.D. Cal. Apr. 21, 2016) .................. 1, 2

*In re Qualcomm Inc. Sec. Litig.*,
    No. 17cv121-JO-MSB, 2023 U.S. Dist. LEXIS 47016 (S.D. Cal. Mar. 20, 2023) .................. 3

*In re Signet Jewelers Ltd. Sec. Litig.*,
    Civ. No. 16-6728, 2019 U.S. Dist. LEXIS 114695 (S.D.N.Y. July 10, 2019) .................... 5, 8

*In re Silver Wheaton Corp. Sec. Litig.*,
    No. 2:15-cv-05146-CAS, 2017 U.S. Dist. LEXIS 72787 (C.D. Cal. May 11, 2017)............... 5

*In re Snap Inc. Sec. Litig.*,
    334 F.R.D. 209 (C.D. Cal. 2019) ......................................................................... 3, 8, 10, 12

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    No. 20-cv-08585 (LJL), 2021 U.S. Dist. LEXIS 8840 (S.D.N.Y. Jan. 15, 2021) .................. 13

*In re Vale S.A. Sec. Litig.*,
    No. 19-CV-526-RJD-SJB, 2022 U.S. Dist. LEXIS 6433 (E.D.N.Y. Jan. 11, 2022) ........ 3, 4, 9

*In re Zillow Grp., Inc. Sec. Litig.*,
    2020 U.S. Dist. LEXIS 201015  (W.D. Wash. Oct. 28, 2020) ............................................ 15

*Jaroslawicz v. M&T Bank Corp.,*
No. 15-00897-EJW, 2023 U.S. Dist. LEXIS 151050 (D. Del. Aug. 28, 2023) ...................... 11

*Junge v. Geron Corp.,*
No. C 20-00547-WHA, 2022 U.S. Dist. LEXIS 61962 (N.D. Cal. Apr. 2, 2022)............. 3, 10

*Karinski v. Stamps.com, Inc.,*
No. CV 19-1828-MWF (SKx), 2020 U.S. Dist. LEXIS 209256 (C.D. Cal. Nov. 9, 2020) ..... 3

*Kaufman v. Lawrence,*
No. 74 Civ. 5081 (RLC), 1977 U.S. Dist. LEXIS 13206 (S.D.N.Y. Oct. 31, 1977) ........ 11, 12

*Landry v. Price Waterhouse Chartered Accts.,*
123 F.R.D. 474 (S.D.N.Y. 1989) ...................................................................................... 14

*Loritz v. Exide Techs*
No. 2:13-CV-02607-SVW-E, 2015 U.S. Dist. LEXIS 100471 (C.D. Cal. July 21, 2015)..... 10

*Luna v. Carbonite, Inc.,*
No. 19-11662-LTS, 2023 U.S. Dist. LEXIS 121783 (D. Mass. July 14, 2023)..................... 14

*Luna v. Marvell Tech. Grp., Ltd.,*
No. C 15-05447 WHA, 2017 U.S. Dist. LEXIS 178674 (N.D. Cal. Oct. 27, 2017) ................ 9

*Malriat v. QuantumScape Corp.,*
No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497 (N.D. Cal. Dec. 19, 2022)....... 4, 5

*Mineworkers' Pension Scheme v. First Solar Inc.,*
881 F.3d 750 (9th Cir. 2018)............................................................................................... 4

*Mulderrig v. Amyris, Inc.,*
340 F.R.D. 575 (N.D. Cal. 2021) ...................................................................................... 13

*Pulaski & Middleman, LLC v. Google, Inc.,*
802 F.3d 979 (9th Cir. 2015)............................................................................................... 2

*Rolex v. Emps. Ret. Trust v. Mentor Graphics Corp.,*
136 F.R.D. 658 (D. Or. 1991) ........................................................................................... 13

*SEB Inv. Mgmt. AB v. Symantec Corp.,*
335 F.R.D. 276 (N.D. Cal. 2020) ....................................................................................... 9

*Sheet Metal Workers Nat'l Pension Fund v. Aktiengesellschaft,*
No. 20-cv-04737-RS, 2023 U.S. Dist. LEXIS 88178 (N.D. Cal. May 19, 2023)..................... 2

*Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara,*
609 F.2d 944 (9th Cir. 1979).............................................................................................. 15

**INTRODUCTION**

Defendants concede that: (i) Forescout Technologies Inc.'s ("Forescout") common stock traded in an efficient market;  and (ii) the presumption of reliance afforded by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) applies, satisfying Rule 23(b)'s requirement that common questions of fact and law predominate.[1]  Instead, Defendants oppose class certification by criticizing the damages model put forward by Dr. Zachary Nye ("Nye") while contending that contrived intra-class "conflicts" render Plaintiffs inadequate to represent the Class. This argument fails because it is well-settled after the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), that criticism of a damages model alone cannot defeat class certification. To the contrary, every Circuit to consider the issue has held that it is an abuse of discretion to deny class certification on that basis alone.

Defendants also ignore that this Court has previously found that the out-of-pocket measure described in Dr. Nye's expert report sufficiently calculates damages on a class-wide basis. *See, e.g.*, *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. 14-cv-00722-SI, 2016 U.S. Dist. LEXIS 53734, at *38-39 (N.D. Cal. Apr. 21, 2016).  Defendants fail to provide any sound reason for this Court to depart from its prior decision while ignoring that several federal courts have rejected the very same arguments Defendants advance here in cases where Dr. Nye served as an expert, finding his damages model can disaggregate confounding information despite the type of misrepresentations and corrective disclosures alleged. *See infra* at 3, 9-10.

