# Exhibit D

MARK ORT - CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CASE NO.: 3:20-cv-00076-SI

---------------------------------------X

CHRISTOPHER L. SAYCE, Individually

and on Behalf of All Others Similarly

Situated,

Plaintiffs,

v.

FORESCOUT TECHNOLOGIES, INC.,

MICHAEL DECESARE, and CHRISTOPHER HARMS,

Defendants.

---------------------------------------X

CONFIDENTIAL


30(b)(6) VIDEOTAPED DEPOSITION

OF GLAZER FUNDS

BY AND THROUGH

MARK ORT

Thursday, November 30, 2023


REPORTED BY:

LINDA J. GREENSTEIN, CSR

JOB NO. 6315776


PAGES 1 - 224


Page 1

MARK ORT - CONFIDENTIAL

with respect to Forescout securities; is that correct?

A.   I don't recall that you asked me that question.                                    13:58:05

Q.   I'll ask it now.  Did Glazer ever take any short position with respect to Forescout securities?

A.   I do not believe so.

Q.   Did Glazer hedge its Forescout     13:58:12 purchases in any way?

A.   I do not believe so.

Q.   Did Glazer ever make any trades by which it would benefit from Forescout common stock price decreasing?         13:58:24

A.   I do not believe so.

MR. GAIONI:  We'll mark Tab E. And this is an Excel file which I believe those in the room should have saved on the desktop of their             13:58:38 computers.

MR. STEELE:  It's going to be on Exhibit Share, the download.

MR. GAIONI:  Everyone can take their time to get it together.          13:58:48

Page 86

MARK ORT - CONFIDENTIAL

to $2 million; is that right?

A.    Yes.

Q.    Do you have a recollection of what the impetus was for those specific        15:14:21

purchases?

A.    I do not.

Q.    Going down a bit farther to row 52, the first sales by the Plaintiff Funds took place on March 31, 2020.        15:14:36

Do you see that?

A.    I see that.

Q.    What was the impetus for making those sales?

A.    I do not recall.        15:14:45

Q.    Do you see that there also appear to be four purchases made on the same day?

A.    I see that.

Q.    And do you have an understanding        15:14:56 of why those purchases were made?

A.    I can speculate but I don't -- I don't have a recollection.

Q.    What's your best understanding sitting here today of why that was done?        15:15:12

Page 131

MARK ORT - CONFIDENTIAL

MR. JAFRI:  Objection.

Form.

A.     My best is understanding is that

we probably established a price at which we     15:15:22

were willing to buy and a price at which we

were willing to sell.


**[END OF CITED TESTIMONY]**

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL

MARK ORT - CONFIDENTIAL

variance, which is negative 20.9; is that

correct?

    A.    Yes.

    Q.    Or negative 26.8 percent?            15:49:38

    A.    Yes.

    Q.    And did you review Forescout's

Q1 2020 earnings released at the time it

was issued on May 11, 2020?

    A.    I don't recall precisely when     15:49:54

but it would have been within that time

frame.

    Q.    Did your review of that earnings

release affect Glazer's decisions with

respect to its trading in Forescout stock?    15:50:04

    A.    I believe so.

    Q.    In what way?

    A.    I think we -- we took the

statement that the merger is expected to

close in fiscal year 2020 with -- as a --    15:50:24

as an affirmation that management knew of

no reason that that would not be the case.

    Q.    That statement you're referring

to, when was that statement made?

    A.    It appears from my notes that it    15:50:46

Page 156

MARK ORT - CONFIDENTIAL

was contained in the May 11th release.

    Q.   How did that statement affect your decision -- strike that.

       How did that statement affect   15:51:05 Glazer's decisions with respect to trading in Forescout stock?

    MR. ABRAHAM:  Objection as to form.  You can answer the question.

    A.   I don't recall how exactly that   15:51:14 impacted our trading decisions.

**[END OF CITED TESTIMONY]**

Page 157

CONFIDENTIAL

MARK ORT - CONFIDENTIAL

Glazer did not liquidate all of its Forescout holdings at that time, do you have any reason to believe that that's inaccurate?                                   16:03:17

          MR. ABRAHAM:  Objection as to
     form.

