**ROPES & GRAY LLP**
Amy Jane Longo (CSB #198304)
10250 Constellation Boulevard
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
Amy.Longo@ropesgray.com

*Attorneys for Defendant*
*Forescout Technologies, Inc.*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FORESCOUT TECHNOLOGIES, INC., MICHAEL DECESARE, and CHRISTOPHER HARMS,<br><br>Defendants. | CASE NO.: 3:20-cv-00076-SI<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>Hearing Date: April 5, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Susan Illston |

DEFENDANTS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:20-cv-00076-SI

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................4

ARGUMENT .........................................................................................................................5

I.    PLAINTIFFS HAVE FAILED TO ESTABLISH PREDOMINANCE WHERE SUPPLEMENTAL DISCOVERY CONTRADICTS THEIR PURPORTED SINGLE THEORY OF LIABILITY.........................................................................................6

II.   DISCOVERY REVEALS GLAZER'S LACK OF RELIANCE ON THE ALLEGED MISSTATEMENTS ...................................................................................................10

    A.    Supplemental Discovery Confirms Glazer Did Not Believe Advent Was Misled by Alleged 2019 Sales Pipeline Misstatements .................................10

    B.    Supplemental Discovery Indicates that Glazer Did Not Rely on the Alleged Merger Misstatement ....................................................................................11

CONCLUSION.....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re American Intern. Group, Inc. Sec. Litig.*,
265 F.R.D. 157 (S.D.N.Y.2010) ............................................................................................... 9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ................................................................................................................. 6

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ............................................................................................................ 9, 11

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ................................................................................................ 6

*In re Graphics Processing Units Antitrust Litigation*,
253 F.R.D. 478 (N.D. Cal. 2008)............................................................................................. 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)................................................................................................................. 6

*Hanon v. Dataproducts Corp.*,
976 F.2d 497(9th Cir. 1992) ................................................................................................. 12

*Hayes v. MagnaChip Semiconductor Corp.*,
No. 14-cv-01160, 2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ......................................... 12

*Jaroslawicz v. M&T Bank Corp.*,
No. 15-00897, 2023 WL 5528723 (D. Del. Aug. 28, 2023)................................................... 10

*Jaroslawicz v. M&T Bank Corp.*,
No. 15-00897, 2024 WL 474846 (D. Del. Feb. 7, 2024)....................................................... 11

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ................................................................................................. 6

*ScripsAmerica, Inc. v Ironridge Global LLC*,
119 F. Supp. 3d 1213 (C.D. Cal.) ........................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................................................. 6

**Other Authorities**

Federal Rule of Civil Procedure 23 .................................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure 23, and the Court's Orders of January 16, 2024 (Dkt. 209) and February 16, 2024 (Dkt. 211), Defendants Forescout Technologies, Inc. ("Forescout" or "the Company"), Michael DeCesare, and Christopher Harms (together, "Defendants") respectfully submit this Sur-Reply in further support of their Opposition to the Motion for Class Certification and Appointment of Class Representatives and Class Counsel (the "Opposition" or "Opp." to the "Motion" or "Br.") filed by Lead Plaintiffs Meitav Mutual Funds Ltd. (f/k/a Meitav Tachlit Mutual Funds Ltd.) ("Meitav") and Glazer Capital Management, L.P., Glazer Enhanced Fund, L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd., and Highmark Limited, in respect of its Segregated Account Highmark Multi-Strategy 2 (collectively, "Glazer," and together with Meitav, "Plaintiffs"). *See* Dkt. 193, 202.

### STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

(1)  Whether due to Plaintiffs' failure to establish that damages in this matter can be measured on a class-wide basis they are unable to satisfy Rule 23(b)(3)'s predominance requirement; and

(2)  Whether Plaintiffs have failed to establish that they are typical and/or adequate class representatives under Rule 23(a).

### INTRODUCTION

The supplemental discovery provided by Glazer in response to the Court's January 16, 2024 Order (Dkt. 209) only confirms that Plaintiffs cannot establish Rule 23(b)(3) predominance, and that Glazer is subject to unique defenses that render it atypical and thus inadequate as a class representative under Rule 23(a).

