1

**ABRAHAM, FRUCHTER**
   **& TWERSKY, LLP**

2

Patrice L. Bishop (SBN 182256)

3

9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210

4

Telephone: (310) 279-5125

5

Email: pbishop@aftlaw.com

6

*Co-Lead Counsel for Lead Plaintiffs*
*and the Proposed Class*

7

*[Additional Counsel on Signature Page]*

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN FRANCISCO DIVISION

12

13

CHRISTOPHER L. SAYCE, Individually and
on Behalf of All Others Similarly Situated,

14

Plaintiff,

15

v.

16

FORESCOUT TECHNOLOGIES, INC., *et.*
*al.*

17

18

Defendants.

| | |
|---|---|
| CASE NO.: 20-CV-00076-SI | |
| CLASS ACTION | |
| **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** | |
| Judge: | Hon. Susan Illston |
| Courtroom: | 1 – 17th Floor |
| Date: | August 22, 2025 |
| Time: | 10:00 am |
| Trial Date: | None set |

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

    I.      PRELIMINARY STATEMENT ................................................................ 2

    II.     SUMMARY OF THE LITIGATION ....................................................... 3

          A.    Procedural History.......................................................................... 3

          B.    Summary of Plaintiffs' Allegations.............................................. 5

          C.    Defendants' Denial of Wrongdoing ............................................. 7

    III.    THE SETTLEMENT TERMS .................................................................. 8

    IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER ................. 9

          A.    Plaintiffs and Class Counsel Have Adequately Represented the Class ................................................................................................ 11

          B.    The Proposed Settlement Is the Product of Arm's-Length Negotiations by Informed Counsel ............................................. 12

          C.    The Settlement Provides Fair, Reasonable and Adequate Relief to the Class .................................................................................... 13

               1.    The Strength of Plaintiffs' Case and Risks of Further Litigation Support Preliminary Approval ..................................... 13

               2.    The Amount of the Settlement Favors Preliminary Approval ...... 14

          D.    The Remaining *Churchill* and Rule 23(e)(2) Factors Support Approval.......................................................................................... 16

               1.    Class Counsel Was Sufficiently Informed when Evaluating the Settlement ................................................................................. 16

               2.    Counsel's Experience and Views Support Preliminary Approval.......................................................................................... 16

               3.    The Terms of the Proposed Award of Attorney's Fees Are Reasonable ..................................................................................... 17

               4.    The Only Supplemental Agreement Has Been Identified............. 18

               5.    The Proposed Settlement Does Not Unjustly Favor any Class Member, and the Proposed Plan of Allocation Is Fair and Reasonable ..................................................................................... 18

E.    The Proposed Settlement and Related Submissions are Consistent with the Northern District of California Class Action Guidelines ............ 19

V.    BECAUSE ALL CLASS MEMBERS WERE GIVEN A FULL AND FAIR OPPORTUNITY TO OPT OUT OF THE CLASS, AN EXCLUSIONARY PROCESS IS NOT INCLUDED IN CONJUNCTION WITH THE SETTLEMENT ................................................................................... 22

VI.    THE NOTICE AND NOTICE PLAN WARRANT APPROVAL ........................ 22

VII.    PROPOSED SCHEDULE OF EVENTS ................................................. 25

VIII.    CONCLUSION .............................................................................. 25

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Aguilar Auto Repair, Inc. & Central Coast Tobacco Co., LLC v. Wells Fargo Bank, N.A.*,
No. 23-CV-06265-LJC, 2025 WL 1753509 (N.D. Cal. May 23, 2025) .......................... 18

4

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009)........................................................................................ 13

5

6

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015)........................................................................................ 9

7

*Betorina v. Randstad US, L.P.*,
No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) .......................... 13

8

9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)........................................................................................ 10

10

*Cotter v. Lyft, Inc.*,
176 F. Supp. 3d 930 (N.D. Cal. 2016) .......................................................................... 14

11

12

*Cottle v. Plaid Inc.*,
340 F.R.D. 356 (N.D. Cal. 2021) .................................................................................. 10

13

*Davis v. Yelp, Inc.*,
No. 18-CV-00400-EMC, 2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) .......................... 18

14

15

*Dunakin v. Quigley*,
No. 2:14-cv-567-JLR, 2017 WL 123011 (W.D. Wash. Jan. 10, 2017) .......................... 12

16

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................................... 19

17

18

*Flynn v. Sientra, Inc.*,
No. CV 15-07548 SJO (RAOx), 2017 WL 11139918 (C.D. Cal. Jan. 23, 2017) ............ 12

19

*Glazer Capital Mgmt., L.P. v. Forescout Tech., Inc.*,
63 F.4th 747 (9th Cir. 2023)..................................................................................... 3, 4

20

21

*Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020).................................................................................. 11

22

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018).............................. 9

23

24

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................... 11, 13

25

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010)..................................................................................... 9, 20

26

*Hunt v. Bloom Energy*,
No. 19-cv-02935-HSG, 2023 WL 7167118 (N.D. Cal. Oct. 31, 2023) .......................... 16

27

28

*IBEW Local 697 v. Int'l Game Tech.*,
    No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)............ 15

*Ikuseghan v. Multicare Health Sys.*,
    No. 3:14-cv-5539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ...................... 14

*In re Alta Mesa Resources, Inc. Sec. Litig.*,
    No. 4:19-CV-00957, 2025 WL 1901350 (S.D. Tex. May 6, 2025) ................................. 22

*In re Aqua Metals, Inc. Sec. Litig.*,
    No. 17-cv-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ............................ 15

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .... 15, 19

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)................................................................................ 10, 13

*In re Celera Corp. Sec. Litig.*,
    No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)...................... 14

*In re Charles Schwab Corp. Sec. Litig.*,
    No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) .......................... 13

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ............... 12, 19, 25

*In re Heritage Bond Litig.*,
    No. 02–ML–1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................... 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019)........................................................................................ 9

*In re Lyft, Inc. Sec. Litig.*,
    No. 19-cv-02690-HSG, 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022)....................... 16

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................... 16, 17, 19

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 16, 1994) ............................ 19

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)............................ 24

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    MDL Dkt. No. 5267, 2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ......................... 9, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    MDL Dkt. No. 5267, 2019 WL 2077847 (N.D. Cal. May 10, 2019)............................. 11

*In re Zynga Inc. Sec. Litig.*,
    No. 12-cv-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)............................ 19

*Kendall v. Odonate Therapeutics, Inc.*,
    No.: 3:20-cv-01828-H-LL, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ...................... 15

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................................. 23

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ............................................................... 22

*Luna v. Marvell Tech. Grp.*,
    No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ........... 14

*Nitsch v. DreamWorks Animation SKG Inc.*,
    No. 14-CV-04062-LHK, 2017 WL 399221 (N.D. Cal. Jan. 19, 2017) ........... 17

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ........................................................... 10, 22

*Quiruz v. Specialty Commodities, Inc.*,
    No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ........... 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................... 10, 12, 14

*Salazar v. Midwest Servicing Grp., Inc.*,
    No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ....... 13

*Sales v. United Rd. Servs., Inc.*,
    No. 19-CV-08404-JST, 2024 WL 4177937 (N.D. Cal. Sept. 11, 2024) ........ 16

*Satchell v. Fed. Express Corp.*,
    Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......... 12

*Sudunagunta v. NantKwest, Inc.*,
    No. CV 16-1947-MWF (JEMx), 2019 WL 2183451 (C.D. Cal. May 13, 2019) ............. 12

