**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**
Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
Email: pbishop@aftlaw.com
*Class Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FORESCOUT TECHNOLOGIES, INC., *et. al.* <br><br> Defendants. | CASE NO.: 20-CV-00076-SI <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge:      Hon. Susan Illston <br> Courtroom: 1 – 17th Floor <br> Date:       December 5, 2025 <br> Time:       10:00 am <br> Trial Date: None set |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I.      PRELIMINARY STATEMENT ................................................................................. 2

II.     SUMMARY OF THE LITIGATION ....................................................................... 2

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL ................................... 5

        A.      Standards Governing Final Approval of Class Action Settlements ........... 5

        B.      The Settlement Satisfies the Requirements of Rule 23(e)(2) ..................... 7

                1.      Plaintiffs and Class Counsel Have Adequately Represented the Class ................................................................................. 7

                2.      The Settlement Was Negotiated at Arm's Length with a Mediator ................................................................................ 9

                3.      The Settlement Provides Adequate and Reasonable Relief for the Class ............................................................................ 10

                4.      The Methods for Processing and Distributing Relief Are Effective .................................................................................. 14

                5.      The Terms of the Requested Attorneys' Fees are Fair and Reasonable ............................................................................ 15

                6.      Any Other Agreements Under Rule 23(e)(3) are Fair and Reasonable ............................................................................ 15

                7.      Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement ............................................................. 16

IV.     THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED WITH FED. R. CIV. P. 23(e) ........................................................ 17

V.      THE PLAN OF ALLOCATION TREATS CLASS MEMBERS EQUITABLY ........................................................................................................... 19

VI.     CONCLUSION ............................................................................................................. 21

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                        **Page(s)**

*Betorina v. Randstad US, L.P.*,
    No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ............................. 10

*Cheng Jiangchen v. Rentech, Inc.*,
    No. CV 17-1490-GW(FFMx), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).................... 7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .......................................................................................*passim*

*Coppel v. SeaWorld Parks & Ent., Inc.*,
    No. 21-CV-1430-RSH-DDL, 2025 WL 1346873 (S.D. Cal. May 8, 2025) ...................... 8

*Destefano v. Zynga, Inc.*,
    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016).......................... 12, 18

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................................................... 11

*Flynn v. Sientra, Inc.*,
    No. CV 15-07548 SJO (RAOx), 2017 WL 11139918 (C.D. Cal. Jan. 23, 2017) ............. 10

*Forescout Tech., Inc. v. Ferrari Grp. Holdings, L.P.*,
    No. 2020-0385 (Del. Ch.)................................................................................................ 3

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................. 6

*Glazer Capital Mgmt., L.P. v. Forescout Tech., Inc.*,
    63 F.4th 747 (9th Cir. 2023)............................................................................................ 2

*Hampton v. Aqua Metals, Inc.*,
    No. 17-cv-07142-HSG, 2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ............................ 16

*Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020)..................................................................................... 8

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................ 8, 11

*Hunt v. Bloom Energy Corp.*,
    No. 19-CV-02935-HSG, 2024 WL 1995840 (N.D. Cal. May 6, 2024)........................... 18

*In re Aqua Metals, Inc. Sec. Litig.*,
    Case No. 17-cv-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022)...................... 13

*In re Banc of Cal. Sec. Litig.*,
    No. SACV 17-00118 AG (DFMx), 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ............ 9

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .......... 13

*In re BofI Holding, Inc. Sec. Litig.*,
 No. 3:15-CV-02324-GPC-KSC, 2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .............. 20

*In re Celera Corp. Sec. Litig.*,
 No. 5:10–CV–02604–EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)..................... 11

*In re Celera Corp. Sec. Litig.*,
 No. 5:10-cv-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ....................... 12

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019)........................... 7

*In re Extreme Networks, Inc. Sec. Litig.*,
 No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................ 9, 10

*In re Google LLC St. View Elec. Commc'ns Litig.*,
 611 F. Supp. 3d 872 (N.D. Cal. 2020) ........................................................................... 17

*In re Hyundai & Kia Fuel Econ. Litig.*,
 926 F.3d 539 (9th Cir. 2019).......................................................................................... 7

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007). ......................................................................... 12

*In re LinkedIn User Privacy Litig.*,
 309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................... 14

*In re Lyft, Inc. Sec. Litig.*,
 No. 19-CV-02690-HSG, 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022)....................... 15

*In re Netflix Privacy Litig.*,
 No. 5:11–CV–00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)........................ 9

*In re NVIDIA Corp. Derivative Litig.*,
 No. C-06-06110-SBA(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)................... 16

*In re Omnivision Techs., Inc.,*
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 13, 17, 19

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015)......................................................................................... 16

*In re Portal Software, Inc. Sec. Litig.*,
 No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)............................... 9

*In re Stable Road Acquisition Corp.*,
 No. 2:21-CV-5744-JFW(SHKx), 2024 WL 3643393 (N.D. Cal. Apr. 23, 2024).............. 8

*In re Syncor ERISA Litig.*,
 516 F.3d 1095 (9th Cir. 2008)......................................................................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 895 F.3d 597 (9th Cir. 2018)........................................................................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 MDL No. 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) ..................... 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ...................... 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ............................................ 13

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-CV-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...................... 16

*Kastler v. Oh My Green, Inc.*,
    No. 19-cv-02411-HSG, 2022 WL 1157491 (N.D. Cal. Apr. 19, 2022)............................. 5

*Kendall v. Odonate Therapeutics, Inc.*,
    No.: 3:20-cv-01828-H-LL, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ...................... 13

*Kuraica v. Dropbox, Inc.*,
    No. 19-CV-06348-BLF, 2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ........................... 17

*Longo v. OSI Sys., Inc.*,
    CV 17-8841 FMO (SKx), 2022 U.S. Dist. LEXIS 158606
    (C.D. Cal. Aug. 31, 2022) ................................................................................... 10, 21

*Luna v. Marvell Tech. Grp.*,
    No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ........................... 11

