**ABRAHAM, FRUCHTER**
 **& TWERSKY, LLP**
Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
Email: pbishop@aftlaw.com

*Class Counsel*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER L. SAYCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FORESCOUT TECHNOLOGIES, INC., *et al.*,<br><br>Defendants. | Case No. 20-CV-00076-SI<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO PLAINTIFFS**<br><br>Judge:    Hon. Susan Illston<br>Courtroom:  1 – 17th Floor<br>Date:     December 5, 2025<br>Time:     10:00 am<br>Trial Date:  None set |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................2

     PRELIMINARY STATEMENT .........................................................................................2

     ARGUMENT .........................................................................................................................4

    I.     CLASS COUNSEL'S FEE REQUEST SHOULD BE GRANTED........................4

        A.    Class Counsel Should be Granted One Third from the Common Fund as Attorneys' Fees.............................................................................4

        B.    The Requested Fee is Reasonable Under the Percentage-of-Recovery Method ............................................................................................5

        C.    Additional Factors Considered by Courts Support Approval of the Requested Fee .........................................................................................6

            1.    The Result Achieved Supports the Fee Request .............................6

            2.    The Substantial Risks of Litigation Support the Fee Request .........8

            3.    The Skill Required and the Quality of the Work Performed Support the Fee Request .............................................................10

            4.    The Contingent Nature of the Fee and Class Counsel's Financial Burden....................................................................11

            5.    Awards Made in Similar Cases Support the Fee Request.............12

            6.    The Class's Reaction to Date Supports the Fee Request ...............14

            7.    A Lodestar Crosscheck Confirms that the Requested Fee is Reasonable .................................................................................15

    II.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ......................................................................................17

    III.    PLAINTIFFS' REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE ........................................................................19

CONCLUSION..............................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ................................21

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ........................................................................................................8

*Andrews v. Plains All Am. Pipeline L.P.*,
   No. CV154113PSGJEMX, 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ...........................12

*Arsam v. Salomon Bros., Inc. (In re Revco Sec. Litig.)*,
   No. 1:89CV0593, 1993 WL 497208 (N.D. Ohio Sep. 14, 1993) ...........................................21

*Azar v. Blount Int'l, Inc.*,
   No. 3:16-CV-0483-SI, 2019 WL 7372658 (D. Or. Dec. 31, 2019) .........................................7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ................................................................................................................5, 14

*Beaver* v. *Tarsadia Hotels*,
   No. 11-cv-01842, 2017 WL 4310707 (S.D. Cal. Sep. 28, 2017) ............................................12

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .............................................................................................15

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .....................................................................................................................4

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................................................................3

*Daniels v. Aria Resort & Casino, LLC*,
   No. 2:20-CV-00453-GMN-DJA, 2023 WL 11910245 (D. Nev. July 31, 2023) ..................5, 6

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................10, 18

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) ..............................................................................................21

*Dufoe v. DraftKings Inc. et al.*,
   No. 1:23-cv-10524, Dkt. No. 106 (D. Mass. July 30, 2025).....................................................21

*Farrell v. Bank of Am. Corp., N.A.*,
   827 F. App'x 628 (9th Cir. 2020) ..............................................................................................15

*Ferris v. Wynn Resorts Limited, Ltd., et al.*,
   No. 2:18-cv-00479-CDS-BNW, Dkt. No. 442 (D. Nev. Jan 31, 2025).................................6, 13

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009) .................................................................................................5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...............................................................................................9

*Godinez v. Alere Inc.*,
No. 1:16-cv-10766 (PBS), Dkt. No. 152 (D. Mass Dec. 22, 2017).......................................11

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)..................................................................................................4

*Hageman v. AT & T Mobility LLC*,
No. 13-cv-00050, 2015 WL 9855925 (D. Mon. Feb. 11, 2015).............................................12

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ...................................................................................................17

*Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) ...........................................................................................8

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................8, 14, 15, 16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................................................................6

*Howell v. JBI, Inc.*,
298 F.R.D. 649 (D. Nev. 2014)..............................................................................................6

*IBEW Local 697 v. Int'l Game Tech.*,
No. 3:09-CV-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)............................6, 7

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................................................5

*In re Alta Mesa Res., Inc. Sec. Litig.*,
No. 4:19-CV-00957, 2025 WL 1901350 (S.D. Tex. May 6, 2025)...................................18, 19

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536 PSG (PLAX), Dkt. No. 591-5 (C.D. Cal. Sept. 20, 2016) ............................19

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..........15, 18, 19

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .......................12, 13

*In re Banc of Cal. Sec. Litig.*,
No. SACV1700138DMGDFMX, 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ...................6

*In re Bard IVC Filters Prod. Liab. Litig.*,
81 F.4th 897 (9th Cir. 2023) ..................................................................................................4

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..................................................................................................5

*In re Celera Corp. Sec. Litig.*,
Case No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ......................9

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005)..................................................................................................5

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
No. CV 17-283, 2020 WL 7133805 (D. Minn. Dec. 4, 2020)........................................20, 21

*In re Chicago Bridge & Iron Company N.V. Sec. Litig.*,
No. 1:17-cv-01580, Dkt. No. 438 (S.D.N.Y. June 27, 2022) .................................................19

*In re Chicago Bridge & Iron Company N.V. Sec. Litig.*,
No. 1:17-cv-01580, Dkt. No. 438-2 (S.D.N.Y. June 27, 2022) .............................................19

*In re Chicago Bridge & Iron Company N.V. Sec. Litig.*,
No. 1:17-cv-01580, Dkt. No. 446 (S.D.N.Y Aug. 5, 2022)..............................................13, 19

*In re DVI, Inc.*,
No. CV 03-5336, 2015 WL 12803587 (E.D. Pa. June 24, 2015) ..........................................21

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) .....................................................................................10

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)...................................7

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) ..................................................................................16

*In re Facebook Biometric Info. Priv. Litig.*,
2022 WL 822923 (9th Cir. Mar. 17, 2022)............................................................................16

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)...........................................13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
674 F. App'x 37 (2d Cir. 2016) .............................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................21

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ...............................................................................13, 18