In contrast, Defendants' expert report is deeply flawed as it overlooks key loss causation theories, misrepresentations and corrective disclosures alleged in the Second Amended Complaint ("SAC"), while making unwarranted assumptions and being riddled with inconsistencies.  Defendants also ignore that their core theory that Forescout's stock price was not inflated by sales pipeline misstatements after the merger was announced is inherently flawed because it improperly seeks to introduce a merits issue by attacking the relationship between misrepresentations made in 2019 and the corrective disclosures in 2020.  Courts have ruled that questions concerning the relationship

---

[1] Unless otherwise stated, all internal quotation marks and citations are omitted, all emphasis is added, and all terms not defined herein have the same meaning as the terms in the Amended Motion.

between a misstatement and a corrective disclosure are loss causation inquiries. At other times, the opposition attacks loss causation by discussing disaggregation, and ignoring that proof of loss causation, including the "disaggregation" of losses, is a merits issue premature at the class certification stage.

Finally, Defendants' attacks on the typicality of the Glazer Funds' claims and the Glazer Funds' adequacy fail as a matter of law and as a matter fact. There is no plausible conflict between the Plaintiffs and no cited case supports that there could be one. For all these reasons, Plaintiffs respectfully request the Court to certify the Class.

## ARGUMENT

### I.        Class-Wide Damages Can Easily Be Calculated

Dr. Nye's opening expert report explains that an out-of-pocket measure of damages based on an event study can differentiate between company-specific price movements caused by partial disclosures and other factors, such as the materialization of concealed risks. Dkt. No. 194-1 at ¶¶58-63. In *Affiliated Ute*, the Supreme Court held that this out-of-pocket measure is the "correct measure of damages" in securities fraud cases. 406 U.S. at 155. Similarly, in *In re Montage Tech. Grp. Ltd. Sec. Litig.*, this Court ruled that event studies like Dr. Nye's properly calculate damages on a class-wide basis. 2016 U.S. Dist. LEXIS 53734, at *38-39. Defendants' assertion that damages here cannot be calculated on a class-wide basis consistent with Plaintiffs' theory of liability (Opp. at 9, 13 & 15) fails because it relies on an interpretation of the Supreme Court's *Comcast* decision, which was subsequently rejected by the Ninth Circuit. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015).

Indeed, over the last decade, federal courts have routinely rejected the argument Defendants advance by ruling that the out-of-pocket measure of damages is consistent with *Comcast*, with damages easily measured on a class-wide basis regardless of the nature of the misrepresentations or the corrective disclosures alleged. *See, e.g.*, *Sheet Metal Workers Nat'l Pension Fund v. Aktiengesellschaft*, No. 20-cv-04737-RS, 2023 U.S. Dist. LEXIS 88178, at *22-24 (N.D. Cal. May 19, 2023) (concluding that an out-of-pocket damages model is flexible enough to control for investors' reaction to a merger and differentiate between corrective disclosures); *City of Sunrise Firefighters'*

*Pension Fund v. Oracle Corp.*, No. 18-cv-04844-BLF, 2022 U.S. Dist. LEXIS 83836, at *26-28 (N.D. Cal. May 9, 2022) (collecting cases in the District where securities classes were certified and identical arguments concerning damages were rejected); *In re Qualcomm Inc. Sec. Litig.*, No. 17cv121-JO-MSB, 2023 U.S. Dist. LEXIS 47016, at *53 (S.D. Cal. Mar. 20, 2023) (ruling that an event study is sufficient to isolate different misrepresentations and measure damages that stem from each); *In re Vale S.A. Sec. Litig.*, No. 19-CV-526-RJD-SJB, 2022 U.S. Dist. LEXIS 6433, at *68-71 (E.D.N.Y. Jan. 11, 2022) (ruling that a damages model does not need to address each misrepresentation and tie it to a corresponding disclosure). Attempts to challenge Dr. Nye's methodology have also repeatedly been rejected in this Circuit since *Comcast* was decided. *See, e.g.*, *Ferris v. Wynn Resorts Ltd.*, No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374, at *37-38 (D. Nev. Mar. 1, 2023); *Karinski v. Stamps.com, Inc.*, No. CV 19-1828-MWF (SKx), 2020 U.S. Dist. LEXIS 209256, at *21-22 (C.D. Cal. Nov. 9, 2020); *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 217-18 (C.D. Cal. 2019).

Here, Plaintiffs rely on two different loss causation theories: corrective disclosures and materialization of concealed risks. *See, e.g.*, SAC ¶¶90, 118, 174. Defendants challenge the former but offer no challenge to the latter. Federal courts repeatedly rule that damages can be calculated on a class-wide basis even if plaintiffs rely on the theory that concealed risks materialized upon negative news, as they did here when Advent refused to close the merger because of Forescout's poor financial performance, which encompassed an ongoing deterioration in the sales pipeline, SAC ¶¶69-71. *See, e.g.*, *Junge v. Geron Corp.*, No. C 20-00547-WHA, 2022 U.S. Dist. LEXIS 61962, at *24-27 (N.D. Cal. Apr. 2, 2022) (ruling that an event study can measure class-wide damages regardless of which theory of loss causation is invoked); *In re Vale S.A. Sec. Litig.*, 2022 U.S. Dist. LEXIS 6433, at *69-71 (similar). The Court can disregard Defendants' arguments and certify the Class for this reason alone.