     A.    Are you asking me whether the --
whether Exhibit 19 is accurate or
inaccurate?                                        16:03:25

     Q.    That's correct.  You've
testified earlier that you have no reason
to doubt that Exhibit 19 is accurate; is
that right?

     A.    That's correct.                         16:03:34

          MR. ABRAHAM:  Objection as to
     form.  I think he testified there was
     no reason that it was "inaccurate."

          THE WITNESS:  Thank you.

BY MR. GAIONI:                                     16:03:45

     Q.    Exhibit 19 reflects at row 151
that Glazer made additional purchases of
Forescout securities beginning on
July 15th.  Do you see that?

     A.    Yes.                                    16:04:06

Page 168

MARK ORT - CONFIDENTIAL

Q.    What was the impetus for those purchases?

A.    I believe it was the amended transaction announcement.                16:04:16

Q.    Shifting gears, turning back to Exhibit 14, the deposition notice.

(Previously marked Glazer Exhibit 14 for identification shown to witness.)                16:04:37

BY MR. GAIONI:

Q.    We'll go again to the topics; simply, Topics 8 and 9, which appear at page 7.  Do you see Topics 8 and 9?

A.    Yes.                16:04:58

Q.    Are you prepared to testify with respect to those topics?

A.    Yes.

Q.    Glazer ultimately filed a motion seeking appointment as a lead plaintiff in                16:05:12 this action; is that right?

A.    I believe so.

Q.    Do you have a recollection of when that occurred?

A.    I do not.                16:05:22

Page 169

CONFIDENTIAL

MARK ORT - CONFIDENTIAL

MR. ABRAHAM:  My client, as I said during the break, my client wants to clarify his response to one of the series of the earlier questions, if 16:36:30 that's okay with you.

MR. GAIONI:  Go ahead.

THE WITNESS:  We were struggling before, whereby you were asking me about the attribution, the amount of 16:36:37 attribution or how much of the attribution of the decline on May 18th I would attribute to the re-rating of Forescout's stock price to its unaffected trading price, or the price 16:36:55 at which it would trade absent the merger.

And then you also introduced and asked me how much of the decline I would attribute to the fact that it no 16:37:05 -- we no longer could rely on management's statement from May 11th that the transaction was closing.

And I believe that it's incorrect to see them as two separate 16:37:19

Page 187

MARK ORT - CONFIDENTIAL

factors.  They're one and the same.

The transaction closes, you get $33.  If the transaction doesn't close, you get whatever the number is    16:37:27 that Forescout will trade at absent a transaction.

The probability that the deal will close then measures how much one would pay, perhaps, to get -- to get    16:37:37 the odds that the transaction closes.

I don't see how you can see those as two separate factors, and I was really struggling with that before and I think it's what created some of    16:37:49 the back and forth.

They're not -- in my mind they're not two separate factors. Will the deal close, will it not close.  If it does close, we get 33;    16:37:59 and if it doesn't close, the stock trades at its fair value.

BY MR. GAIONI:

Q.   Did you have a view of what the fair value of the stock was absent the    16:38:09

Page 188

CONFIDENTIAL

MARK ORT - CONFIDENTIAL

transaction?

    A.    I think we had a general idea of
what it would be, and I don't recall what
it was.                                    16:38:21

    Q.    And so -- strike that.
        Is it your view that any
information relating to the underlying
fundamentals of Forescout was revealed on
May 18th?                                  16:39:01

    A.    I don't recall -- I think you
asked me this before.  You asked me if
there was any information that came out on
May 18th relating to the fundamentals of
Forescout.  I believe I said that I don't  16:39:17
recall hearing any of that.

    Q.    If I'm understanding your
clarified testimony correctly, is it fair
to say that the stock price decline on
May 18th is solely attributable to the     16:39:38
correction of the alleged misrepresentation
regarding the likelihood of the deal
closing?

        MR. ABRAHAM:  Objection as to
    form.                                  16:39:49

Page 189