In their Motion, Plaintiffs argued obliquely that the Court should certify a unified, continuous class from May 9, 2019 through May 15, 2020, because the whole class purportedly suffered harm from the "same misrepresentations," under a single theory of liability.  Br. 8:6–7, 9:2–4.  Nowhere, however, did Plaintiffs' Motion, or the expert report of Dr. Zachary Nye (the "Nye Report") that accompanied it, explain the contours of that "single theory."  In particular, Plaintiffs failed to explain how alleged misstatements about Forescout's sales pipeline in 2019 (the "Sales Pipeline" theory) had

any relevance or connection to the unrelated May 11, 2020 statement that Forescout "look[ed] forward to completing [its] pending transaction with Advent" (the "Merger" theory). That disconnect is particularly significant given the structural change in Forescout's stock price that was brought about by the February 6, 2020 Merger announcement. As Defendants' expert Professor Wei Jiang has written and testified, after February 6, 2020, Forescout's stock price traded on the market's expectations about whether the Merger would close, not on expectations regarding Forescout's past or future sales pipeline.

In their Opposition, Defendants described how the disconnect between Plaintiffs' two theories prevents them from articulating a common class-wide damages methodology, as required to show Rule 23(b)(3) predominance. First, Plaintiffs' proposed continuous class includes a group of purchasers who suffered no alleged artificial price inflation—namely, those who purchased after February 6, 2020 (when, at the absolute latest, any purported inflation from the alleged 2019 Sales Pipeline misstatements no longer existed), but before May 11, 2020 (when the only alleged Merger-related misstatement occurred). Second, even if Plaintiffs could show (counterfactually) that purported Sales Pipeline inflation in 2019 continued beyond February 6, 2020, they have not articulated (and could not articulate) a methodology for disaggregating that purported 2019 Sales Pipeline inflation from alleged Merger inflation in connection with Forescout's May 18, 2020 stock price decline.

In their Reply brief and a rebuttal expert report from Dr. Nye (the "Nye Rebuttal Report"), Plaintiffs have finally attempted to articulate a connection between their two disparate theories of liability. Specifically, Plaintiffs now claim that the alleged 2019 Sales Pipeline misstatements purportedly "lured Advent to the negotiating table" to consider a potential acquisition of Forescout. Jafri Decl. Ex. C ¶ 15. During that negotiating process, Plaintiffs assert, Forescout allegedly provided Advent with misleading revenue forecasts, inducing Advent to submit a purchase offer at an inflated price of $33.00 per share. *See id.* ¶¶ 11 ("Defendants prepared [baseless] forecasts for potential acquirers anticipating even higher revenue growth in 2020"), 32 ("the alleged misstatements and omissions regarding Forescout's sales pipeline and revenue projections directly contributed to

Advent's take-private offer at $33 per share"). The effect of these alleged misrepresentations to Advent, Plaintiffs argue, was to somehow perpetuate the alleged 2019 Sales Pipeline inflation through the Merger price until the May 18, 2020 disclosure that Advent would not close at $33.00 per share. *See id.* ¶¶ 11–15; Reply at 5–6.

This daisy-chain causation theory is legally and logically flawed. Moreover, as the Court-ordered supplemental discovery from Glazer makes clear, it is inconsistent with the contemporaneous views of Glazer itself. Glazer's document production and the deposition testimony of its corporate designee, Mark Ort, expressly reject the idea that Advent—a sophisticated private equity fund that had access to voluminous non-public information regarding Forescout's operations through the transaction diligence process—would have been misled by any projections Forescout provided. In other words, as Glazer correctly recognized, even if Forescout's stock price had been inflated by the alleged 2019 Sales Pipeline misstatements, there is no reason to conclude that Advent's offer price (informed by non-public diligence) would have perpetuated any such inflation going forward into 2020. The views articulated by Glazer in the supplemental discovery thus run directly counter to Plaintiffs' proposed unified theory of liability. Instead, they support the conclusion of Defendants' expert, Prof. Jiang, that there was no Sales Pipeline inflation, at the absolute minimum, for the February 6, 2020 to May 11, 2020 time period.