*Young v. LG Chem Ltd.*,
    783 F. App'x 727 (9th Cir. Sept. 4, 2019) ............................................... 9

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ...................................................................... 21

15 U.S.C. §78u-4(a)(4) ........................................................................ 8

Federal Rule of Civil Procedure 23(c)(2)(B) ..................................... 22, 23

Federal Rule of Civil Procedure 23(e)(1) ........................................... 1, 10

Federal Rule of Civil Procedure 23(e)(1)(B) .......................................... 22

Federal Rule of Civil Procedure 23(e)(2)(C)(ii) ..................................... 18

Federal Rule of Civil Procedure 23(h)(1) .............................................. 23

**OTHER AUTHORITIES**

Advisory Committee Notes to 2018 Rule 23(e) amendments ................... 11, 17

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE on August 22, 2025, before the Honorable Susan Illston, Courtroom 1 – 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Glazer Capital Management, L.P., Glazer Enhanced Fund L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd., Highmark Limited, in respect of its Segregated Account Highmark Multi-Strategy 2 (together, the "Glazer Funds"), and Meitav Mutual Funds Ltd. ("Meitav" and with the Glazer Funds, "Plaintiffs") will move this Court for an Order, pursuant to Federal Rule of Civil Procedure 23(e)(1): (1) preliminarily approving the proposed Settlement of this Action; (2) authorizing the retention of Strategic Claims Services ("Strategic") as the Claims Administrator; (3) approving the form and manner of giving notice of the proposed Settlement to the Class (the "Notice Program"); and (4) setting a date for considering final approval of the Settlement ("Settlement Hearing"), and scheduling various deadlines in connection with final approval of the Settlement.[1]

This Motion is unopposed by Defendants. Accordingly, Plaintiffs respectfully submit that the Motion may properly be decided on the papers.

Plaintiffs make and base this Motion on the attached Memorandum of Points and Authorities and the concurrently filed Declaration of Patrice L. Bishop (the "Bishop Declaration" or "Bishop Decl."), along with the pleadings and other files herein and such other written and oral arguments as may be presented to the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the proposed $45,000,000 Settlement is fair, reasonable, and adequate to warrant preliminary approval and the dissemination of notice to members of the Certified Class.

2. Whether the Notice Program should be approved.

///

///

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning as defined in the Stipulation of Settlement (the "Stipulation"), dated July 18, 2025, is attached hereto. Citations to the Stipulation take the form: "Stip., §__," "Stip., at p._," or "Stip., at Ex._."

3.     Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's anticipated motion for an award of attorneys' fees and litigation expenses, and compensatory awards to Plaintiffs.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     PRELIMINARY STATEMENT

The proposed Settlement resolves all claims asserted against Defendants in exchange for a non-reverting $45,000,000 cash payment. Plaintiffs are now requesting that the Court preliminarily approve the Settlement, which easily meets the standard for preliminary approval.

The Settlement was achieved after over five years of hotly contested litigation across three courts – this Court, the Ninth Circuit, and the Delaware Court of Chancery. After two mediation sessions with Robert Meyer, Esq., an experienced mediator, and follow-up negotiations, the Parties agreed to a mediator's proposal to settle all claims for the Settlement Amount, which both sides accepted. If approved, the proposed Settlement will recover a proportion of Plaintiffs' estimated damages for the Class that is within the range for securities litigation generally as well as specifically for securities class action settlements of a similar amount.

Plaintiffs also request that the Court approve the form and substance of the Notice, Proof of Claim, Summary Notice, and Postcard Notice appended as Exhibits A-1, A-2, A-3, and A-4, respectively, to the Stipulation. Plaintiffs further seek the Court's approval of Strategic as Claims Administrator and the Notice Program for disseminating notice of the Settlement described herein and in the Stipulation, which satisfies all requirements of due process, the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, and the Northern District of California's Procedural Guidance for Class Action Settlements.

The Settlement meets the standards for preliminary approval because it is fair, reasonable, and adequate under Rule 23(e). By granting preliminary approval, Plaintiffs will be able to notify the Class of the Settlement, and solicit claims and consider objections, after which, in conjunction with the motions to be presented at the Settlement Hearing, the Court will be able to consider whether to finally approve the Settlement.

## II.    SUMMARY OF THE LITIGATION

### A.    Procedural History

On January 2, 2020, Christopher Sayce, individually and on behalf of all others similarly situated, filed this Action against Defendants, alleging violations of the federal securities laws between February 7, 2019, and October 9, 2019, both dates inclusive. Dkt. No. 1. On March 23, 2020, the Court appointed Meitav as Lead Plaintiff. Dkt. No. 27.

On May 22, 2020, Meitav filed an amended complaint extending the class period to May 15, 2020, when affiliates of Advent International Corporation ("Advent") refused to close their pending acquisition of Forescout as scheduled. Dkt. No. 31. On June 10, 2020, another plaintiff filed *The Arbitrage Fund, et al. v. Forescout Tech., Inc. et al.*, No. 3:20-cv-03819-SI (N.D. Cal. Jun 10, 2020). On July 22, 2020, after contested motion practice, the Court consolidated the two actions, finding they arose from the same common nucleus of facts, and re-opened the lead plaintiff proceedings. Dkt. No. 55. Following dueling motions seeking appointment of lead plaintiff to control the litigation, on November 19, 2020, the Court appointed Meitav and the Glazer Funds as Co-Lead Plaintiffs and Pomerantz LLP and Abraham, Fruchter, & Twersky, LLP as Co-Lead Counsel. Dkt. No. 115.

On December 18, 2020, Plaintiffs filed a Consolidated Amended Complaint, Dkt. No. 116, which the Court subsequently dismissed with leave to amend. Dkt. No. 139. On May 10, 2021, Plaintiffs filed a Second Amended Complaint (the "SAC"). Dkt. No. 142. On October 6 and 12, 2021, respectively, the Court dismissed the SAC and entered judgment. Dkt. Nos. 158, 162.

Plaintiffs appealed, and on March 16, 2023, the SAC's dismissal was affirmed in part and reversed in part, and the case was remanded for further proceedings. *See Glazer Capital Mgmt., L.P. v. Forescout Tech., Inc*., 63 F.4th 747, 781-82 (9th Cir. 2023). The Ninth Circuit reinstated Plaintiffs' claims related to "(1) the statements made on May 9, 2019, August 7, 2019, August 12, 2019[2], October 10, 2019, and November 6, 2019, asserting that (i) the disappointing second quarter performance was due to 'slipped' deals, (ii) the 'slipped' deals were 'tech wins,' (iii) the sales

---

[2] The date of this event is erroneously listed as August 12, 2019 instead of August 13, 2019 in the SAC and the Ninth Circuit opinion.

pipeline was large, healthy, and continuing to grow, and (iv) the third quarter revenue miss was due to delays in closing caused by economic conditions in the [Europe, Middle East and Africa ("EMEA")] area; and (2) the May 11, 2020, press release stating that Forescout 'look[ed] forward to completing [the] pending transaction with Advent.'" *Id.* On June 16, 2023, Defendants Answered the SAC. Dkt. No. 178.

On July 25, 2023, Plaintiffs appeared before the Delaware Court of Chancery to challenge confidentiality designations previously made by the parties in *Forescout Tech., Inc. v. Ferrari Grp. Holdings, L.P.*, Docket No. 2020-0385 (Del. Ch.). Defendants responded by filing unredacted (or lightly redacted) public versions of many documents, and ultimately produced other sealed documents to Plaintiffs. Bishop Decl., ¶4.