*Mendoza v. Hyundai Motor Co.*,
    No. 15-cv-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ............................... 6

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982).................................................................................... 5, 10

*Quiruz v. Specialty Commodities, Inc.*,
    Case No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ................... 16

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11–3936 PA (SSx), 2013 WL 12303367 (C.D. Cal. July 9, 2013)..................... 11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)................................................................................. 9, 13, 16

*Salazar v. Midwest Servicing Grp., Inc.*,
    No. 17–CV–0137–PSG–KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018)..................... 11

*Satchell v. Fed. Express Corp.*,
    No. C03–2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................... 9

*Sayce v. Forescout Techs., Inc.*,
    754 F. Supp. 3d 878 (N.D. Cal. 2024) .......................................................................... 12

*Sudunagunta v. NantKwest, Inc.*,
    No. CV 16-1947-MWF (JEMx), 2019 WL 2183451 (C.D. Cal. May 13, 2019).......... 9, 10

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................... 14

*Vataj v. Johnson*,
    No. 19-cv-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ............................ 13

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............. 12

**Rules & Regulations**

Fed. R. Civ. P. 23(e) .................................................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(4) ....................................................................................................... 21

Private Securities Litigation Reform Act of 1995 ...................................................... 1, 15, 18, 21

**Other Authorities**

Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2024*
    *Full-Year Review* (NERA Jan. 22, 2025) ........................................................................ 13

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 5, 2025, before the Honorable Susan Illston, Courtroom 1 – 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Glazer Capital Management, L.P., Glazer Enhanced Fund L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd., Highmark Limited, in respect of its Segregated Account Highmark Multi-Strategy 2 (together, the "Glazer Funds"), and Meitav Mutual Funds Ltd. ("Meitav" and with the Glazer Funds, "Plaintiffs") will move this Court for an Order, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the Settlement and entry of an order granting approval of the Plan Allocation (the "Final Approval Motion").[1]

Plaintiffs make and base this Final Approval Motion on the attached Memorandum of Points and Authorities and the concurrently filed Joint Declaration of Jeffrey S. Abraham and Omar Jafri in support of (1) Plaintiffs' Motion for Final Approval of Class Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl."), along with the pleadings and other filings in this matter and such other written and oral arguments as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant final approval of the proposed Settlement as fair, reasonable and adequate pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure;

2. Whether the plan of notice directed by the Court in the Preliminary Approval Order, Dkt. No. 275, satisfied Rule 23, due process and the Private Securities Litigation Reform Act ("PSLRA"); and

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning as defined in the Stipulation of Settlement (Dkt. No. 272-1, the "Stipulation") or the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 272, the "Preliminary Approval Motion"). Citations to the Stipulation take the form: "Stip. §__," "Stip. at p._," or "Stip. at Ex._."

3.    Whether the Court should grant final approval of the Plan of Allocation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    PRELIMINARY STATEMENT

The proposed $45,000,000 all-cash Settlement was achieved after over five years of hotly contested litigation across three courts – this Court, the Ninth Circuit, and the Delaware Court of Chancery. It represents approximately 11% of estimated aggregate damages, many times greater than the median 1.6% recovery obtained in similar securities class actions. *See* Dkt. No. 272-9 at p.26. The Settlement was achieved on the eve of summary judgment briefing after prior failed mediation efforts and the close of all discovery, including expert depositions, with the assistance of the Mediator. Plaintiffs respectfully submit that the Settlement represents an exceptional result given the substantial risks that Plaintiffs faced in proving the necessary elements of their claims as well as the limited resources available to the Defendants.

This Court previously reviewed the proposed Settlement and found it to be "fair, reasonable, and adequate" under Rule 23(e)(2) of the Federal Rules of Civil Procedure. Dkt. No. 275 (the "Preliminary Approval Order"), ¶2. Since that time, the Postcard Notice has been mailed to 13,848 Class Members including, much like the named Plaintiffs in this Action, sophisticated institutional investors. Notably, to date, not a single Class Member has objected to the proposed Settlement. Therefore, and as discussed below in greater detail, the Court should enter an Order approving the Settlement.

## II.    SUMMARY OF THE LITIGATION

On December 18, 2020, Plaintiffs filed a Consolidated Amended Complaint, Dkt. No. 116, which the Court dismissed with leave to amend. Dkt. No. 139. On May 10, 2021, Plaintiffs filed a Second Amended Complaint (the "SAC"). Dkt. No. 142. On October 6 and 12, 2021, respectively, the Court dismissed the SAC and entered judgment. Dkt. Nos. 158, 162.

Plaintiffs appealed, and on March 16, 2023, the Ninth Circuit affirmed in part and reversed in part, and remanded the case to this Court for further proceedings. *See Glazer Capital Mgmt., L.P. v. Forescout Tech., Inc*., 63 F.4th 747, 781-82 (9th Cir. 2023). The Ninth Circuit reinstated Plaintiffs' claims related to "(1) the statements made on May 9, 2019, August 7, 2019, August 12,

2019, October 10, 2019, and November 6, 2019, asserting that (i) the disappointing second quarter performance was due to 'slipped' deals, (ii) the 'slipped' deals were 'tech wins,' (iii) the sales pipeline was large, healthy, and continuing to grow, and (iv) the third quarter revenue miss was due to delays in closing caused by economic conditions in the [Europe, Middle East and Africa ("EMEA")] area; and (2) the May 11, 2020, press release stating that Forescout 'look[ed] forward to completing [the] pending transaction with Advent [International, Corporation ("Advent")].'" *Id.* On June 16, 2023, Defendants Answered the SAC. Dkt. No. 178.

On July 25, 2023, Plaintiffs appeared before the Delaware Court of Chancery to challenge confidentiality designations previously made by the parties in *Forescout Tech., Inc. v. Ferrari Grp. Holdings, L.P.*, No. 2020-0385 (Del. Ch.). Defendants responded by filing unredacted (or lightly redacted) public versions of many documents, and ultimately produced other sealed documents to Plaintiffs. Joint Decl. ¶20.