*In re Grab Holdings Ltd. Sec. Litig.*,
22-cv-02189-JLR, Dkt. No. 154 (S.D.N.Y May 15, 2025) ...................................................13

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ...........................8

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................10

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)......................................................................................21

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .........................................................................11

*In re Leapfrog Enterprises, Inc. Sec. Litig.*,
C-03-05421 RMW, 2008 WL 4544434 (N.D. Cal. Sept. 29, 2008)...........................................3

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .......................13, 17

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)..................................16

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) .....................................................................................16, 17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................21

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................ *passim*

*In re Oracle Corp. Sec. Litig.*,
No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)..........................................11

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ................................................................................................11

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ....................................................................................................8

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)...................................................................................................10

*In re: Petrobras Sec. Litig.,*
312 F.R.D. 354 (S.D.N.Y. 2016) ...........................................................................................10

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)................................3, 16

*In re Pub. Servo Co. of N.M,*
No. 91-0536M, 1992 WL 278452 (S.D. Cal. July 28, 1992) ..................................................13

*In re Sea Limited Secs. Litig.*,
Index No. 151344/2022 (Sup. Ct. N.Y. Cnty.) .......................................................................10

*In re Stable Road Acquisition Corp.*,
No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)...........6, 8, 16

*In re Tesla, Inc. Sec. Litig.*,
No. 18-CV-04865-EMC, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022)..................................11

*In re Tesla, Inc. Sec. Litig.*,
No. 3:18-cv-04865-EMC, Dkt. No. 671 (N.D. Cal. Feb. 3, 2023) ........................................11

*In re Tezos Sec. Litig.*,
No. 3:17-CV-06779-RS, 2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) .............................6

*In re Tripath Tech., Inc., Sec. Litig.*,
No. C 04 4681 SBA, 2006 WL 1009228 (N.D. Cal. Apr. 18, 2006) .....................................19

*In re Twitter Inc. Sec. Litig.*,
No. 416CV05314JSTSK, 2022 WL 17248115 (N.D. Cal. Nov. 21, 2022)............................16

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................................15

*In re U.S. Steel Consol. Cases*,
Case No. 2:17-cv-579-CB, Dkt. No. 358 (W.D. Pa. Mar. 31, 2023).....................................13

*In re Verifone Holdings, Inc. Sec. Litig.*,
No. C-07-6140 EMC, 2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ..................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)........................11, 14, 15

*In re Wash. Mut., Inc. Sec. Litig*,
No. 08-MD-1919 MJP, 2011 WL 8190466 (W.D. Wash. Nov. 4, 2011)................................14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .................................................................................. *passim*

*In re Zillow Group Sec. Litig.*,
No. 2:17-cv-1387-JCC, Dkt. No. 183 (W.D. Wash. Aug. 8, 2023)......................................16

*In re Zillow Group Sec. Litig.*,
No. 2:17-cv-1387-JCC, Dkt. No. 186 (W.D. Wash. Aug. 8, 2023)......................................16

*Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...................8, 16

*Johnson v. US Auto Parts Network, Inc.*,
No. CV07-2030-GW(JCX), 2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) .............................8

*Khoja v. Orexigen Therapeutics, Inc.*,
No. 15-CV-00540-JLS-AGS, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ........................16

*Larsen v. Trader Joe's Co.*,
No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)...............................11

*Luna v. Marvell Tech. Grp.*,
No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)...................................9

*Lusby v. GameStop Inc.*,
No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015)....................................3

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

*Meijer, Inc. v. Abbott Laboratories*,
No. 07-cv-05985, 2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ........................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................14

*Nguyen v. Radient Pharms. Corp.*,
No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........................5, 9

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ......................................................................................16

*Pearlstein v. Blackberry Ltd.*,
No. 13 CIV. 7060 (CM) (KHP), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ....................21

*Perez v. Rash Curtis & Assocs.*,
No. 4:16-CV-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ..........................13

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ......................................................................................5

*Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*,
No. 16-cv-07981-PKC (S.D.N.Y.) ............................................................................10, 11

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................................20

*Savani v. URS Pro. Sols. LLC*,
No. 1:06-CV-02805-JMC, 2014 WL 172503 (D.S.C. Jan. 15, 2014) ..................................11

*Sayce v. Forescout Techs., Inc.*,
Case No. 20-cv-00076-SI, 2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) ..........................10

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ......................................................................................11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ......................................................................................19

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
551 U.S. 308 (2007) ..............................................................................................5, 14

*Thomas & Thomas Rodmakers Inc. v. Newport Adhesives and Composites, Inc.*,
No. 99-cv-07796 (C.D. Cal. Oct. 18, 2005) ..............................................................12, 13

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ..............................................................................21

*Vataj v. Johnson*,
No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................7

*Vincent v. Reser*,
No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ..............................17, 18

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ........................................................................ *passim*

*Wehlage v. Evergreen at Arvin LLC,*
  No. 4:10-CV-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012).................................20

**Rules & Regulations**

Fed. R. Civ. Proc. 23(e) ...........................................................................................1, 2

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................................2, 19, 22

15 U.S.C. § 78u-4(a)(6) ................................................................................................5

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

**Other Authorities**

Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025)..................................................................7

William B. Rubenstein, *On Plaintiff "Incentive" Payments*, Class Action Attorney Fee Digest (Vol. 1, Apr. 2007)..................................................................................................19

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on December 5, 2025, before the Honorable Susan Illston, Courtroom 1 – 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Glazer Capital Management, L.P., Glazer Enhanced Fund L.P., Glazer Enhanced Offshore Fund, Ltd., Glazer Offshore Fund, Ltd., Highmark Limited, in respect of its Segregated Account Highmark Multi-Strategy 2 (together, the "Glazer Funds"), and Meitav Mutual Funds Ltd. ("Meitav" and with the Glazer Funds, "Plaintiffs"), will move this Court for an Order, pursuant to Federal Rule of Civil Procedure 23(e)(2) awarding attorneys' fees and litigation expenses incurred in the above-captioned securities class action (the "Action"), and for reimbursement awards to Plaintiffs.[1]

This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows, the accompanying declarations, including the Joint Declaration and exhibits attached thereto, other previous filings and orders in this case, and any further representations as may be made by counsel at any hearing held on this matter.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the Court should approve Class Counsel's application for an award of attorneys' fees;

2.  Whether the Court should approve Class Counsel's application for payment of litigation expenses;

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement dated July 18, 2025 ("Stipulation"). *See* Dkt. No. 272-1. Except where otherwise noted, all references to "¶___" are to the numbered paragraphs of the Joint Declaration of Jeffrey S. Abraham and Omar Jafri in support of (1) Plaintiffs' Motion for Final Approval of Class Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl."), filed herewith, and all emphasis is added and internal citations and quotation marks omitted.