Moreover, it is well-settled that misrepresentations relating to different undisclosed facts do not pose any bar to certification since *Comcast* requires only that the damages stem from the defendant's actions that give rise to liability. *See, e.g.*, *In re Apple Sec. Litig.*, No. 4:19-cv-2033-YGR, 2022 U.S. Dist. LEXIS 23771, at *33-34 (N.D. Cal. Feb. 4, 2022). In securities fraud cases, courts consistently find that there is only one theory of liability: "that defendants' misrepresentation[s]

inflated the stock price and corrective disclosures removed such inflation." *Id.* at \*33-34; *see also In re Bofi Holding, Inc. Sec. Litig.*, No. 3:15-cv-02324-GPC-KSC, 2021 U.S. Dist. LEXIS 159675, at \*20 (S.D. Cal. Aug. 23, 2021) (same). That is exactly what the SAC alleges (¶¶69, 71, 90, 118, 174, 176), and Defendants' effort to mischaracterize the SAC as relying on different unpled theories of liability (Opp. at 1, 2, 10, 13) is contrary to the requirement that the Court construe the SAC in a light most favorable to Plaintiffs' theory. *See, e.g.*, *Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497, at \*8 (N.D. Cal. Dec. 19, 2022). Accordingly, this discredited tactic has also been rejected. *See, e.g.*, *Erickson v. Jernigan Capital, Inc.*, No. 1:20-cv-09575 (JLR) (KHP), 2023 U.S. Dist. LEXIS 163288, at \*9 (S.D.N.Y. Sep. 14, 2023) (granting class certification after refusing to credit defendants' misinterpretation of plaintiffs' theory of liability); *In re Vale S.A. Sec. Litig.*, 2022 U.S. Dist. LEXIS 6433, at \*67-68 (similar and rejecting claim that a damages model must address different misrepresentations and corrective disclosures).

The two separate theories Defendants construct are, in any event, undermined by SAC allegations Defendants ignore. On November 6, 2019, Defendants blamed Forescout's performance abroad for its poor financial results, and the SAC alleges that this statement was false, in part, because of the illusory nature of Forescout's domestic sales pipeline in the United States. SAC ¶¶120, 122.C, 123.C. The Ninth Circuit's decision reinstated the claim that this statement violated securities laws. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 760, 781-82 (9th Cir. 2023). Forescout's announcement of poor financial results on May 11, 2020 also relates back to that misrepresentation. SAC ¶69. Defendants ask the Court to disregard those allegations and find, as a matter of fact, that all sales pipeline related inflation dissipated by no later than February 6, 2020, so the Class Period must end on that date. Opp. at 9-10. Yet, neither Defendants nor their expert bothered to address either the false statement made on November 6, 2019 or the May 11, 2020 corrective disclosure, because they cannot. *See* Ex. A (hereafter the "Jiang Dep.") at 56:5-78:20; 143:12-144:1. The Ninth Circuit has held generally that loss causation can be proven through an "infinite variety" of theories, and held specifically that an earnings miss, or the corrective event disclosed on May 11, 2020 here, is sufficient to prove loss causation "even if the market was unaware at the time that fraud had

concealed the miss." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018).

Equally meritless is Defendants' disguised loss causation argument concerning Forescout's subsequent disclosure of Advent's refusal to proceed with the merger. SAC ¶¶70-71. Defendants claim that there was no pipeline related inflation whatsoever between February 6, 2020 and May 11, 2020 because Forescout's stock price did not trade on undefined "fundamentals," but instead traded only on the expectations of the merger closing. Opp. at 11-12.[2] This represents an indirect way of asserting that there could be no event in 2020 that corrected Defendants' false statements made in 2019. But this hopeless argument is insufficient to avoid a certified Class in this Action because Plaintiffs are not required to prove loss causation at this stage. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (holding that courts should not "engage in free-ranging merits inquiries" at the certification stage). Indeed, the Supreme Court has held that loss causation is a question common to the Class, and thus does not present any individualized issues at the certification stage. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).[3] Defendants' *ipse dixit* assertion that the presence of inflation caused by the sales pipeline misstatements must be differentiated from merger related inflation is also insufficient to avoid a certified Class. That is because damages are subject to class-wide proof even if the inflation ribbon changes over the class period for whatever reasons. *See, e.g., In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS, 2017 U.S. Dist. LEXIS 72787, at *44 n.11 (C.D. Cal. May 11, 2017); *In re Signet Jewelers Ltd. Sec. Litig.*, Civ. No. 16-6728, 2019 U.S. Dist. LEXIS 114695, at *56-59 (S.D.N.Y. July 10, 2019).

In any event, Dr. Nye correctly understood the core theory of the case when he testified that Forescout's false revenue projections contributed to Advent making an offer, but after the

---

[2] In contrast, at her deposition, Dr. Jiang conceded that her Report acknowledges that analysts attributed Forescout's May 18, 2020 stock price decline to **both** the earnings miss of May 11, 2020 as well as Advent's decision not to close the merger. Jiang Dep. at 65:1-69:18; Nye Reply ¶¶35,42.