Plaintiffs thus cannot articulate a class-wide damages methodology for the period from February 6, 2020, when the Merger was announced, to May 11, 2020, when the alleged Merger misstatement was made. Accordingly, and for all the additional reasons stated in Defendants' Opposition,[1] class certification should be denied or, at a minimum, the proposed class must be

---

[1] Consistent with the Court's February 16, 2024 Order (the "Order"), Defendants restrict their arguments in this Sur-reply to "new issues raised by [Glazer's] supplemental discovery." Dkt. 211 at 1. By not addressing any of the other legal arguments or factual contentions in the Reply, Defendants do not concede any such matters. For the avoidance of doubt, Defendants reject the remainder of the arguments raised in the Reply, including Plaintiffs' extensive mischaracterizations of Defendants' Opposition and of Prof. Jiang's report and testimony. Defendants respectfully refer the Court to their Opposition for a full statement of Defendants' positions, and to the parties' underlying exhibits for an accurate statement of their contents.

DEFENDANTS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:20-cv-00076-SI

subdivided into two sub-classes of purchasers from (i) May 9, 2019 to February 6, 2020 and (ii) May 11 through May 15, 2020.

Glazer's supplemental discovery separately belies its claim to be a typical and adequate class representative because: (i) Glazer did not believe that Advent had been misled by any supposedly deceptive revenue projections, thus contradicting Plaintiffs' new "single" theory of liability; and (ii) Forescout's challenged May 11, 2020 statement did not reassure Glazer that Forescout's merger with Advent was likely to close. To the contrary, as Glazer's corporate designee testified in his supplemental deposition, "tell-tale signs" of risk to the Merger were "clearly. . . there purely from the public domain" before the alleged corrective disclosure on May 18, 2020. Ex. 1 378:16 – 378:21.[2] Glazer's supplemental production and testimony thus confirm that it is atypical and inadequate to represent the proposed class.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2023, the Parties filed a Joint Statement Regarding Discovery Disputes in which Defendants requested that the Court order Glazer to produce (i) emails and Bloomberg messages for specified custodians hitting on the terms "Forescout" or "FSCT" from January 1, 2020 through May 20, 2020, (ii) notes or other electronic or hard copy files of Mr. Ort, Paul Glazer, or Anthony Baumann related to Forescout; and (iii) centrally maintained investor communications and materials reviewed by Glazer's investment team that relate to Glazer's Forescout investment. Dkt. 200 at 2. As of that filing, Glazer had produced only twenty-two documents, none of them internal communications. Decl. ¶ 13. Defendants had previously deposed Glazer's corporate designee, Mark Ort, on November 30, 2023, but had held that deposition open in light of Glazer's deficient document productions as of that date. In the December 13 Joint Statement, Defendants asked the Court to authorize a further deposition of Mr. Ort once Glazer had completed its production, and to grant Defendants leave to file this Sur-Reply. Dkt. 200 at 4.

On January 16, 2024, this Court granted Defendants' request, ordering Glazer to produce the

---

[2] Citations to "Ex." refer to the exhibits attached to the Declaration of Amy Jane Longo in support of this Sur-Reply. Citations to "Decl. ¶" refer to paragraphs of the same.

documents sought by Defendants and setting a date for substantial completion of February 13, 2024. Dkt. 209 at 5–6. Thereafter, Glazer made three productions. First, on February 2, 2024, Glazer produced 18,963 documents consisting of (i) emails and attachments and Bloomberg messages from February 6, 2020 through May 16, 2020 and (ii) ███████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ Decl. ¶ 16. After Defendants noted certain gaps in Glazer's production as compared to the scope of the Court's Order, Glazer then made further productions on March 4 and March 7, 2024 of 2,756 additional documents, including various centralized documents, as well as emails and Bloomberg messages from the periods January 1, 2020 through February 5, 2020 and May 17 through May 20, 2020. Decl. ¶ 17–18. Glazer's supplemental production evidenced, among other things: █

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Decl. ¶ 19.

On March 11, 2024, Defendants took the continued deposition of Mr. Ort, Glazer's corporate designee. *See* Ex. 1. This testimony confirmed various facts that had been disclosed in Glazer's supplemental discovery. Of particular relevance here is Mr. Ort's testimony that: (i) Glazer believed that "Advent [was] fully capable of conducting due diligence on their own," and would "treat any projections they receive from Forescout or the management of a target company as an optimistic case projection" (Ex. 1 at 308:20–309:1); and (ii) that "clearly the tell-tale signs were there purely from the public domain that somebody knew something," *i.e.* that the Merger was at risk prior to the Merger Termination Announcement (*id.* at 378:16–378:21). Later that day on March 11, 2024, Plaintiffs filed their Reply in support of their Motion.