On October 27, 2023, Plaintiffs moved to certify the Class. Dkt. Nos. 193, 196. On May 28, 2024, after both Plaintiffs produced documents and, along with two expert witnesses, were deposed, the Court granted Plaintiffs' motion for class certification, certifying the Class consisting of all persons or entities who purchased or otherwise acquired Forescout common stock between May 10, 2019, and May 15, 2020, both dates inclusive, appointed Plaintiffs as Class Representatives, and appointed Plaintiffs' Counsel as Class Counsel. Dkt. No. 227.[3] On September 20, 2024, the Court issued its Order Granting Plaintiffs' Unopposed Motion for an Order Establishing a Program and Schedule for Notice to the Class (the "Certification Notice Order"), granting Plaintiffs' unopposed motion for an order establishing a program and schedule for notice to the Class and giving Class Members a full and fair opportunity to exclude themselves from the Class. Dkt. No. 242. On January 13, 2025, Plaintiffs filed proof of compliance with that order. Dkt. No. 256. No valid request for exclusion from the Class was received. Dkt. No. 256-1, ¶14.

Discovery in this Action commenced in June 2023 and consisted of three phases: class discovery; merits discovery; and expert discovery. This extensive discovery conducted over nearly two years included, but was not limited to, Plaintiffs' review of over 150,000 documents,

---

[3] Excluded from the Class are Defendants, current or former officers and directors of Forescout, any entity in which the Defendants have or had a controlling interest, as well as affiliates, family members, legal representatives, heirs, successors or assigns of any of the above. *See* Dkt. No. 227 at 8 n.2 and 38:4-6.

depositions of both Plaintiffs at the class certification stage, 27 merits depositions, and 8 expert depositions. Three of those merits depositions required letters rogatory and applications to either the Supreme Court of New South Wales in Sydney, Australia, or the High Court of Justice (King's Bench Division) in London, England. Dkt Nos. 245-47, 249-51. Additionally, the Parties raised extensive discovery issues that were ultimately resolved by the Court relating to document production, depositions and interrogatories. *See, e.g.*, Dkt. Nos. 197, 200, 208-09, 228, 231, 234, 238, 243-47, 249-51, 259, 261, 264.

The Parties initially engaged in an all-day, in-person mediation session before Mr. Meyer, a JAMS mediator, on May 29, 2024. Stip., at p.3. That mediation was unsuccessful. *Id.*

On May 9, 2025, after the substantial completion of class and merits discovery, the Parties engaged in another mediation session before Mr. Meyer. Stip., at p.4. The second mediation initially proved unsuccessful and the Parties completed expert discovery in June 2025. Stip., at p.4. However, through additional discussions and negotiations in June 2025, Mr. Meyer presented a mediator's proposal to fully settle all pending claims in this Action, which the Parties accepted. *Id.* The Parties documented their agreement in a confidential Term Sheet executed on June 18, 2025. *Id.* On that same day, the Parties filed a Stipulation and [Proposed] Order Regarding Settlement requesting the Court stay all further deadlines in the Action while the Parties negotiated the terms of a formal stipulation of settlement. Dkt. No. 270. On June 20, 2025, the Court issued orders staying the Action's deadlines and setting a further case management conference for August 8, 2025. Dkt. No. 271. On July 18, 2025, the Parties executed the Stipulation. Stip., at p.28.

## B.    Summary of Plaintiffs' Allegations

The SAC advanced the following allegations. Forescout is a cybersecurity company that focuses on providing cybersecurity solutions for large computer networks. SAC ¶¶1, 27-31. The Company went public in 2017 and, after experiencing rapid double-digit growth in revenue, experienced a slowdown in sales in the beginning of 2019 that coincided with an industry shift toward cloud computing. SAC ¶¶31-36. Plaintiffs allege that Forescout's sales personnel began to miss their quotas because of competitive pressure and decreasing customer interest in Forescout's products and services. SAC ¶¶36.A-E.

The SAC alleged that, before the Class Period, a third-party consultant hired by Defendants stated that a majority of Forescout's forecasted "committed" deals had only a 50% chance of closing. SAC ¶¶49-51. Nevertheless, in February 2019, Defendants released bullish guidance for 2019, with year-over-year growth of 24% at the midpoint. SAC ¶80. In May 2019, however, Defendants announced that Forescout's growth in the second quarter of 2019 would slow. SAC ¶89. Plaintiffs allege that Defendants assured investors that the Company would meet its revenue target for the full fiscal year of 2019 because Forescout had a large, healthy pipeline, and deals expected to close in the second quarter had merely slipped into later quarters, but it had already been awarded the business. SAC ¶¶97-108. Defendants claimed further that "it's not common for a customer to award a technology win to a vendor and then not buy their product for an extended period of time. So that gives us a high degree of confidence." SAC ¶105.

The SAC alleged, however, that certain sales personnel at the Company who served as Confidential Witnesses in this Action, described a companywide pressure campaign to identify illusory deals as "committed." SAC ¶¶52.A-G, significant customer losses in certain regions during the Class Period, SAC ¶99.C, a material amount of deals in the pipeline miscategorized as "committed," SAC ¶99.D, deals in the forecast file with no prospect of closing, and deals forecasted to close within weeks of a quarter that slipped into the next quarter. SAC ¶99.E. The SAC also alleged that there was a strong inference to suggest that Defendants were aware that Forescout's overall sales pipeline was unreliable during the Class Period because they allegedly pressured sales executives, SAC ¶99.E, paid attention to details, received granular internal reports, and monitored sales data in real time. SAC ¶¶43-45.

In August 2019, Defendants stated that the rate of closing deals remained very strong and very healthy, and Forescout remained very comfortable about its sales pipeline and deals "taking shape." SAC ¶¶110-116. However, on October 10, 2019, Defendants announced that revenue for the third quarter of 2019 would fall short of guidance, causing Forescout's stock price to fall by over 37% on October 10, 2019. SAC ¶¶117-18. The SAC alleges that this guidance miss constituted a partial corrective disclosure. In the next few months, Defendants allegedly shifted blame from the U.S. market to extended approval cycles and deteriorating macroeconomic

conditions abroad in Europe, the Middle East and Africa. SAC ¶¶117-120. The SAC alleges that an additional partial disclosure occurred when Forescout failed to meet its revenue target for the first quarter of 2020. SAC ¶154.

Forescout's put itself up for sale no later than October 2019. SAC ¶53. The SAC alleges that key to Defendants' effort to obtain a premium price was portraying Forescout as poised for revenue growth, and Defendants prepared forecasts for potential acquirers anticipating even higher revenue growth in 2020. SAC ¶¶54-57. Advent agreed to purchase Forescout for $33.00 per share on February 6, 2020. SAC ¶¶58-60. Following execution of the merger agreement, however, Advent assessed Forescout's declining financial performance in the spring of 2020, and reviewed the Company's business and prospects to assess whether the conditions necessary to close the merger would be met. SAC ¶¶62-65.  The SAC alleges that, on May 8, 2020, a representative of Advent called Forescout's CEO, Michael DeCesare ("DeCesare"), to discuss Advent's need to "make the numbers work" for the planned acquisition and expressed concerns regarding whether the conditions for closing could be met. SAC ¶68. The SAC further alleges, that despite knowing this nonpublic information, on May 11, 2020, DeCesare told investors that "we look forward to completing our pending transaction with Advent." SAC ¶154.