On October 27, 2023, Plaintiffs moved to certify the Class. Dkt. Nos. 193, 196. On May 28, 2024, after both Plaintiffs produced documents and, along with two expert witnesses, were deposed, the Court granted Plaintiffs' motion for class certification, certifying the Class consisting of all persons or entities who purchased or otherwise acquired Forescout common stock between May 10, 2019, and May 15, 2020, inclusive, appointed Plaintiffs as Class Representatives, and appointed Plaintiffs' Counsel as Class Counsel. Dkt. No. 227.[2] On September 20, 2024, the Court issued its Order Granting Plaintiffs' Unopposed Motion for an Order Establishing a Program and Schedule for Notice to the Class (the "Certification Notice Order"), giving Class Members a full and fair opportunity to exclude themselves from the Class. Dkt. No. 242. On January 13, 2025, Plaintiffs filed proof of compliance with that Order. Dkt. No. 256. No valid request for exclusion from the Class has been received. Dkt. No. 256-1, ¶14.

Discovery in this Action commenced in June 2023 and consisted of three phases: class discovery; merits discovery; and expert discovery. This extensive discovery conducted over nearly

---

[2] Excluded from the Class are Defendants, current or former officers and directors of Forescout, any entity in which the Defendants have or had a controlling interest, as well as affiliates, family members, legal representatives, heirs, successors or assigns of any of the above. *See* Dkt. No. 227 at 8 n.2 and 38:4-6.

two years included, but was not limited to, Plaintiffs' review of over 150,000 documents produced by Defendants in several different productions that often followed Court intervention, multiple depositions of both Plaintiffs at the class certification stage, 27 merits depositions, and 8 expert depositions. Three of the merits depositions required letters rogatory and applications to either the Supreme Court of New South Wales in Sydney, Australia, or the High Court of Justice (King's Bench Division) in London, England. Dkt Nos. 245-47, 249-51. Additionally, the Parties raised extensive discovery issues that were ultimately resolved by this Court relating to document production, depositions and interrogatories. *See, e.g.*, Dkt. Nos. 197, 200, 208-09, 228, 231, 234, 238, 243-47, 249-51, 259, 261, 264, 268.

On May 29, 2024, the Parties engaged in an all-day, in-person mediation session before Robert Meyer, Esq. ("Meyer"), a JAMS mediator with extensive experience in resolving securities class action cases. Joint Decl. ¶24; *see also* Stip. at p.3. That mediation proved unsuccessful. *Id.*

On May 9, 2025, with the Class having been certified by this Court and merits discovery being substantially complete, the Parties engaged in another mediation session with Mr. Meyer. Joint Decl. ¶37; *see also* Stip. at p.4. The second mediation also proved unsuccessful, and the Parties proceeded to complete expert discovery depositions in June 2025. Joint Decl. ¶¶37-39; *see also* Stip. at p.4. However, through additional discussions and negotiations in June 2025, Mr. Meyer presented a Mediator's proposal to fully settle all pending claims in this Action, which the Parties accepted. *Id.* On June 18, 2025, the Parties documented their agreement in a confidential, executed Term Sheet. *Id.* On that same day, the Parties filed a Stipulation and [Proposed] Order Regarding Settlement requesting the Court to stay all further deadlines in this Action while the Parties negotiated the terms of a formal stipulation of settlement. Dkt. No. 270. On June 20, 2025, the Court issued orders staying this Action's deadlines and setting a further case management conference for August 8, 2025. Dkt. No. 271. On July 18, 2025, the Parties executed the Stipulation. Joint Decl. ¶40; *see also* Stip. at p.28.

On July 18, 2025, Plaintiffs filed the Preliminary Approval Motion and related documents. *See* Dkt. No. 272, *et seq.* On August 8, 2025, this Court held a Further Case Management Conference. *See* Dkt. No. 276. Later that day, the Court entered the Preliminary Approval Order.

1    Dkt. No. 275. As described below and in the accompanying declarations, Plaintiffs have

2    implemented the Notice Program, combining 13,848 individually mailed Postcard Notice, the

3    Summary Notice, and a website to advise Class Members of the Settlement, and Plaintiffs will

4    post the filings being made in advance of the Settlement Hearing to that website.

5    **III.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

6         **A.    Standards Governing Final Approval of Class Action Settlements**

7         In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of

8    dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,

9    688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit recognizes that "there is a strong judicial

10   policy that favors settlements, particularly where complex class action litigation is concerned." *In*

11   *re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted). "Deciding whether

12   a settlement is fair is … best left to the district judge." *See In re Volkswagen "Clean Diesel" Mktg.,*

13   *Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). Courts, however, should

14   not convert settlement approval into an inquiry into the merits, as "'the court's intrusion upon what

15   is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

16   limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

17   of fraud or overreaching by, or collusion between, the negotiating parties.'" *Kastler v. Oh My*

18   *Green, Inc.*, No. 19-cv-02411-HSG, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19, 2022) (quoting

19   *Officers for Justice*, 688 F.2d at 625).

20        Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims

21   brought as a class action and provides that "the court may approve [a proposed settlement] only

22   after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P.

23   23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," the Court must

24   consider whether:

25        (A) the class representatives and class counsel have adequately represented the class;
          (B) the proposal was negotiated at arm's length; (C) the relief provided for the class
26        is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii)
          the effectiveness of any proposed method of distributing relief to the class, including
27        the method of processing class-member claims; (iii) the terms of any proposed award
          of attorney's fees, including timing of payment; (iv) and any agreement required to
28        be identified under Rule 23(e)(3); and (D) the proposal treats class members
          equitably relative to each other.