3.    Whether the Court should approve Plaintiffs' application for an award reimbursing their costs incurred in representing the Class pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(4) (hereafter the "PSLRA").

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Counsel respectfully submit this memorandum of points and authorities in support of their Motion for: (a) an award of attorneys' fees in the amount of one third of the Settlement Amount and payment of Class Counsel's litigation expenses of $2,452,178.55, plus interest on both amounts that has accrued while in escrow; and (b) reimbursement awards to Plaintiffs Meitav and the Glazer Funds in the amount of $35,000 each.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**PRELIMINARY STATEMENT**

Class Counsel have vigorously litigated this securities class action on a fully contingent basis for more than five years, without receiving any compensation, and while advancing nearly $2.5 million in expenses. Class Counsel had to—and did—dedicate substantial efforts to the Action from its outset, despite the very real risk that they might recover nothing. Class Counsel conducted an extensive investigation, including: interviewing over 30 former Forescout employees; researching and opposing Defendants' motions to dismiss; successfully appealing dismissal of the Action to the Ninth Circuit; successfully obtaining an Order from the Court that certified the proposed Class; notifying the Class of the case at the time of certification, resulting in no Class member opting-out; reviewing over 150,000 documents; defending the depositions of Plaintiffs; taking or defending twenty-seven merits depositions and eight expert depositions; and participating in multiple full-day mediation sessions and multiple follow-up negotiations before reaching and seeking approval of the Settlement.

These efforts resulted in a very favorable $45,000,000 cash settlement for the benefit of the Class, representing a recovery of approximately 11% of maximum estimated Class-wide damages for the claims asserted in this Action. *See* Joint Declaration at ¶6. That is a far higher recovery than most securities class actions, including securities class actions within the same range of maximum estimated Class-wide damages. *Id*. The Settlement also eliminated the significant risks and delay that continued litigation would impose upon the Class, including the risk of a lower recovery or no recovery at all.

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

Having achieved a significant monetary recovery after litigating and financing this case contingently for more than five years, Class Counsel now seek attorneys' fees of one third of the Settlement Fund and payment for the litigation expenses that Class Counsel incurred in prosecuting the Action on behalf of Plaintiffs and the Class, plus interest that has accrued on such amounts while deposited in the Escrow Account.

Class Counsel respectfully submit that this is an excellent result achieved for the Class, and Class Counsel's hard work, skill, and persistence fully merit the requested fee. The requested fee is also considerably less than Class Counsel's combined lodestar of $20,950,691.50. This requested fee award is within the range typically awarded in similar cases in the Ninth Circuit, and represents a reasonable and justifiable upward adjustment from the 25% benchmark established in the Ninth Circuit given the actual result achieved, and the significant amount of litigation that took place in multiple courts over more than five years. The upward departure from the 25% benchmark is also appropriate because the market value of Class Counsel's billable time spent on this matter exceeds the fee request of one third of the Settlement Fund.

Indeed, a cross-check against Class Counsel's lodestar results in a fractional multiplier, and confirms the fairness and reasonableness of the requested fees. Counsel spent over 32,000 hours of professional time, having a market value of approximately $20,950,691.50, in prosecuting the Action. *See* Joint Declaration at ¶63. This results in a multiplier of approximately 0.72. A multiplier of less than one is commonly called a "negative multiplier" and "suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) (same); *see also In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."); *In re Leapfrog Enterprises, Inc. Sec. Litig.*, C-03-05421 RMW, 2008 WL 4544434 at *6 (N.D. Cal. Sept. 29, 2008) (approving fee with a negative multiplier). Courts in the Ninth Circuit have repeatedly approved similar fee requests

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

in similar cases in light of the result achieved for the Class, and the extensive amount of work performed by Class Counsel.

Class Counsel also seek to recover the litigation expenses incurred in prosecuting and resolving this litigation, which totaled $2,452,178.55. As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type that are routinely charged to clients in non-contingent litigation. For the reasons set forth more fully below, Class Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken and lack of a viable alternative recovery, and should thus be awarded by the Court. Finally, Class Counsel seek a $35,000 award each for the time and expenses of Plaintiffs Meitav and the Glazer Funds in prosecuting this Action, as permitted by the PSLRA.

## ARGUMENT

## I. CLASS COUNSEL'S FEE REQUEST SHOULD BE GRANTED

### A. Class Counsel Should be Granted One Third from the Common Fund as Attorneys' Fees

"Under the common fund doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th 897, 904 n.8 (9th Cir. 2023) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The doctrine "is intended to avoid the unjust enrichment that would result from allowing parties to obtain the benefit of a lawsuit without contributing to its cost." *Id*. The rationale for awarding attorneys' fees as a percentage-of-recovery from the common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

In addition to providing just compensation, an award of reasonable attorneys' fees from a common fund ensures that "competent counsel continue to be willing to undertake risky [and] complex … litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). In this regard, the Supreme Court has also emphasized that private securities actions, such as this, provide "a most

effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313 (2007) (same).

Where a settlement produces a common fund, courts employ either the percentage-of-recovery method or the lodestar method in awarding attorneys' fees. *WPPSS*, 19 F.3d at 1296; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, the percentage-of-recovery method is now the prevailing method used in this Circuit. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (affirming use of percentage-of-recovery method); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (finding use of "the common fund doctrine" to be the prevailing practice in the Ninth Circuit for awarding attorneys' fees).

Courts prefer the percentage-of-recovery method because it: (i) parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; (ii) aligns the lawyers' interests with those of the class in achieving the maximum possible recovery; and (iii) reduces the burden on courts by eliminating the need for a full-blown and time-consuming lodestar analysis. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942-43 (9th Cir. 2011); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting cases). In addition, the use of the percentage-of-recovery method comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable.") (quoting *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005)).