[3] Courts in this Circuit routinely refuse to address whether corrective statements affected stock prices and defer adjudication of loss causation to the merits stage. *See QuantumScape Corp.*, 2022 U.S. Dist. LEXIS 232497, at *42-43 (declining to again address loss causation arguments that, like here, were rejected at the pleading stage); *In re Apple Sec. Litig.*, 2022 U.S. Dist. LEXIS 23771, at *34-35 (refusing to test the fit between a false statement and a subsequent corrective disclosure); *In re Bofi Holding, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 159675, at *22-23 (same).

announcement of the merger Advent "gradually internally understood the truth" and refused to close the transaction after becoming frustrated with Forescout.  Ex. B, Nye Dep. at 85:3-86:19; *see also* SAC ¶10 (alleging that revenue goals were needed to make the company a more attractive acquisition candidate); SAC ¶54 (explaining that revenue increase was key to obtain a premium price); SAC ¶58 (quoting Advent's assertion that Forescout's financial performance "dropped off a cliff" compared to its past results and compared to peers despite the onset of the pandemic).

Defendants also misunderstand Dr. Nye's testimony about a change in the dynamics after a merger.  Opp. at 11.  Instead, as the Nye Reply explains, the likelihood of a merger closing turns on a company's financial performance, including the nature of its deals and the strength of its sales pipeline.  *See* Ex. C, Expert Reply Report of Zachary Nye, Ph.D., ¶¶9, 12-13, 41 ("Nye Reply").  Defendants and their expert refer to these as "fundamentals" of the business.  Opp. at 2, 11.  That is precisely what transpired.  Advent's letter identified Forescout's recent financial performance, *i.e.*, at a minimum, the poor financial results of May 11, 2020, as a reason for the termination.  SAC ¶70.A-C.  Defendants go off on a tangent concerning how Advent presumably did not rely on Forescout's statements about the sales pipeline.  Even assuming the truth of that unsubstantiated claim, Defendants admit Advent was provided with confidential and material nonpublic information about the deterioration of Forescout's sales pipeline that was unavailable to other investors (Opp. at 13), which Advent relied upon to terminate the merger agreement.  SAC ¶70.

Dr. Jiang's report changes nothing because she has never calculated damages, conducted an event study, or done a loss causation analysis in a securities case.  Jiang Dep. at 15:1-16:25, 22:12-20. Indeed, Dr. Jiang did not bother to: read any of the pleadings in the Delaware Litigation, *id.* at 26:23-27:14, speak to any person at Advent or Forescout, *id.* at 27:22-25, or review any of Advent's internal documents, *id.* at 31:16-33:17.  She admittedly does not know why Advent refused to close the merger. *Id.* at 26:13-32:20; Nye Reply ¶14. Instead, her report is based on assumptions made after reviewing the initial complaint of Christopher Sayce, a plaintiff who was never appointed lead, and whose

complaint was superseded by two other complaints.  Mr. Sayce does not control this litigation.[4]

Dr. Jiang admits that an announcement of financial results can constitute a corrective disclosure, *id.* at 48:3-49:13, but she failed to consider the relationship between the false statement made on November 6, 2019 and the May 11, 2020 announcement of Forescout's financial results in her analysis.  *Id.* at 56:5-78:20; 143:12-144:1.  Nonetheless, her own report and testimony doom Defendants even on the merits stage by conceding that, on May 18, 2020, the market reacted adversely to **both** the poor financial results announced on May 11, 2020 as well as Advent's decision not to close the merger.  *Id.* at 65:3-73:10.  That is sufficient to prove loss causation for the entire Class Period. *See, e.g.*, *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-58 (9th Cir. 2008) (recognizing that loss causation exists even if there is a temporal gap between when the falsity of a statement is first publicly revealed and a subsequent decline in stock price shows the market's reaction).

Dr. Jiang's conclusion that there could be no pipeline related inflation cannot be credited given the information she chose to ignore and her admission that Forescout's standalone value related to its "fundamentals" mattered if the merger did not close.  Jiang Dep. at 97:13-106:10.  Dr. Jiang's main thesis that Forescout's stock price was entirely driven by the likelihood of the merger closing ignores that the merger arbitrage spread narrows if the likelihood of the merger is high.  But here, the spread **widened** in early 2020.  Nye Reply ¶¶27-29.  Dr. Jiang attributed this fact to COVID-19—the only confounding factor identified in her report—despite admitting that she never conducted any analysis of COVID-19 on Forescout's stock price.  Jiang Dep. at 106:11-107:6; 113:4-114:8; Nye Reply ¶29. All of these flaws render Dr. Jiang's conclusions unreliable, and her opinions are unlikely to survive a *Daubert* challenge at a later stage of the litigation.