## **ARGUMENT**

As set forth in Defendants' Opposition (Opp. 8:17–9:1), Plaintiffs have failed to present a viable method for determining damages on a class-wide basis among two distinct groups of Forescout

shareholders, namely those who purchased shares between (i) May 9, 2019 to February 6, 2020, and (ii) May 11 to May 15, 2020. As a result, Plaintiffs have not shown that common issues predominate under Rule 23(b)(3). *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).[3] Glazer's supplemental discovery only confirms this conclusion, as its document production and deposition testimony both contradict the purported unitary theory of liability outlined in the Reply and the Nye Rebuttal Report. Furthermore, Glazer's supplemental discovery has confirmed that, at a minimum, it cannot satisfy adequacy or typicality, because it is subject to unique defenses that it did not rely on either the alleged 2019 Sales Pipeline misstatements or the alleged May 11, 2020 Merger misstatement.

## I.    PLAINTIFFS HAVE FAILED TO ESTABLISH PREDOMINANCE WHERE SUPPLEMENTAL DISCOVERY CONTRADICTS THEIR PURPORTED SINGLE THEORY OF LIABILITY

In their Reply, Plaintiffs claim that under a patched-together, purportedly "**single** theory of liability," inflation from the alleged 2019 Sales Pipeline misstatements continued beyond the February 6, 2020 Merger announcement because "Forescout's false revenue projections contributed to Advent making an offer." Reply 5:21–6:6 (emphasis in original); Jafri Decl. Ex. C ¶ 9. As Plaintiffs' expert, Dr. Nye, hypothesizes in his Rebuttal Report, "the 'Alleged 2019 Sales Pipeline Misstatements' are what lured Advent to the negotiating table in the first place." Jafri Decl. Ex. C ¶ 15. Once those negotiations were underway, Plaintiffs claim, "[k]ey to Defendants' effort to obtain

[3] Plaintiffs' contention that Defendants' Opposition effectively argues loss causation is without merit. None of Plaintiffs' cases address the circumstance here, where Plaintiffs have attempted to stitch together two disparate theories of liability with a speculative claim that is contrary to their own professed contemporaneous beliefs. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013) (granting class certification where Plaintiffs alleged single, unified theory of liability based on misrepresentations regarding drug development); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018) (same, where Plaintiffs alleged single theory of liability based on misrepresentations regarding concealed product defects); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056 (9th Cir. 2008) (same, where Plaintiffs alleged single theory of liability regarding unlawful marketing practices). Plaintiffs cannot avoid a "rigorous analysis" of their damages methodology at class certification by arguing that this analysis touches on the merits. *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478, 498 n.3 (N.D. Cal. 2008) (noting concurrence among circuits "clearly in favor of a . . . rigorous analysis of class certification, even if this analysis intersects with merits issues") (citation omitted).

a premium price was falsely portraying the Company as poised for revenue growth, and Defendants prepared baseless forecasts for potential acquirers anticipating even higher revenue growth in 2020." *Id.* ¶ 11; *see also* SAC ¶ 56 ("the true situation at the Company was substantially more dire with internal Illustrative Guidance prepared in January 2020 reflecting projected 2020 revenue of $355 million – a full 10% below the projections provided to potential acquirers"). Plaintiffs claim that Advent's $33.00 per share price had the effect of perpetuating the alleged 2019 Sales Pipeline inflation in the stock price through the end of the class period, when Forescout disclosed on May 18, 2020 that Advent would not be closing the transaction as planned. Jafri Decl. Ex. C ¶ 12. Under this purported "single" theory, Plaintiffs argue that the May 11 Merger Misstatement, in turn, merely extended the original 2019 Sales Pipeline inflation by allegedly concealing "that Forescout's deteriorating sales pipeline and adverse demand trends had put the planned acquisition in serious jeopardy." *Id.* Plaintiffs assert that the May 18 announcement served as a corrective disclosure for both categories of alleged misstatements because Advent's reasons for backing out of the deal purportedly were "precisely the same factors Lead Plaintiffs allege had been concealed throughout the Class Period via Defendants' 'Alleged 2019 Sales Pipeline Misstatements,'" including Forescout's actual recent financial performance and expected future financial performance. *Id.*

Plaintiffs' claim that Advent was induced to make an inflated offer by the alleged Sales Pipeline misstatements and by internal projections provided during the course of negotiations is contradicted by Glazer's supplemental discovery, and inconsistent with the proposed class-wide damages methodology that Plaintiffs advance.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████    When asked to clarify what he meant by these comments, Mr. Ort testified:

> *I believe that what I meant was that Advent is fully capable of conducting due diligence on their own and that they need to treat any projections they receive from Forescout or the management of a target company as an optimistic case projection.*

Ex. 1 308:20–309:1.  Mr. Ort went on to explain that, in the Merger Agreement for the transaction, Advent had disclaimed reliance on any financial projections provided by Forescout and, accordingly, any claim that those projections were misleading could not, in any event, have provided a basis for Advent to walk away from the deal.  Ex. 1 at 307:4–308:12; ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

DEFENDANTS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:20-cv-00076-SI

███████████████████████████████████████████

As the supplemental Glazer discovery illustrates, there is no basis to conclude that Advent's offer somehow perpetuated the alleged 2019 Sales Pipeline inflation beyond February 6, 2020. Nor, in any event, could a damages methodology based on alleged misrepresentations to Advent support class certification. In order to invoke the presumption of reliance under a fraud-on-the-market theory, Plaintiffs must show that the misrepresentation in question was publicly known. *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988) ("[T]he market price of shares traded on well-developed markets reflects all **publicly available** information, and, hence, any material misrepresentations.") (emphasis added); *ScripsAmerica, Inc. v Ironridge Global LLC,* 119 F. Supp. 3d 1213, 1251 (C.D. Cal.) (citing *In re American Intern. Group, Inc. Sec. Litig.*, 265 F.R.D. 157, 175 (S.D.N.Y.2010) (denying class certification where complaint "nowhere allege[d] that the [Defendants] made a *public misstatement*, . . . nor do Lead Plaintiffs provide evidence of any such misstatement" and thereby fraud-on-the-market presumption did not apply (emphasis added)). The alleged misrepresentations here, however, hinge on purportedly misleading non-public projections provided to Advent in the context of *confidential diligence provided to a private acquiror*. Plaintiffs' theory is not fraud-on-the-market, but "fraud-on-Advent." Under these circumstances, even assuming for purposes of argument that any 2019 Sales Pipeline inflation existed in the first place, Plaintiffs have nothing but bare speculation to suggest that Advent's $33.00 per share price reflected the continuation of any such inflation after February 6, 2020. Indeed, other potential bidders that also had access to non-public information drew different conclusions as to valuation, with one stating that, after conducting diligence, it "was not going to make a revised acquisition proposal because its updated view of valuation for Forescout would likely be below $30.00 per share." Ex. 2 (Proxy) at 43. Plaintiffs do not and cannot offer any explanation for why $33.00 per share reflects a continuation of the alleged 2019 Sales Pipeline Inflation, rather than any other value.

Accordingly, Glazer's supplemental discovery only confirms what was outlined in Defendants' Opposition and in the Jiang Report: after the Merger announcement February 6, 2020, Forescout's share price was driven by the market's assessment of the likelihood that the Merger

would close at the announced share price, and there was no Sales Pipeline inflation, at the absolute minimum, for the February 6, 2020 to May 11, 2020 time period.  Because Plaintiffs' proposed class-wide damages methodology is incapable of accounting for this structural change in Forescout's stock price, Plaintiffs fail to establish predominance.

## II.   DISCOVERY REVEALS GLAZER'S LACK OF RELIANCE ON THE ALLEGED MISSTATEMENTS

In addition to the structural problems with Plaintiffs' class-wide damages methodology outlined above (and all the further deficiencies identified in Defendants' Opposition), Glazer's supplemental discovery suggests that Glazer did not trade in Forescout securities in reliance on either the alleged 2019 Sales Pipeline misstatements or the alleged Merger misstatement, rendering it atypical and inadequate as a class representative.

### A.   Supplemental Discovery Confirms Glazer Did Not Believe Advent Was Misled by Alleged 2019 Sales Pipeline Misstatements

As discussed above in Section I, Glazer's supplemental discovery makes clear that even if Plaintiffs' proposed unitary theory of liability were viable (and it is not), Glazer itself did not subscribe to it. Instead, the record makes clear that Glazer, as a merger arbitrageur, did not invest in Forescout based on any assessment of its fundamentals, but rather based on its views about the likelihood that the Merger would close at the announced price of $33.00 per share.[4]  For all

---

[4] In the interests of completeness, Defendants note the recent subsequent history of *Jaroslawicz v. M&T Bank Corp.*, No. 15-00897, 2023 WL 5528723 (D. Del. Aug. 28, 2023), which was cited in Defendants' Opposition at 19:23–20:7 and in Plaintiffs' Reply at 11:1–9.  The court in that case recently vacated the opinion cited by the Parties and issued a superseding order deciding the class

the reasons outlined in Defendants' Opposition (Opp. at 18–20), Glazer is therefore atypical and inadequate at least as to the period before May 11, 2020.