On May 18, 2020, Forescout disclosed Advent's refusal to proceed with the merger. SAC ¶70. Upon this disclosure, Forescout's stock price fell over the next three trading days. SAC ¶71. On May 19, 2020, Forescout sued Advent in the Delaware Chancery Court to enforce the merger agreement. SAC ¶73.

### C.    Defendants' Denial of Wrongdoing

Defendants deny the foregoing allegations and deny each and every allegation of wrongdoing in the SAC, dispute that Plaintiffs have asserted any cognizable claims, and contend that they have no liability in the Action.  In particular, Defendants deny, among other things, that they made any actionable misstatements or omissions, acted with scienter, or caused the alleged losses, or that Plaintiffs and the members of the Class have suffered any damages.  Defendants believe that the evidence of the underlying events supports this denial, but also recognize the expense, risks and uncertainty inherent in any litigation, and especially in complex cases such as

this one, and agree to settle the claims against them so as to avoid the burden and expense of further litigation, although Defendants continue to believe the claims asserted against them in the Action are without merit.

## III.    THE SETTLEMENT TERMS

The Settlement requires Forescout and Defendants' insurers to pay, or cause to be paid, $45,000,000 into an Escrow Account, which amount, plus interest, comprises the Settlement Fund. Stip., §II.A. Notice to the Class and the cost of settlement administration ("Settlement Administration Costs") will be funded by the Settlement Fund. Stip., §§ IV.A-C. Plaintiffs propose that Strategic, a nationally recognized class action claims administrator, be retained subject to the Court's approval. Bishop Decl., ¶21. Strategic was chosen following a competitive bidding process and careful review of proposals from three reputable settlement administrators. Bishop Decl., ¶22.

The proposed notice plan and plan for claims processing is discussed below in §§IV and VI, as well as in the ancillary documents to the Stipulation. Stip., §V. The Notice and Summary Notice provide that Class Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees not to exceed one-third of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action not to exceed $2,500,000; (c) interest on such fees and expenses at the same rate and for the same period as is earned by the Settlement Fund; and (d) an award to Plaintiffs for their time and expenses incurred in representing the Class, pursuant to 15 U.S.C. §78u-4(a)(4). Stip., at Exs. A-1, A-3. The Notice explains that such fees and expenses shall be paid from the Settlement Fund. Stip., at Ex. A-1, pp.4, 10.

Once Settlement Administration Costs, taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to a Court-approved Plan of Allocation (Plaintiffs' proposed plan is set forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $20.00. Stip., at Ex. A-1, pp.12-18. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. Stip., at Ex. A-1, p.18. The Plan of Allocation treats all Class Members equitably based only on the timing and amount of their transactions in Forescout common stock. Stip., at Ex. A-1, pp.12-18.

1    The Parties have entered into a Supplemental Agreement providing that if and only if the

2    Court allows Class Members another opportunity to exclude themselves from the Class and if prior

3    to the Settlement Hearing, requests for exclusion from the Class by Persons who would otherwise

4    be Class Members exceeds a certain threshold, Defendants shall have the option (but not the

5    obligation) to terminate the Settlement. Stip., §X.G. This type of agreement is standard in securities

6    class actions and has no negative impact on the Settlement's fairness. *See, e.g.*, *Hefler v. Wells

7    Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018).

8    In exchange for the Settlement consideration, Class Members will release all known or

9    Unknown Claims that (i) were asserted in the SAC or a prior complaint; (ii) could have been

10   asserted in the SAC; or (iii) relate to the sale or purchase of Forescout common stock during the

11   time period at issue in the SAC. Stip., §I.GG. Because the scope of the release "is limited to claims

12   that relate to both the complaint's factual allegations and to the purchase or ownership of" the

13   Forescout securities in question, it "ensure[s] that the released claim[s] [are] based on the identical

14   factual predicate as that underlying the claims in the settled class action." *In re Volkswagen "Clean

15   Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL Dkt. No. 5267, 2018 WL 6198311, at *5

16   (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") (cleaned up), *quoting Hesse v. Sprint Corp.*, 598 F.3d

17   581, 590 (9th Cir. 2010). Lastly, under the terms of the Stipulation, there is no clear sailing

18   agreement or potential reversion of any portion of the Settlement Fund to Defendants. Stip., §VII.

19   **IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER**

20   The Ninth Circuit has repeatedly held that "there is a strong judicial policy that favors

21   settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787

22   F.3d 1218, 1223 (9th Cir. 2015) (internal citation and quotation omitted); *see also In re Hyundai

23   & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (recognizing that public policy strongly

24   favors settlements to resolve disputes, "particularly where complex class action litigation is

25   concerned"); *Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. Sept. 4, 2019) (same).

26   Moreover, courts "ha[ve] long deferred to the private consensual decision of the parties" to settle

27   cases such as this one. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

28

Judicial approval of a class action settlement is a two-step process. First, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice is provided and a hearing is held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Pursuant to Rule 23(e)(1), preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this assessment, the Court must consider whether Plaintiffs and Class Counsel: (i) "have adequately represented the class;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for the class is adequate;" and (iv) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In addition, the Ninth Circuit uses the following "*Churchill* factors" for preliminary approval, several of which overlap with Rule 23(e)(2):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), *citing Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "The relative degree of importance to be attached to any particular factor will depend upon the unique facts and circumstances presented by each individual case." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 372 (N.D. Cal. 2021) (internal alterations omitted), *citing Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (discussing the *Churchill* factors and Rule 23(e)(2)'s requirements). While there is no government participant in this litigation, all other factors support a finding that the Settlement is likely to be approved after a final fairness hearing.

### A.    Plaintiffs and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors look "to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Advisory Committee Notes to 2018 Rule 23(e) amendments. The Settlement bears all the hallmarks of a procedurally fair resolution of the Action.

Rule 23(e)(2)(A) asks whether the plaintiff and his counsel have adequately represented the class. As explained above, Plaintiffs and Class Counsel satisfy this factor as they have diligently prosecuted this Action since inception through class certification and after two years of complex fact and expert discovery. *See supra*, §§I-II. As detailed herein, and as will be further detailed before the Settlement Hearing, Plaintiffs and Class Counsel extensively investigated the underlying claims, including interviewing over 20 former Forescout employees; researched and opposed Defendants' motions to dismiss; successfully appealed dismissal of the action to the Ninth Circuit; successfully obtained an Order granting Class certification; notified the Class of the case at the time of certification, resulting in no Class member opting-out; reviewed over 150,000 documents; participated in the depositions of both Plaintiffs; and took or defended 27 merits depositions and 8 expert depositions. Bishop Decl., ¶3. Given Plaintiffs' and Class Counsel's demonstrated prosecution of the Action across five courts, it is undeniable that they have adequately represented the Class. *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL Dkt. No. 5267, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (granting final approval and stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel possessed sufficient information to make an informed decision about settlement") (cleaned up).

1     **B.**    **The Proposed Settlement Is the Product of Arm's-Length Negotiations by**
2         **Informed Counsel**

3     The proposed settlement is the result of arm's-length negotiations facilitated by an

4 experienced mediator after over five years of vigorous litigation, which included appellate

5 proceedings and extensive class, merits, and expert discovery. *See supra*, §§I-II. "A presumption

6 of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations

7 by experienced class counsel after meaningful discovery." *Dunakin v. Quigley*, No. 2:14-cv-567-

8 JLR, 2017 WL 123011, at *2 (W.D. Wash. Jan. 10, 2017); *see also Rodriguez*, 563 F.3d at 965

9 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated

10 resolution.").