*Id.*

In addition to Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[3] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

Securities class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. The settlement of complex cases also promotes the efficient utilization of scarce judicial resources and the speedy resolution of claims. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial

---

[3] This District's Procedural Guidance for Class Action Settlements (the "Northern District Settlement Guidance"), Final Approval, ¶1, states that "[t]he motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, number of class members who opted out, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections." *See* United States District Court for the Northern District of California Procedural Guidance for Class Action Settlements (last modified September 5, 2024), maintained at https://cand.uscourts.gov/attorneys/attorney-practice-resources. The number of undeliverable notices and claim packages is addressed in the Craig Decl. ¶8. As noted *supra*, on May 28, 2024, this Court issued the Certification Order. Dkt. No. 227. Pursuant to the Certification Order, Class members were given a full and fair opportunity to opt-out of the Class. Dkt. No. 242. No Class member opted-out of the Class by December 27, 2024, the date by which purported Class members were required to exclude themselves from the Class. Dkt. No. 256-1, ¶14. Because the dates for Class members to serve objections to the Settlement and submit their claim forms are November 14, 2025, and December 1, 2025, respectively, (*see* Dkt. No. 275, ¶¶14, 16) Class Counsel will address any objections and the number of claims received as of November 27, 2025, in their reply brief to be filed on November 28, 2025. Plaintiffs will provide further information regarding the number of claims submitted between November 28, 2025, and December 1, 2025, at or before the December 5, 2025 Settlement Hearing date. *See* Dkt No. 275, ¶3.

recovery for the … class.").

The Court's Preliminary Approval Order assessed the Settlement and found it to be preliminarily fair, reasonable, and adequate. *See* Dkt. No. 275, ¶2. The Court's conclusion on preliminary approval is equally correct now, as nothing has changed since August 8, 2025. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now."). Moreover, the Court certified the Class for all purposes and appointed Plaintiffs as Class Representatives and their counsel as Class Counsel more than a year before the Parties agreed to the terms of the Settlement. *See, e.g.*, Dkt. No. 227.

**B.      The Settlement Satisfies the Requirements of Rule 23(e)(2)**

**1.      Plaintiffs and Class Counsel Have Adequately Represented the Class**

Pursuant to Rule 23(e)(2)(A), Plaintiffs and Class Counsel have adequately represented the Class. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine legal adequacy, we resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?") (internal citations omitted). Here, Class Counsel are highly qualified and experienced in securities litigation, *see* Joint Decl. ¶73, and together with Plaintiffs, actively pursued the claims of Forescout investors in this Court, and zealously advocated for the Class's best interests throughout the litigation. *See id., generally*; *see also* the Declaration of David Barlow on behalf of Glazer Funds ("Glazer Decl.") and the Declaration of Liat Cohen-David on behalf of Meitav ("Meitav Decl."), attached as Exhibits C and D to the Joint Decl.; *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where class counsel "has significant experience in securities class action lawsuits" and vigorously pursued plaintiff's claims through multiple rounds of amended complaints and motions to dismiss).

As described *supra*, Plaintiffs and Class Counsel vigorously prosecuted this Action, including investigating, drafting, and filing multiple complaints; opposing motions to dismiss; and

1    successfully appealing to the Ninth Circuit. Plaintiffs and Class Counsel also obtained class

2    certification; engaged in extensive discovery that lasted for over two years; worked with experts to

3    assist in the prosecution of the case (and took and defended expert depositions); engaged in a lengthy

4    mediation process; prepared detailed Settlement documents; obtained preliminary approval of the

5    Settlement; and worked closely with both the claims administrator at the time of Class certification

6    and, subsequently, with Strategic Claims Services ("SCS") to ensure an efficient and effective

7    claims administration process. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.*

8    *Liab. Litig.,* MDL No. 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding

9    securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated this

10    action during motion practice and discovery, and the record supports the continuation of that effort

11    during settlement negotiations"); *Hefler v. Wells Fargo & Co.,* No. 16-cv-05479-JST, 2018 WL

12    6619983, at *6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc,* 802 F. App'x 285 (9th

13    Cir. 2020) (granting final approval and stating that at preliminary approval "the Court found that

14    Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive

15    initial discovery, and formal mediation" and that "given this prosecution of the action, counsel

16    possessed sufficient information to make an informed decision about settlement") (internal citations

17    and quotation marks omitted). Notably, the Court previously found both Plaintiffs and Class Counsel

18    adequate at the time it issued the Certification Order. *See* Dkt. No. 227 at 25:25-38:1; *see also*

19    *Coppel v. SeaWorld Parks & Ent., Inc.,* No. 21-CV-1430-RSH-DDL, 2025 WL 1346873, at *3 (S.D.

20    Cal. May 8, 2025) ("Based on the Court's Order granting class certification, the Parties' briefing,

21    and in the absence of contrary evidence, the Court concludes that the adequacy of representation

22    requirement factor is likely satisfied").

23        Moreover, Plaintiffs and Class Counsel have no interests antagonistic to those of other

24    Class Members. *See* Dkt. 227. Accordingly, Plaintiffs share the common interest in obtaining the

25    largest possible recovery for Plaintiffs and the Class. *See In re Stable Road Acquisition Corp.*, No.

26    2:21-CV-5744-JFW(SHKx), 2024 WL 3643393, at *6 (N.D. Cal. Apr. 23, 2024) (finding lead

27    plaintiff adequately represented the class where lead plaintiff's claims are typical of and

28

1    coextensive with the claims of the settlement class with no antagonistic interests). Thus, this factor

2    weighs in favor of final approval.

3              **2.        The Settlement Was Negotiated at Arm's Length with a Mediator**

4              Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ.