**B.    The Requested Fee is Reasonable Under the Percentage-of-Recovery Method**

Class Counsel have requested a reasonable percentage of the Settlement Fund. The Ninth Circuit has "established twenty-five percent of the recovery as a benchmark for attorneys' fees calculations under the percentage-of-recovery approach." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Daniels v. Aria Resort & Casino, LLC*, No. 2:20-CV-00453-GMN-DJA, 2023 WL

11910245, at *2 (D. Nev. July 31, 2023). That benchmark can be "adjust[ed] upward or downward to account for the circumstances in each case." *IBEW Loc. 697 Pension Fund v. Int'l Game Tech, Inc.*, No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012). Nevertheless, the fee award must "be reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295; *Howell v. JBI, Inc.*, 298 F.R.D. 649, 660 (D. Nev. 2014) (same).

Indeed, courts have found that, "in most common fund cases, the award exceeds that benchmark," especially in "securities class actions." *In re Stable Road Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *13-14 (C.D. Cal. Apr. 23, 2024) ("*Stable Road*"); *see also In re Tezos Sec. Litig.*, No. 3:17-CV-06779-RS, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding one third of $25 million settlement); *In re Banc of Cal. Sec. Litig.*, No. SACV1700138DMGDFMX, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *Ferris v. Wynn Resorts Ltd., et al.,* No. 2:18-cv-00479-CDS-BNW, Dkt. No. 442 (D. Nev. Jan 31, 2025) (awarding one third (33 1/3%) of a $70 million settlement). Accordingly, the fee request for one third of the Settlement Fund here falls within the range of reasonable awards allowed in this Circuit.

**C.      Additional Factors Considered by Courts Support Approval of the Requested Fee**

The reasonableness of Class Counsel's fee request is further confirmed by additional factors considered by courts in this Circuit, including: (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, (5) awards made in similar cases, (6) the class's reaction, and (7) a lodestar cross-check. *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1046-48.

**1.      The Result Achieved Supports the Fee Request**

The first and "most critical factor [in determining an attorneys' fee] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); s*ee also Vizcaino*, 290 F.3d at 1048 ("[E]xceptional results are a relevant" factor in awarding attorneys' fees). Class Counsel respectfully submit that the $45,000,000 cash settlement is a highly favorable result for the Class, especially considering the risk of a significantly lower recovery—or no recovery at all—if the case proceeded through summary judgment, trial, and any appeals filed by Defendants. Indeed, the Court dismissed

the case twice before it was reinstated by the Ninth Circuit. There would have been no recovery at all without the reversal, which is often difficult to obtain even when the appeal may be meritorious.

The $45,000,000 Settlement was achieved after significant motion practice, including a grant of class certification and favorable rulings for Plaintiffs on numerous discovery disputes, and significant fact and expert discovery taken over two years following the reversal. Plaintiffs' counsel reviewed over 150,000 documents and participated in 39 depositions, including international depositions conducted only after relief was obtained from foreign courts in the United Kingdom and Australia to compel the testimony of Defendants' former employees.

The $45,000,000 recovery here represents approximately 11% of the maximum estimated class-wide damages, a recovery much higher than the percentages courts in this Circuit have found typical, reasonable or standard. As reported by NERA, the median recovery in securities class actions from 2015 to 2024 ranged from 1.2% to 2.5%; for cases with losses in the range of $400 to $599 million, the median recovery from 2015 to 2024 was 1.6%. *See* Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025, at pp. 26-27), Figs. 23 & 24; *see also Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of maximum potential damages); *Azar v. Blount Int'l, Inc.*, No. 3:16-CV-0483-SI, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering 4.63% to 7.65% of the class's total estimated damages); *Int'l Game Tech.,* 2012 WL 5199742, at *3 (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years"). That the result here is so far above the typical percentage-recovered only highlights that the fee request is reasonable. And a risk remained that the maximum estimated class-wide damages could be reduced even though Defendants failed to convince the Court to do that at the class certification stage. Defendants intended to renew the same arguments at summary judgment and at trial. While

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

7

Plaintiffs believed that Defendants' position on damages remained meritless, there was no guarantee that the damages claimed by the Class would be the damages recovered at a later stage of the litigation had this matter not settled now.

### 2.    The Substantial Risks of Litigation Support the Fee Request

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005); *see also, e.g.*, *WPPSS*, 19 F.3d at 1299-1301; *Omnivision*, 559 F. Supp. 2d at 1047. The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). "[I]n general, securities actions are highly complex and … securities class litigation is notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) ("In general, securities fraud class actions are complex cases that are time-consuming and difficult to prove."); *Stable Road*, 2024 WL 3643393, at *12 (similar). Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). For these reasons, in securities class actions, fee awards often exceed 25%. *Omnivision*, 559 F. Supp. 2d at 1047.

Class Counsel faced significant risks in this Action, which was subject to the heightened pleading requirements of the PSLRA. *See Johnson v. US Auto Parts Network, Inc.*, No. CV07-2030-GW(JCX), 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). Class Counsel expended significant resources, including conducting a vast private investigation, to obtain the information necessary to overcome that hurdle, all while knowing that a dismissal could lead to the loss of those resources. The risks only increased as Class Counsel shouldered the burden of litigation

expenses and dedicated an enormous amount of time and resources to the case through class certification as well as fact and expert discovery without any guarantee of success or payment.

Defendants, represented by highly experienced securities litigators at Ropes & Gray LLP and Wilson Sonsini Goodrich & Rosati, Professional Corporation, hotly contested this litigation at every step, and were expected to launch substantial challenges at summary judgment and trial regarding falsity, scienter, and loss causation. ¶¶45-50, 74. Such challenges can pose serious risks in securities litigation, and the failure of proof on any element is fatal. *See, e.g.*, *In re Celera Corp. Sec. Litig.*, Case No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (noting that "[a]s with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial" and that "given the four years of litigation already underway, Lead Plaintiff would risk recovering nothing without a settlement"); *Luna v. Marvell Tech. Grp*., No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (similar and noting the risks at trial). Even if the Class prevailed on liability, damages could be significantly reduced had Defendants' principal strategy in attempting to decrease the Class's damages succeeded at a later stage of the litigation.