## II.    Defendants Have Failed to Demonstrate That Sub-Classes Are Appropriate

Defendants' contention that any damages sustained by the Class after February 2020 were not caused by sales pipeline statements ignores that there was no explicit admission that those statements

---

[4] During her deposition, Dr. Jiang incorrectly stated that Meitav was named in Mr. Sayce's initial complaint, and she did not know if Mr. Sayce played a role in controlling the litigation.  Jiang Dep. at 35:13-36:24.  This testimony is striking given that Defendants' "multiple theories" theory is entirely based upon Dr. Jiang's review and analysis of different complaints filed by different plaintiffs, which completely disregards the well-established principle that Plaintiffs' operative complaint or the SAC renders all other pleadings a nullity.

were false.  Opp. at 13-14. Defendants' own authorities created subclasses only when a defendant explicitly disclosed that investors should not rely upon its public statements.  *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 177787, at *25-26 (N.D. Cal. Dec. 22, 2016) (collecting cases).  That is because reliance on a statement after this explicit disclaimer is unreasonable as a matter of law.  *Id.*  To satisfy this standard, a defendant must show that there is no doubt whatsoever about the curative effect of a disclosure.  *See, e.g., In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 529 (N.D. Cal. 2009).  Courts regularly decline to create sub-classes where, as here, the truth was revealed through a series of partial disclosures as arguments about the impact of corrective disclosures are reserved for the merits stage.  *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 334 F.R.D. at 225 (citing *Amgen*, 568 U.S. at 482).

Here, Defendants never told investors not to rely on their statements.  In fact, Defendants admit that the Class relied on their misrepresentations given their concession that both the fraud-on-the-market and *Affiliated Ute* presumptions apply.  Defendants also admit that the SAC does not allege that the truth was completely revealed with an admission that Defendants knew about the illusory nature of deals and the pipeline.  Opp. at 10; *but see In re Signet Jewelers Ltd. Sec. Litig.*, 2019 U.S. Dist. LEXIS 114695, at *52-54 (limiting the class period only because the complaint admitted that the truth was fully revealed on a certain date).

No reason exists to create a sub-class that unnecessarily limits Defendants' true exposure in this case.[5]  Nor is there any reason to start the Class Period on May 10, 2019 when aftermarket purchasers, who bought shares after the May 9, 2019 press release was disclosed, relied on misrepresentations made on May 9, 2019.  Opp. at 12 n.4.

---

[5] Defendants' reliance *on In re BP P.L.C. Sec. Litig.* is misplaced. No. 10-md-2185, 2013 U.S. Dist. LEXIS 173303, at *54-56 (S.D. Tex. Dec. 6, 2013).  Here, all alleged misrepresentations "rest upon a fraud-on-the-market theory of reliance," a presumption that Defendants do not contest. *See Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226 YGR, 2016 U.S. Dist. LEXIS 34150, at *27 (N.D. Cal. Mar. 16, 2016) (distinguishing *BP* on the same grounds).  Moreover, *BP* is distinguishable because, unlike all the lead plaintiffs there, Meitav purchased Forescout stock throughout the Class Period and has standing to pursue damages for all alleged misrepresentations.  2013 U.S. Dist. LEXIS 173303, at *54-56 (creating subclasses because plaintiffs lacked standing to pursue all claims).

## III.    Disaggregation is Premature and Irrelevant to Class Certification

Defendants' argument regarding the disaggregation of damages is entirely dependent upon Dr. Jiang's assumption that the likelihood of the merger closing was entirely independent of Forescout's financial performance, including the strength of the sales pipeline. *See supra* at 7.  Disaggregation would come into play only if the jury rejected either that the pipeline-related statements were false or that the merger related statements were false.  A finding in favor of Plaintiffs on all elements of Section 10(b) would render disaggregation irrelevant.  Still, even assuming disaggregation ultimately proves necessary, it is still irrelevant now as disaggregation represents an inquiry into loss causation that cannot be analyzed at this stage.  *See, e.g.*, *Hatamian*, 2016 U.S. Dist. LEXIS 34150, at *27-28 (observing that disaggregation has nothing to do with a damages model); *Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 U.S. Dist. LEXIS 178674, at *17 (N.D. Cal. Oct. 27, 2017) (same); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 288 (N.D. Cal. 2020) (same).  Indeed, disaggregation itself is an issue common to the Class that predominates over individual issues.  *See Dougherty v. Esperion Therapeutics*, No. 16-10089, 2020 U.S. Dist. LEXIS 216515, at *19-20 (E.D. Mich. Nov. 19, 2020).

Dr. Nye did not disaggregate inflation, opine on loss causation, or calculate damages because Plaintiffs are not required to do these things at class certification.  *See, e.g.*, *In re Bofi Holding, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 159675, at *28-29 (noting that experts are not required to analyze confounding information at class certification); *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 651 (C.D. Cal. 2018) (emphasizing that plaintiffs have no burden to disaggregate confounding information at this stage).  Still, Dr. Nye's damages model has repeatedly been found sufficient to disaggregate the effects of confounding information even when defendants rely on the "multiple theories" theory to oppose class certification.  *See In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG), 2021 U.S. Dist. LEXIS 170310, at *42-43 (S.D.N.Y. Sep. 8, 2021) (finding Dr. Nye's model adequate, and stating that "[w]ere it otherwise, nearly every securities fraud class action would fail.").  Moreover, the disaggregation techniques Dr. Nye described at his deposition have repeatedly been found to be sound.  Ex. B, Nye Dep. at 74:25-77:3 (describing valuation tools including cashflow models); *see, e.g.*, *In re Vale S.A. Sec. Litig.*, 2022 U.S. Dist. LEXIS 6433, at *66-67 (ruling that a cashflow model

is capable of disaggregating confounding factors); *City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*, No. 17-cv-00554-YGR, 2018 U.S. Dist. LEXIS 175573, at *9 (N.D. Cal. Oct. 11, 2018) (explaining that criticism of the valuation tools "prematurely addresses the quantification and allocation of damages," at class certification).