### B. Supplemental Discovery Indicates that Glazer Did Not Rely on the Alleged Merger Misstatement

Glazer's supplemental discovery also strongly suggests that Glazer did not rely on the alleged May 11 Merger misstatement. When asked to explain his comments at his supplemental deposition, however, Mr. Ort stated, "[I]n retrospect, *clearly the tell-tale signs were there purely from the public domain* that somebody knew something, and I was taking responsibility for not being more cautious and I guess heeding that warning." Ex. 1 378:16–378:21. In other words, Mr. Ort admitted that Glazer did not understand the alleged Merger misstatement to mean that there was no risk to the Merger closing; instead, Glazer viewed the public information in the market as raising doubts prior to May 18.

The Supreme Court has stated that "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption" that the plaintiff reasonably relied on alleged misrepresentations. *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988) (emphasis added). For example, plaintiffs cannot reasonably rely on alleged misrepresentations when "despite [an] allegedly fraudulent attempt to manipulate market price, news of the [allegedly concealed information]

---

certification motion on other grounds. *Jaroslawicz v. M&T Bank Corp.*, No. 15-00897, 2024 WL 474846 (D. Del. Feb. 7, 2024).

credibly entered the market and dissipated the effects of the misstatements." *See id.* at 248–49; *see also Hayes v. MagnaChip Semiconductor Corp.,* No. 14-cv-01160, 2016 WL 7406418, at *7–9 (N.D. Cal. Dec. 22, 2016) (limiting temporal extent of class where "subsequent disclosure made continued reliance on those financial reports unreasonable"). In ruling on class certification, the Court need not reach whether the "tell-tale signs" identified by Glazer constituted "truth-on-the-market." For present purposes, the mere fact that Glazer believed that those signs existed subjects it to the unique defense that, as a sophisticated merger arbitrageur that conducted extensive research, discussing the Merger and Forescout's business with former insiders and a range of analysts, it did not in fact rely on the alleged May 11 Merger misstatement. Those unique defenses render it inadequate and atypical under Rule 23(a). *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.").

## CONCLUSION

For the foregoing reasons and those outlined in Defendants' Opposition, Plaintiffs' Class Certification Motion should be denied in its entirety. Alternatively, Defendants request that the Court certify only the following sub-classes: (1) May 10, 2019 to, at the latest, February 6, 2020; and (2) May 11, 2020 to May 15, 2020.

Dated:  March 22, 2024

**ROPES & GRAY LLP**

_/s/ Amy Jane Longo_
Amy Jane Longo
Mark S. Gaioni
10250 Constellation Boulevard
Los Angeles, CA 90067
Tel: (310) 975-3300
amy.longo@ropesgray.com
mark.gaioni@ropesgray.com

Anne Johnson Palmer
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
anne.johnsonpalmer@ropesgray.com

Peter L. Welsh (admitted _pro hac vice_)
C. Thomas Brown (admitted _pro hac vice_)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
peter.welsh@ropesgray.com
thomas.brown@ropesgray.com

Charles D. Zagnoli (admitted _pro hac vice_)
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Tel: (312) 845-1200
charles.zagnoli@ropesgray.com

**_Attorneys for Defendant Forescout
Technologies, Inc._**

**WILSON SONSINI GOODRICH &
ROSATI, Professional Corporation**

_/s/ Diane M. Walters_
Ignacio E. Salceda
Diane M. Walters
Rebecca L. Epstein
650 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 493-9300
isaceda@wsgr.com
dwalters@wsgr.com
bepstein@wsgr.com

**_Attorneys for Defendants Michael DeCesare
and Christopher Harms_**

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Amy Jane Longo, am the ECF User whose identification and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated: March 22, 2024                                    _/s/ Amy Jane Longo_____
                                                                          Amy Jane Longo