11     Furthermore, "[t]he assistance of an experienced mediator in the settlement process

12 confirms that the settlement is non-collusive." *Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-

13 MWF (JEMx), 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) (recognizing that "the

14 [a]greement is not the product of collusion between the parties[,]" but "the outcome of an arms-

15 length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq."),

16 *quoting Satchell v. Fed. Express Corp.*, Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010, at

17 *4 (N.D. Cal. Apr. 13, 2007). Courts have repeatedly recognized that Mr. Meyer is an "experienced

18 mediator" who assists parties in reaching a settlement through arm's-length negotiation. *In re*

19 *Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *3 (N.D. Cal.

20 July 22, 2019) (granting final approval of settlement in an action alleging violations of the

21 Exchange Act); *see also Flynn v. Sientra, Inc.*, No. CV 15-07548 SJO (RAOx), 2017 WL

22 11139918, at *3 (C.D. Cal. Jan. 23, 2017) (preliminarily approving a securities class action reached

23 weeks after "a full-day formal mediation session conducted by a skilled and experienced mediator,

24 Robert Meyer").

25     Here, the Parties reached a settlement only after a mediator's proposal was evaluated and

26 ultimately accepted by the Parties after substantial arm's-length negotiation. *See* Stip., at p.4. No

27 indicia of collusion are present. *See In re Bluetooth*, 654 F.3d at 947. The Class will receive the

28 majority of the Settlement Amount as a monetary distribution; no *cy pres* is anticipated; there is

no "clear sailing" arrangement; no remaining funds, for example from uncashed checks, will revert to Defendants; and the Plan of Allocation calls for the Net Settlement Fund to be allocated among the Class pursuant to a standard *pro rata* formula. Stip., §VII; Stip., at Ex. A-1, at pp.12-18. In short, the Settlement is fair, reasonable, adequate, and a product of arm's-length negotiations, and was not the production of collusion or any other procedural deficiency.

### C.   The Settlement Provides Fair, Reasonable and Adequate Relief to the Class

#### 1.   The Strength of Plaintiffs' Case and Risks of Further Litigation Support Preliminary Approval

Rule 23(e)(2)(C)(i) and the first three *Churchill* factors, which concern the "strength of the plaintiffs' case; [] the risk, expense, complexity, and likely duration of further litigation"; and the specific risks related to class certification, are often considered together. *Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017). These factors unquestionably support preliminary approval here because the claims "are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain." *Hefler*, 2018 WL 6619983, at *13. "[P]rosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery." *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation).

Plaintiffs recognize that the ability to ultimately prove the SAC's claims, at summary judgment or trial, is, as always, a risky proposition. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval"). Indeed, Defendants have vigorously argued that they did not make any material misrepresentations, that they did not act with scienter, and that the stock price declines that caused investor losses were the result of unrelated factors. Risks to proving falsity, scienter, and loss causation pose significant obstacles here. *See, e.g.*, *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL

1   1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be

2   difficult for Lead Plaintiff to prove loss causation and damages at trial. . . . Lead Plaintiff would

3   risk recovering nothing without a settlement."); *Luna v. Marvell Tech. Grp*., No. C 15-05447

4   WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter,

5   loss causation, and damages at trial). At trial, Defendants could argue, for example, that the subject

6   matter of this case might have involved mismanagement instead of fraud, and if Defendants

7   prevailed on any of these arguments, damages would be substantially reduced or eliminated.

8       Even if Plaintiffs won at trial, "[i]nevitable appeals would likely prolong the litigation, and

9   any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966; *see also Ikuseghan v.*

10  *Multicare Health Sys*., No. 3:14-cv-5539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25,

11  2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant

12  delay. The Settlement avoids these challenges. . . . Absent the proposed Settlement, Class Members

13  would likely not obtain relief, if any, for a period of years.").

14      The third *Churchill* factor, the risk of maintaining class certification, also favors Settlement

15  approval. While this Court granted Class certification (Dkt. No. 227) and no Class member opted-

16  out of the Class, Dkt. No. 256-1, ¶14, Defendants indicated they planned to move to decertify the

17  Class in connection with their forthcoming summary judgment motion. Bishop Decl., ¶10. While

18  Plaintiffs do not believe that motion would have been meritorious, it unquestionably presented a

19  risk to maintaining class certification. Bishop Decl., ¶10.

20          **2.      The Amount of the Settlement Favors Preliminary Approval**

21      Courts in this district "have stated that the relevant inquiry [for this factor] is whether the

22  settlement falls within the range of possible approval or within the range of reasonableness." *Cotter*

23  *v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). Here, the

24  proposed Settlement provides for a certain and immediate all-cash Settlement Fund of $45,000,000

25  (Stip., at p.4), representing a meaningful Class recovery and warranting preliminary approval.

26      While the total amount of recoverable damages is a complex issue hotly disputed by the

27  Parties (Bishop Decl., ¶12), the proposed Settlement provides a recovery that falls within a range

28  that is readily approved. After consulting with their damages expert, Plaintiffs estimate that the

1   maximum recoverable damages on all claims, pursuant to a methodology that a jury could accept,

2   should they prevail on all aspects at trial, would be approximately $409.6 million. Bishop Decl.,

3   ¶12. Defendants have argued, and would continue to argue, that all or part of the declines

4   underpinning Plaintiffs' claims should be apportioned to causes other than the alleged

5   misrepresentations. Bishop Decl., ¶11. Plaintiffs believe that proving the causation of such losses

6   would present a substantial risk at summary judgment and trial. *Id. Accordingly*, the Settlement

7   represents a recovery of approximately 11% of Plaintiffs' estimated recoverable damages, which

8   is an excellent recovery for members of the Class, especially given the real risk of a smaller

9   recovery (if any) at trial and is in line with settlement amounts in similar cases. This recovery

10  exceeds the 3.0% median settlement value in 2024 for all securities class actions. *See* Bishop Decl.,

11  Exhibit 1 (NERA, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review at

12  p. 26 (Jan. 22, 2025)). In this Circuit, the 11% recovery is within, but at the very high end of, the

13  range that courts have deemed "fair and reasonable." *See, e.g.*, *Kendall v. Odonate Therapeutics,*

14  *Inc.*, No.: 3:20-cv-01828-H-LL, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (approving

15  settlement of securities class action representing "approximately 3.49% of the maximum estimate

16  damages, which is higher than the 2021 median recovery in securities class actions"); *In re Aqua*

17  *Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022)

18  (settlement that "constitutes 7.3% of the most likely recoverable damages" was "in line with

19  comparable class action settlements"); *In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS

20  (FFMx), 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement of "approximately 8%"

21  of damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Local*

22  *697 v. Int'l Game Tech.*, No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742, at *3 (D. Nev.

23  Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that

24  Plaintiffs believe[d] could be recovered"); *In re Lyft, Inc. Sec. Litig.*, No. 19-cv-02690-HSG, 2022

25  WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (settlement representing 3.2% to 4.7% of estimated

26  maximum damages was "well within the range of possible approval"); *see also Hunt v. Bloom*

27  *Energy*, No. 19-cv-02935-HSG, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (approving

28

5.2% of maximum estimated recovery). Thus, by any measure, the Settlement provides an extraordinary benefit to the Class.