5    P. 23(e)(2)(B). "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length,

6    non-collusive, negotiated resolution," *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

7    2009), as this consideration is seen as having overlap with certain additional factors weighed in

8    this Circuit "such as the non-collusive nature of negotiations, the extent of discovery completed,

9    and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF,

10   2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019). As such, courts have long recognized an initial

11   presumption that a proposed settlement is fair and reasonable when it is the "product of arms-

12   length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL

13   1991529, at *6 (N.D. Cal. June 30, 2007); *In re Netflix Privacy Litig.*, No. 5:11–CV–00379 EJD,

14   2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (noting that courts afford "a presumption of

15   fairness and reasonableness" to settlements that were "the product of non-collusive, arms' length

16   negotiations conducted by capable and experienced counsel"). Courts have also reasoned that

17   "[o]ne important factor [to consider] is that the parties reached the settlement … with a third-party

18   mediator." *In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 AG (DFMx), 2019 WL 6605884,

19   at *2 (C.D. Cal. Dec. 4, 2019); *see, e.g.*, *Satchell v. Fed. Express Corp.*, No. C03–2659 SI, 2007

20   WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (finding "[t]he assistance of an experienced mediator

21   in the settlement process confirms that the settlement is non-collusive.").

22             The Parties here reached the Settlement after over five years of hotly contested litigation

23   —including, among other things, Plaintiffs drafting several complaints, opposing two motions to

24   dismiss, successfully appealing to the Ninth Circuit, successfully moving for class certification,

25   conducting extensive formal and informal discovery, including taking and defending nearly 40

26   depositions, consulting with experts, preparing two detailed mediation statements, and

27   participating in two mediation sessions, with months of additional negotiations overseen by Mr.

28   Meyer. *See Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2019 WL 2183451,

at *3 (C.D. Cal. May 13, 2019) (recognizing that "the [a]greement is not the product of collusion between the parties[,]" but "the outcome of an arms length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq.") (internal quotations and citations omitted). Courts have repeatedly recognized that Mr. Meyer is an "experienced mediator" who assists parties in reaching a settlement through arm's length negotiation. *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *3 (granting final approval of settlement in an action alleging violations of the securities laws); *see also Flynn v. Sientra, Inc.*, No. CV 15-07548 SJO (RAOx), 2017 WL 11139918, at *3 (C.D. Cal. Jan. 23, 2017) (preliminarily approving a securities class action reached weeks after "a full-day formal mediation session conducted by a skilled and experienced mediator, Robert Meyer").

The Settlement was reached after all parties accepted Mr. Meyer's "mediator's proposal." *See* Joint Decl. ¶39. Given the Parties' efforts over the years, the substantial length of litigation in this Action and the volume of discovery taken, there can be no question that counsel "had a sound basis for measuring the terms of the settlement." *Longo v. OSI Sys., Inc.*, CV 17-8841 FMO (SKx), 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022). These facts demonstrate that the Settlement is the result of arm's length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625. Indeed, the Preliminary Approval Order recognized that the settlement "resulted from good faith, arm's length negotiations." Dkt. No. 275 at ¶2.

### 3.  The Settlement Provides Adequate and Reasonable Relief for the Class

Rule 23(e)(2)(C)(i) instructs courts to consider "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors including "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575. These factors are often considered together. *See, e.g.*, *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017). While Plaintiffs believe their claims have merit and that they would have prevailed at trial, they nevertheless recognize the numerous risks and uncertainties that remain in this litigation. Indeed, courts have recognized that securities class actions "are highly complex and [litigating] securities class

1   litigation is notably difficult and notoriously uncertain." *Hefler,* 2018 WL 6619983, at *13. As

2   discussed below, the benefits conferred on the Class by the Settlement far outweigh the costs, risks,

3   and delay of further litigation.

4        Plaintiffs recognize that the ability to ultimately prove the SAC's claims at trial, is, as

5   always, a risky proposition. *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, No. 17–CV–0137–

6   PSG–KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "[s]ettlement [a]greement's

7   elimination of risk, delay, and further expenses weighs in favor of approval"). To prove liability

8   under Section 10(b) of the Exchange Act, a plaintiff must establish all elements of the claim,

9   including that the defendants knowingly or recklessly made the materially false and misleading

10  statements and that the material misrepresentations caused investors' losses. *See Dura Pharms.,*

11  *Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Plaintiffs would be required to prove each element

12  of each claim asserted to prevail, whereas Defendants needed only to succeed on one defense to

13  defeat the entire Action. Although Plaintiffs are confident in the abilities of Class Counsel to prove

14  their case, the risk of an unfavorable judgment or verdict was still real. *See Redwen v. Sino Clean*

15  *Energy, Inc.*, No. CV 11–3936 PA (SSx), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013)

16  ("Courts experienced with securities fraud litigation routinely recognize that securities class

17  actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (internal

18  citations and quotation marks omitted).

19       Throughout this case, Defendants have vigorously argued that they did not make any

20  material misrepresentations, that they did not act with scienter, and that the stock price declines

21  that caused investor losses were the result of unrelated factors. Risks to proving falsity, scienter,

22  and loss causation pose significant obstacles here. *See, e.g., In re Celera Corp. Sec. Litig.*, No.

23  5:10–CV–02604–EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any

24  securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and

25  damages at trial … . Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v.*

26  *Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018)

27  (noting the risks of proving scienter, loss causation, and damages at trial). At trial, Defendants

28  could argue, for example, that the subject matter of this case might have involved mismanagement

1    instead of fraud, and if Defendants prevailed on any of these arguments, damages would be

2    substantially reduced or eliminated.

3        Even if Plaintiffs had successfully defeated Defendants' arguments concerning scienter in

4    their anticipated summary judgment motion, that element is notoriously "complex and difficult to

5    establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007).

6    In addition, proof of loss causation and the calculation of damages at trial involve "complex

7    analysis, requiring [a] jury to parse divergent positions of expert witnesses in a complex area of

8    the law," rendering "the outcome of that analysis … inherently difficult to predict and risky." *Vinh*

9    *Nguyen v. Radient Pharms. Corp.*, No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293, at *2

10   (C.D. Cal. May 6, 2014); *see also In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015

11   WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (finding that risks related to the "battle of the

12   experts" weighed in favor of settlement approval); Joint Decl. ¶¶49-50.

13       Moreover, Defendants indicated that they planned to move to decertify the Class in

14   connection with their forthcoming summary judgment motion. Dkt. No. 272-8 ¶10; Joint Decl.