At trial, there remained a significant risk that the jury could agree with Defendants' experts and find no liability, no damages, or award far less than the Class sought to recover. *See, e.g.*, *Radient Pharms.*, 2014 WL 1802293, at *2 (noting, in securities class action, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law. The outcome of that analysis is inherently difficult to predict and risky"). And even if Plaintiffs survived summary judgment and obtained a favorable verdict at trial, they would still have faced the risk of partial or complete reversal in post-trial proceedings. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc*., 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction). The $45 million Settlement, achieved in the face of these significant risks, amply supports the requested fee award.

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

### 3.   The Skill Required and the Quality of the Work Performed Support the Fee Request

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946 at \*17 (N.D. Cal. Feb. 11, 2016)*; see also Vizcaino*, 290 F.3d at 1048. "'This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Zynga*, 2016 WL 537946, at \*17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). In fact, in this case, Plaintiffs did not defeat Defendants' initial attempt to have the case dismissed, but secured a rare, precedent-setting partial reversal, and an accompanying published Ninth Circuit opinion favorable to the plaintiffs' bar in securities fraud cases in the future.

In considering this factor, courts also consider the quality and vigor of opposing counsel, which was excellent here. *See, e.g.*, *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at \*20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). Defendants were represented by not one, but two highly respected and well-resourced law firms with well-established securities litigation groups that dedicated significant resources and time to put on a defense for the Defendants.

Class Counsel are experienced and skilled practitioners in securities litigation, with a long and successful track record in securities cases throughout the country. Earlier in the litigation, this Court recognized that Class Counsel had "presented their credentials, including years of experience successfully litigating large securities class action suits such as this one" when appointing them as co-lead counsel. *Sayce v. Forescout Techs., Inc.*, Case No. 20-cv-00076-SI, 2020 WL 6802469 (N.D. Cal. Nov. 19, 2020); *see, e.g.*, *In re: Petrobras Sec. Litig.,* 312 F.R.D. 354, 362 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (finding that Pomerantz was "qualified, experienced and able to conduct the litigation," in a case where a $3 billion settlement was recently achieved); *In re Sea Limited Secs. Litig.*, Index No. 151344/2022 (Sup. Ct. N.Y. Cnty.) (AF&T served as co-lead counsel in a case which settled for $40 million); *Pyramid*

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

*Holdings, Inc. v. Terraform Global, Inc. et al.*, No. 16-cv-07981-PKC (S.D.N.Y.) (AF&T was appointed sole lead counsel for the class and secured a $48.75 million settlement); *Godinez v. Alere Inc.*, No. 1:16-cv-10766 (PBS), Dkt. No. 152 (D. Mass Dec. 22, 2017) (appointing AF&T as co-lead counsel in a case which settled for $20 million). Class Counsel's experience in complex securities cases facilitated their ability to negotiate a favorable resolution, ultimately resulting in a strong recovery for the Class. Thus, the skill and quality of representation further support the requested fee.

### 4.    The Contingent Nature of the Fee and Class Counsel's Financial Burden

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *In re Volkswagen,* No. 2672 CRB (JSC), 2017 WL 1047834, at *3 (N.D. Cal. Mar. 17, 2017); *see WPPSS*, 19 F.3d at 1299 (same); *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (same). This "practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Volkswagen*, 2017 WL 1047834, at *3. "This incentive is especially important in securities cases." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014). There have been many class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, in *In re Oracle Corp. Sec. Litig.*, No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), this Court granted summary judgment to defendants after eight years of litigation. In another recent case in this District, after a lengthy trial involving securities claims, the jury reached a verdict in defendants' favor – despite the Court previously granting summary judgment on certain elements in the class's favor, evincing the strength of the claims. *See In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *Tesla*, No. 3:18-cv-04865-EMC, Dkt. No. 671 (N.D. Cal. Feb. 3, 2023); *see also In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (similar).

Here, after over five years of litigation, Class Counsel have received no compensation during the course of the Action despite investing over 32,000 hours for a total lodestar of $20,950,691.50, and Class Counsel incurred millions of dollars in expenses in prosecuting this case to a successful resolution. Additional work in connection with the Settlement and claims administration has been undertaken and will be required further going forward. Any fee award has always been contingent on the result achieved and on this Court's discretion. Indeed, the only certainty was that there would be no compensation or reimbursement of litigation expenses absent a successful result. Class Counsel committed significant resources of both time and money to vigorously prosecute this Action and successfully brought it to a highly favorable conclusion for the Class's benefit. *See generally* Joint Declaration. The contingent nature of Class Counsel's representation thus further supports approval of the requested fee. *See In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *3, *7 (D. Ariz. Apr. 20, 2012) (33.33% of a $145 million settlement awarded following seven years of litigation "pursued ... despite great risk"); *Andrews v. Plains All Am. Pipeline L.P.,* No. CV154113PSGJEMX, 2022 WL 4453864, at *3 (C.D. Cal. Sept. 20, 2022*)* (similar and awarding 32% fee on $230 million settlement).

**5.      Awards Made in Similar Cases Support the Fee Request**

Class Counsel are requesting a fee award in the amount of one third of the $45,000,000 Settlement Fund, or $15,000,000, along with interest accrued thereon while in the Escrow Account. This requested percentage is well within the range awarded in this Circuit, which regularly consists of fee awards of one third of the settlement amount in cases where the class action settlement ranges between $30 and $55 million. *See, e.g.*, *Meijer, Inc. v. Abbott Laboratories*, No. 07-cv-05985, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (awarding one third of $52 million settlement); *Beaver* v. *Tarsadia Hotels*, No. 11-cv-01842, 2017 WL 4310707, at *12 (S.D. Cal. Sep. 28, 2017) (awarding one third of $51.15 million); *Hageman v. AT & T Mobility LLC,* No. 13-cv-00050, 2015 WL 9855925, at *4 (D. Mon. Feb. 11, 2015) (awarding one third of $45 million settlement); *Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites, Inc*., No. 99-cv-07796, Dkt. No. 802 (C.D. Cal.