Dr. Jiang's being unaware of a commonly accepted method for disaggregation also favors class certification because Defendants' failure to propose an alternative model shows that the details demanded are not required. *See Junge*, 2022 U.S. Dist. LEXIS 61962, at *27. Defendants' cases are not on point as in *Loritz v. Exide Techs.*, where the plaintiffs failed to present any damages model in support of certification. No. 2:13-CV-02607-SVW-E, 2015 U.S. Dist. LEXIS 100471, at *71 (C.D. Cal. July 21, 2015). The same court that decided *Loritz*, notably, upheld Dr. Nye's approach towards estimating company-specific movements in price relative to movements caused by other factors. *See In re Snap Inc. Sec. Litig.*, 334 F.R.D. at 216-17. And courts in this District have correctly declined to follow *BP*'s convoluted and flawed reasoning, even if *BP* were analogous. *See, e.g.*, *Junge*, 2022 U.S. Dist. LEXIS 61962, at *24-25; *Hatamian*, 2016 U.S. Dist. LEXIS 34150, at *27-28.

## IV. The Glazer Funds' Claims are Typical and They Are Adequate Class Representatives

Defendants contend that because the Glazer Funds are merger arbitrageurs who purchased Forescout stock with an expectation that the merger would be closed at $33.00 per share, their claims are not typical of the Class members' claims. Those arguments lack merit because: (a) all investors who purchased Forescout stock after the merger's announcement, relied, at least in part, on the merger closing; and (b) the Glazer Funds never disclaimed reliance on other factors affecting Forescout's stock price including the sales pipeline misrepresentations.

### A. The Glazer Funds' Claims Are Typical of Other Investors

Dr. Jiang defines merger arbitrageurs as investors taking on the "event risk" of a merger closing in exchange for the merger arbitrage spread. Jiang Report ¶42. That definition, however, encompasses all investors purchasing Forescout stock after February 6, 2020, because they all paid a premium over Forescout's unaffected price based upon that same event risk and, therefore, according to Dr. Jiang, are merger arbitrageurs. *Id.* ¶43. If all investors employed the same investment strategy, then it is axiomatic that the Glazer Funds' strategy is typical of the other investors.

*Jaroslawicz v. M&T Bank Corp.,* No. 15-00897-EJW, 2023 U.S. Dist. LEXIS 151050 (D. Del. Aug. 28, 2023), upon which Defendants rely, did not, as Defendants contend, "exclude[] all merger arbitrageurs from the class." Opp. at 20. Instead, *Jaroslawicz* ordered the parties to propose a definition excluding only those merger arbitrageurs who had hedged their long position in the issuer's stock by shorting the acquiror or through long put options. 2023 U.S. Dist. LEXIS 151050, at *120. The goal of that strategy was to profit from the spread relating to the merger involving a stock-for-stock exchange rather than from simply owning the stock in advance of the merger. *Id.* at *107-09. Those were "***very different investment strategies*** and would have been impacted differently than traditional shareholders by the factual circumstances of the case." *Id.* at *106-07.

Here, in contrast, the Glazer Funds held a long position in Forescout stock, which was not subject to any hedging strategy involving the securities of another company or Forescout options. Ex. D (Ort Dep.) at 86:13-16. The Glazer Funds' sale of call options with a $35.00 per share strike price in February 2020 enabled the Glazer Funds to earn a small profit or at the very worst break even if Forescout were acquired for $33.00 per share, while retaining some upside in the event of a topping bid. *See* Ex. E, Ort Decl. ¶6.

As a result, the Glazer Funds were impacted in the same manner and to the same degree as every investor who purchased Forescout stock after February 6, 2020. *See* Nye Reply ¶¶47-51. *Jaroslawicz* also represents a judicial outlier because it and *Kaufman v. Lawrence*, No. 74 Civ. 5081 (RLC), 1977 U.S. Dist. LEXIS 13206 (S.D.N.Y. Oct. 31, 1977), which Defendants also cite, appear to be the only decisions in the past 50 years treating any arbitrageur differently from other investors. *Kaufman* is also not on point because it did not hold "that the claims of [arbitrageurs and non-arbitrageurs] are atypical or antagonistic as a matter of law." *Greenfield v. Flying Diamond Oil Corp.*, 1981 U.S. Dist. LEXIS 11924, at *16-17 (S.D.N.Y. Mar. 30, 1981) (surveying relevant caselaw and finding no support for the proposition that arbitrageurs and non-arbitrageurs are atypical or antagonistic as a matter of law). Instead, *Kaufman* only excluded arbitrageurs who had previously opposed attempts to enjoin a transaction from participating in a settlement related to that transaction. 1977 U.S. Dist. LEXIS 13206, at *3-4. Here, no such considerations are present.