### D.    The Remaining *Churchill* and Rule 23(e)(2) Factors Support Approval

#### 1.    Class Counsel Was Sufficiently Informed when Evaluating the Settlement

As detailed *infra*, this Settlement was reached after extensive class, merits and expert discovery. Bishop Decl., ¶3. As a result, Plaintiffs and Class Counsel were well aware of the strengths and weaknesses of the Class's claims and Defendants' defenses. Bishop Decl., ¶3. Moreover, prior to the filing of the SAC, Class Counsel conducted an extensive private investigation involving interviews with more than twenty former Forescout employees. *See* Bishop Decl., ¶3; *see also* SAC ¶¶7-8, 36, 38, 40, 45, 49-50, 52, 57, 82-86, 88, 95-96, 98-100, 106, 112, 122-23, 126, 138. Plaintiffs were equally familiar with the strengths and weaknesses of their legal positions, having researched and briefed the law in connection with their oppositions to Defendants' motions to dismiss, appellate briefing, mediation statements, and other Court filings. *See* Bishop Decl., ¶5; *see also* Dkt. Nos. 134, 153.

Here, Plaintiffs and Class Counsel had more than adequate information to "reasonably evaluate their . . . positions" in mediation after five years of litigation, including nearly two years of complex fact and expert discovery. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding parties that engaged in discovery, took depositions, briefed motions, and participated in mediation were sufficiently informed about the case prior to settlement); *Sales v. United Rd. Servs., Inc.*, No. 19-CV-08404-JST, 2024 WL 4177937, at *7 (N.D. Cal. Sept. 11, 2024) (the more discovery that is completed, the more this factor is satisfied). Accordingly, this *Churchill* factor also weighs in favor of preliminary approval.

#### 2.    Counsel's Experience and Views Support Preliminary Approval

It is well-settled that courts grant "considerable weight" to the opinion of experienced counsel supporting settlement after legitimate, arm's-length negotiation. *See Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020). "[I]ndeed a presumption of fairness is usually appropriate if class counsel recommends the settlement after arm's-length bargaining." *Volkswagen I*, 2018 WL 6198311, at *5. Here, Plaintiffs

are represented by experienced counsel that focus their practices on securities litigation, who have negotiated numerous other substantial class action settlements nationwide. *See* Dkt. Nos. 66-5, 86-4 (firm resumes filed in connection with lead plaintiff motions); Dkt. No. 115 at p.15 ("Both firms have presented their credentials, including years of experience successfully litigating large securities class action suits such as this one.").[4] At the time of Settlement, Class Counsel had a sound understanding of the legal and factual strengths and weaknesses of the claims. *Supra* §§IV.C.1, IV.D.1. In this case, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d at 1043.[5] Throughout the Action and settlement negotiations, Defendants were zealously represented by experienced counsel at Ropes & Gray LLP and Wilson Sonsini Goodrich & Rosati, Professional Corporation. Bishop Decl., ¶9. Such representation dispels any suggestion that the settlement process was infected with collusion or was otherwise procedurally defective. *See Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 399221, at *2 (N.D. Cal. Jan. 19, 2017) (granting approval where there were arm's-length negotiations among experienced counsel "on both sides").

### 3.     The Terms of the Proposed Award of Attorney's Fees Are Reasonable

Although no fee request has yet been submitted, the proposed Notice informs Class Members that Class Counsel may file a fee request for up to one-third of the Settlement Amount. Stip., at Ex. A-1, pp.3, 10.

Attorneys' fees of up to one third of the Settlement Amount can be "justified by the positive result obtained, the contingent fee risk, the hours dedicated, the financial commitment, and the important public policy advanced by securities litigation." *Davis v. Yelp, Inc.*, No. 18-CV-00400-EMC, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023). While the Ninth Circuit's benchmark is 25% of the fund, "a larger award of 33% is warranted because counsel risked significant amounts

---

[4] Class Counsel will file updated firm resumes in connection with the motions to be heard at the Settlement Hearing.

[5] This analysis is consistent with the first two factors listed in Rule 23(e)(2), which examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Advisory Committee Notes to 2018 Rule 23(e) amendments.

of their own funds and dedicated time and effort to litigate[.]" *Id.* (specifically recognizing, *inter alia*, that plaintiffs' counsel had litigated through class certification, retained experts, and advanced nearly $1 million in expenses). Notably, this amount is below Class Counsel's lodestar, which is at least $20,012,737, amounting to a lodestar multiplier of 0.75, and consists of at least 30,867 hours of attorney and paralegal time. Bishop Decl., ¶7.

In addition, the Notice informs Class Members that Class Counsel plans to seek reimbursement of litigation expenses not to exceed $2.5 million. Stip., at Ex. A-1, pp.3, 10. These expenses will be itemized in Class Counsel's Fee and Expense Application. *See* Bishop Decl., ¶8. The amount of expenses sought is significantly less, proportionally, than those recently approved in *In re Qualcomm Incorporated Securities Litigation*, No. 3:17-cv-00121-JO-MSB (S.D. Cal.), where Plaintiffs prosecuting analogous claims were awarded $7,437,826.78 in expenses for a $75 million settlement after the completion of all discovery. *See* Bishop Decl., ¶8. Each of the expenses relate to commonly reimbursed items such as expert costs, investigative costs, discovery related costs, travel, and mediation fees. *See, e.g.*, *Aguilar Auto Repair, Inc. & Central Coast Tobacco Co., LLC v. Wells Fargo Bank, N.A.*, No. 23-CV-06265-LJC, 2025 WL 1753509, at *11 (N.D. Cal. May 23, 2025) ("'[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in common fund cases.") (citation omitted).

### 4. The Only Supplemental Agreement Has Been Identified

Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) require identification of any other agreement made in connection with the proposed Settlement. Here, the only such agreement is a standard agreement pertaining to opt-outs, that is identified. *See supra* at pp.8-9; Bishop Decl., ¶15.

### 5. The Proposed Settlement Does Not Unjustly Favor any Class Member, and the Proposed Plan of Allocation Is Fair and Reasonable

In addition to the settlement amount, the Court must assess whether a proposed settlement "treats class members equitably relative to each other" under Rule 23(e)(2)(D), and whether the proposed methods for distributing "relief" to class members will be "effective" under Rule 23(e)(2)(C)(ii). Put another way, "[a]pproval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement

1    as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045

2    (internal alterations omitted), *citing In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL

3    502054, at *1-2 (N.D. Cal. June 16, 1994). A plan of allocation "need only have a reasonable,

4    rational basis" to be deemed fair, reasonable, and adequate under this standard. *In re Heritage*

5    *Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

6    The proposed Plan of Allocation easily meets this standard. It was formulated in close

7    consultation with Plaintiffs' damages experts and treats all Class members equitably. Bishop Decl.,

8    ¶18. It provides for recovery for shares purchased between May 10, 2019, and May 15, 2020, both

9    dates inclusive, on a *pro rata* basis based on the Class Member's recognized loss, and is consistent

10   with the PSLRA's 90-day lookback period, the advice of Plaintiffs' experts, and the principles of

11   economic loss articulated by the Supreme Court in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336

12   (2005). Stip., at Ex. A-1, at pp.12-18.[6] This is standard in securities litigation, and plans with these

13   elements are routinely held to be fair and reasonable. *See, e.g.*, *Extreme Networks*, 2019 WL

14   3290770, at *8; *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *12

15   (N.D. Cal. Oct. 27, 2015); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5.