15   ¶45. Among other things, Defendants intended to repeat the arguments made at the class

16   certification stage to split the Class into two sub-classes in an effort to reduce the Class's damages.

17   *Id.*; *see, e.g.*, *Sayce v. Forescout Techs., Inc.*, 754 F. Supp. 3d 878, 898-99 (N.D. Cal. 2024). While

18   Plaintiffs do not believe that Defendants would prevail, the risk to maintaining class certification

19   remained. Joint Decl. ¶45.

20       Furthermore, there remained much work (and costs) for Plaintiffs and the Class in this

21   Action had the Parties not reached the Settlement. For instance, if the Settlement were not reached,

22   the Parties still faced motions for summary judgment, a motion to decertify the Class, motions to

23   exclude experts, and motions *in limine* – before trying the case before a jury. *See* Joint Decl. ¶¶45-

24   50; *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11,

25   2016) (observing that "continuing litigation would not only be costly–representing expenses that

26   would take away from any ultimate class wide recovery–but would also delay resolution and

27   recovery for Settlement Class Members"). Notably, a trial in this Action could take weeks to

28   complete, even without considering pre- and post-trial motions, and any favorable ruling to one

1  party would almost certainly be appealed. Thus, even if Plaintiffs had prevailed at trial,

2  "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for

3  years." *Rodriguez*, 563 F.3d at 966.

4          "By contrast, the Settlement provides … timely and certain recovery." *In re Yahoo! Inc.*

5  *Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *9 (N.D. Cal.

6  July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022). The Settlement

7  here recovers at least 11% of the potential $409.6 million in damages, as estimated by Plaintiffs.

8  *See* Joint Decl. ¶6. As reported by NERA, the median recovery in securities class actions from

9  2015 to 2024 ranged between 1.2% to 2.5%; for cases like this Action with maximum estimated

10  Class-wide damages in the range of $400 to $599 million, the median recovery from 2015 to 2024

11  was 1.6%. *See* Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action*

12  *Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025, at pp. 26-27), Dkt. No. 272-9, Figs. 23

13  & 24. The recovery here, nearly seven times the average in like cases, strongly supports final

14  approval. Indeed, courts in this Circuit routinely find much lower recoveries to be fair and adequate

15  for final approval. *See, e.g.*, *Kendall v. Odonate Therapeutics, Inc.*, No.: 3:20-cv-01828-H-LL,

16  2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (approving settlement of securities class action

17  that represented approximately 3.49% of the maximum estimate damages); *In re Aqua Metals, Inc.*

18  *Sec. Litig.*, Case No. 17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022)

19  (approving settlement that recovered approximately 7.3% of likely recoverable damages); *In re*

20  *Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *4 (C.D. Cal.

21  Oct. 13, 2015) (finding settlement yielding "approximately 8%" of damages "equals or surpasses

22  the recovery in many other securities class actions"); *In re Omnivision Techs., Inc.,* 559 F. Supp.

23  2d 1036, 1042 (N.D. Cal. 2008) (finding settlement yielding 6% of potential damages after

24  deducting fees and costs was "higher than the median percentage of investor losses recovered in

25  recent shareholder class action settlements"); *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 WL

26  5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving $10 million settlement that recovered

27  approximately 2% of total estimated damages, as it was "consistent with the 2–3% average

28  recovery that the parties identified in other securities class action settlements").

Accordingly, the Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of summary judgment proceedings, trial, and post-trial litigation. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993) (holding that "the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). At each of these stages, there would be significant risks attendant to the Action's continued prosecution, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

### 4. The Methods for Processing and Distributing Relief Are Effective

Rule 23(e)(2)(C)(ii) instructs courts to consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The proposed method for processing Class Members' claims and distributing the proceeds of the Settlement to Authorized Claimants here are well-established, effective methods that have been widely used in securities class action settlements. The proceeds of the Settlement will be distributed to Class Members who submit eligible claim forms with required documentation to the Court-approved claims administrator, SCS. *See* Dkt. No. 275, ¶7. The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation, discussed further in Section V, *infra*, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants. SCS, an independent company with extensive experience administering securities class actions, will review and process the claims under Class Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court. This type of claims processing is standard in securities class actions and is necessary because neither Plaintiffs nor Defendants possess data regarding investors' transactions in Forescout securities that would allow the Parties to create a claims-free process to distribute Settlement funds. This factor weighs in favor of final approval.

### 5. The Terms of the Requested Attorneys' Fees are Fair and Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorneys' fees, including timing of payment." As discussed in Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Memorandum of Points and Authorities in Support Thereof ("Fee Memorandum"), submitted herewith, Class Counsel request an award of attorneys' fees of one-third of the Settlement Amount, in addition to repayment of their litigation expenses in the amount of $2,452,178.55, plus any accrued interest thereon, and on behalf of Plaintiffs, request an award of $35,000, each, in connection with their representation of the Class, pursuant to the PSLRA. This fee request was fully disclosed in the Postcard Notice and Notice (Craig Decl. Ex. A at 9 and Craig Decl. Ex. C) approved by Plaintiffs (Glazer Funds Decl. ¶¶3-6; Meitav Decl. ¶¶3-6) and is consistent with attorneys' fee awards in this District and Circuit. *See* Fee Memorandum, Sections I.C.5-6. Approval of the requested attorneys' fees is not part of any agreement with Defendants, and the Settlement cannot be terminated based on any ruling on Class Counsel's fees or expenses.

### 6. Any Other Agreements Under Rule 23(e)(3) are Fair and Reasonable

As previously stated in the Preliminary Approval Motion, the Settling Parties entered into a standard Supplemental Agreement providing that if and only if the Court allowed Class Members another opportunity to exclude themselves from the Class prior to the Settlement Hearing, Defendants would have the option (but not the obligation) to terminate the Settlement. Stip. §X.H; Dkt. No. 272 at 9:1-7, 18:18-21; 22:18-20. The Preliminary Approval Order did not provide any additional opportunities to exclude other than what was already provided for in the Order Granting Plaintiffs' Unopposed Motion for an Order Establishing a Program and Schedule for Notice to the Class. *See, e.g.*, Dkt. No. 242, ¶¶7-11; Preliminary Approval Order, *generally*. Therefore, the Supplemental Agreement has no effect on final approval of the Settlement.