Oct. 18, 2005) (awarding 33.13% of $36,250,000 settlement); *In re Pub. Servo Co. of N.M*, No. 91-0536M, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (33% of $33 million settlement).[2]

This proposed award of one third of the fund is also similar to awards in similar sized securities class action settlements in other Circuits. *See, e.g.*, *In re Chicago Bridge & Iron Company N.V. Sec. Litig.*, No. 1:17-cv-01580, Dkt. No. 446 (S.D.N.Y Aug. 5, 2022) (awarding one third of $44 million); *In re U.S. Steel Consol. Cases*, Case No. 2:17-cv-579-CB, Dkt. No. 358 (W.D. Pa. Mar. 31, 2023) (awarding one third of $40 million settlement); *In re Grab Holdings Ltd. Sec. Litig.*, 22-cv-02189-JLR, Dkt. No. 154 (S.D.N.Y May 15, 2025) (awarding one third of $80 million settlement); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *9 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd sub nom.*, 674 F. App'x 37 (2d Cir. 2016); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) (one third of $48 million settlement).

An upward departure from the 25% benchmark is particularly appropriate here. The matter was litigated for over five years in multiple courts, and there would not have been a reversal that resulted in discovery, class certification and a favorable recovery for the Class had it not been for Class Counsel's efforts and dedication in pursuing the Class's claims. More than two years of fact and expert discovery took place after the case was remanded by the Ninth Circuit. Even if the Court awards as fees one third of the Settlement Fund, the market value of Class Counsel's billable time ($20,950,691.50) still exceeds the requested fee award ($15,000,000). An upward departure from the benchmark is thus fair and reasonable in light of Class Counsel's negative lodestar and the significant amount of litigation that took place in this Action.

---

[2] Likewise, awards of one third of the settlement amount are not uncommon in cases where the settlement size is even larger. *See Wynn Resorts Limited, Ltd.*, No. 2:18-cv-00479-CDS-BNW, Dkt. No. 442 (D. Nev. Jan 31, 2025) (awarding one third (33 1/3%) of a $70 million settlement fund); *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2020 WL 1904533, at *15 (N.D. Cal. Apr. 17, 2020) (awarding one third of $267,349,000 settlement amount); *Apollo.*, 2012 WL 1378677, at *7 (awarding 33.33% of $145,000,000 settlement amount); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *3-4 (N.D. Cal. Sept. 20, 2018)(awarding one third of $104,750,000 settlement amount).

Given the result achieved, the number of hours dedicated to the matter by Class Counsel, the costs Class Counsel incurred in furtherance of the litigation and the resources expended, the contingent fee risk, the important public policy advanced by securities litigation such as this, and the fact that Courts have routinely found similar awards reasonable under similar circumstances, the requested fee award should be approved.[3]

### 6.     The Class's Reaction to Date Supports the Fee Request

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See, e.g.*, *Volkswagen*, 2017 WL 1047834, at *4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested fees"); *In re Wash. Mut., Inc. Sec. Litig.*, No. 08-MD-1919 MJP, 2011 WL 8190466, at *2 (W.D. Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses requested were filed"). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

Class Members were informed in the Postcard Notice and Notice that Class Counsel would move the Court for an award of attorneys' fees in an amount not to exceed one third of the Settlement Amount and for payment of litigation expenses not to exceed $2.5 million. *See* Exhibit A to the Declaration of Margery Craig Concerning: (A) Mailing of The Postcard Notice; (B) Publication Of

---

[3] The Supreme Court has "repeatedly" emphasized that private securities actions such as this provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Berner*, 472 U.S. at 310; *Tellabs*., 551 U.S. at 313 ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions … .").

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

The Summary Notice; and (C) Report on Objections, "Craig Decl." at 9.[4] Class Members were also advised of their right to object to the fee and expense request, and that such objections are to be filed with the Court no later than November 14, 2025. *Id*. While this deadline has not yet passed, to date, ***no objection*** has been received. ¶81 & Craig Decl. ¶12. Should any objection(s) be received, Class Counsel will address them in their reply papers. Finally, Plaintiffs have approved the percentage sought here. *See* Joint Declaration ¶60 & Exs. C, D.

### 7.    A Lodestar Crosscheck Confirms that the Requested Fee is Reasonable

To assess the reasonableness of a fee awarded under the percentage-of-the-fund method, courts may (but are not required to) cross check the proposed award against counsel's lodestar. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit"). When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen*, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount [w]as inadequate" because "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting … [courts] may rely on summaries submitted by the attorneys and need not review actual billing records'") (quoting *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "trial courts need not, and indeed should not, become green-eyeshade accountants" with respect to the lodestar cross check, and noting that "the Court seeks to do rough justice, not to achieve auditing perfection").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated

---

[4] The Craig Decl. is attached to the Joint Declaration as Exhibit E.

with the representation.'" *Rentech*, 2019 WL 5173771, at *10 (second alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In this case, the lodestar method demonstrates the reasonableness of the requested fee. As detailed here and in the accompanying Joint Declaration, Class Counsel's lodestar, derived by multiplying the hours spent on the Action by each attorney and litigation professional by their current hourly rates, is $20,950,691.50. ¶¶70-72.

The requested one third (33 1/3%) fee represents a multiplier of .72 on Class Counsel's lodestar, which represents a negative multiplier of .72. ¶72. This multiplier strongly supports approval of the fee request. *See Khoja v. Orexigen Therapeutics, Inc*., No. 15-CV-00540-JLS-AGS, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (negative multiplier supported 33 1/3% fee request); *In re Zillow Group Sec. Litig*., No. 2:17-cv-1387-JCC, Dkt. Nos. 183, 186 (W.D. Wash. Aug. 8, 2023) (approving one third fee request that amounted to a negative lodestar multiplier); *Portal Software, Inc. Sec. Litig*., 2007 WL 4171201, at *16 (approving multiplier of 0.74 and noting the "negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Usually, the fee requested compared to the lodestar amount represents a multiplier of 1 to 4, *i.e.*, counsel who represent the class on a wholly contingent basis are entitled to recover multiples of the actual market value of the time they spend on a matter. This also supports the reasonableness of this fee request because Class Counsel in fact seek less than the market value of the total billable amount of time they spent on this litigation. *See, e.g.*, *Stable Road*, 2024 WL 3643393, at *15 (approving settlement that represented a multiplier of 1.76 and collecting cases that noted "most" approved multipliers fall within the range of 1 to 4); *Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *In re Twitter Inc. Sec. Litig.*, No. 416CV05314JSTSK, 2022 WL 17248115, at *2 (N.D. Cal. Nov. 21, 2022) (awarding fee representing 4.14 multiplier); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *7-*9 (N.D. Cal. Dec. 6, 2017) (awarding fee representing