### B.    The Glazer Funds Relied Upon the Pipeline Representations

Defendants assert the Glazer Funds did not rely on pipeline representations because the Glazer Funds' working file "does not reference any of the alleged pipeline misstatements." Opp. at 19. That is incorrect as the working file, in fact, summarizes Defendants' November 6, 2019, sales pipeline statement (Defs. Ex. 11 at 29), and that Forescout's "2019 underperform[ance was] largely due to large deals not closing." Defs. Ex. 11 at 25. Defendants' contention that the Glazer Funds did not rely upon Forescout's fundamentals because they were driven solely by the likelihood that the merger would close (*see* Opp. at 18) also lacks merit because any investor including the Glazer Funds needed to consider what value Forescout's stock would have if the merger did not close. *See* Nye Reply ¶¶30-36. Indeed, Dr. Jiang agrees that Forescout's stock price represents a probability-weighted average of **both** the merger closing and Forescout's stand-alone value. Jiang Report ¶39; Ex. D (Ort Dep.) at 187:2-189:5 (testifying that the Glazer Funds developed a general idea of Forescout's fair value absent the merger). Forescout's market price after February 6, 2020, thus "impound[ed] all public information available to investors about the company (whether **related to the company's fundamentals** or the prospect of a takeover) quickly." Jiang Report ¶40.

Dr. Jiang also concedes that Forescout stock's price drop on May 18, 2020 included sales pipeline inflation. Jiang Report ¶¶28, 58 & n.77, 68 & n.102. This too defeats Defendants' argument because whether a disclosure was full or partial is a merits inquiry that cannot defeat certification. *See supra* at 7-8 (citing *In re Snap Inc. Sec. Litig.*, 334 F.R.D. at 225). Defendants' arguments are also meritless because the pipeline inflation affected the market's understanding of the probability of the merger closing as scheduled. Nye Reply ¶¶24-36, 41-43. Defendants offer only unsubstantiated assertions of a speculative conflict (Opp. at 19) that cannot prevent certification.[6]

---

[6] Defendants attempt to argue there was no price impact from their misrepresentations, because after the merger announcement, Forescout's stock price was only based on Advent's offer price. Opp. at 20 (citing Jiang Report ¶45). Their expert's report states that "many analysts commented that Forescout's stock price was no longer driven by the company's fundamentals" and not that she found that observation to be correct. Instead, Dr. Jiang's Report concedes Forescout's "fallback price" was part of its valuation. Jiang Report ¶39.

### C.     The Glazer Funds Are Not Subject to Unique Defenses

The Glazer Funds had "a price at which [they] were willing to buy and a price at which [they] were willing to sell" their Forescout stock.  Ex. D (Ort Dep.) at 131:13-132:7.  Defendants fail to explain what, if anything, is extraordinary about having a price at which one is willing to sell that would cause the Glazer Funds' claims to be atypical or to be inadequate as class representatives.[7]

Defendants also attack the Glazer Funds' reliance on their May 11, 2020 statements with misleading deposition excerpts.  In fact, the Glazer Funds reviewed Defendants' May 11, 2020 statement and understood it as an "affirmation that management knew of no reason that" the proposed merger was off schedule.  Ex. D (Ort Dep.) at 156:7-157:11; *see also* Ex. F (GlazerCapital_00107800) (May 13, 2020, message from Anthony Bauman of Glazer Capital to Mark Ort that Mr. Bauman "believe[s] FSCT would have to disclose if Advent was seeking to terminate.").  That three years after the fact the Glazer Funds cannot recall exactly how this information impacted their trading decisions (Opp. at 17-18) is irrelevant especially given that the Glazer Funds purchasing stock after the disclosure demonstrates their reliance on the assurances regarding the merger proceeding.  *See, e.g.*, *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997) (an imperfect recollection is not a unique defense).

Defendants dissemble, arguing that "[w]hat Glazer did rely on in making its investments is less clear, underscoring the unique defenses available in this case."  Opp. at 21.  However, their speculation about non-public conversations detailed in the Glazer Funds' working file (Opp. at 21-22) is rebutted by the accompanying Ort Declaration explaining that the Glazer Funds have a policy in place used with respect to the Forescout investment, of not receiving material non-public information.  *See* Ex. E (Ort Declaration); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-08585 (LJL), 2021 U.S. Dist. LEXIS 8840, at *29-30 (S.D.N.Y. Jan. 15, 2021) (crediting a similar declaration from a lead plaintiff

---

[7] Defendants' authorities are inapplicable. *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 582 (N.D. Cal. 2021), involved a proposed class representative who made a series of tweets demonstrating his understanding of the allegedly misleading statements. In *Rolex v. Emps. Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991), the lead plaintiff continued trading after learning of the alleged misstatements. Opp. at 21. This Court has declined to follow cases including *Rolex* which are against "the weight of authority[.]" *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009). In any event, the Glazer Funds only purchased Forescout stock again after a second merger agreement was executed. Ex. D (Ort Dep.) at 168:21-169:5.

and observing that defendants failed to present any proof to the contrary). In any event, "unique research and analysis" including private meetings with a company's chief executive officer during (and after) a putative class period "is too threadbare to defeat [a proposed class representative's] showing of typicality." *Luna v. Carbonite, Inc.*, No. 19-11662-LTS, 2023 U.S. Dist. LEXIS 121783, at *11 (D. Mass. July 14, 2023).[8] Discovery confirms the Glazer Funds' policy of not receiving MNPI was followed with respect to the conversations Defendants challenge. *See* Exs. G, H.