16   **E.    The Proposed Settlement and Related Submissions are Consistent with the**
        **Northern District of California Class Action Guidelines**
17

18   Plaintiffs have complied with the Northern District of California's Procedural Guidance

19   for Class Action Settlements in preparing the Stipulation, Notice, and this motion.

20   **There is no difference between the Class and the classes identified in the Operative Complaint**

21   The Class covered in the proposed Settlement is consistent with the class and claims

22   identified in the operative Amended Complaint. There is no "Settlement Class." Instead, the

23   Settlement affects the Class the Court certified over Defendants' opposition. Stip., §I.H.

24   **The scope of the releases is consistent with the Complaint**

25   The Stipulation provides for Plaintiffs and Class Members to release "Released Plaintiffs'

26   Claims" as against "Released Defendants' Parties." *See* Stip., §§I.EE, I.GG. The Released

27   _____

28   [6] Claim forms are needed because Class Members' transactional information cannot otherwise be
     reasonably obtained in a manner that would permit claimless administration. Bishop Decl., ¶26.

Plaintiffs' Claims include claims: "(i) asserted in the Action; (ii) could have asserted in the Action, or in the future can or might assert in the Action, or in any forum (including, without limitation, any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum, in the United States or elsewhere), that arise out of, are based upon, or relate in any way to any of the allegations, transactions, facts, matters or occurrences, representations, statements or omissions involved, set forth, or referred to in the Action, including any previous complaint in the Action; or (iii) that relate to the purchase, acquisition, disposition, or sale of Forescout's publicly traded securities during the Class Period." Stip., §I.GG. This release is therefore no broader than t the underlying claims, and is consistent with this Circuit's precedent. *See, e.g.*, *Hesse*, 598 F.3d at 590 ("we have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement.").

**Class recovery relative to potential recovery for each claim**

The recovery of $45,000,000 compares favorably with Plaintiffs' estimation of the aggregate likely recovery of damages of $409.6 million. This reasonably within the range of recovery for securities fraud class action settlements. *See* §IV.C.2, *supra*.

**No other cases will be affected by the settlement**

Plaintiffs believe no other case will be affected by the Settlement. Bishop Decl., ¶17.

**The claim form and anticipated claim rate**

Based on prior experience in comparable securities class action cases in which Class Counsel have utilized the proposed Claims Administrator, Plaintiffs anticipate that approximately 25% to 30% of potential Class Members who are provided notice will submit a claim form. Plaintiffs base their estimate on the claims rates in *Sinnathurai v. Novavax, Inc., et al.*, No. TDC-21-2910 (D. Md. 2024), which are comparable in size and were also administered by Strategic. Based on prior experience in comparable in size and was also administered by Strategic.

**Reversion and *Cy Pres***

Once final, the Stipulation provides that the proposed Settlement Fund cannot revert to Defendants. Stip., §VII.M. Class Counsel anticipate the Net Settlement Fund will be distributed

1   (and any remaining amounts, for example from unclaimed checks, redistributed if feasible) to

2   Class Members, and do not expect to request any *cy pres* award. Bishop Decl., ¶17.

3   **Class Counsel's anticipated attorneys' fee request is reasonable**

4        As set forth in §IV.D.3, *supra*, Class Counsel anticipate seeking up to one-third of the

5   Settlement Amount, and reimbursement of standard litigation expenses, together with any interest

6   accrued on such amounts while in the Settlement Fund.

7   **Plaintiffs' anticipated service award requests are reasonable**

8        Pursuant to the PSLRA (15 U.S.C. § 78u-4(a)(4)), Class Counsel plan to seek an award on

9   behalf of the Co-Lead Plaintiffs to recover unreimbursed costs (including the cost of time spent)

10   for the work performed on behalf of the Certified Class. The Notice informs Class Members this

11   request will not exceed $50,000 for each of the Meitav and Glazer Plaintiffs. Stip., at Ex. A-1,

12   pp.3, 10. For over five years, Plaintiffs have devoted extensive time and effort on behalf of the

13   Class, including: (i) reviewing the multiple complaints and providing feedback to counsel; (ii)

14   participating in written discovery and in-person depositions, as well as providing documents

15   responsive to Defendants' requests for production (iii) regularly communicating with counsel

16   regarding case strategy; (iv) reviewing and discussing motion and appellate papers with counsel;

17   (v) review and discussing Court orders with counsel; (vi) discussing with counsel the damages

18   estimated by experts; (vii) discussing mediation strategy with counsel; and (viii) advising counsel

19   regarding various settlement proposals, including the mediator's proposal resulting in the

20   Settlement. Bishop Decl., ¶6. The amounts requested are consistent with reimbursement awards in

21   similar complex cases. *See, e.g.*, *In re Alta Mesa Resources, Inc. Sec. Litig.*, No. 4:19-CV-00957,

22   2025 WL 1901350, at *2 (S.D. Tex. May 6, 2025) (awarding $50,000 to two plaintiffs and

23   approximately $10,000 to two other plaintiffs).

24   **The Settlement is supported by comparable outcomes**

25        Consistent with the Procedural Guidance, the Settlement is supported by comparable

26   outcomes, including *In re U. S. Steel Consolidated Cases*, Civil Action No. 17-579 (W.D. Pa.)

27   ($40 million settlement representing between 6 and 13% of recoverable aggregate damages). *See*

28   *also*, Bishop Decl., Ex. 2.

**The Notice contains the information required by the Procedural Guidance.**

The Notice includes all information required by the Procedural Guidance. *See infra* §VI.

**V.    BECAUSE ALL CLASS MEMBERS WERE GIVEN A FULL AND FAIR OPPORTUNITY TO OPT OUT OF THE CLASS, AN EXCLUSIONARY PROCESS IS NOT INCLUDED IN CONJUNCTION WITH THE SETTLEMENT**

On May 28, 2024, the Court granted Lead Plaintiffs' motion for class certification. Dkt. No. 227. On September 20, 2024, the Court issued its Certification Notice Order, establishing a program and schedule for notice to the Class and gave members of the Class a full and fair opportunity to opt-out of the Class. Dkt. No. 242. On January 13, 2025, Plaintiffs filed proof of compliance with that order. Dkt. No. 256. No Class member opted out of the Class. *See* Dkt. No. 256-1, ¶14. Notably, the Class bore the expense of this opt-out process, and would bear all expenses of a second opt-out process less than a year later. Stip., §IV.B.

As a result, a second opportunity to request exclusion is not provided here. Bishop Decl., ¶19; *see also Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("There is no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt-out. We think it does not.") (cleaned up), *quoting Officers for Justice*, 688 F.2d at 635. However, as provided in the Notice, Class Members have an opportunity to object to any element of the Settlement and any application for attorneys' fees or expenses. Stip., at Ex. A-1, p.10. Nevertheless, should the Court allow a second opt-out opportunity, a Supplemental Agreement would provide Defendants the option to terminate the Settlement if Class Members requesting exclusion from the Class meet certain conditions. *See supra*, §IV.D.4.

**VI.    THE NOTICE AND NOTICE PLAN WARRANT APPROVAL**

The Federal Rules of Civil Procedure require "the best notice that is practicable under the circumstances," and that such notice be directed "in a reasonable manner to all class members who would be bound by the [settlement]." Fed. R. Civ. P. Rule 23(c)(2)(B), (e)(1)(B). Notices "must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal alterations omitted).