However, again, such agreements are common and do not undermine the propriety of the Settlement. *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, No. 19-CV-02690-HSG, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) ("The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair.");

1  *Hampton v. Aqua Metals, Inc.*, No. 17-cv-07142-HSG, 2021 WL 4553578, at *10 (N.D. Cal. Oct.

2  5, 2021) (same). While the Supplemental Agreement is identified in the Stipulation (Stip. §X.H.),

3  and the nature of the agreement is explained in the Stipulation and here, the specific threshold for

4  the opt-out trigger is kept confidential. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

5  948 (9th Cir. 2015) (finding settlement not rendered unfair by the inclusion of an opt-out provision

6  where "[o]nly the exact threshold, for practical reasons, was kept confidential").

7  

8  **7. Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement**

9  

10  Two additional factors considered by the Ninth Circuit in assessing the reasonableness of

11  a proposed settlement are "the experience and views of counsel" and "the reaction of the class

12  members to the proposed settlement." *Churchill*, 361 F.3d at 575. Both support the Settlement.

13  It is well-settled that courts grant "considerable weight" to the opinion of experienced

14  counsel supporting settlement after legitimate, arm's length negotiation. *See Quiruz v. Specialty*

15  *Commodities, Inc.*, Case No. 17-cv-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9,

16  2020); *see Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-

17  CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (giving "considerable weight

18  to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their

19  understanding of the issues and challenges in this case in particular and their experience in

20  securities litigation in general"). Through their efforts on behalf of the Class, Class Counsel and

21  Plaintiffs have concluded that the proposed Settlement is fair, reasonable, and adequate.

22  As the Ninth Circuit observed in *Rodriguez*, Class Counsel's informed opinion supports

23  approval as "[t]his circuit has long deferred to the private consensual decision of the parties" and

24  their counsel in settling an action. 563 F.3d at 965*; see also In re NVIDIA Corp. Derivative Litig.*,

25  No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant

26  weight should be attributed to counsel's belief that settlement is in the best interest of those affected

27  by the settlement."); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

28  528 (C.D. Cal. 2004) ("[g]reat weight is accorded to the recommendation of counsel, who are most

closely acquainted with the facts of the underlying litigation.") (internal citations and quotation marks omitted).

Here, Plaintiffs are represented by experienced counsel who focus their practices on securities litigation and have negotiated numerous other substantial class action settlements nationwide. Joint Decl. ¶73; *see also* Firm Resumes, Dkt. Nos. 66-5, 86-4. At the time of the Settlement negotiations, Class Counsel had a firm understanding of the legal and factual strengths and weaknesses of the claims given the extensive litigation that took place in this Action. Hence, "[t]here is nothing to counter the presumption that [Class] Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.

Throughout the Action and settlement negotiations, Defendants were also zealously represented by experienced counsel, from Ropes & Gray LLP and Wilson Sonsini Goodrich & Rosati, Professional Corporation. Such representation dispels any suggestion of collusion or that the Settlement is otherwise procedurally defective.

Courts in this Circuit also typically consider "the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 896 (N.D. Cal. 2020); *see also Churchill,* 361 F.3d at 577. Specifically, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, No. 19-CV-06348-BLF, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021). While the deadline to object to the Settlement is November 14, 2025, as of October 31, 2025, no Class Member has objected. Craig Decl. ¶12. Should any objections be received after November 14, 2025, Class Counsel will address them in the reply papers, which are due to be filed with the Court on November 28, 2025.

## IV.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED WITH FED. R. CIV. P. 23(e)

Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In granting preliminary approval of the Settlement, the Court approved Plaintiff's proposed notice program. Dkt. No. 275. The notice program provided the best notice practicable, combining the individually

1    mailed Postcard Notice to all Class Members who could be identified with reasonable effort,

2    supplemented by the Summary Notice in a widely circulated publication, transmission over a

3    national newswire, and publication on an internet website, thereby satisfying all requirements of

4    Rule 23, due process, the PSLRA, and the Northern District's Guidance. *See, e.g., Hunt v. Bloom*

5    *Energy Corp.*, No. 19-CV-02935-HSG, 2024 WL 1995840, at *4 (N.D. Cal. May 6, 2024)

6    (approving similar notice program that included mailing notices to potential class members and

7    nominees followed by publication notice and posting notice on a settlement website); *Zynga*, 2016

8    WL 537946, at *7 (similar notice program constituted "the best form of notice available under the

9    circumstances").

10       Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed

11   Claims Administrator, SCS, notified 18,355 potential Class Members, either by mailed Postcard

12   Notice or emailed the direct link to the location of the Notice on the Settlement webpage. *See*

13   Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of

14   the Summary Notice; and (C) Report on Objections ("Craig Decl.") at ¶7, attached as Exhibit E to

15   the Joint Declaration. On August 20, 2025, SCS posted on a URL dedicated to this Settlement

16   (https://forescoutsecuritieslitigation.com) the Notice and Proof of Claim, Postcard Notice,

17   Preliminary Approval Order and Stipulation with exhibits. *Id.* at ¶11. On September 5, 2025, SCS

18   caused Globe Newswire to disseminate electronically the Summary Notice. *Id.* at ¶9. As such, this

19   Court should approve the Notice program as satisfying due process and the PSLRA's mandate.

20       Notice of a class action settlement "is satisfactory if it 'generally describes the terms of the

21   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

22   forward and be heard.'" *Churchill*, 361 F.3d at 575. The contents of the notices here provided all

23   necessary information for Class Members to make an informed decision regarding the Settlement

24   and contained all of the information required by Rule 23(c)(2)(B), the PSLRA, and the Northern

25   District's Guidance. The Notice identified, among other things: (1) the nature of the case and the

26   claims asserted; (2) the definition of the Class; (3) the amount of the Settlement; (4) the Plan of

27   Allocation; (5) the reasons why the Parties are proposing the Settlement; (6) the estimated average

28   recovery per affected share; (7) the attorneys' fees, litigation expenses and lead plaintiff awards

that would be sought; (8) the identity and contact information for Class Counsel; (9) Class Members' right to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (10) the binding effect of a judgment on Class Members; (11) the amount of Plaintiffs' awards; and (12) the dates and deadlines for Settlement-related events. Craig Decl. Ex. A.