a 3.66 multiplier), *aff'd*, 768 F. App'x 651 (9th Cir. 2019); *see generally Vizcaino*, 290 F.3d at 1050-52 & 1051 n.6 (affirming 3.65 multiplier on appeal and finding that multipliers can range as high as 19.6, with the most common range falling between 1.0 and 4.0); *Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *3 (finding multipliers range from 1.0 to 4.0 in the vast majority of cases); *In re Verifone Holdings, Inc. Sec. Litig.*, No. C-07-6140 EMC, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (noting "over 80% of multipliers fall between 1.0 and 4.0" and awarding fee where multiplier was 4.3). Given the risk undertaken by Class Counsel and the result achieved for the Class, the requested fee award represents a discount relative to Class Counsel's multiplier.

For all these reasons, each of the relevant factors supports the award of attorneys' fees of one third of the Settlement Amount, plus accrued interest. Accordingly, this fee request is reasonable and Plaintiffs respectfully request that the Court approve it.

## II.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Class Counsel further request an award in the amount of $2,452,178.55 (plus interest accrued thereon while in the Escrow Account) from the common fund for litigation expenses incurred in prosecuting and resolving the Actions on behalf of the Class. "Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that plaintiff may recover "those out-of-pocket expenses that would normally be charged to a fee paying client").

The expenses sought by Class Counsel are of the type that are routinely charged to hourly paying clients and were required to prosecute the litigation. These expenses were incurred separately by Class Counsel, and such charges are not duplicated in the firms' hourly rates. From the beginning of the Action, Class Counsel were aware that they might not recover any of their expenses and would

not recover anything unless and until the Action was successfully resolved. Class Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate them for the lost use of the funds advanced to prosecute this Action. Thus, Class Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of this Action. ¶¶75-78.

As detailed in the Joint Declaration filed herewith, Class Counsel have incurred a total of $2,452,178.55 in expenses in prosecuting the Action on behalf of the Class. ¶¶75-78. This amount is nearly $50,000 less than the $2.5 million maximum anticipated amount set forth in the Notice, which was preliminarily approved by the Court and to which no Class Member objected. ¶¶75-78. The overwhelming majority of expenses are attributable to the necessary costs of the litigation. The majority of the expenses, over $1.4 million, were incurred in connection with expert work and testimony, which is both necessary and customary in complex securities litigation that proceeds to expert discovery as this case did. Other expenses include the costs related to investigation, legal research, discovery, including electronic discovery, court costs, mediation and travel and lodging for depositions and court hearings. ¶¶75-78.  All expenses are of the types routinely approved. *See, e.g.*, *Zynga*, 2016 WL 537946, at *22 ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."); *Vincent*, 2013 WL 621865, at *5 (granting reimbursement of costs for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses"). The amount of expenses, which are around 5% of the settlement fund, are reasonable given the complexity of this case. *See, e.g.*, *Amgen* 2016 WL 10571773, at *11 (C.D. Cal. Oct. 25, 2016) (approving expenses of 6.8% of settlement fund, which amounted to over $6.5 million of a $95 million fund); *In re Alta Mesa Res., Inc. Sec. Litig.,* No. 4:19-CV-00957, 2025 WL 1901350, at *1 (S.D. Tex. May 6, 2025) (over $6 million expenses approved, or 4.8% of $126.3 million settlement); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) (approving $1.85 million in expenses approved, or 3.9% of $48 million settlement).

Indeed, in other securities cases with a similar trajectory and a similar amount of discovery taken, courts have approved litigation expenses that are much higher than those Class Counsel incurred here. *See e.g.*, *In re Chicago Bridge*, No. 1:17-cv-01580, Dkt. Nos. 438 ¶¶26, 89, 438-2 ¶5 (S.D.N.Y. June 27, 2022) and Dkt. No. 446 (S.D.N.Y. Aug. 5, 2022) (awarding over $3.46 million in litigation expenses in a case involving 32 depositions, which included over $1.8 million in expert costs and over $780,000 in expenses for discovery related tasks, including electronic discovery); *see also Amgen*, Dkt. No. 591-5 (C.D. Cal. Sept. 20, 2016) and 2016 WL 10571773, at *11 (C.D. Cal. Oct. 25, 2016) (awarding $6.5 million in litigation expenses in a case involving just over 50 depositions, which included $2.8 million in expenses for experts and consultants and $2.2 million in discovery related expenses,); *Alta Mesa*, No. 4:19-CV-00957, 2025 WL 1901350, at *1 (S.D. Tex. May 6, 2025) (approving litigation expenses that included over $2.7 million in expert costs and $1 million for discovery related tasks in a case where 40 depositions were taken or defended).

Additionally, to date, there have been no objections to Class Counsel's request for reimbursement of litigation expenses, which supports approval. Joint Declaration ¶81; *see also In re Tripath Tech., Inc., Sec. Litig.*, No. C 04 4681 SBA, 2006 WL 1009228, at *4-5 (N.D. Cal. Apr. 18, 2006) (finding that no objections to counsel's request for reimbursement of expenses supported approval). Accordingly, the Court should approve Class Counsel's request for reimbursement of $2,452,178.55 in litigation expenses.