Defendants come nowhere close to establishing a unique defense that is likely to detriment the Class. Opp. at 22. Here, as in *Carbonite*, "there is no evidence that the [Glazer Funds] received any material non-public information about [Forescout] at any time; the only affirmative evidence[,]" the Work File that is of record, "establishes the contrary[.]" 2023 U.S. Dist. LEXIS 121783, at *11. There is no reason to deviate from the majority of courts that "consistently certify[] classes where there was no evidence that the named plaintiff received non-public information from a corporate officer." *Id.* at *11-12. In fact, Defendants are one step further removed here, advancing an argument that can always be made if speculation could suffice as proof: they might find evidence of a unique defense (Opp. at 22).[9]

## V.      There Is No Disabling Conflict Between Meitav and the Glazer Funds

The Court can ignore Defendants' allegations of conflicts if it considers their misleading arithmetic. Meitav bought thousands of Forescout shares between November 6, 2019 and May 11, 2020, dates of key misrepresentations and corrective disclosures that Defendants and their expert ignore. Dkt. No. 86-1. It is therefore not even remotely possible that Meitav could be motivated to pursue one misrepresentation over another. Both Plaintiffs are principally motivated in maintaining the Class Period as alleged to maximize the recovery of all Class members, including their own. *See In re LDK Solar Sec. Litig.*, 255 F.R.D. at 530 ("Common issues concerning [proving defendants' alleged fraud] predominate over any individual incentives particular class members may have to

---

[8] *Landry v. Price Waterhouse Chartered Accts.* does not support Defendants' argument as, there, the proposed class representative's testimony was "incredible" and admitted to non-reliance or receiving material non-public information. 123 F.R.D. 474, 476 & n.8 (S.D.N.Y. 1989).

[9] Defendants also ignore that the Court appointed Meitav to alleviate "any concerns regarding the Glazer Funds' investment strategy." Dkt. No. 115.

maximize their damages."). Defendants' arguments regarding the "multiple theories" theory and Dr. Nye's damages model are without merit. *See supra* at 6, 9. Speculation that disaggregation is required cannot defeat certification. *See* Section III.

Defendants ignore that the Glazer Funds purchased shares both before and after May 11, 2020, and suffered a loss upon the earnings miss announced on that day. *See* Dkt. No. 66-3. Defendants further ignore that "[t]he substantial majority of courts that have addressed the propriety of class certification based on the timing of the class representative's sale or purchases have found ... that the timing of the transactions does not necessarily create fundamentally divergent interests with the putative class." *In re Zillow Grp., Inc. Sec. Litig.*, No. C17-1387-JCC, 2020 U.S. Dist. LEXIS 201015, at *13 (W.D. Wash. Oct. 28, 2020). *Instead*, as the Ninth Circuit has noted, *this* "potential conflict is present in most prolonged classes involving a series of misrepresentations," and "any conflicting interests in tracing fluctuations in inflation during the class period" cannot bar a securities class from pursuing common interests that predominate. *Blackie v. Barrack*, 524 F.2d 891, 909-10 (9th Cir. 1975). In any event, mere speculation about conflicts and possible conflicts about individual damages cannot prevent certification. *See Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979); *In re LDK Solar Sec. Litig.*, 255 F.R.D. at 529-30. Were it otherwise, even a 24-hour class period could create potential conflicts, and prohibit all securities class actions. *See id*.

Putting aside the fact that courts in this Circuit have declined to follow *BP*, *see supra* at 10, that decision undermines Defendants' claims. 2013 U.S. Dist. LEXIS 173303, at *54-56. In *BP*, the district court found no adequacy concerns for a lead plaintiff who bought both before and after the explosion. *Id.* Meitav bought shares both before and after the merger announcement and the misrepresentation made on May 11, 2020. Similarly, the Glazer Funds purchased Forescout stock both before and after the earnings miss announced on May 11, 2020. There can be no plausible conflict under these facts. *See also* Nye Reply ¶¶41-43.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Plaintiffs' opening brief, the Class should be certified, Plaintiffs should be appointed Class representatives, and the undersigned should be appointed Co-Lead Counsel.

Dated, March 11, 2024

Respectfully submitted,

**POMERANTZ LLP**[10]

 /s/ Omar Jafri
Omar Jafri (admitted *pro hac vice*)
Patrick Dahlstrom (admitted *pro hac vice*)
Brian P. O'Connell (SBN 314318)
Genc Arifi (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel: (312) 377-1181
ojafri@pomlaw.com
pdahlstrom@pomlaw.com
boconnell@pomlaw.com
garifi@pomlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
(212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

*-and-*

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

/s/ Jeffrey S. Abraham
Jeffrey S. Abraham (admitted *pro hac vice*)
Michael Jason Klein (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
jabraham@aftlaw.com
mklein@aftlaw.com

Patrice L. Bishop
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
(310) 279-5125
pbishop@aftlaw.com

***Attorneys for Co-Lead Plaintiffs***

---

[10] Orly Guy and Eitan Lavie, who are Of Counsel to Pomerantz LLP and admitted to practice in Israel, also provide advice to Meitav in connection with this matter.

## CERTIFICATE OF SERVICE

I hereby certify that, on March 11, 2024, I served a copy of the foregoing to all attorneys of record for Defendants via email.

Executed on March 11, 2024 in Chicago, Illinois.

*/s/ Omar Jafri*
Omar Jafri