Here, the Notice includes all information required by the Federal Rules of Civil Procedure,

the PSLRA, and the Northern District of California's Procedural Guidance for Class Action Settlements. In particular, the Notice describes in plain English the proposed Settlement's terms, as well as: (i) the purpose of the Notice; (ii) a summary of the claims resolved by the Settlement; (iii) a statement of the recovery for the Class; (iv) an estimate of the average recovery per share; (v) a statement of the potential outcome of the case if litigation were to continue; (vi) reasons for settlement; (vii) an estimate of the maximum amount of attorneys' fees and expenses that Class Counsel will seek; (viii) a summary of Class Members' legal rights and options related to the Settlement; (ix) the terms of the Plan of Allocation; (x) the date, time, and location of the Settlement Hearing; and (xi) additional frequently asked questions and answers related to the Settlement. Importantly, the Notice also sets forth the Class Members' rights to: (i) object to the Settlement, Plan of Allocation, and/or Fee and Expense Application, or any aspects thereof, and how to do so; and (ii) submit a Proof of Claim to participate in the Settlement, and instructions on how to complete and submit a Proof of Claim. Stip., at Ex. A-1. The Notice also provides contact information for Class Counsel. Stip., at Ex. A-1, p.9.

Consistent with Rule 23(h)(1), the Notice also informs Class Members that Class Counsel will apply to the Court for attorneys' fees of up to one-third of the Settlement Amount, plus reimbursement of expenses of not more than $2,500,000 from the Settlement Fund, as well as a awards of up to $50,000 each for Meitav and the Glazer Funds to compensate Plaintiffs for the time spent working with counsel throughout the litigation. Stip., at Ex. A-1, pp.3, 10. The Claims Administrator will post copies of all Notices and Settlement-related motions, along with supporting documents, on the case website: www.forescoutsecuritieslitigation.com. Stip., at Ex. A, ¶10. That website, active soon after the Certification Notice Order (Dkt. No. 242), will be updated regarding the Settlement when notices are disseminated. Bishop Decl., ¶24.

Plaintiffs' proposed Notice Program—email, mail, publication, and website—satisfies all applicable standards. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) ("notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)."). Plaintiffs propose a comprehensive plan of overlapping notices that is standard in securities fraud class action

settlements and readily satisfies due process. These planned redundancies ensure notice is provided in the best manner practicable both to the small number of shareholders who hold shares in their own name, which would be reflected on Forescout's transfer records, and to the overwhelming majority who hold shares beneficially through a broker listed on Forescout's transfer records. Bishop Decl., ¶25. The proposed Claims Administrator, Strategic, will mail or email Postcard Notice (Exhibit A-4 to the Stipulation, providing key information and directing recipients to the Settlement Website for the full Notice, Exhibit A-1 to the Stipulation) to all shareholders that can be identified from company transfer records and also to a comprehensive list of brokers and other nominees, who provide contact information for the Claims Administrator to mail or email notice to beneficial owners. *See* Stip., at Ex. A, ¶8; Stip., at Ex. A-1, p.18. Alternately, the brokers and other nominees can request materials from the Claims Administrator to mail or email notice to beneficial holders themselves. Stip., at Ex. A-1, p.18. Such brokers and other nominees will be reasonably reimbursed for these services at the rates specified in the Notice and proposed Preliminary Approval Order. *Id.*

The Summary Notice will also be published over a national newswire with broad distribution. Stip., at Ex. A, ¶11. Finally, a settlement website already established and identified to Class members in connection with their notice of Class certification (Dkt. No. 242) will contain all of the Notices, all other settlement-related documents, and a claim form that can either be printed out or submitted electronically. Stip., at Ex. A, ¶10. The claim form is necessary because the Parties lack the transactional data from investors that is necessary to allocate the Settlement on a *pro rata* and claims-free basis. Bishop Decl., ¶26.

The proposed Claims Administrator, Strategic, is a highly experienced class action claims administration firm and will carry out the robust plan of dissemination set forth in the [proposed] Preliminary Approval Order. Strategic was selected in a competitive bidding process of three firms on the basis of the cost of the notice program, the cost of each processed Claim, its agreement to promptly process claims, its history of skillfully administering claims in other cases for Class Counsel, and its agreement to cap certain expenditures. Bishop Decl., ¶22. The overlapping and comprehensive methods of notice proposed are described on pp.9, 17-18, 21-25, *supra*. In the past

two years, Class Counsel have retained Strategic as Claims Administrator for eleven of the settlements they reached, each time after a competitive bidding process. *See* Bishop Decl., ¶23 (identifying cases).

As per the N.D. Cal. Guidance at ¶ 2, Class Counsel and Strategic estimate that Notice and administration costs for notice of certification already provided and additional notice of the Settlement will not exceed $225,000. Stip., §IV.B. This amount will be paid from the Settlement Fund. Stip., §IV.B. These costs are needed to effectuate the Settlement and are reasonable relative to the Settlement Fund. *See Extreme Networks*, 2019 WL 3290770, at *2, *12 (approving $500,000 in administration costs from $7 million settlement fund). The Stipulation calls for Defendants to satisfy all Class Action Fairness Act notice requirements, at their own cost. Stip., §XII.E.

## VII.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule leading up to the Settlement Hearing:

| Item | Proposed Deadline |
|------|-------------------|
| Notice Mailed to Class ("Notice Date") | Fourteen (14) calendar days after entry of the Preliminary Approval Order |
| Summary Notice Published | Fourteen (14) calendar days after Notice Date |
| Briefs in support of final approval, plan of allocation, and attorneys' fees and expenses | Thirty-Five (35) calendar days prior to Settlement Hearing |
| Claims Filing Deadline | 100 calendar days after the Notice Date |
| Objections to Settlement, Plan of Allocation, and/or Fee and Expense Application | Twenty-eight (28) calendar days prior to the Settlement Hearing |
| Reply papers to any objections | Seven (7) calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately ninety-five (95) calendar days after Notice Date, or at the Court's earliest convenience thereafter. |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and enter the proposed Preliminary Approval Order.

Dated: July 18, 2025                              **POMERANTZ LLP**

                                                   */s/ Omar Jafri*
                                                   Omar Jafri (admitted *pro hac vice*)
                                                   Brian O'Connell (SBN 314318)
                                                   Genc Arifi (admitted *pro hac vice*)
                                                   Diego Martinez-Krippner (admitted *pro hac vice*)
                                                   Jianan Jiang (admitted *pro hac vice*)
                                                   Ten South La Salle Street, Suite 3505
                                                   Chicago, Illinois 60603

Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: ojafri@pomlaw.com
pdahlstrom@pomlaw.com
boconnell@pomlaw.com
garifi@pomlaw.com
dmartinezk@pomlaw.com
ajiang@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com

*-and-*

**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**

 */s/ Jeffry S. Abraham*
Jeffrey S. Abraham (admitted *pro hac vice*)
Michael J. Klein (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email: jabraham@aftlaw.com
mklein@aftlaw.com

Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
Email: pbishop@aftlaw.com

*Class Counsel for Co-Lead Plaintiffs*
*and the Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, Patrice L. Bishop, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that all signatories have concurred in this filing.


Dated: July 18, 2025                             */s/ Patrice L. Bishop*
                                                 Patrice L. Bishop