Specifically, the Court-approved notice program provided Class Members with a description of the litigation, the $45,000,000 Settlement Fund and Plan of Allocation; Class Counsel's intent to apply for a fee award in an amount not to exceed one third of the Settlement Fund, and an amount not to exceed $2.5 million for expense reimbursements to be paid from the Settlement Fund plus interest on both amounts; the request for a compensation award to Plaintiffs in the amount of no more than $50,000 each to be paid from the Settlement Fund, and the contact information for Class Counsel and the Claims Administrator, including how to make inquiries to both. The Notice program also identified the date, time, and place of the Settlement Hearing, described how to file a claim, and described how to object to the Settlement, and specified the deadlines for filing claims, objecting, or requesting exclusion. Furthermore, the Court-approved notice program adequately informed Class Members of the Settlement's impact, including release of claims against Defendants for all Class Members. Craig Decl. Exs. A, C-D. For these reasons, the Notice program approved by the Court and faithfully executed by SCS satisfied all applicable requirements.

## V.    THE PLAN OF ALLOCATION TREATS CLASS MEMBERS EQUITABLY

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other." Assessment of a proposed plan of allocation of settlement proceeds in a class action "'is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'" *Omnivision*, 559 F. Supp. 2d at 1045. The Plan of Allocation here, developed in consultation with Plaintiffs' damages expert, details how the Settlement proceeds will be distributed among authorized claimants and provides formulas for calculating the recognized claim of each Class Member based on purchases or acquisitions of Forescout securities between May 10, 2019, and May 15, 2020, and if or when they sold. Joint Decl. ¶¶51-57.

1    Specifically, the Plan of Allocation accounts for the estimated alleged artificial inflation in

2    the price of Forescout common stock based on the misrepresentations alleged by Plaintiffs and the

3    price change (net of market- and industry-wide factors) after the public announcements that

4    allegedly corrected the misrepresentations. The Plan of Allocation provides for five periods with

5    varying amounts of estimated alleged artificial inflation per share of Forescout common stock, as

6    computed by Plaintiffs' damages expert: May 10, 2019, to October 9, 2019; October 10, 2019, to

7    February 5, 2020; February 6, 2020, to May 15, 2020; May 18, 2020; and May 19, 2020, and

8    thereafter.

9    The specific alleged corrective disclosure dates at issue are October 10, 2019; May 18,

10    2020; and May 19, 2020. On October 10, 2019, Forescout announced that total revenue for the

11    third quarter was expected to be within the range of $90.6 million to $91.6 million, compared to

12    the Company's prior guidance of $98.8 million to $101.8 million. On May 18, 2020, Forescout

13    disclosed that on May 15, 2020, Advent notified the Company through a Termination Letter that

14    it would not proceed with the acquisition as scheduled. Plaintiffs claim that prior to these

15    disclosures, the Company's stock was artificially inflated. On May 19, 2020, the stock continued

16    to drop as the market absorbed the bad news. Additionally, investors who purchased Forescout

17    common stock between May 12, 2020, and May 15, 2020, are given a 50% premium because of

18    the temporal proximity between Defendant Michael DeCesare's May 11, 2020 statement that "we

19    look forward to completing our pending transaction with Advent" and the alleged absence of any

20    other Company specific news between May 12, 2020, and May 15, 2020.

21    As such, the plan of allocation is fair, reasonable, and adequate because all eligible Class

22    Members (including Plaintiffs) will be subject to the same formulas for distribution of the

23    Settlement and each authorized claimant will receive his, her or its *pro rata* share of the

24    distribution. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2022

25    WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) ("no indication that the distribution and allocation

26    methods proposed … will result in unequitable treatment of Class Members" where the "Claims

27    Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based

28    upon the information submitted in the Proof of Claim Form and based on the calculation of

recognized loss, distributed on a pro rata basis."); *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each authorized claimant's share of the net settlement amount will be based on when the claimant acquired and sold the subject securities. Accordingly, this factor also weighs in favor of final approval.") (internal citations omitted).[4]

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement, the Notice and Plan of Allocation.

Dated: October 31, 2025

**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**

 */s/ Jeffrey S. Abraham*
Jeffrey S. Abraham (admitted *pro hac vice*)
Michael J. Klein (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email: jabraham@aftlaw.com
        mklein@aftlaw.com

Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
Email: pbishop@aftlaw.com


*-and-*


**POMERANTZ LLP**

 */s/ Omar Jafri*
Omar Jafri (admitted *pro hac vice*)
Brian O'Connell (SBN 314318)
Genc Arifi (admitted *pro hac vice*)
Diego Martinez-Krippner (admitted *pro hac vice*)
Jianan Jiang (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

[4] Plaintiffs' request for reimbursement of their reasonable costs and expenses directly related to their participation in the Action, noted above, would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

Facsimile: (312) 377-1184
Email: ojafri@pomlaw.com
       pdahlstrom@pomlaw.com
       boconnell@pomlaw.com
       garifi@pomlaw.com
       dmartinezk@pomlaw.com
       ajiang@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       ahood@pomlaw.com

*Class Counsel*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Patrice L. Bishop, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.


Dated: October 31, 2025                      */s/ Patrice L. Bishop*
                                             Patrice L. Bishop