## III. PLAINTIFFS' REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Under the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement). Factors to consider include, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation" among others. *Id.* (ellipse in original); *see* William B. Rubenstein, *On Plaintiff "Incentive" Payments*, Class Action Attorney Fee Digest (Vol. 1, Apr. 2007), 95-97 (same). As explained by Professor

Rubenstein, "[t]he general theory behind incentive awards is that the monitoring, litigating, and gate-keeping functions serve important public goals. Incentive awards encourage plaintiffs to step forward and provide these public goods." *Id.* Such awards "can be justified by the fact that the representative is not similarly situated to other class members: she did something they did not and is rightly paid for stepping forward and working to safeguard the class's interests." *Id.* "Incentive awards are fairly typical in class action cases," and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Meitav and the Glazer Funds have been involved throughout this litigation and have given generously of their time and oversight for over five years of significant litigation. Meitav and the Glazer Funds request an award of $35,000 each. This figure is below the $50,000 figure provided in the Notice that was preliminarily approved by the Court. This is a reasonable award given the effort put forth in this case. As detailed in their declarations, Plaintiffs dedicated their personal time and effort to prosecuting the Action. Joint Declaration Ex. C. ¶3; Ex. D. ¶5. During the course of the litigation, they dedicated a substantial number of hours by, *inter alia*, (i) reviewing the multiple complaints and providing feedback to counsel; (ii) participating in written discovery and in-person depositions, as well as providing documents responsive to Defendants' requests for production; (iii) regularly communicating with counsel regarding case strategy; (iv) reviewing and discussing motion and appellate papers with counsel; (v) reviewing and discussing court opinions and orders with counsel; (vi) discussing with counsel the damages estimated by experts; (vii) discussing mediation strategy with counsel; and (viii) advising counsel regarding various settlement proposals, including the mediator's proposal resulting in the Settlement. *See* Joint Declaration Ex. C (Glazer Decl. ¶3); Ex. D (Meitav Decl. ¶3). They also took risks in pursuing these claims by lending their name to the lawsuit and opening themselves up to public scrutiny. *See, e.g.*, *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 WL 4755371, at *5 (N.D. Cal. Oct. 4, 2012) (finding award for plaintiffs was justified because they lent "their names to this case, and thus subject[ed] themselves to public attention"); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 17-283, 2020 WL 7133805, at *13

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

(D. Minn. Dec. 4, 2020) (finding award justified because "[c]lass [r]epresentatives participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media").

The requested awards are fair and reasonable and courts within this Circuit and around the country have granted even larger reimbursement awards to class representatives, particularly institutional investors like Meitav and the Glazer Funds. *See*, *e.g.*, *Pearlstein v. Blackberry Ltd*., No. 13 CIV. 7060 (CM) (KHP), 2022 WL 4554858, at *11 (S.D.N.Y. Sept. 29, 2022) (awarding $100,000 case contribution awards to individual lead plaintiffs); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 and $100,000 awards to institutional lead plaintiffs and noting that their "considerable effort" justified such awards); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016) (granting $50,000 each to institutional plaintiffs and noting that the plaintiffs spent "many total hours of executive and employee time, and the unreimbursed costs in searching and gathering documents ... preparing for and giving multiple depositions"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) (granting $214,657.14 to two institutional plaintiffs who sat for depositions, noting that "these large institutional investors have actively and effectively fulfilled their obligations.").[5]

While a $50,000 reimbursement award would be appropriate given the length of this litigation, and the time and effort Plaintiffs dedicated to the case, Plaintiffs now request only $35,000 each for

---

[5] *See also Dufoe v. DraftKings Inc. et al.*, No. 1:23-cv-10524, Dkt. No. 106 (D. Mass. July 30, 2025) ("Lead Plaintiff shall be paid a $50,000 Service Award from the Settlement Fund"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (awarding $100,000 to lead plaintiff and $5,000 to an additional plaintiff); *In re DVI, Inc.*, No. CV 03-5336, 2015 WL 12803587, at *4 (E.D. Pa. June 24, 2015) ("Lead Plaintiffs are hereby awarded $100,000.00 in cost recovery and service award, which shall be paid from the Settlement Fund after the Effective Date, which the Court finds to be fair and reasonable."); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (granting $50,000 award to individual class representative); *Arsam v. Salomon Bros., Inc. (In re Revco Sec. Litig.)*, No. 1:89CV0593, 1993 WL 497208, at *3 (N.D. Ohio Sep. 14, 1993) (awarding class representative $50,000 award); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) (approving $40,000 in reimbursement to lead plaintiff).

Meitav and the Glazer Funds because of the concerns the Court expressed with a higher award at the preliminary approval hearing.

Accordingly, the Court should grant the requested Awards to Plaintiffs Meitav and Glazer.

## CONCLUSION

For all of the reasons stated above and in the accompanying declarations, Class Counsel respectfully request that the Court: (i) award attorneys' fees of one third of the $45,000,000 Settlement Fund ($15,000,000) and expenses of $2,452,178.55, plus interest on both amounts at the same rate as earned by the Settlement Fund while in the Escrow Account; and (ii) award Plaintiffs Meitav and Glazer Funds $35,000 each in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4). To effectuate this relief, Plaintiffs and Class Counsel respectfully request that the Court enter the Proposed Final Order on Attorneys' Fees, Litigation Expenses and Reimbursement Awards, which addresses the relief requested herein.

Dated: October 31, 2025

**POMERANTZ LLP**

 _/s/ Omar Jafri_
Omar Jafri (admitted *pro hac vice*)
Brian O'Connell (SBN 314318)
Genc Arifi (admitted *pro hac vice*)
Diego Martinez-Krippner (admitted *pro hac vice*)
Jianan Jiang (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: ojafri@pomlaw.com
        pdahlstrom@pomlaw.com
        boconnell@pomlaw.com
        garifi@pomlaw.com
        dmartinezk@pomlaw.com
        ajiang@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
     ahood@pomlaw.com


*-and-*


**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**

 */s/ Jeffrey S. Abraham*
Jeffrey S. Abraham (admitted *pro hac vice*)
Michael J. Klein (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email: jabraham@aftlaw.com
     mklein@aftlaw.com

Patrice L. Bishop (SBN 182256)
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125
Email: pbishop@aftlaw.com

*Class Counsel*

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

23

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Patrice L. Bishop, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated: October 31, 2025                          */s/ Patrice L. Bishop*
                                                  Patrice L. Bishop

MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFFS
Case No. 20-CV-00076-SI

24